TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Brian F. Shaughnessy
Minta J. Nester

*Proposed Attorneys for Albert Togut, Not Individually
But Solely in His Capacity as Chapter 7 Interim Trustee*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- X
                                                            :
                    In the Matter                           :        Chapter 7
                                                            :        Case No. 21-10699 (DSJ)
                       -of-                                  :
                                                            :
KOSSOFF PLLC,                                               :
                                                            :
                                                            :
                              Debtor.                       :
                                                            :
----------------------------------------------------------- X

## CHAPTER 7 INTERIM TRUSTEE'S *EX PARTE* APPLICATION FOR AN ORDER (I) DIRECTING THE PRESERVATION OF DOCUMENTS AND RECORDED INFORMATION AND (II) AUTHORIZING THE ISSUANCE OF SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND DEPOSITION TESTIMONY PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................2

JURISDICTION ...........................................................................................................4

BACKGROUND ...........................................................................................................5

   A.  Commencement of the Debtor's Case ...............................................................5

   B.  The Debtor's Prepetition Business .....................................................................6

   C.  State and Federal Proceedings Against  the Debtor and Kossoff, Individually ......7

RELIEF REQUESTED....................................................................................................8

BASIS FOR RELIEF .....................................................................................................8

   A.  Authorizing the Rule 2004 Relief Is Appropriate Under Bankruptcy Rule 2004 ....8

   B.  Preservation of Documents Is Essential to the Trustee's Ability to Administer
       the Estate ......................................................................................................11

   C.  The Trustee Owns the Attorney-Client Privilege .....................................................14

RELIEF.....................................................................................................................16

NOTICE....................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*21AT Assocs. v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*,
No. 91 CIV. 1310 (MJL), 1992 WL 8335 (S.D.N.Y. Jan. 14, 1992) ....................................12

*Adelphia Commc'ns Corp. v. Am. Channel LLC (In re Adelphia Commc'ns Corp.)*,
No. 02-41729 (REG), 2006 WL 1529357 (Bankr. S.D.N.Y. June 5, 2006)..........................13

*Andino v. Fischer*,
555 F. Supp. 2d 418 (S.D.N.Y. 2008) ....................................................................................13

*Capricorn Power Co. v. Siemens Westinghouse Power Corp.*,
220 F.R.D. 429 (W.D. Pa. 2004) ............................................................................................13

*Commodity Futures Trading Comm'n v. Weintraub*,
471 U.S. 343 (1985) ..........................................................................................................15, 16

*Cordius Trust v. Kummerfeld*,
Case No. 99 CIV 3700 (DLC), 2000 WL 10268 (S.D.N.Y. Jan. 3, 2000) ............................11

*In re 199 E. 7th St. LLC*,
Case No. 14-13254 (SCC) (Bankr. S.D.N.Y. Sept. 22, 2016) ...............................................10

*In re Abengoa Bioenergy Biomass of Kansas, LLC*,
No. 16-10446, 2018 WL 1321951 (Bankr. D. Kan. Mar. 13, 2018).....................................15

*In re Altman*,
254 B.R. 509 (D. Conn. 2000).................................................................................................17

*In re Bakalis*,
199 B.R. 443 (Bankr. E.D.N.Y. 1996) ......................................................................................9

*In re Bello*,
528 B.R. 562 (Bankr. E.D.N.Y. 2015) ......................................................................................9

*In re Bennett Funding Grp., Inc.*,
203 B.R. 24 (Bankr. N.D.N.Y. 1996) ........................................................................................9

*In re Drexel Burnham Lambert Grp., Inc.*,
123 B.R. 702 (Bankr. S.D.N.Y. 1991).......................................................................................9

*In re Eddy*,
304 B.R. 591 (Bankr. D. Mass. 2004)......................................................................................16

*In re Enron Corp.*,
281 B.R. 836 (Bankr. S.D.N.Y. 2002)........................................................................................8

*In re First Standard Financial Company, LLC*,
    Case No. 21-10536 (DSJ) (Bankr. S.D.N.Y. March 20, 2021)......................................10, 17

*In re Friedman*,
    184 B.R. 883 (Bankr. N.D.N.Y. 1994) ...................................................................................17

*In re Hickman*,
    151 B.R. 125 (Bankr. N.D. Ohio 1993)..................................................................................10

*In re Kramer*,
    492 B.R. 366 (Bankr. E.D.N.Y. 2013) ...................................................................................10

*In re Metiom*,
    301 B.R. 634 (Bankr. S.D.N.Y.2003)......................................................................................17

*In re Shur*,
    184 B.R. 640 (Bankr. E.D.N.Y. 1995) ...................................................................................11

*In re Siskin*,
    No. 02-10373 SMB, 2011 WL 4899868 (Bankr. S.D.N.Y. Oct. 13, 2011)............................12

*In re Sun Med. Mgmt., Inc.*,
    104 B.R. 522 (Bankr. M.D. Ga. 1989) .....................................................................................9

*In re Toft*,
    453 B.R. 186 (Bankr. S.D.N.Y. 2011).....................................................................................10

*Med. Diagnostic Imaging PLLC v. CareCore Nat. LLC*,
    Case No. 06 CIV 13156, 2008 WL 3833238 (S.D.N.Y. Aug. 15, 2008) ...............................11

*Pueblo of Laguna v. United States*,
    60 Fed. Cl. 133 (2004)............................................................................................................13

*SEC v. Ryan*,
    747 F. Supp. 2d 355 (N.D.N.Y. 2010) ..............................................................................15, 16

*TKR Cable v. Cable City Corp.*,
    267 F.3d 196 (3d Cir. 2001)....................................................................................................13

*Wisdom Imp. Sales Co. v. Labatt Brewing Co.*,
    339 F.3d 101 (2d Cir. 2003)....................................................................................................13

**Statutes**

11 U.S.C. § 105 ...........................................................................................................................4

11 U.S.C. § 541 .........................................................................................................................12

11 U.S.C. § 542 .............................................................................................................12, 13, 14

28 U.S.C. § 157 ...................................................................................................................4

28 U.S.C. § 1334 ................................................................................................................4

28 U.S.C. § 1408 ................................................................................................................4

28 U.S.C. § 1409 ................................................................................................................4

**Rules**

Fed. R. Bankr. P. 2004 ............................................................................................ passim

Fed. R. Bankr. P. 7065 ..................................................................................................4, 16

Fed. R. Bankr. P. 9006 ......................................................................................................4

Fed. R. Bankr. P. 9016 ....................................................................................................10

Fed. R. Civ. P. 65 ............................................................................................................17

TO THE HONORABLE DAVID S. JONES,
UNITED STATES BANKRUPTCY JUDGE:

Albert Togut, not individually but solely in his capacity as the Chapter 7

Interim Trustee (the "Trustee") of Kossoff PLLC (the "Debtor"), by his proposed

attorneys, Togut, Segal & Segal LLP (the "Togut Firm"), hereby makes this *ex parte*

application (the "Motion") for entry of:

- An order in the form annexed hereto as **Exhibit 1** (the "Initial Order") that (a) authorizes the Trustee, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to issue subpoenas for the production of all books, records, and documents including, without limitation, all emails, text messages, computers and/or laptop computers, hard drives, computer servers, back-up tapes, and documents related to the Debtor or its property concerning or otherwise evidencing the Debtor's assets and financial affairs (the "Books and Records"),[1] and the examination of various persons and entities, to obtain information concerning acts, conduct, property, and liabilities of the Debtor, and other matters relating to the extent and nature of the Debtor's estate, (b) contains a temporary restraining order that prohibits the destruction or alteration of the Books and Records (the "Provisional Relief"), and (c) approves the form and manner of notice for an initial hearing to consider the Trustee's request for the Provisional Relief (the "Initial Hearing");

- At the conclusion of the Initial Hearing, an order substantially in the form annexed hereto as **Exhibit 2** (the "Scheduling Order") continuing the Provisional Relief until a final hearing and scheduling such final hearing (the "Final Hearing");

- At the conclusion of the Final Hearing, an order substantially in the form annexed hereto as **Exhibit 3** (the "Final Order") granting the Provisional Relief on a final basis;  and

- Such other and further relief as the Court deems just and proper.

---

[1]   The foregoing description of the Books and Records is not limiting and includes all books, records, correspondence, and other information concerning the Debtor's affairs and estate, no matter where they are located or what person, government unit or entity has possession, custody, or control of them.

1

In support of the Motion, the Trustee has annexed hereto as **Exhibit 4** the Declaration of Neil Berger, Esq. (the "Berger Declaration"), incorporated herein by reference, and respectfully states:

## PRELIMINARY STATEMENT

The Debtor operated as a law firm with offices located at 217 Broadway in New York City (the "Premises").  The Debtor held itself out as a law firm that provided full-service real estate legal services specializing in litigation and transactional matters, including leasing, sale and acquisition of real property, commercial landlord tenant matters, real estate litigation, and city, state and federal agency regulatory matters.

Pleadings filed in numerous lawsuits during the past months assert that clients of the Debtor grew increasingly suspicious of the conduct of the Debtor's founder and only known managing member, Mitchell H. Kossoff ("Kossoff").  Kossoff is alleged to have failed to and/or refused to return millions of dollars of client funds when requested by clients.  Since on or about April 1, 2021, Kossoff's whereabouts have been unknown, and Kossoff has ceased all communications with the Debtor's clients and with the attorneys and staff who were employed by the Debtor.  Numerous lawsuits have been commenced by former clients against the Debtor and Kossoff in state and federal courts.  The Debtor and Kossoff are generally alleged to have comingled client funds, engaged in unauthorized transactions with client funds, and/or otherwise misappropriated millions of dollars from the Debtor's clients.  Media articles also report that law enforcement agencies have opened investigations into the conduct of the Debtor and Kossoff.

The Trustee has a fiduciary duty to examine the conduct and financial affairs of the Debtor, and his ability to recover property of the estate, respond to creditor claims, and address client demands for their files is largely dependent on his

2

recovery of the Books and Records.  Given the troublesome circumstances surrounding the Debtor's prepetition affairs, and facts known to date, the Trustee needs broad Bankruptcy Rule 2004 authority to fully investigate the nature and scope of the Debtor's estate including, without limitation, whether affirmative estate claims exist.

Accordingly, the Trustee seeks authority from this Court pursuant to Bankruptcy Rule 2004 to issue subpoenas for the Books and Records from, among others, the Debtor, the Debtor's bookkeepers, Kossoff, his partners and employees, and relevant third-parties concerning the business operations and financial affairs of the Debtor.  While the Trustee intends to seek the cooperation of relevant individuals and entities to obtain the Books and Records necessary for his investigation, the subpoena power of this Court will be required to obtain the necessary documents and testimony if that cooperation is not forthcoming.

As an example, the Trustee has been advised that the Debtor's Books and Records, as well as the Debtor's computers, may be managed by an entity (or entities) that, though separate from the Debtor, may be controlled by Kossoff.  The Trustee will seek Books and Records from those entities through a Bankruptcy Rule 2004 subpoena pursuant to the Court's order, as to date, the Trustee has not been given access to those Books and Records.  However, Columbus Properties, Inc., the Debtor's landlord (the "Landlord"), has advised that Kossoff has requested that he (or someone acting on his behalf) be permitted to remove such Books and Records from the fifth floor offices at the Premises.

Under these circumstances, it would be imprudent to ignore the incentive that persons may have to alter or destroy documents that are necessary to investigate the Debtor's financial affairs and which may be needed to assert affirmative claims and defenses on behalf of the Debtor's estate.  It is imperative that the Debtor's Books and

3

Records are preserved so that they can be turned over to the Trustee.  There is no harm in preventing persons from altering or destroying evidence, but the Trustee and the Debtor's estate could suffer irreparable harm from such actions.  Consequently, the Trustee requests injunctive relief preventing the destruction or alteration of the books, records, and documents on an expedited basis.  The Trustee has been advised that the Debtor ceased its business operations weeks ago, so time is of the essence for the Trustee to recover documents and information concerning the acts, conduct, property, assets, and liabilities of the Debtor.  Moreover, because the Trustee now controls any privileges that may attach to Books and Records, he should be authorized to waive such privileges if, in his judgment, doing so would facilitate recovery of Books and Records.

The Trustee respectfully submits that the authority requested herein will enable him to conduct an investigation without the need for a multitude of separate applications, while preserving parties' ability to seek relief or protection from this Court.

Based upon the foregoing, and as described below, the Trustee respectfully request that the Court:  (i) enter the Initial Order;  (ii) schedule the Initial Hearing;  and (iii) ultimately enter the Final Order, as described above.

## **JURISDICTION**

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider the relief requested in this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested by this Motion are section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 2004, 7065 and 9006.

4

## BACKGROUND[2]

### A.    Commencement of the Debtor's Case

3.    On April 13, 2021 (the "Petition Date"), Gran Sabana Corp. N.V., Louis and Jeanmarie Giordano, Decker Associates LLC, 118 Duane LLC, and Thomas G. Sneva (collectively, the "Petitioning Creditors") filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Involuntary Petition") against the Debtor in the above-captioned case (the "Chapter 7 Case").

4.    The Petitioning Creditors are former clients of the Debtor and together assert claims for "Unreturned IOLA Funds" and "Misappropriated IOLA Funds" totaling approximately $17 million [Docket No. 1].

5.    The Debtor did not appear in response to the Involuntary Petition, and on May 11, 2021, this Court entered the *Order for Relief and Order to File Schedules and Other Documents* [Docket No. 14] (the "Order for Relief").

6.    The Order for Relief directs the Debtor to file "all schedules, statements, lists and other documents that are required under the Federal and Local Rules of Bankruptcy Procedure" (the "Schedules") no later than May 25, 2021 [Docket No. 14].

7.    On May 12, 2021, Mr. Togut was appointed as the Chapter 7 Interim Trustee of the Debtor, accepted his appointment, and duly qualified.

8.    The Debtor has not yet filed any of the Schedules and has otherwise not cooperated with the Trustee.

---

[2]    The Trustee is still in the very early stages of his investigation and therefore, aside from the facts obtained from the Debtor's Petition and publicly filed pleadings in the Prepetition Actions (defined below), the facts described herein are set forth upon information and belief based upon documents the Trustee and his professionals have reviewed, and may be supplemented or modified based upon the Trustee's ongoing investigation.

9.      The Trustee understands that transfers made, and/or obligations incurred, by the Debtor prior to the Petition Date may be avoidable and/or recoverable, and the Trustee is trying to investigate affirmative claims and defenses that may be asserted on behalf of the Debtor's estate.  Berger Decl. ¶ 9.

**B.**      **The Debtor's Prepetition Business**

10.      Prior to the Petition Date, the Debtor operated as a law firm located at the Premises and serviced clients in the real estate industry.  *Id.* ¶ 10.  The Debtor held itself out as providing full-service real estate legal services specializing in both litigation and transactional matters related to areas of real property law, including leasing, sale and acquisition of real property, commercial landlord tenant matters, real estate litigation, and city, state and federal agency regulatory matters.  *Id.*

11.      The Debtor's founder and only known managing member is Kossoff.  *Id.* ¶ 11.  Since on or about April 1, 2021, and as of the date of the Order for Relief, Kossoff's whereabouts have been unknown.  *Id.*

12.      The Trustee recently caused the Premises to be inspected, and there were no discernable financial Books and Records of the Debtor located there or computers that could contain information concerning the Debtor's financial affairs.  *Id* at ¶ 12.

13.      The Trustee has been advised that the Debtor's Books and Records, as well as the Debtor's computers, may be managed by an entity (or entities) that, though separate from the Debtor, may be controlled by the Debtor's principal, Kossoff.  *Id.* ¶ 13.  To date, the Trustee has not been given access to those Books and Records.  *Id.* However, recently, the Landlord has advised that Kossoff has requested that he (or

someone acting on his behalf) be permitted to remove Books and Records from the fifth floor offices at the Premises.  *See id.*[3]

C.    **State and Federal Proceedings Against
        the Debtor and Kossoff, Individually**

14.    The Debtor and Kossoff have been named as defendants in numerous state and federal court lawsuits that were commenced prior to the Petition Date (collectively, the "Prepetition Actions").  *Id.* ¶ 14.  The Prepetition Actions allege causes of action such as legal malpractice, professional negligence, breach of fiduciary duty, breach of contract, conversion, and unjust enrichment.  *Id.*  Certain plaintiffs seek to recover their files from the Premises (the "Client Files").  *Id.*

15.    The Prepetition Actions also arise from the Debtor's alleged failure and/or refusal to return client funds that were supposed to have been held in escrow or in one of the Debtor's various bank accounts.  *Id.* ¶ 15.  Kossoff ceased communications with the Debtor's clients on or about the time Kossoff's whereabouts became generally unknown.  *Id.*

16.    Kossoff is alleged to have improperly comingled client funds, engaged in unauthorized transactions with client funds, and/or otherwise misappropriated approximately $17 million that was to have been held for the benefit of the Debtor's clients.  *Id.* ¶ 16.

17.    In connection with the Prepetition Actions, certain of the Debtor's bank accounts have been frozen by an order of the New York Supreme Court, New York County, dated April 13, 2021.  *Id.* ¶ 17.

---

[3]    Tenantracers, LLC ("Tenantracers"), a New York limited liability company, is party to agreements, executed by Kossoff on behalf of Tenantracers, pursuant to which Tenantracers occupies offices located on the fifth floor of the Premises.  *Id.* ¶ 13 n.2.

18.     The Trustee has also learned that law enforcement agencies have opened investigations into potential criminal activity concerning the Debtor.  *Id.* ¶ 18.

## RELIEF REQUESTED

19.     The Trustee seeks entry of the Initial Order and Final Order, authorizing him to conduct discovery of the Debtor and non-Debtor parties concerning the extent and nature of the Debtor's estate, including, but not limited to, acts, conduct, and property of the Debtor, and directing all parties that receive notice of the Initial Order, the Scheduling Order, the Final Order and any other order granting this Motion, and any subpoena issued by the Trustee, to preserve, and not destroy the Books and Records concerning the Debtor and its estate.

## BASIS FOR RELIEF

**A.     Authorizing the Rule 2004 Relief Is
        Appropriate Under Bankruptcy Rule 2004**

20.     Bankruptcy Rule 2004(a) provides that a Court may order an examination of any entity upon request of a party in interest.  The scope of the Bankruptcy Rule 2004 examination is intended to be broad and may include the acts, conduct or property of a debtor or the financial condition of a debtor, as well as any matter that may affect the administration of a debtor's estate.  *See* Fed. R. Bankr. P. 2004(b).

21.     Bankruptcy Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for "discovering assets, examining transactions, and determining whether wrongdoing has occurred."  *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted).  In this regard, courts have recognized that Bankruptcy Rule 2004  examinations are broad and unfettered, and may be in the nature of "fishing expeditions."  *Id.*;  *see also In re Bakalis*, 199 B.R. 443, 447

8

(Bankr. E.D.N.Y. 1996) ("[Rule 2004's] purpose is to facilitate the discovery of assets and the unearthing of frauds and has been likened to a 'fishing expedition' into general matters and issues regarding the administration of the bankruptcy case." (citation omitted)); *see generally In re Bello*, 528 B.R. 562, 566 (Bankr. E.D.N.Y. 2015).

22. Bankruptcy Rule 2004 is meant to provide broad power to investigate any matter that may affect the administration of the estate. *See In re Bennett Funding Grp., Inc.,* 203 B.R. 24, 27-28 (Bankr. N.D.N.Y. 1996); s*ee also In re Bakalis*, 199 B.R. at 447; *In re Drexel Burnham Lambert Grp., Inc.,* 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991) ("The object of the examination of the [debtor] and other witnesses is to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved."); *In re Sun Med. Mgmt., Inc.*, 104 B.R. 522, 524 (Bankr. M.D. Ga. 1989) ("Bankruptcy Rule 2004 examinations are allowed for the purpose of discovering assets and unearthing frauds.").

23. The Trustee has a fiduciary duty to investigate the Debtor's financial affairs to assess whether there are any assets to be recovered for the Debtor's estate. He also needs to assess clients' obligations to the Debtor, if any, before he can release the Client Files to them.

24. The Trustee has concluded that he should conduct discovery to investigate the Debtor's financial and business affairs to assess whether the alleged improper conduct provides a basis for the Trustee to assert affirmative claims and defenses on behalf of the Debtor's estate and/or to seek benefits under the insurance policies maintained by the Debtor.

25. The discovery authority sought by the Trustee will provide him with a means to conduct an examination of the Debtor's financial affairs, identify the

rights and causes of actions that may exist in favor of this estate and, potentially, limit claims against this estate.

26.     Although this Motion is initially being made *ex parte*, any concerns regarding notice or due process are addressed by the fact that any entity served with a subpoena may contest the scope or issuance of that subpoena, and any disputes that cannot be resolved between the Trustee and a subpoenaed party may be raised by letter brief to the Court.  This Court and others in this district have recognized that a Bankruptcy Rule 2004 examination may be commenced by an *ex parte* motion.  *See, e.g., In re First Standard Financial Company, LLC,* Case No. 21-10536 (DSJ) (Bankr. S.D.N.Y. Mar. 20, 2021) (authorizing trustee to issue subpoenas and obtain testimony and authorizing injunctive relief on an *ex parte* basis);  *In re 199 E. 7th St. LLC*, Case No. 14-13254 (SCC) (Bankr. S.D.N.Y. Sept. 22, 2016) (authorizing trustee to issue subpoenas and obtain testimony and authorizing injunctive relief on an *ex parte* basis);  *In re Toft*, 453 B.R. 186, 198 (Bankr. S.D.N.Y. 2011) (noting that "an examination under Bankruptcy Rule 2004 may be commenced by an *ex parte* motion");  *In re Kramer*, 492 B.R. 366, 372 (Bankr. E.D.N.Y. 2013) (noting "[t]he Rule 2004 Application could have been made *ex parte*");  *In re Hickman*, 151 B.R. 125, 128 (Bankr. N.D. Ohio 1993) (referring to a Rule 2004 motion noting "[t]he motion may be heard *ex parte*").

27.     Additionally, service of subpoenas by FedEx or any other means of service allowed under Bankruptcy Rule 9016 is appropriate, because personal service on all persons subpoenaed pursuant to the Initial Order or Final Order would be unduly burdensome, expensive and would delay the Trustee's efforts to obtain information essential to uncovering whether causes of action exist that may significantly augment the Debtor's estate.

28.     Courts in the Second Circuit have authorized alternative service when such service was reasonably "calculated to provide timely actual notice." *Med. Diagnostic Imaging PLLC v. CareCore Nat. LLC*, Case No. 06 CIV 13156, 2008 WL 3833238, at \*2 (S.D.N.Y. Aug. 15, 2008); *Cordius Trust v. Kummerfeld*, Case No. 99 CIV 3700 (DLC), 2000 WL 10268, at \*2 (S.D.N.Y. Jan. 3, 2000) (allowing alternative service by certified mail because "alternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness"); *In re Shur*, 184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995) (holding that Rule 45 of the Federal Rules of Civil Procedure (and by extension Bankruptcy Rule 9016) does not require personal service and that other service is permissible provided service was reasonably calculated to give actual notice).  Here, delivery by FedEx (or other means agreed to be the subpoenaed parties) is reasonably calculated to ensure actual receipt by the persons subpoenaed pursuant to the Initial Order and Final Order.

### B.     Preservation of Documents Is Essential to the Trustee's Ability to Administer the Estate

29.     Based upon the alleged prepetition conduct herein, it is reasonable for the Trustee to anticipate that some parties may have incentive to withhold, alter or destroy documents in connection with the Debtor's financial affairs and to attempt to impede the Trustee's efforts to identify and recover property of the estate.  Moreover, public filings indicate that the Debtor has recently failed to respond to requests for documents and information.  It is of the utmost importance that all documents related to the Debtor's financial affairs and course of business be preserved.

30.     Injunctive relief preventing the destruction or alteration of Books and Records is needed on an expedited basis.  Law enforcement agencies have opened at least one investigation into the Debtor, and there is a real risk that the parties may not

preserve and/or may destroy or alter the Books and Records absent an Order of the Court prohibiting them from doing so.

31.    Consequently, the Initial Order and Final Order provide that any party receiving notice of an order granting this Motion and service of a subpoena issued by the Trustee be directed to preserve, and not destroy, Books and Records, whether kept in physical or electronic form, of or concerning the Debtor or its acts, conduct, financial affairs, and property.

32.    It is beyond question that all of the Books and Records constitute property of the estate pursuant to Bankruptcy Code section 541 or are otherwise discoverable under Bankruptcy Rule 2004.  *See In re Siskin*, No. 02-10373 SMB, 2011 WL 4899868, at \*5 (Bankr. S.D.N.Y. Oct. 13, 2011) (holding that books and records are property of the estate)*;  see also 21AT Assocs. v. Integrated Res., Inc. (In re Integrated Resources, Inc.),* No. 91 CIV. 1310 (MJL), 1992 WL 8335, at \*1 (S.D.N.Y. Jan. 14, 1992) (affirming Bankruptcy Court holding that books and records are property of the debtor's estate pursuant to section 541(a) of the Bankruptcy Code).  Those records are likely to lead to discovery of relevant documents and information concerning property of the Debtor's estate, claims and defenses in favor of the estate, and information that may be necessary to liquidate claims asserted against the Debtor's estate.

33.    Consequently, parties have an obligation to turn over all of the Books and Records to the Trustee pursuant to Bankruptcy Code section 542(e).  By its terms, Bankruptcy Code section 542(e) requires the parties to preserve and turn over all Books and Records to the Trustee:

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the

debtor's property or financial affairs, to turn over or disclose
such recorded information to the trustee.

11 U.S.C. § 542(e).

34.    The standards for injunctive relief are met here.  A party seeking an
injunction in the Second Circuit must show "(1) that it will suffer irreparable harm in
the absence of an injunction and (2) either (a) likelihood of success on the merits or
(b) sufficiently serious questions going to the merits to make them a fair ground for
litigation and a balance of hardships tipping decidedly in [movant's] favor." *Wisdom
Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 108 (2d Cir. 2003) (citation and
quotations omitted);  *Adelphia Commc'ns Corp. v. Am. Channel LLC (In re Adelphia
Commc'ns Corp.)*, No. 02-41729 (REG), 2006 WL 1529357, at *4 (Bankr. S.D.N.Y. June 5,
2006)."[4]

35.    Orders requiring the preservation of documents "are increasingly
routine in cases involving electronic evidence, such as e-mails and other forms of
electronic communication." *Pueblo of Laguna v. United States,* 60 Fed. Cl. 133, 136 (2004).
In *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, the court articulated three
factors that should be considered in determining whether to issue an order to preserve
documents:  (i) the level of concern for the continuing existence of documents absent a
court order;  (ii) the risk of irreparable harm to the movant absent such an order;  and,
(iii) the ability of the party (or parties) in possession of the evidence to preserve it.  220

---

[4]    Additionally, to obtain an *ex parte* temporary restraining order, an applicant must show that
"immediate and irreparable injury, loss, or damage will result to the applicant before the adverse
party or that party's attorney can be heard in opposition." *See TKR Cable v. Cable City Corp.*, 267 F.3d
196, 198 (3d Cir. 2001); *see also Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well
established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary
injunction.  Generally, to obtain a preliminary injunction, a party must demonstrate (1) irreparable
harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or
(b) sufficiently serious questions going to the merits to make them a fair grounds for litigation and a
balance of hardships tipping decidedly in the movant's favor." (internal citations and quotation
marks omitted)).

F.R.D. 429, 433–34 (W.D. Pa. 2004).  Each of these factors weighs in favor of the issuance of a preservation order in this case.

36.     Based upon the allegations of misconduct against the Debtor and Kossoff, the Trustee has serious concerns that parties who have been involved with the Debtor's financial affairs and who may have received property of the estate may have incentive to take steps to destroy documents that the Trustee needs to administer this estate.  The Trustee should not have to shoulder that risk.  An order to preserve the Books and Records is consistent with Bankruptcy Code section 542(e) and is necessary to safeguard the Trustee's ability to administer the estate, investigate claims, and uncover all relevant facts.

37.     Should the integrity of the Books and Records be compromised, the Trustee's ability to administer the estate will likely be impeded.  No remedy at law could compensate for the loss of the ability to investigate and litigate as appropriate.  Thus, the Initial Order requiring records preservation is essential to prevent an irreparable injury.

38.     Finally, it cannot seriously be contended that a simple record preservation order would impose any undue technical, logistical, or financial burden on anyone.  To the contrary, preserving the Books and Records, which constitutes property of the estate which must be turned over to the Trustee, should prove less of an effort than the steps an individual might otherwise take to improperly purge recorded information.

### C.     The Trustee Owns the Attorney-Client Privilege

39.     To the extent that attorney-client or other applicable privilege (the "Privileges") attach to any of the Books and Records, such Privileges now belong to the Trustee.

14

40.     As the Supreme Court explained in *Weintraub*, "the attorney-client privilege is controlled, outside of bankruptcy, by a corporation's management," but in a bankruptcy case, the privilege is to be controlled by the trustee who receives broad management authority over the debtor and is the "actor whose duties most closely resemble those of management." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 351-52 (1985).  For that reason, it is the Trustee's privilege to waive or assert. *See id.* at 358;  *see also SEC v. Ryan*, 747 F. Supp. 2d 355 (N.D.N.Y. 2010) (finding that an LLC entity is treated like a corporation for purposes of attorney-client privilege and that the court-appointed fiduciary, as successor in interest, controls the attorney-client privilege for the LLC).  In short, "*Weintraub* stands for the proposition that a chapter 7 trustee has authority to waive a corporate debtor's attorney-client privilege with respect to prebankruptcy communications.  The attorney-client privilege survives a corporation's liquidation and a chapter 7 trustee succeeds to the privilege because the trustee functions most like the management of a corporation does outside of bankruptcy." *In re Abengoa Bioenergy Biomass of Kansas, LLC*, No. 16-10446, 2018 WL 1321951, at *7 (Bankr. D. Kan. Mar. 13, 2018);  *see also S.E.C. v. Ryan,* 747 F. Supp. 2d 355, 368 (N.D.N.Y. 2010) ("Speaking directly to [the LLC], the attorney-client privilege belongs to the corporation or similar organization . . . [a]s the successor in interest, and as a matter of law [the receiver] controls the attorney-client privilege for [the LLC].").

41.     Moreover, the Trustee seeks information regarding the Debtor's receipt or disbursement of estate property and claims against this estate.  All of that information is required to have been publicly disclosed by the Debtor pursuant to the Order for Relief and by the Bankruptcy Code and the Bankruptcy Rules, and would not be subject to any attorney-client privilege.  *Id.*  As bankruptcy courts have recognized:

> debtors are obligated to disclose all of their assets and liabilities . . . . These disclosures are necessary to ensure that bankruptcy relief is accorded only to the honest and compliant debtor . . . . A debtor has no reasonable expectation that information will be kept confidential if it must be disclosed in bankruptcy filings, . . . and where the [d]ebtor has no reasonable expectation of confidentiality, the attorney-client privilege is unavailable.

*In re Eddy*, 304 B.R. 591, 596 (Bankr. D. Mass. 2004) (finding that "information disclosed to an attorney for the assembly of a bankruptcy petition and schedules does not fall within the scope of the attorney-client privilege").

42.     The foregoing demonstrates that no party in possession of Books and Records, including the Debtor, its members, agents, or retained counsel, may withhold production and turnover of that recorded information to the Trustee based upon any claim of Privilege in favor of the Debtor, and that the Trustee, in his considered business judgment, may waive that Privilege.  *See Weintraub,* 471 U.S. at 351-53.  Ample cause also exists for the Court's direction that all parties preserve, and not destroy, the Books and Records, subject only to their turnover obligations pursuant to subpoenas issued by the Trustee.

43.     Based upon the foregoing, the Trustee may invoke and/or waive the Privileges if, in his judgment, doing so is necessary to recover the Books and Records and otherwise administer the Debtor's estate.

### **RELIEF**

44.     Bankruptcy Rule 7065 specifically states "a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)."  The Trustee asserts that Rule 65(c) does not apply to this request for the Provisional Relief.  In the event it is

read to apply, the Trustee believes that the requirement is unwarranted under the circumstances and should be waived.[5]

**NOTICE**

45.      The Trustee has not yet given notice of this Motion to the Debtor, its known manager, members, employees, agents or representatives.  The Trustee respectfully submits that such notice is not appropriate as it might prompt some of the precise activity that the Trustee is seeking to protect against with this Motion.  The Berger Declaration, which certifies the foregoing regarding notice, is annexed hereto as **Exhibit 3**.

46.      Once entered, the Trustee will serve the Initial Order by FedEx to: (i) Kossoff;  (ii) the Landlord;  (iii) Tenantracers;  (iv) all parties that have filed a notice of appearance in this case;  (v) the United States Trustee for the Southern District of New York, Attn:  Andrew Velez-Rivera, Esq. (Andy.Velez-Rivera@usdoj.gov);  and (vi) such other parties that the Trustee may determine may be in possession of Books and Records (collectively, the "Notice Parties"), and he requests that such notice be found to be good and sufficient notice of the Motion and the Initial Hearing.

47.      Upon entering the Initial Order, there will be a temporary restraining order;  at the first hearing, the Trustee will request the entry of a preliminary

---

[5]   The Trustee respectfully submits the relief sought here can be granted on application.  Numerous courts in this circuit have properly elected not to elevate form over substance when interested parties would receive sufficient due process protections (and the issues to be decided were relatively straightforward).  *See e.g., In re First Standard Financial Company, LLC, supra;   In re Altman*, 254 B.R. 509, 512 (D. Conn. 2000) ("[C]ourts have excused the lack of a formal adversarial proceeding to resolve disputed matters . . . with respect to entities who were parties to the proceedings and thus had notice, participated in the hearings and otherwise had effected opportunity to be heard.");  *In re Metiom*, 301 B.R. 634, 639 (Bankr. S.D.N.Y.2003) (finding that when applicable, the requirements of Rule 7001 must be complied with, but "such compliance . . . should not require the elevation of form over substance to prejudice a party if the matter can proceed on the merits consistent with Part VII.");  *In re Friedman*, 184 B.R. 883, 887 (Bankr. N.D.N.Y. 1994) ("[W]here the rights of the affected parties have been adequately protected and the parties have had an opportunity to be heard, form will not be elevated over substance . . . .").  The issues presented in this Motion are straightforward and do not require discovery or an adversary proceeding.

injunction and the Scheduling Order, setting a hearing date for the Final Order and the entry of a permanent injunction in the Final Order preventing the destruction of any of the Books and Records covered by the temporary restraining order.

       **WHEREFORE,** the Trustee respectfully requests entry of:  (i) the Initial Order  (a) authorizing the Trustee to issue subpoenas for the production of Books and Records, whether kept in physical or electronic form, and the examination of various persons and entities, to obtain information concerning the acts, conduct, property, and liabilities of the Debtor, and other matters relating to the extent and nature of the Debtor's estate, and (b) providing an immediate injunction that prohibits the destruction or alteration of all books, records, and documents concerning or otherwise evidencing the Debtor's assets and financial affairs, scheduling the Initial Hearing to consider continuation of the injunctive relief, and approving the form and manner of notice for the Initial Hearing;  (ii) at the conclusion of the Initial Hearing, entering the Scheduling Order, continuing the Provisional Relief until a final hearing to consider a permanent injunction;  (iii) at the conclusion of such final hearing, entering the Final

*[Concludes on Following Page]*

18

Order granting the Provisional Relief sought by the Trustee on a final basis;  and (iv)

granting such other and further relief as the Court deems just and proper.

DATED:  New York, New York
              May 21, 2021

Respectfully submitted,

ALBERT TOGUT,
Not individually but solely in his capacity as
Chapter 7 Interim Trustee of
Kossoff PLLC
By His Proposed Counsel,
TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Neil Berger*
NEIL BERGER
BRIAN S. SHAUGHNESSY
MINTA J. NESTER
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000