TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Brian F. Shaughnessy
Minta J. Nester

*Proposed Attorneys for Albert Togut, Not Individually*
*But Solely in His Capacity as Chapter 7 Interim Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X
|  |  |  |
|---|---|---|
|  | : |  |
| In the Matter | : | Chapter 7 |
|  | : | Case No. 21-10699 (DSJ) |
| -of- | : |  |
|  | : |  |
| KOSSOFF PLLC, | : |  |
|  | : |  |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

------------------------------------------------------------ X

**APPLICATION FOR AN ORDER (A) DESIGNATING**
**MITCHELL H. KOSSOFF AS THE RESPONSIBLE OFFICER**
**OF THE DEBTOR AND (B) COMPELLING HIM TO (1) PRODUCE**
**INFORMATION REQUESTED BY THE CHAPTER 7 TRUSTEE;  (2) APPEAR**
**FOR EXAMINATIONS UNDER OATH AT THE BANKRUTPCY CODE**
**SECTION 341 MEETING OF CREDITORS;  AND (3) OTHERWISE**
**<u>COOPERATE WITH THE CHAPTER 7 TRUSTEE</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

JURISDICTION ......................................................................................................................3

BACKGROUND .....................................................................................................................3

    A.  Commencement of the Debtor's Case ..........................................................3

    B.  The Debtor's Prepetition Business ...............................................................4

    C.  State and Federal Proceedings Against the Debtor and Kossoff, Individually .......5

    D.  The Trustee's Investigation ..........................................................................7

RELIEF REQUESTED.............................................................................................................9

BASIS FOR RELIEF ...............................................................................................................9

    A.  The Relief Requested in this Motion Is Warranted Under the Circumstances........9

    B.  Kossoff May Not Assert a Blanket Fifth Amendment Privilege.............................11

NOTICE................................................................................................................................17

CONCLUSION.......................................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Bear Stearns & Co., Inc. v. Wyler,*
   182 F. Supp. 2d 679 (N.D. Ill. 2002) .................................................................13, 14

*Bellis v. United States,*
   417 U.S. 85 (1974) ................................................................................................15

*Gran Sabana Corporation N.V. v. Mitchell H. Kossoff,*
   Case No. 21 Civ. 03154 (RA) (S.D.N.Y. Apr. 19, 2021).......................................6

*Henry v. Sneiders,*
   490 F.2d 315 (9th Cir. 1974).................................................................................14

*In re Grand Jury Investigation M.H.,*
   648 F.3d 1067 (9th Cir. 2011)...............................................................................16

*In re Grand Jury Proceedings (The John Doe Co., Inc.),*
   838 F.2d 624 (1st Cir. 1988) .................................................................................15

*In re Schick,*
   215 B.R. 4 (Bankr. S.D.N.Y. 1997)............................................................... passim

*In re Two Grand Jury Subpoenae Duces Tecum Dated August 21, 1985,*
   793 F.2d 69 (2d Cir. 1986)....................................................................................16

*Matter of Grand Jury Subpoena Dated Oct. 22, 1991 & Nov. 1, 1991,*
   959 F.2d 1158 (2d Cir. 1992)................................................................................12

*Matter of Vanderbilt (Rosner-Hickey),*
   57 N.Y.2d 66 (1982) .............................................................................................12

**Statutes**

11 U.S.C. § 341 ............................................................................................3, 9, 10

11 U.S.C. § 521 ............................................................................................3, 9, 10

11 U.S.C. § 521(a)(3).............................................................................................10

11 U.S.C. § 521(a)(3)-(4).......................................................................................11

11 U.S.C. § 542(a) .................................................................................................11

11 U.S.C. § 542(e)..................................................................................................11

28 U.S.C. § 157 .......................................................................................................3

28 U.S.C. § 1334 ......................................................................................................3

28 U.S.C. § 1408 ......................................................................................................3

28 U.S.C. § 1409 ......................................................................................................3

28 U.S.C. § 586(f) ...................................................................................................10

**Rules**

Fed. R. Bankr. P. 9001(5) ...............................................................................3, 9, 17

Fed. R. Bankr. P. 9001(5)(A) ...................................................................................9

Fed. R. Bankr. P. 9001(5)(B) ...................................................................................9

N.Y.C.R.R. § 1200.46 .........................................................................................7, 17

S.D.N.Y. LBR 9006-1 .............................................................................................17

U.S. Const. amend. V...................................................................................... passim

TO THE HONORABLE DAVID S. JONES,
UNITED STATES BANKRUPTCY JUDGE:

Albert Togut, not individually but solely in his capacity as the Chapter 7

Interim Trustee (the "Trustee") of the estate of Kossoff PLLC (the "Debtor"), by his

proposed attorneys, Togut, Segal & Segal LLP (the "Togut Firm"), hereby makes this

application (the "Motion") for entry of an order (A) designating Mitchell H. Kossoff

("Kossoff"), the only known managing member of the Debtor, as the responsible officer

of the Debtor and (B) compelling Kossoff to perform all of the Debtor's duties,

including:  (1) complying with the Order for Relief (defined below);  (2) producing the

Requested Information (defined below) to the Trustee;  (3) appearing for an

examination under oath at the meeting of creditors (the "Section 341 Meeting") held

pursuant to section 341 of title 11 of the United States Code (the "Bankruptcy Code")

and at any adjournment thereof;  and (4) cooperating fully with the Trustee.  In support

of the Motion, the Trustee respectfully sets forth that:

## PRELIMINARY STATEMENT

This is a case involving a prominent real estate lawyer who ran his law

firm, the Debtor herein, without giving his partners any real say in its operation.  He

was in charge.  He controlled the bank accounts.  He made the important operational

decisions.  When he summarily left the firm's offices, he left the lawyers who worked

for the Debtor in the dark and without their compensation and, upon information and

belief, used client funds that were supposed to have been kept in escrow.  He has badly

hurt the firm's clients.

Despite that he could have defended the involuntary Chapter 7 petition

that initiated this case, he did not do so.  The involuntary petition went unanswered

and was granted on default.  By automatic operation of the Bankruptcy Code, that meant that there would be a trustee.  Thus, the Trustee was appointed.

To date, neither the Debtor nor Kossoff, the Debtor's managing member and representative, have complied with the Order for Relief, which directed that the Debtor's schedules of assets and liabilities and Statement of Financial Affairs to have been filed by May 25, 2021.

The day after his appointment, the Trustee contacted Kossoff's criminal lawyer, Walter Mack, Esq., and asked for cooperation.  The request was repeated in emails and a subsequent phone call.  The response?  Kossoff will not waive his constitutional right to invoke privilege under the Fifth Amendment (the "Privilege").  Even when it was explained that there were ways that Kossoff could cooperate without waiving the Privilege, the answer stayed the same.

Now that the case is a few weeks old, it is clear to the Trustee that Kossoff is refusing to cooperate to hold the administration of this estate hostage.  The ransom sought is a grant of immunity from prosecution.  The problem with this posture is that it is not supported by case law, which is clear that Kossoff may do many things to be helpful without losing the privilege.  He just does not want to do so.  And in taking this position, Kossoff continues to harm his clients, the Debtor's former staff of attorneys, and the public.  Lawyers are expected to behave better.  There is a public interest in holding lawyers to their responsibilities.

The making of this Motion is unavoidable.  The Trustee needs Kossoff to do the things required to assist in the administration of this estate.  As was stated in paragraph 4 of the Affirmation of Walter Mack, filed in Kossoff's behalf with this Court:

> The only person who has the knowledge, experience, and information concerning these entities is Mr. Kossoff himself.

2

Docket No. 30-1 ¶ 4. This has been confirmed by attorneys who were employed by the Debtor. *See* Exhibit "B" (Letter from R. Minkoff, dated May 28, 2021).

By this Motion, the Trustee is asking this Court to compel Kossoff to do what he is legally obligated to do, which will not be inconsistent with his Privilege. The Trustee is not asking for more at this time.

## JURISDICTION

1. This court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for this Motion are Rule 9001(5) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 341 and 521 of the Bankruptcy Code.

## BACKGROUND[1]

### A.   Commencement of the Debtor's Case

2. On April 13, 2021 (the "Petition Date"), Gran Sabana Corp. N.V., Louis and Jeanmarie Giordano, Decker Associates LLC, 118 Duane LLC, and Thomas G. Sneva (collectively, the "Petitioning Creditors") filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Involuntary Petition") against the Debtor in the above-captioned case (the "Chapter 7 Case").

3. The Petitioning Creditors are clients of the Debtor and together assert claims for "Unreturned IOLA Funds" and "Misappropriated IOLA Funds" totaling approximately $8 million [Docket No. 1].

---

[1]   The Trustee is still in the early stages of his investigation and therefore, aside from the facts obtained from the Debtor's Petition and publicly filed pleadings in the Prepetition Actions (defined below), the facts described herein are set forth upon information and belief based upon documents the Trustee and his professionals have reviewed, and may be supplemented or modified based upon facts that are discovered in the Trustee's ongoing investigation.

4.      The Debtor did not appear in response to the Involuntary Petition, and on May 11, 2021, this Court entered the *Order for Relief and Order to File Schedules and Other Documents* [Docket No. 14] (the "Order for Relief").

5.      The Order for Relief directs the Debtor to file "all schedules, statements, lists and other documents that are required under the Federal and Local Rules of Bankruptcy Procedure" (the "Schedules") no later than May 25, 2021 [Docket No. 14].

6.      On May 12, 2021, Mr. Togut was appointed as the Chapter 7 Interim Trustee of the Debtor, accepted his appointment, and duly qualified.

7.      The Debtor has not yet filed any of the Schedules and has otherwise not cooperated with the Trustee.

8.      The Trustee understands that transfers made, and/or obligations incurred, by the Debtor prior to the Petition Date may be avoidable and/or recoverable, and he is trying to investigate affirmative claims and defenses that may be asserted on behalf of the Debtor's estate. *See* Docket No. 26, Ex. 4 ¶ 9.

**B.      The Debtor's Prepetition Business**

9.      Prior to the Petition Date, the Debtor operated as a law firm located at 217 Broadway in New York City, New York (the "Premises") and serviced clients in the real estate industry. *Id.* ¶ 10. The Debtor held itself out as providing full-service real estate legal services specializing in both litigation and transactional matters related to areas of real property law, including leasing, sale and acquisition of real property interests, commercial landlord tenant matters, real estate litigation, and city, state and federal agency regulatory matters. *Id.*

10.     The Debtor's founder and only known managing member is Kossoff. *Id.* ¶ 11. Since on or about April 1, 2021, and as of the date of the Order for

4

Relief, Kossoff's whereabouts have been unknown although upon information and belief, he has not left the United States.  *See id.*

11.    The Trustee recently caused the Premises to be inspected, and financial books and records of the Debtor could not be located there and computers could not be found with information concerning the Debtor's financial affairs.  *Id.* ¶ 12. Upon information and belief, some of these records may be in the custody of law enforcement authorities that are investigating Kossoff, but the Trustee has not been given access to any of these records.

12.    The Trustee has been advised that the Debtor's books and records, as well as the Debtor's computers, may also be managed by an entity (or entities) that, though separate from the Debtor, may be controlled by the Debtor's principal, Kossoff. *Id.* ¶ 13.  To date, the Trustee has not been given access to those books and records.  *Id.* Moreover, recently, the Debtor's landlord has advised that Kossoff has requested that he (or someone acting on his behalf) be permitted to remove books and records from the fifth floor offices at the Premises.  *See id.*[2]

C.    **State and Federal Proceedings Against
       the Debtor and Kossoff, Individually**

13.    The Debtor and Kossoff have been named as defendants in numerous state and federal court lawsuits that were commenced prior to the Petition Date (collectively, the "Prepetition Actions").  *Id.* ¶ 14.  The Prepetition Actions allege causes of action such as legal malpractice, professional negligence, breach of fiduciary

---

[2]    Tenantracers, LLC ("Tenantracers"), a New York limited liability company, is party to agreements, executed by Kossoff on behalf of Tenantracers, pursuant to which Tenantracers occupies offices located on the fifth floor of the Premises.  *Id.* ¶ 13 n.2.

duty, breach of contract, conversion, and unjust enrichment.  *Id.*  Certain plaintiffs seek to recover their files from the Premises (the "Client Files").  *Id.*

14.     The Prepetition Actions also arise from the Debtor's alleged failure and/or refusal to return client funds that were supposed to have been held in escrow or in one or more of the Debtor's various bank accounts.  *Id.* ¶ 15.  Kossoff ceased communications with the Debtor's clients on or about the time Kossoff's whereabouts became generally unknown.  *Id.*

15.     Kossoff is alleged to have improperly comingled client funds, engaged in unauthorized transactions with client funds, and/or otherwise misappropriated approximately $17 million that was to have been held for the benefit of the Debtor's clients.  *Id.* ¶ 16.

16.     In connection with the Prepetition Actions, certain of the Debtor's bank accounts have been frozen by an order of the New York Supreme Court, New York County, dated April 13, 2021.  *Id.* ¶ 17.  Kossoff's personal bank accounts and assets are subject to a restraint ordered by the United States District Court for the Southern District of New York.  *See* Order for Preliminary Injunction and Expedited Discovery, *Gran Sabana Corporation N.V. v. Mitchell H. Kossoff,* Case No. 21 Civ. 03154 (RA) (S.D.N.Y. Apr. 19, 2021) [Docket No. 14].

17.     Law enforcement agencies have opened investigations into potential criminal activity concerning the Debtor, and upon information and belief, they are in possession of computers, books and records of the Debtor and/or that contain information concerning the Debtor's business and financial affairs.  To date, those agencies have not provided copies of, or access to, those materials to the Trustee.  *See* Docket No. 26, Ex. 4 ¶ 18.

D.     **The Trustee's Investigation**

18.     The Trustee has sought Kossoff's assistance in collecting the

information necessary for the Trustee to conduct his investigation.  Among other things,

the Trustee requested various categories of documents and information from Kossoff's

representatives (the "Requested Information"), including:

  a.  List of the Debtor's bank accounts with account numbers;

  b.  Bank records;

  c.  Cash receipts journals;

  d.  Cash disbursements journals;

  e.  Credit card records;

  f.  Client lists;

  g.  List of accounts receivable and amounts;

  h.  Records required pursuant to N.Y. Code of Professional
      Responsibility D.R. 9-102, 22 N.Y.C.R.R. § 1200.46,
      including records of all deposits and withdrawals from
      accounts specified in subsection (b);

  i.  Inventories of seized records provided by law
      enforcement;

  j.  All of these documents and information are required by
      the Order for Relief and Bankruptcy Rule 1007;  and

  k.  Other documents as requested by the Trustee.

19.     To date, Kossoff has not cooperated with the Trustee, and the

Trustee has not received any of the Requested Information from Kossoff or any

representative of Kossoff or the Debtor.

20.     Kossoff has told this Court and the Trustee that he is unwilling to

identify or produce documents to the Trustee and that he will assert a privilege against

self-incrimination under the Fifth Amendment unless this Court grants him broad

immunity.  Indeed, in response to the Trustee's requests, Kossoff has asserted a blanket Privilege.  *See, e.g.,* Docket No. 30.

21.     On May 24, 2021, the Trustee filed the *Chapter 7 Interim Trustee's Ex Parte Application for an Order (I) Directing the Preservation of Documents and Recorded Information and (II) Authorizing the Issuance of Subpoenas for the Production* [Docket No. 26] (the "Rule 2004 Motion").

22.     That same day, the Court entered the *Order Authorizing Trustee to Issue Subpoenas and Obtain Testimony and for Injunctive Relief* [Docket No. 27] (the "Initial Rule 2004 Order").

23.     On May 26, 2021, criminal counsel for the Debtor, Kossoff, and Kossoff's affiliated entity Tenantracers, LLC filed an opposition to the Rule 2004 Motion, asserting that "Mr. Kossoff intends to invoke his Fifth Amendment privilege against self-incrimination and will refuse to answer questions that may tend to incriminate him."  *See* Docket No. 30 p. 2.  He also asserted that "Mr. Kossoff alone would be the only person to properly identify, collect, describe and submit documents to the Bankruptcy Court or its Trustee.  *Id.* p. 3.

24.     Pursuant to the Initial Rule 2004 Order, this Court conducted a preliminary injunction hearing on May 27, 2021.

25.     Kossoff has made clear that he will continue to assert a blanket Privilege as a means to refuse to perform the Debtor's duties and to otherwise withhold books, records and cooperation that the Trustee needs to administer the Debtor's estate. Consequently, an order is needed to designate and compel him to perform those duties and otherwise cooperate with the Trustee, which can be done in ways that do not impair his Privilege.

## RELIEF REQUESTED

26.     The Trustee seeks entry of an Order:  (A) designating Kossoff as the responsible officer of the Debtor in accordance with Bankruptcy Rule 9001(5)(A) and (B) compelling Kossoff to perform all of the Debtor's duties, including:  (1) complying with the Order for Relief;  (2) producing the Requested Information;  (3) appearing for examination under oath on behalf of the Debtor at the Section 341 Meeting in this case; and (4) cooperating fully with the Trustee in accordance with section 521 of the Bankruptcy Code.[3]

## BASIS FOR RELIEF

**A.     The Relief Requested in this Motion
Is Warranted Under the Circumstances**

27.     Because the Debtor is a professional limited liability company, it is necessary to designate a responsible officer of the Debtor.  Bankruptcy Rule 9001(5) provides, in pertinent part:

> When any act is required by these rules to be performed by a debtor or when it is necessary to compel attendance of a debtor for examination and the debtor is not a natural person:  (A) if the debtor is a corporation, 'debtor' includes, if designated by the court, any or all of its officers, members of its board of directors, or trustees or a similar controlling body, a controlling stockholder or member, or any other person in control . . . .

Fed. R. Bankr. P. 9001(5) .

28.     As the only known managing member of the Debtor, Kossoff may be designated as the person responsible for performing the Debtor's duties in this case.

---

[3]    The Trustee reserves all rights to seek documents and information from other parties, pursuant to Bankruptcy Rule 2004, the designation of one or more additional individuals as responsible officers, or otherwise.

Further, Kossoff has represented to the Court that he is member and representative of the Debtor with the most knowledge of the Debtor, its records and its affairs. *See* Docket No. 30. Therefore, the Trustee respectfully requests entry of an order designating Kossoff as the person responsible for performing all of the Debtor's duties in this case.

29.      In addition, it is necessary that all the documents and information requested by the Trustee be timely received so that the Trustee can review them and be informed as he investigates the Debtor's affairs and administers this estate. Consequently, the Trustee respectfully requests that the Court direct Kossoff to cooperate with the Trustee by, among other things, complying with the Order for Relief and producing to the Trustee the Requested Information and any other documents requested by the Trustee concerning the Debtor's affairs, and to appear for examination under oath on behalf of the Debtor as required by section 341 of the Bankruptcy Code. These forms of relief are consistent with section 521(a)(3) of the Bankruptcy Code, which provides that the debtor shall:

> (3) if a trustee is serving in the case or an auditor is serving under section 586(f) of title 28, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title.

11 U.S.C. § 521(a)(3).

30.      These duties should not come as a surprise to Kossoff: he chose to not oppose the Involuntary Petition and entry of the Order for Relief, which would trigger the automatic appointment of a Chapter 7 trustee who would investigate the Debtor's affairs.

10

31.     Accordingly, Kossoff should be designated as the responsible officer for the Debtor and compelled to comply with his turnover and cooperation obligations pursuant to the Bankruptcy Code.

**B.      Kossoff May Not Assert a Blanket Fifth Amendment Privilege**

32.     The Bankruptcy Code imposes self-executing obligations upon a debtor.  The debtor must cooperate with any trustee appointed in the case and must surrender all property of the estate and recorded information.  *See* 11 U.S.C. § 521(a)(3)-(4) .  "Other provisions of the Bankruptcy Code impose analogous obligations on a much broader class."  *In re Schick,* 215 B.R. 4, 8 (Bankr. S.D.N.Y. 1997).  With certain exceptions, any entity in possession, custody, or control of property that the trustee can use, sell, or lease must turn that property over to the trustee.  *See* 11 U.S.C. § 542(a).  Further, and subject to any applicable privilege, any person that holds recorded information relating to the debtor's property or financial affairs may be compelled, pursuant to separate court order, to turn over or disclose that recorded information to the trustee.  *See* 11 U.S.C. § 542(e) .

33.     However, as set forth above, Kossoff has invoked the Privilege and refuses to comply with all of the Trustee's requests for the Requested Information.  Kossoff's blanket assertion of the Privilege regarding the Requested Information is improper.  As courts in this and other jurisdictions have made clear, the Fifth Amendment does not provide Kossoff license to make a blanket refusal to produce documents.  *See, e.g., Schick,* 215 B.R. at 11-12.  Kossoff is not entitled to decide for himself whether he is protected by the Fifth Amendment.  *See id.* at 9.  Rather, the Court must conduct a particularized inquiry to determine whether a risk of self-incrimination exists.  *See id*.  In addition, because the Trustee's requests are not facially self-

incriminatory, Kossoff would bear the burden of demonstrating his risk of incrimination from the mere act of producing documents. *See, e.g., id.*

34.     The Trustee respectfully submits that the manner of Kossoff's invocation of the Fifth Amendment represents an improper attempt to impede the Trustee's investigation.  For the reasons set forth below, the act of producing the Requested Information is not testimonial;  nor are the documents facially incriminating. Indeed, documents covered by the "collective entity" and "required records" doctrines, which include most (if not all) of the Requested Information, are not protected by the Fifth Amendment at all.

### 1.     None of the Requested Information Triggers Fifth Amendment Protection Under the "Act of Production" Doctrine

35.     The "act of production" doctrine creates a narrow prohibition against the compelled production of personal records in limited circumstances. Importantly, "the Fifth Amendment does not independently proscribe production of every sort of incriminating evidence but applies only when the accused is compelled to make testimonial communication that is incriminating." *Matter of Grand Jury Subpoena Dated Oct. 22, 1991 & Nov. 1, 1991,* 959 F.2d 1158, 1165 (2d Cir. 1992) (internal citation omitted).  "[A] document is protected if the act of production … results in compelled testimonial self-incrimination." *Matter of Vanderbilt (Rosner-Hickey),* 57 N.Y.2d 66, 78 (1982).  "All three elements must be present for the Fifth Amendment's protection to be implicated." *Id.*

36.     The invocation of the "act of production" privilege requires that the production of the documents itself must be testimonial. *See, e.g., Schick,* 215 B.R. at 9. "As a rule, the surrender of property of the estate is not testimonial, and hence, does not implicate Fifth Amendment concerns." *Id.* at 10.  Further, if the existence and location

of documents to be produced is a "foregone conclusion" – i.e., the requesting party can demonstrate that it knew before making the request that the documents existed and that the producing party possessed them, the act of producing the documents is considered to be a foregone conclusion and, accordingly, not sufficiently testimonial to be protected by the Fifth Amendment. *See Matter of Application to Quash a Grand Jury Subpoena Duces Tecum, Dated December 28, 1992,* 157 Misc. 2d 432, 439 (Sup. Ct. N.Y. City Mar. 5, 1993). Here, virtually all of the Requested Information would come from documents that are required records, bank statements, or documents that Kossoff has admitted are in his possession (*e.g.,* the inventory provided by law enforcement). *See* Docket No. 30.

37.     Even if the act of producing the Requested Information was testimonial (which it is not), it is not incriminating. To be incriminating, the act of production must provide a link in the chain of incrimination. *See, e.g., Schick,* 215 B.R. at 9. An individual may not claim Fifth Amendment protection based upon the incrimination that may result from the contents or nature of the thing demanded. *See Bear Stearns & Co., Inc. v. Wyler*, 182 F. Supp. 2d 679, 681 (N.D. Ill. 2002). The critical question under the "act of production" doctrine is not whether the documents requested are incriminating, but rather whether the producing party's admission of his control over those documents and their authenticity would be incriminating. *Schick,* 215 B.R. at 9.

38.     Kossoff has already conceded his control over the Requested Information in his opposition to the Rule 2004 Motion. *See* Docket No. 30 p. 3 (noting that "Mr. Kossoff alone would be the only person to properly identify, collect, describe and submit documents to the Bankruptcy Court or its Trustee").[4] More, courts in this

---

[4]     The Trustee cites this statement solely for the purposes of asserting that Kossoff can no longer suggest that the production would incriminate him by indicating a level of control. At this time, the

jurisdiction and elsewhere have repeatedly declined to apply the "act of production" doctrine to permit documents like those sought by the Trustee to be withheld.  For example, in *Bear Stearns,* 182 F. Supp. 2d at 684 , the court rejected the assertion that the act of producing the requested documents, which consisted of bank, wire transfer and telephone records, was incriminating.  As the court explained, "it is not a crime to make a wire transfer, use the phone or possess corporate records." *Id.*  In so finding, the court distinguished the potentially incriminating content of the documents from the subject of the incrimination inquiry – i.e., whether the testimonial aspects of the production of those documents was itself incriminating. *Id.; see also Schick,* 215 B.R. at 10 ("[E]ven if the surrender of the Computer tacitly conceded its existence, location and authenticity . . . . Schick has failed to demonstrate that this testimony would be incriminating.  It is not a crime to possess a laptop computer . . . . The existence [and possession] of the Computer . . . are irrelevant to the charges of bank and wire fraud.").

39.    Moreover, courts have recognized that the production of documents that are already in the hands of the government agents conducting the investigation cannot be incriminating.  *See Henry v. Sneiders,* 490 F.2d 315, 317 (9th Cir. 1974).  Therefore, the production of any document or copy thereof[5] already seized by law enforcement – and certainly the inventory created by law enforcement – cannot be considered incriminating.

40.    Consequently, it is difficult to understand how the act of producing the Requested Information, much of which would be found in the Debtor's business

---

Trustee makes no statement as to the accuracy of Kossoff's representation and, as set forth above, reserves the right to designate one or more additional responsible officers.

[5]    Kossoff has to date failed to identify sources of copies of the Requested Information in, for example, cloud-based back-ups.

records, could amount to compelled testimony of an incriminating nature. Even if the content of these documents was incriminating, they are still not protected by the Fifth Amendment, because it is not inherently criminal to possess business records, law firm records and related correspondence. *See Schick,* 215 B.R. at 10.

> **2.**    ***Under the "Collective Entity" Doctrine, PLLC Records and Documents Are Not Protected by the Fifth Amendment***

41.    Virtually all of the Requested Information relates to the PLLC's records that are simply not protected at all by the Fifth Amendment under the "collective entity" doctrine.

42.    The Fifth Amendment privilege "can only be asserted by a natural person and never on behalf of an organization." *In re Grand Jury Proceedings (The John Doe Co., Inc.),* 838 F.2d 624, 625 (1st Cir. 1988). "Furthermore, an individual cannot avoid producing records of a collective entity, held by him in a representative capacity, even if those records would tend to incriminate him." *Id.*

43.    Even if the PLLC is no longer in good standing in light of recent events, the winding up or dissolution of an enterprise does not give a custodian of enterprise records any greater claim to Fifth Amendment privilege over such documents. *See, e.g., Bellis v. United States,* 417 U.S. 85, 96 n.3 (1974) (finding that former managing partner of dissolved law firm could not assert privilege over partnership records still in his possession during grand jury proceeding).

44.    Therefore, the Fifth Amendment does not apply to Debtor documents that Kossoff may have in his possession, custody, or control by virtue of his being the managing member or former managing member of the Debtor.

**3.      Under the "Required Records" Doctrine, Kossoff's Attorney and Firm Records and Other Regulatory Documents, Including Formational Documents, Are Not Protected by the Fifth Amendment**

45.      The Fifth Amendment does not apply to any documents, such as organizational/formational documents or tax returns, that Kossoff or the Debtor would have been required to maintain by law. *See In re Grand Jury Investigation M.H.,* 648 F.3d 1067, 1072 (9th Cir. 2011). Rather, the "required records" exception to the Fifth Amendment privilege applies where: (1) the records must be legally required for a regulatory purpose; (2) the records must be of a kind that a person would customarily keep; and (3) the records have public aspects. *See id.* at 1072-73. These elements are applied flexibly. *See id.* As this court has previously recognized, the "required records" doctrine "requires production *even if the compelled production is testimonial and incriminating*." *Schick,* 215 B.R. at 11 (emphasis added).

46.      Courts in this jurisdiction have applied the "required records" doctrine to require the production of various types of records over Fifth Amendment assertions, including tax returns. In addition, New York's professional conduct rules have been used as the basis for the "required records" doctrine. *See, e.g., In re Two Grand Jury Subpoenae Duces Tecum Dated August 21, 1985,* 793 F.2d 69, 73 (2d Cir. 1986) (noting that retainer agreements and closing statements required by the appellate division rules fall within the "required records" exception).

47.      In *Schick,* the court signaled that bank account records required by professional conduct rules would be subject to disclosure pursuant to the "required records" doctrine. There, as here, the trustee sought information from an attorney who often received money from and on behalf of third-parties, which he deposited into his firm or individual accounts. *See Schick,* 215 B.R. at 11. Many of the disputes involved

16

ownership of the funds passing through Schick's accounts or the property purchased with those funds. *See id.* Nevertheless, the court indicated that such documents might constitute "required records," because applicable professional rules, including N.Y. Code of Professional Responsibility D.R. 9-102, 22 N.Y.C.R.R. § 1200.46, impose comprehensive recordkeeping requirements on attorneys who receive and hold property belonging to a third-party. *See id.* This statutory provision requires attorneys to maintain specific records of bank accounts and transactions into and out of such accounts. This is precisely the type of information that the Trustee has requested from Kossoff. Accordingly, such information cannot be shielded from production by invocation of the Privilege.

48. For these reasons, the Trustee respectfully submits that the Fifth Amendment does not attach to such required records.

### NOTICE

49. Bankruptcy Rule 9001(5) does not specify the amount or type of notice for an application to designate responsible officers. Local Bankruptcy Rule 9006-1 requires that motions be served at least fourteen days before the return date.

50. Notice of this Motion and the annexed proposed order has been served upon: (1) Kossoff; (2) the Debtor, by service upon his criminal counsel; (3) the United States Trustee; and (4) all parties that have filed a Notice of Appearance in this case.

51. No previous application for the relief sought herein has been made to this or any other court.

### CONCLUSION

The Trustee's efforts to investigate the Debtor's affairs, administer this estate, and respond to claims and demands of creditors and other stakeholders cannot

17

be impeded by an improper assertion of a blanket Privilege by Kossoff, and Kossoff

should be compelled to perform the Debtor's duties and otherwise cooperate with the

Trustee.

   **WHEREFORE,** the Trustee respectfully requests entry of an order

substantially in the form annexed hereto as Exhibit "A," (A) designating Kossoff as the

responsible officer of the Debtor;  (B) compelling Kossoff to perform all of the Debtor's

duties, including:  (1) complying with the Order for Relief,  (2) producing the Requested

Information to the Trustee, (3) appearing for an examination under oath at the Section

341 Meeting and at any adjournment thereof, and (4) cooperating fully with the Trustee;

and (C) granting such other relief as may be appropriate.


DATED:  New York, New York
    May 28, 2021

         Respectfully submitted,

         ALBERT TOGUT,
         Not individually but solely in his capacity as
         Chapter 7 Interim Trustee of
         Kossoff PLLC
         By His Proposed Counsel,
         TOGUT, SEGAL & SEGAL LLP
         By:

         */s/ Neil Berger*
         NEIL BERGER
         MINTA J. NESTER
         BRIAN S. SHAUGHNESSY
         One Penn Plaza, Suite 3335
         New York, New York 10119
         (212) 594-5000