UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | | |
|---|---|---|
| In the Matter | : | Chapter 7 |
| | | Case No. 21-10699 (DSJ) |
| -of- | : | |
| | | |
| KOSSOFF, PLLC, | : | AFFIRMATION OF |
| | | WALTER MACK, ESQ. |
| Debtor. | : | IN SUPPORT OF DEBTOR'S |
| | | SUPPLEMENTAL SUBMISSION |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WALTER MACK, an attorney duly licensed to practice law before the courts of the State

of New York, under the penalties of perjury affirms as follows:

1.      I represent Mitchell Kossoff and Kossoff, PLLC and submit this Affirmation in

Support of the Debtor's Supplemental Submission, which annexes true and correct copies of the

following documents.

2.      Attached hereto as Exhibit 1 is the Search Warrant issued by the Criminal Court

of the City of New York, County of New York, executed by the Hon. Josh E. Hanshaft on April

15, 2020.

3.      Attached hereto as Exhibit 2 is Search Warrant Receipt/Inventory listing

documents obtained by the New York County District Attorney's Office.

4.      Attached hereto as Exhibit 3 are the Articles of Organization and Operating

Agreement of Kossoff, PLLC, dated December 6, 2013.

5.      Attached hereto as Exhibit 4 is Mitchell Kossoff's business card.

Dated: New York, New York
     July 9, 2021

                               Respectfully submitted

                               Walter Mack, Esq.
                               Doar Rieck Kaley & Mack
                               217 Broadway, Suite 707
                               New York, New York 10007
                               (212) 619-3730 (telephone)
                               (212) 962-5037 (facsimile)
                               *Attorney for Mitchell Kossoff--*
                               *Kossoff, PLLC*

# EXHIBIT 1

*No257 - 2021*

Search Warrant                                                    Investigation No. 2021-414484

## SEARCH WARRANT

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK
TO ANY INVESTIGATOR IN THE NEW YORK COUNTY DISTRICT ATTORNEY'S
OFFICE

Proof by affidavit having been made this day before me by Investigator Brian Conway, Shield No. 192, of the Investigation Bureau of the New York County District Attorney's Office ("DANY"), that there is probable cause to believe that certain property may be found in the following locations within offices used or formerly used by Kossoff PLLC at the address 217 Broadway, New York, NY 10007:

1)  The following locations within a suite of offices, numbered Suite 401, located on the fourth floor of 217 Broadway:

    a.  An office used by Mitchell Kossoff, to wit, a corner office on the Broadway side of the building, with windows facing Broadway (photographs of this location, which will aid in identifying it within the suite of office, are attached hereto as **Exhibit A**);

    b.  A filing cabinet located in an office used by Stacie Feldman, to wit, an office on the Broadway side of the building, with three black filing cabinets lined on a wall inside, with the target filing cabinet being the farthest from the entrance to Feldman's office (photographs of this location, which will further aid in identifying it within the fourth-floor suite of offices, are attached hereto as **Exhibit B**); and

    c.  A corridor off a kitchenette where computer servers are located, to wit, a corridor off a kitchenette-area within the suite of offices, with filing cabinets lining the corridor, and computer servers sitting on top of the cabinets (photographs of this location, which will further aid in identifying it within the fourth-floor suite of offices, are attached hereto as **Exhibit C**); and

2)  An office located on the fifth floor of 217 Broadway, which is or was used by Julia McNally, a current or former employee of Kossoff PLLC, which can be located by following the following directions:

    a.  Begin at the elevator bank on the fifth floor of 217 Broadway;

    b.  On one side of the elevator bank will be a door, and on the other side will be a hallway; walk down that hallway;

    c.  From that hallway, turn right down a long hallway, at the end of which will be a door to a suite of offices;

    d.  Enter the door into the suite of offices and make a "u-turn" to the left;

Search Warrant                                          Investigation No. 2021-414484

     c.  Walk to an area with four desks and two offices located to the right-hand side of the desks; Julia McNally's office will be the furthest of the two offices

(collectively, "the Target Premises"); and that there is probable cause to believe that said property has been used or was possessed for the purpose of being used to commit or conceal the commission of the crime of Grand Larceny (Penal Law § 155.30 et seq.) and constitutes evidence, tends to demonstrate that said crime was committed, and that a particular person participated in the commission of said crime;

    YOU ARE THEREFORE COMMANDED, between 6:00 a.m. and 9:00 p.m., to enter and to search the Target Premises for the property described below, and if you find such property or any part thereof to bring it before the Court without unnecessary delay:

    a.  With respect to the locations of the offices used by Mitchell Kossoff (see supra, ¶ 1.a) and Julia McNally (see supra, ¶ 2):

      i)  All documents, financial records, and other records and information relating to any and all of the following names and/or entities:

        (1)  Aloysius T. Lawn IV, Esq.

        (2)  Robert Yaffa

        (3)  Irwin Ostrega

        (4)  Giorgio Angellini

        (5)  SSM Realty Group II LLC

        (6)  537 Realty Associates LLC

        (7)  333 East 46th Apt 2K LLC

      ii)  All documents, financial records, and other records and information relating to any and all bank accounts and other financial accounts held by, titled to, or otherwise possessed or controlled by Kossoff PLLC and/or Mitchell Kossoff, including, but not limited to, any and all escrow accounts held with JPMorgan Chase Bank, Valley National Bank, and Signature Bank, and any communications with banks, limited to the time period of May 27, 2020 to the present;

      iii)  All documents, financial records, and other records, letters, communications, and information relating to any and all funds sent to, held by, disbursed by, or otherwise possessed or controlled by Kossoff PLLC and/or Mitchell Kossoff in connection with any and all clients of Kossoff PLLC and/or Mitchell Kossoff, including, but not limited to, any and all client funds held in escrow by Kossoff PLLC and/or Mitchell Kossoff, limited to the time period of May 27, 2020 to the present;

Search Warrant                                                    Investigation No. 2021-414484

    iv) All books and records, including, but not limited to, general ledgers and other financial records and information, relating to Kossoff PLLC, including, but not limited to, paper records and records for accounting systems in digital format (such as, but not limited to, Quickbooks and Quicken), limited to the time period of May 27, 2020 to the present;

    v) Any and all computers as defined in Penal Law § 156.00(1)[1] or electronic storage devices capable of storing any of the above-described property as well as their components and accessories, including, but not limited to, cords, monitors, keyboards, software, programs, disks, zip drives, flash drives, thumb drives, and/or hard drives, but excluding any and all cellular telephones and similar personal electronic devices; and

    vi) Any and all books, manuals, guides or other documents containing information about the operation and ownership of a computer or other electronic storage device present in the target location, including, but not limited to, computer and software user manuals.

b. With respect to the location of the corridor off the kitchenette where computer servers are located (see supra, ¶ 1.c):

    i) Any and all computer servers, including, but not limited to, computer servers on top of filing cabinets lining a corridor off a kitchenette in the fourth-floor suite of offices of Kossoff PLLC, as well as their components and accessories, including, but not limited to, cords, monitors, keyboards, software, programs, disks, zip drives, flash drives, thumb drives, and/or hard drives, but excluding any and all cellular telephones and similar personal electronic devices; and

    ii) Any and all books, manuals, guides or other documents containing information about the operation and ownership of a computer or other electronic storage device present in the target location, including, but not limited to, computer and software user manuals.

c. With respect to the location of a filing cabinet in an office used by Stacie Feldman (see supra, ¶ 1.b):

    i) A box containing index cards documenting escrow and/or other funds received for any and all clients of Kossoff PLLC and its attorneys, as well as disbursements of escrow funds, located in the bottom drawer of a filing cabinet in Stacie Feldman's office.

---

[1] Penal Law § 156.00(1) states: "Computer" means a device or group of devices which, by manipulation of electronic, magnetic, optical or electrochemical impulses, pursuant to a computer program, can automatically perform arithmetic, logical, storage or retrieval operations with or on computer data, and includes any connected or directly related device, equipment or facility which enables such computer to store, retrieve or communicate to or from a person, another computer or another device the results of computer operations, computer programs or computer data.

Search Warrant                                   Investigation No. 2021-414484

This Court authorizes law enforcement personnel to search for the above-described evidence in any location within the Target Premises (specified above) where such evidence may be found, including, but not limited to, any and all secured or unsecured cabinets, drawers, boxes, safes, closed containers, and storage compartments inside the Target Premises capable of holding any of the above-described evidence;

FURTHER, with respect to the seizure and search of computers, electronic storage devices, and other electronic devices and/or equipment capable of storing the above-described property, in addition to searching for the items described above, this Court authorizes the search of these devices for said property and for:

a.  Any and all data, information, or images evidencing internet usage history for the time period from May 27, 2020 to the present;

b.  Any and all non-privileged electronic communications relating to the receipt, disbursement, movement, and other use of escrow funds, including, but not limited to, any authorized or unauthorized disbursements of escrow funds done for legitimate or illegitimate reasons, for the time period of May 27, 2020 to the present;

c.  Any and all data, information, or images which evidence ownership and use of the device, including, but not limited to, calendar entries, email account addresses, stored telephone numbers and names, nicknames, and/or labels assigned to said numbers, photographs, videos, bank account documents, bills and invoices, recorded voice memos, text messages, instant messenger messages and letters and voice mails stored on any seized device;

d.  Any and all data, information, or images evidencing passwords which may be used to unlock or decrypt data, information or images stored on the device, which may or may not be stored in a locked or encrypted fashion, whether said passwords are letters, numbers, characters, words, or data strings (sequence of characters);

e.  Any and all data, information, or images evidencing or revealing the unauthorized use of the device by a person other than an owner or authorized user, through the use of viruses, Trojan horses or other malicious software or infiltration methods;

FURTHER, this Court authorizes law enforcement personnel to videotape, photograph, and measure and draw schematics of the interior of the Target Premises; to analyze, test, and in any way scientifically process the Target Premises and all items seized; and to permit the entry and assistance of individuals who, by their experience and training, are qualified to assist in the execution of this warrant as designated by police or other law enforcement officials, for the purpose of examination, processing and/or removal of any forensic evidence as described above.

FURTHER, with respect to the stored electronic communications, data, information, and images contained in computers, electronic storage devices, and other electronic devices described above and/or their components and accessories, this Court authorizes and orders the following:

a.  This Court grants permission to search and retrieve the above-described stored electronic communications, data, information, and images by accessing, downloading,

Search Warrant                                        Investigation No. 2021-414484

extracting, printing, copying, and otherwise reproducing said communications, data, information, and images, including by converting them or copying them into storage in another form or device. The Court grants the executing officer, or any qualified individual assisting the executing officer, the authority to conduct the accessing, downloading, extracting, printing, copying, reproduction, conversion and or copying of such stored electronic communications, data, information, and images at a forensic laboratory or other controlled environment where such actions can be undertaken by a person qualified to forensically examine such stored electronic data, information, images, and the Court authorizes analysis of such copied or converted communications, data, information, and images at any time thereafter;

b. For purposes of CPL 690.30(1), the Court orders that this warrant be deemed executed at the time law enforcement enters the Target Premises, and that with respect to the seizure of any computers, electronic storage devices, and other electronic devices, or with respect to any stored electronic communications, data, information, and images recovered from such computers, electronic storage devices, and other electronic devices, the search of said computers, electronic storage devices, other electronic devices, stored electronic communications, data, information, and images may continue thereafter for whatever reasonable time is necessary to complete a thorough analysis of the computers, electronic storage devices, other electronic devices, stored electronic communications, data, information, and images pursuant to this warrant; and

c. The Court authorizes a search of all communications, data, information, and images, irrespective of how the communications, data, information, and images are filed, labeled, designated, encrypted, hidden, disguised or otherwise stored.

FURTHER, this Court authorizes DANY, including members of the High Technology Analysis unit, and forensic computer analysts assigned to DANY's Cybercrime and Identity Theft Bureau, and/or other DANY personnel, who, by their training and experience in computer forensic analysis, are qualified to assist in the execution of this warrant, and/or the New York City Police Department's Computer Crimes Squad, to assist, as deemed necessary by law enforcement officials, in accessing, downloading, extracting, retrieving, printing, copying, and otherwise seizing computerized and electronic data from any computers, electronic storage devices, and other electronic devices as described above;

FURTHER, this Court authorizes that, with respect to any computers, electronic storage devices, and other electronic devices as described above, for purposes of the requirement that a search warrant be executed within ten days as mandated by CPL 690.30(1), this warrant authorizes the seizure and removal of any and all devices described above, and the warrant will be deemed executed at the time that said devices are seized and removed from the Target Premises for off-site examination in a laboratory or other controlled environment by a person qualified to forensically examine such equipment, and that the search of said devices may continue thereafter for whatever reasonable time is necessary to complete a thorough search pursuant to the warrant; and

IT IS FURTHER ORDERED that the affidavit and any transcript of any accompanying sworn testimony in support of the application for this warrant is sealed, except that a copy of any such sworn testimony may be obtained by an assistant district attorney in the New York County

Search Warrant                                        Investigation No. 2021-414484

District Attorney's Office and the affidavit and/or any such sworn testimony may be disclosed by an
assistant district attorney in the New York County District Attorney's Office in the course of the
lawful discharge of his or her duties pursuant to a criminal investigation and/or prosecution, or
upon written order of the Court.

   This warrant must be executed within 10 days of the date of issuance.

                                    _____
                                    Judge of the Criminal Court
                                    HON. JOSH E. HANSHAFT

Dated:  New York, New York

          APR 15 2020

Search Warrant                                    Investigation No. 2021-414484

District Attorney's Office and the affidavit and/or any such sworn testimony may be disclosed by an assistant district attorney in the New York County District Attorney's Office in the course of the lawful discharge of his or her duties pursuant to a criminal investigation and/or prosecution, or upon written order of the Court.

    This warrant must be executed within 10 days of the date of issuance.

_____
Judge of the Criminal Court
HON. JOSH E. HANSHAFT

Dated: New York, New York

APR 15 2021

# EXHIBIT 2

VG #05-121686-K   W-378802

PC Form 160 (3/91)

# SEARCH WARRANT RECEIPT/INVENTORY

Position/Box: _____ / ____

Subject Name: _Julia McNally_

Subject Address: _217 Broadway New York, NY_

Seizing Detective/Investigator: _Zubkoff_

Date: _April 15, 2021_

Floor/Room No.: _511_

Case No. _21-17193_

Safe: _____   Cabinet: _____   Credenza: _____

Desk: ✓
_2 Boxes._

Drawer: _____

Other: _____   Shelf: _____   Table: _____   Wall: _____

COURT: _Criminal Court_

Judge: _Josh Hanshaft_

| QUANTITY | DESCRIPTION OF ITEMS |
|---|---|
| 1 | Financial Records, Bank receipts, Bank Statements, Bank Payments (checks), Documents |
| 1 | One (1) Brown Box Containing Valley National Bank Checks, Act # 0512000212001383 0000 41700201. |

MOR

Recorder: Detective/Investigator _____ Sgt M Holder

Page 1 of 8 pages

VG #05-121688-K    W-378802

PC Form 160 (3/91)

## SEARCH WARRANT RECEIPT/INVENTORY

Position/Box: _____ / ____

Subject Name: _Julia McNally_

Subject Address: _217 Broadway, New York, NY._

Seizing Detective/Investigator: _Zubkoff_

Date: _April 15, 2021_

Floor/Room No.: _511_

Case No. _21-17193_

Safe: _____    Cabinet: _✓_    Credenza: _____    Desk: _____    Drawer: _____

Other: _____    Shelf: _____    Table: _____    Wall: _____

COURT: _Criminal Court_    Judge: _Josh Hansh-FT_

| QUANTITY | DESCRIPTION OF ITEMS |
|---|---|
| 1 | Kossoff Financial Documents/Records. |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Recorder: Detective/Investigator _SGT M_____

Page _2_ of _8_ Pages

VG #05-121666-K    W-378802

PC Form 160 (3/91)

# SEARCH WARRANT RECEIPT/INVENTORY

Position/Box: _____/_____

Subject Name: Julia McNally

Date: April 15, 2021

Subject Address: 217 Broadway New York N.Y.
Zubkoff

Floor/Room No.: 511

Seizing Detective/Investigator: Zubkoff

Case No. 21-17193

Safe: _____   Cabinet: _____   Credenza: _____   Desk: _____   Drawer: _____

Other: _____   Shelf: ✓   Window   Table: _____   Wall: _____

COURT: Criminal Court

Judge: Josh Hanshaft

| QUANTITY | DESCRIPTION OF ITEMS |
|----------|----------------------|
| 1 | KOSSOFF FinanciAl DocumenTs/Records. |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Recorder: Detective/Investigator _____
SGT MADDER

Page 3 of 8 pages

VG #05-121688-K   W-378802

PC Form 160 (3/91)

## SEARCH WARRANT RECEIPT/INVENTORY

Position/Box: _____/____

Subject Name: **Mitchell Kossoff**                    Date: **4-15-2021**

Subject Address: **'217 Broadway**                 Floor/Room No.: **Room 3/Floor 4**

Seizing Detective/Investigator: **Convey**         Case No. **21-17193**

Safe: _____   Cabinet: **✓**   Credenza: _____   Desk: _____   Drawer: _____

Other: _____   Shelf: _____   Table: _____   Wall: _____

COURT: **Criminal**                         Judge: **Hanshaft**

| QUANTITY | DESCRIPTION OF ITEMS |
|---|---|
| 1 | Black Box with Silver Trim + locks containing wire transfer records in USD Amounts |
| 7 | Chase Bank Envelopes (Dates 2021) |
| 1 | Valley Bank Envelope (Dated 2021) |
| 1 | Signature Bank Envelope (Dated 2021) |
| 10 | Binder Clipped Documents containing Emails + Acct info |

Recorder: Detective/Investigator _____ #169
SGT MADDER

Page 4 of 8 pages

VG #05-121685-K   W-378502

PC Form 160 (3/91)

## SEARCH WARRANT RECEIPT/INVENTORY

Position/Box: _____ / _____

Subject Name: MITCHELL KOSOFF

Subject Address: 217 BROADWAY

Seizing Detective/Investigator: ETHAN ZUBKOFF

Date: 4/15/2021

Floor/Room No.: ROOM 4 / FLOOR 4

Case No. 17-17193

Safe: _____   Cabinet: _____   Credenza: _____   Desk: ✓   Drawer: _____

Other: _____   Shelf: _____   Table: _____   Wall: _____

COURT: CRIMINAL   Judge: JOSH HANDSHAFT

| QUANTITY | DESCRIPTION OF ITEMS |
|---|---|
| 1 | FINANCIAL FOLDERS RELATING TO REAL ESTATE TRANSACTIONS. |

Recorder: Detective/Investigator   #169
SGT M ADLER

Page 5 of 8 pages

VG #05-121686-K   W-376802

PC Form 160 (3/91)

## SEARCH WARRANT RECEIPT/INVENTORY

Position/Box: _____ / _____

Subject Name: Mitchell Kossoff

Date: 4-15-21

Subject Address: 217 Broadway

Floor/Room No.: Floor 4 / Rm 4

Seizing Detective/Investigator: Conway

Case No. 21-17193

Safe: _____   Cabinet: _____   Credenza: _____

Desk: _____   Drawer: _____

Other: Window Sill   Shelf: _____

Table: _____   Wall: _____

COURT: Criminal

Judge: Hanshaft

| QUANTITY | DESCRIPTION OF ITEMS |
|---|---|
| 1 | Case folders related to Angelini |
|  | Property financials |
|  | IOLA Deposit Receipts |
|  | Escrow requests and Escrow records |

Recorder: Detective/Investigator _____ #169
SGT M ADLER

Page 6 of 8 pages

VG #05-121686-K   W-378802

PC Form 160 (3/91)

## SEARCH WARRANT RECEIPT/INVENTORY

Position/Box: _____/____

Subject Name: **Mitchell Kossoff**

Date: **4-15-21**

Subject Address: **217 Broadway**

Floor/Room No.: **Floor 4/Rm 4**

Seizing Detective/Investigator: **Conway**

Case No. **21-17193**

Safe: _____    Cabinet: _____    Credenza: _____

Desk: _____    Drawer: ✓

Other: _____    Shelf: _____

Table: _____    Wall: _____

COURT: **Criminal**

Judge: **Henshaft**

| QUANTITY | DESCRIPTION OF ITEMS |
|----------|----------------------|
| 1 | Drawer Containing Financial Documents |
|   | Stack of Documents Containing property & financials |
|   | Case folders containing financial Documents |

Recorder: Detective/Investigator _____

Page **7** of **8** pages

HTAU

PC Form 160 (3/91)

# SEARCH WARRANT RECEIPT/INVENTORY

Position/Box: _____ / _____

Subject Name: Mitchell Kossoff

Subject Address: 217 Broadway New York N.Y.

Seizing Detective/Investigator: Brian Conway

Date: April 15, 2021

Floor/Room No.: 4th Floor / 2/3/4

Case No. 21-17193

Safe: _____    Cabinet: _____    Credenza: _____    Desk: _____    Drawer: _____

Other: _____    Shelf: _____    Table: _____    Wall: _____

COURT: Criminal Court    Judge: Josh Hanshaft

| QUANTITY | DESCRIPTION OF ITEMS |
|---|---|
| 1 | Server-Intake-DC-002    (RM 2) |
| 1 | Server-Intake-DC-003 |
| 1 | Server-Intake-DC-006 |
| 1 | Server-Intake-DC-007 |
| 1 | Server-Intake-DC-010 |
| 1 | Hard Drive-DC-004 |
| 1 | Hard Drive-DC-005 |
| 1 | Hard Drive-DC-009 |
| 1 | Tape Intake-DC-012    (RM 2) |
| 1 | USB Drive Intake-DC-008 (RM2) |
| 1 | USB Drive Intake-DC-011 (RM2) |
| 1 | Tape Intake-DC-013 (RM 3) |
| 1 | Tape Intake-DC-014 (RM 3) |
| 1 | IMAC-Intake-DC-001 (RM4) |

Recorder: Detective/Investigator    SGT M ADLER

Page __ of __ pages

# EXHIBIT 3

N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS AND STATE RECORDS                     ALBANY, NY 12231-0001

FILING RECEIPT

================================================================================
ENTITY NAME: KOSSOFF, PLLC

DOCUMENT TYPE: ARTICLES OF ORGANIZATION (DOM-PROF.LLC)          COUNTY: NEWY

================================================================================
FILED:12/06/2013 DURATION:********  CASH#:131206001114 FILM #:131206001043


   FILER:                                              EXIST DATE
   ------                                              ----------
   SMITH, BUSS & JACOBS LLP                            12/06/2013
   733 YONKERS AVENUE

   YONKERS, NY 10704

   ADDRESS FOR PROCESS:
   --------------------
   MITCHELL KOSSOFF
   217 BROADWAY SUITE 401
   NEW YORK, NY 10007

   REGISTERED AGENT:
   -----------------




================================================================================
SERVICE COMPANY: GERALD WEINBERG, INC. - 14                SERVICE CODE: 14


   FEES        235.00                          PAYMENTS        235.00
               --------                                        --------
   FILING      200.00                          CASH              0.00
   TAX           0.00                          CHECK             0.00
   CERT          0.00                          CHARGE            0.00
   COPIES       10.00                          DRAWDOWN        235.00
   HANDLING     25.00                          OPAL              0.00
                                               REFUND            0.00
================================================================================
                                               DOS-1025 (04/2007)

# STATE OF NEW YORK

# DEPARTMENT OF STATE

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on December 9, 2013.

Anthony Giardina
Executive Deputy Secretary of State

Rev. 06/13

131206001043

*IW677*

New York State
Department of State
Division of Corporations, State Records and Uniform Commercial Code
One Commerce Plaza, 99 Washington Avenue
Albany, NY 12231
www.dos.ny.gov

# ARTICLES OF ORGANIZATION
# OF

**Kossoff, PLLC**

*(Insert Name of Professional Service Limited Liability Company)*

Under Section 1203 of the Limited Liability Company Law

**FIRST:** The name of the professional service limited liability company is:

**Kossoff, PLLC**

**SECOND:** The professional service limited liability company shall practice the profession(s) of:

**law**

**THIRD:** The county within this state in which the office of the professional service limited liability company is to be located is:

**New York**

**FOURTH:** The Secretary of State is designated as agent of the professional service limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the professional service limited liability company served upon him or her is:

**Mitchell Kossoff, 217 Broadway Suite 401, New York, NY 10007**

**FIFTH:** The names and residence addresses of all individuals who are to be the original members and the original managers, if any, are:

**Mitchell Kossoff**
**245 East 58th St. #25A**
**New York, NY 10022**

*(Attach the appropriate certificates from the licensing authority or a comparable authority of another state.)*

DOS-1374-f-l (Rev. 08/12)

131206001043

# Appellate Division of the Supreme Court
## of the State of New York
### First Judicial Department

I, Susanna Rojas, Clerk of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, certify that

## MITCHELL HAL KOSSOFF

was duly licensed and admitted to practice as an Attorney and Counsellor at Law in all the courts of the State of New York on July 16, 1979, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counsellors at Law on file in my office, has duly registered with the administrative office of the courts, and according to the records of this court is in good standing as an attorney and counsellor at law.

In Witness Whereof, I have hereunto set my hand and affixed the seal of this court on

December 4, 2013

Clerk of the Court

9900

DRAWDOWN

*IWb-14* (handwritten)

1043 (handwritten)

# ARTICLES OF ORGANIZATION
## OF

## Kossoff, PLLC
*(Insert Name of Professional Service Limited Liability Company)*

Under Section 1203 of the Limited Liability Company Law

Filed by:    **Smith, Buss & Jacobs LLP**
*(Name)*

**733 Yonkers Avenue**
*(Mailing address)*

**Yonkers, NY 10704**
*(City, State and ZIP code)*

NOTE: This form was prepared by the New York State Department of State for filing basic articles of organization for a professional limited liability company. It does not contain all optional provisions under the law. You are not required to use this form. You may draft your own form or use forms available at legal supply stores. The Department of State recommends that legal documents be prepared under the guidance of an attorney. The certificate must be submitted with a $200 filing fee made payable to the Department of State.

Section 1203(c)(1) requires a certified copy of the articles of organization be filed with the licensing authority within 30 days after the filing with the Department of State.

*(For office use only)*

RECEIVED
2013 DEC -6  PM 3:07

2013 DEC -6  PM 4:42
FILED

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED  DEC 06 2013
TAX $
BY:
1114

DOS-1374-f-l (Rev. 06/12)

# KOSSOFF, PLLC

## OPERATING AGREEMENT

This Agreement dated as of *12/6/13* among the individuals and entities signing it below.

WHEREAS, the individuals and entities signing this Agreement desire to form a limited liability company known as Kossoff, PLLC pursuant to the New York Limited Liability Company Law;

WHEREAS, the individuals and entities signing this Agreement desire to establish their respective rights and obligations pursuant to the New York Limited Liability Company Law in connection with forming such a limited liability company;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the individuals and entities signing this Agreement below agree as follows:

## ARTICLE I
### Definitions

1.1    Definitions. In this Agreement, the following terms shall have the meanings set forth below:

(a)  "Articles of Organization" shall mean the Articles of Organization of the Company filed or to be filed with the New York Secretary of State, as they may from time to time be amended.

(b)  "Capital Account" as of any date shall mean the Capital Contribution to the Company by a Member, adjusted as of such date pursuant to this Agreement.

(c)  "Capital Contribution" shall mean any contribution by a Member to the capital of the Company in cash, property or services rendered or a promissory note or other obligation to contribute cash or property or to render services, net of liabilities assumed or to which the assets are subject.

(d)  "Code" shall mean the Internal Revenue Code of 1986, as amended, or any superseding federal revenue statute.

(e)  "Company" shall refer to Kossoff, PLLC.

(f)  "Distribution" means any cash and other property distributed to a Member by the Company from the operations of the Company.

(g)  "Fiscal Year" shall mean the fiscal year of the Company, which shall be the year ending December 31st..

(h)  "Membership Interest" shall mean the percentage interest held by a Member as set forth in Exhibit B, together with all of the rights of a Member in the Company, including a Member's: (i) Economic Interest; (ii) right to inspect the Company's books and records; (iii) right to participate in the management of and vote on matters coming before the Company; (iv) unless this Agreement or the Articles of Organization provide to the contrary, right to act as an agent of the Company.

(i)    "Member" shall mean each Person who or which executes a counterpart of this Agreement as a Member and each Person who or which may hereafter become a party to this Agreement. Initially, the sole Member of the Company shall be Mitchell Kossoff.

- 1 -

(j)    "Net Losses" shall mean the losses of the Company, if any, determined in accordance with generally accepted accounting principals employed under the cash method of accounting.

(k)    "Net Profits" shall mean the income of the Company, if any, determined in accordance with generally accepted accounting principles employed under the cash method of accounting.

(m)    "New York Act" shall mean the New York Limited Liability Company Act.

(n)    "Persons" shall mean any corporation, governmental authority, limited liability company, partnership, trust, unincorporated association or other entity.

(o)    "Selling Member" shall  mean a Member desiring to sell a Membership Interest.

(p)    "Treasury Regulations" shall mean all proposed, temporary and final regulations promulgated under the Code as from time to time in effect.

## ARTICLE II
### Organization

2.1  Formation.  One or more Persons has acted or will act as an organizer or organizers to form a limited liability company by preparing, executing and filing with the New York Secretary of State the Articles of Organization pursuant to the New York Act.

2.2  Name.  The name of the Company is Kossoff, PLLC.

2.3  Principal Place of Business.  The principal place of business of the Company within the State of New York shall be 217 Broadway, Suite 401, New York, NY 10007. The Company may establish any other places of business as the Member(s) may from time to time deem advisable.

2.4  Term.  The term of the Company shall be perpetual, unless the Company is dissolved sooner pursuant to this Agreement or the New York Act.

2.5  Purposes.  The Company is formed to engage in the business of engaging in professional legal services, including the practice of law and such related services for a professional limited liability company as may be permitted under applicable New York law.

## ARTICLE III
### Member(s)

3.1  Names, Addresses, Initial Capital Contribution, Membership Interest.  The names, addresses initial capital contributions, and Membership interests of the Member(s) are as set forth in Exhibit A to this Agreement.

3.2  Additional Member(s).  A Person may be admitted as a member after the date of this Agreement upon the affirmative vote or written consent of persons holding 67% or more of the Membership Interests.

3.3  Disqualification of Members, Managers and Employees. If any Member, Manager or employee of the Company who has been rendering professional service to the public becomes legally disqualified to practice his, her or its profession within New York State, he, she or it shall sever all employment with and financial interests (other than interests as a creditor or vested rights under a bona fide retirement program) in the Company forthwith or as otherwise provided in the event of the death of a Member. Such legal disqualification to practice such profession within New York State shall be deemed to constitute an irrevocable offer by the disqualified Member to sel his, her or its Membership Interest to the Company pursuant to the provisions of Section 3.4.

- 2 -

3.4 Company's Rights after Death, Disassociation or Disqualification of Members. The Company shall purchase or redeem the Membership Interest of a Member in case of a Member's death or disqualification under Section 3.3 within six (6) months after (1) the appointment of the executor or administrator or other legal representative of the estate of the deceased Member or (2) such disqualification or disassociation, as the case may be, in accordance with the provisions of Article 9.

3.5 Books and Records. The Company shall keep books and records of accounts and minutes of all meetings of the Member(s). Such books and records shall be maintained on a cash basis in accordance with this Agreement.

3.6 Information. Each Member may inspect during ordinary business hours and at the principal place of business of the Company the Articles of Organization, the Operating Agreement, the minutes of any meeting of the Member(s) and any tax returns of the Company for the immediately preceding three Fiscal Years.

3.7 Limitation of Liability. Each Member's liability shall be limited as set forth in this Agreement, the New York Act and other applicable law. A Member shall not be personally liable for any indebtedness, liability or obligation of the Company, except that such Member shall remain personally liable for the payment of his or her Capital Contribution of such Member and as otherwise set forth in this Agreement, the New York Act and any other applicable law.

3.8 Sale of All Assets. The Member(s) shall have the right, by the vote or written consent of at least 67% of all Membership Interests, to approve the sale, lease, exchange or other disposition of all or substantially all of the assets of the Company.

3.9 Liability of a Member to the Company. A Member who or which rightfully receives the return of any portion of a Capital Contribution is liable to the Company only to the extent now or hereafter provided by the New York Act. A Member who or which receives a Distribution made by the Company in violation of this Agreement or made when the Company's liabilities exceed its assets (after giving effect to such Distribution) shall be liable to the Company for the amount of such Distribution.

3.10 Financial Adjustments. No Member(s) admitted after the date of this Agreement shall be entitled to any retroactive allocation of losses, income or expense deductions incurred by the Company. The Member(s) may, by a vote of the holders of a majority in interest, at the time a Member is admitted, close the books and records of the Company (as though the Fiscal year had ended) or make pro rata allocations of losses, income and expense deductions to such Member for that portion of the Fiscal Year in which such Member was admitted, in accordance with the Code.

### ARTICLE IV
### Management

4.1    Management. The Company shall be managed by the Member(s). Except as otherwise provided in this Agreement, each Member shall have the right to act for and bind the Company in the ordinary course of its business.

### ARTICLE V
### Meetings of Member(s)

5.1 Annual Meeting. The annual meeting of the Member(s) shall be held on each third Tuesday in March or at such other time as  shall be determined by the vote or written consent of the Membership Interests for the purpose of the transaction of any business as may come before such meeting.

- 3 -

5.2 Special Meetings. Special meetings of the Member(s), for any purpose or purposes, may be called by any Member holding not less than ten percent of the Membership Interests.

5.3 Place of Meeting. Meetings of the Member(s) shall be held at the offices of the Company or such other place as the Member(s) may determine.

5.4 Notice of Meetings. Written notice stating the place, day and hour of the meeting indicating that it is being issued by or at the direction of the person or persons calling the meeting, stating the purpose or purposes for which the meeting is called shall be delivered no fewer than ten nor more than sixty days before the date of the meeting.

5.5 Record Date. For the purpose of determining the Member(s) entitled to notice of or to vote at any meeting of Member(s) or any adjournment of such meeting, or Member(s) entitled to receive payment of any Distribution, or to make a determination of Member(s) for any other purpose, the date on which notice of the meeting is mailed or the date on which the resolution declaring Distribution is adopted, as the case may be, shall be the record date for making such a determination. When a determination of Member(s) entitled to vote at any meeting of Member(s) has been made pursuant to this Section, the determination shall apply to any adjournment of the meeting.

5.6 Quorum. Member(s) holding not less than a majority of all Membership Interests, represented in person or by proxy, shall constitute a quorum at any meeting of Member(s). The Member(s) present at a meeting may continue to transact business until adjournment, notwithstanding the withdrawal during the meeting of Membership Interests whose absence results in less than a quorum being present.

5.7 Proxies. A Member may vote in person or by proxy executed in writing by the Member or by a duly authorized attorney-in-fact.

5.8 Action by Member(s) without Meeting. When all Member(s) of the Company are present at any meeting, or if those not present sign in writing a waiver of notice of the meeting, or subsequently ratify all of the proceedings of the meeting, the transactions of the meeting are as valid as if a meeting were formally called and notice had been given.

5.9 Voting. Except as otherwise provided in this Agreement, the affirmative vote of a majority in Interest of the Member(s) shall be required to approve any matter coming before the Member(s).

5.10 Telephone Participation. Member(s) may participate in regular or special meetings of Member(s) by telephone as well as in person, and any action taken at such meeting will be deemed a valid action of the Member(s).

5.11. Personal Services. No Member shall be required to perform services for the Company solely by virtue of being a Member. Unless approved by the Member(s), no Member shall be entitled to compensation for services performed for the Company. However, upon substantiation of the amount and purpose thereof, the Member(s) shall be entitled to reimbursement for expenses reasonably incurred in connection with the activities of the Company.

5.13. Duties of Parties.

(a) The Member(s) shall devote such time to the business and affairs of the Company as is necessary to carry out the Member(s)' duties set forth in this Agreement.

(b) Except as otherwise expressly provided in subsection (c), nothing in this Agreement shall be deemed to restrict in any way the rights of any Member, or of any Affiliate of any Member, to conduct any other business or activity whatsoever, and no Member shall be accountable to the Company or to any other Member with respect to that business or activity even if the business or activity competes with the Company's business. The organization of the Company shall be without prejudice to the Member(s)' respective rights (or the rights of their respective Affiliates) to maintain, expand, or diversify such other interests and activities and to receive and enjoy

- 4 -

profits or compensation therefrom. Each Member waives any rights the Member might otherwise have to share or participate in such other interests or activities of any other Member or the Member's Affiliates.

(c) Each Member understands and acknowledges that the conduct of the Company's business may involve business dealings and undertakings with Member(s) and their Affiliates. In any of those cases, those dealings and undertakings shall be at arm's length and on commercially reasonable terms.

5.14. Compensation of Member(s). No member shall be entitled to compensation solely by reason of his or her being a Member.

5.15. Liability and Indemnification.

(a) A Member shall not be liable, responsible, or accountable, in damages or otherwise, to any other Member or to the Company for any act performed by the Member with respect to Company matters, except for fraud, bad faith, gross negligence, or an intentional breach of this Agreement.

(b) The Company shall indemnify each Member for any act performed by the Member with respect to Company matters, except for fraud, bad faith, gross negligence, or an intentional breach of this Agreement.

### ARTICLE VI
### Capital Contributions

6.1   Capital Contributions. Each Member shall contribute the amount set forth in Exhibit A to this Agreement as the Capital Contribution to be made by him, her or it.

6.2   Additional Contributions. Except as set forth in Section 6.1 of this Agreement, no Member shall be required to make any Capital Contribution.

6.3   Capital Accounts. A Capital Account shall be maintained for each Member. Each Member's Capital Account shall be increased by the value of each Capital Contribution made by the Member, allocations to such Member of the Net Profits and any other allocations to such Member of income pursuant to the Code. Each Member's Capital Account will be decreased by the value of each Distribution made to the Member by the Company, allocations to such Member of Net Losses and other allocations to such Member pursuant to the Code.

6.4   Transfers. Upon a permitted sale or other transfer of a Membership Interest in the Company, the Capital Account of the Member transferring his, her or its Membership Interests shall become the Capital Account of the Person to which or whom such Membership Interest is sold or transferred in accordance with Section 1.704-1 (b) (2) (iv) of the Treasury Regulations.

6.5   Modifications. The manner in which Capital Accounts are to be maintained pursuant to this Section is intended to comply with the requirements of Section 704(b) of the Code. If in the opinion of the Member(s) the manner in which Capital Accounts are to be maintained pursuant to this Agreement should be modified to comply with Section 704(b) of the Code, then the method in which Capital Accounts are maintained shall be so modified; provided, however, that any change in the manner of maintaining Capital Accounts shall not materially alter the economic agreement between or among the Member(s).

6.6   Deficit Capital Account. Except as otherwise required in the New York Act or this Agreement, no Member shall have any liability to restore any portion of a deficit balance in a Capital Account.

6.7   Withdrawal or Reduction of Capital Contributions. A Member shall not receive from the Company any portions of a Capital Contribution until all indebtedness, liabilities of the Company, except any indebtedness, liabilities and obligations to Member(s) on account of their Capital Contributions, have been paid or there remains property of the Company, in the sole discretion of the Member(s), sufficient to pay them. A Member, irrespective of

- 5 -

the nature of the Capital Contribution of such Member, has the right to demand and receive only cash in return for such Capital Contribution.

6.8  Interest on and Return of Capital Contributions.  No Member shall be entitled to interest on his, her or its Capital Contribution or to a return of his, her or its Capital Contribution, except as specifically set forth in this Agreement.

**ARTICLE VII**
**Allocations and Distributions**

7.1  Allocations of Profits and Losses.  The Net Profits and the Net Losses for each Fiscal Year shall be allocated to each Member in accordance with the ratio of the value of his, her or its Capital Account to the value of all Capital Accounts in the aggregate.

7.2  Distributions.  Distributions shall be made from time to time in the discretion of the Member(s). All Distributions shall be made to the Member(s) pro rata in proportion to their Membership Interest as of the record date set for such Distribution.

7.3  Offset.  The Company may offset all amounts owing to the Company by a Member against any Distribution to be made to such Member.

7.4  Limitation Upon Distributions.  No distribution shall be declared and paid unless, after such Distribution is made, the assets of the Company are in excess of all liabilities of the Company.

7.5  Accounting Period.  The accounting period of the Company shall be the Fiscal Year.

7.6.  Regulatory Allocations.

7.6.1  Except as provided in Section 7.6.3 hereof, in the event any Member unexpectedly receives any adjustments, allocations or distributions described in Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6) of the Regulations, items of Company income and gain shall be specially allocated to the Member in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the Adjusted Capital Account Deficit of the Member as quickly as possible.  This Section 7.6.1 is intended to comply with the "qualified income offset" provisions of Section 1.704-1(b)(2)(ii)(d) of the Regulations and shall be interpreted consistently therewith.

7.6.2.  Except as provided in Section 7.6.3 hereof, in the event any Member has an Adjusted Capital Account Deficit at the end of any Company fiscal year, such Member shall be specially allocated items of Company income and gain for such year (and if necessary, subsequent years) in an amount and manner sufficient to eliminate such Adjusted Capital Account Deficit as quickly as possible.

7.6.3.  Notwithstanding any other provision of this Article VII, if there is a net decrease in Partnership Minimum Gain during any Company fiscal year, each Member shall be specially allocated items of Company income and gain for such year (and, if necessary, subsequent years) in an amount equal to such Member's share of the net decrease in Partnership Minimum Gain, determined in accordance with Section 1.704-2(g) of the Regulations.  Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto.  The items to be so allocated shall be determined in accordance with Sections 1.704-2(f)(6) and 1.704-2(j)(2) of the Regulations.  This Section 7.6.3 is intended to comply with the "minimum gain chargeback" requirement in such section of the Regulations and shall be interpreted consistently therewith.

7.6.4.  Except as otherwise provided in Section 1.704-2(i)(4) of the Regulations, notwithstanding any other provision of this Article VII, if there is a net decrease in Partner Minimum Gain attributable to a Partner Nonrecourse Debt during any Company fiscal year, each Member who has a share of the Partner Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with Section 1.704-2(i)(5) of the

- 6 -

Regulations, shall be specially allocated items of Company income and gain for such fiscal year (and, if necessary, subsequent fiscal years) in an amount equal to such Member's share of the net decrease in Partner Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with Regulations Section 1.704-2(i)(4). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Section 1.704-2(i)(4) and 1.704-2(j)(2) of the Regulations. This Section 7.6.4 is intended to comply with the "minimum gain chargeback" requirement in Section 1.704-2(i)(4) of the Regulations and shall be interpreted consistently therewith.

       7.6.5. To the extent an adjustment to the adjusted tax basis of any Company asset pursuant to Code Section 734(b) or Code Section 743(b) is required, pursuant to Regulations Section 1.704-1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Member(s) in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such Section of the Regulations.

       7.6.6. Nonrecourse Deductions and Nonrecourse Liabilities for any fiscal year or other period shall be allocated to the Member(s) in accordance with their respective Percentages.

       7.6.7. Any Partner Nonrecourse Deductions for any fiscal year of the Company or other period shall be specially allocated to the Member who bears the risk of loss with respect to the Partner Nonrecourse Debt to which such Partner Nonrecourse Deductions are attributable in accordance with Section 1.704-2(i)(2) of the Regulations.

    7.7     Curative Allocations. The allocations and limitations on allocations set forth in Sections 7.6.1 and 7.6.5 (the "Regulatory Allocations") are intended to comply with certain requirements of Regulations Section 1.704-1(b). The Regulatory Allocations may not be consistent with the manner in which the Member(s) intend to divide Company distributions. Accordingly, the Member(s) may divide other allocations of items of income, gain, loss or deduction among the Member(s) so as to prevent the Regulatory Allocations from distorting the manner in which Company distributions are intended to be divided among the Member(s) pursuant to Section 7.6 hereof. In general, the Member(s) anticipate that this will be accomplished by specially allocating other items of income, gain, loss or deduction among the Member(s) so that the net amount of the Regulatory Allocations and such special allocations to each such Person is zero.

    7.8     Other Allocation Rules.

       7.8.1. For purposes of determining the Profits, Losses or any other items allowable to any period, Profits, Losses and any such other items shall be determined on a daily, monthly or other basis, as determined by the Member(s) using any permissible method under Code Section 704 and the Regulations thereunder.

       7.8.2. Except as otherwise provided in this Agreement all items of Company income, gain, loss, deduction and any other allocations not otherwise provided for shall be divided among the Member(s) in the same proportions as they share Profits or Losses, as the case may be.

    7.9     Tax Allocations.

       7.9.1. Except as provided in subsection 7.9.2 of this Section, Company income, gain, loss and deduction for tax purposes for any year or other fiscal period shall be divided among the Member(s) in the same proportions as they share Profits or Losses, as the case may be, for such year.

       7.9.2. Notwithstanding subsection 7.9.1, if the Gross Asset Value of any Company asset is adjusted pursuant to the provisions included in the definition of "Gross Asset Value" herein, subsequent allocations of income, gain, loss and deduction for tax purposes with respect to such asset shall take into account any variation between the adjusted basis of such asset for federal income tax purposes and its Gross Asset Value in the same manner as under Code Section 704(c) and Regulations thereunder.

- 7 -

7.10    Section 754 Election.

With respect to any transaction to which the election provided by Section 754 of the Code may apply, at the written request of any Member, the Member(s) shall determine the effect of making such election, and if such election would, as so determined, result in a net increase in the basis of Company property for Federal income tax purposes, the Member(s) shall cause the Company to make in a timely manner such election.

7.11. Liquidation and Dissolution.

7.11.1. If the Company is liquidated, the assets of the Company shall be allocated in accordance with each Member's Percentage Interest, and distributed to the Member(s) in accordance with the balances in their respective Capital Accounts, after taking into account distributions, if any, of cash or property pursuant to Section 7.6.

7.11.2. No Member shall be obligated to restore a Negative Capital Account.

7.12. General.

7.12.1. Except as otherwise provided in this Agreement, the timing and amount of all distributions shall be determined by the Member(s) in their sole discretion. It is contemplated that distributions will be made if the Member(s) deem such distributions to be prudent and feasible.   Each Member acknowledges that no representation has been made to the effect that distributions at any rate will be made or, if made, will continue for any period of time.  Each Member acknowledges that it has not relied upon the ability of the Company to make such distributions in entering into this Agreement.

7.12.2. If any assets of the Company are distributed in kind to the Member(s), those assets shall be valued on the basis of their fair market value, and any Member entitled to any interest in those assets shall receive that interest as a tenant in common with all other Member(s) so entitled. Unless the Member(s) otherwise agree, the fair market value of the assets shall be determined by an independent appraiser who shall be selected by the Member(s). The Profit or Loss for each unsold asset shall be determined as if the asset had been sold at its fair market value, and the Profit or Loss shall be allocated as provided in Section 7.7 and shall be properly credited or charged to the Capital Accounts of the Member(s) prior to the distribution of the assets in liquidation pursuant to Section 7.9.

7.12.3. All Profit and Loss shall be allocated, and all distributions shall be made to the Persons shown on the records of the Company to have been Member(s) as of the last day of the taxable year for which the allocation or distribution is to be made.  Notwithstanding the foregoing, unless the Company's taxable year is separated into segments, if there is a Transfer or an Involuntary Withdrawal during the taxable year, the Profit and Loss shall be allocated between the original Member and the successor on the basis of the number of days each was an Member during the taxable year; provided, however, the Company's taxable year shall be segregated into two or more segments in order to account for Profit, Loss or proceeds attributable to any extraordinary nonrecurring items of the Company.

7.12.4. The Member(s), upon the advice of the Company's tax counsel, may amend this Article VII to comply with the Code and the Regulations promulgated under Code Section 704(b); provided, however, that no amendment shall materially affect distributions to a Member without the Member's prior written consent.

7.13. Applicability of Code. The parties acknowledge that the Company is taxed as a Partnership under the applicable provisions of the Code.  Accordingly, references in the applicable provisions of the Code to the "Partnership" and "Partners" are deemed to apply to the Company and its Member(s).

7.14. Compliance with Code. The provisions of this Agreement are intended to comply with the Regulation, and shall be interpreted and applied in a manner consistent with the Regulation.

- 8 -

## ARTICLE VIII
### Taxes

8.1  Tax Returns.  The Member(s) shall cause to be prepared and filed all necessary federal and state income tax returns (and city) for the Company.  Each member shall furnish all pertinent information in its possession relating to Company operations that is necessary to enable the Company's income tax returns to be prepared and filed.

8.2  Tax Elections.  The Company shall make the following elections on the appropriate tax returns:

(a)  To adopt the calendar year as the Fiscal Year;

(b)  To adopt the cash method of accounting and keep the Company's books and records on the income tax method;

(c)  If a Distribution as described in Section 734 of the Code occurs or if a transfer of a Membership Interest described in Section 743 of the Code occurs, upon the written request of any Member(s), to elect to adjust the basis of the property of the Company pursuant to Section 754 of the Code;

(d)  To elect to amortize the organizational expenses of the Company and the start-up expenditures of the Company under Section 195 of the Code ratably over a period of sixty months as permitted by Section 709 (b) of the Code; and

(e)  Any other election that the Member(s) may deem appropriate.

## ARTICLE IX
### Transferability/Disassociation

9.1  General.  Except as set forth in this Agreement, no Member shall gift, sell, assign, pledge, hypothecate, exchange or otherwise transfer to another Person any portion of a Membership Interest without the consent of the remaining Member(s). No Member may sell or assign any portion of his Membership Interest except to another professional eligible to become a Member of the Company or except in trust to another professional who would be eligible to become a Member of the Company if such professional were employed by the Company.

9.2  Transferee Not a Member.  No Person purporting to acquire a Membership Interest pursuant to this Section other than an existing Member shall become a Member unless such Person is approved by the unanimous vote or written consent of all Membership Interests.  If no such approval is obtained, such Person's purported Membership Interest shall only entitle such Person to receive the distributions and allocations of profits and losses to which the member from whom or which such Person purported to receive such Membership Interest would be entitled, i.e., the economic interest of such Member only. Nothing in this clause shall deprive the Company or any other Member of any other rights or remedies against a Member who purports to transfer his or her Membership Interest in violation of this Agreement.

9.3    Disassociation. A Member's Membership Interest shall terminate, and the Member shall be disassociated from the Company, upon the first to occur of the following:

(a)  The Member's death or disqualification under Section 3.3;

(b)  The effective date of the Member's retirement in accordance with Section 9.5; or

(c)  The effective date of a Member's withdrawal in accordance with Section 9.6.

- 9 -

9.4    (a) If a Member disassociates from the Company, then within six months thereafter the Company shall purchase or redeem from the Member (or the estate of the Member, as the case may be), and the Member (or the estate of such Member, as the case may be) shall sell and transfer to the Company the Membership Interest of the disassociated Member, for a purchase price equal to $_____ [if no price is entered, the price shall be equal to 25% of billings and collections from existing clients originated by the Member over the six months prior to the date of disassociation.]  In the event of the death of a Member at a time when the Company owns a policy of insurance on the life of such deceased Member, the net proceeds of any such policy of insurance shall first be applied towards the Purchase Price. In any other case, or if the Purchase Price exceeds the proceeds of any such insurance, the Purchase Price shall be paid as follows: 25% within such six-month period, and the balance in twelve (12) equal installments pursuant to a promissory note bearing interest at the prime rate plus 1%.

(b) Nothing contained herein shall prevent the Company from paying pension benefits or other deferred compensation to or on behalf of a former or deceased Member, Manager or employee. The Company shall not be require the purchase of the Membership Interest of a disqualified Member when the period of disqualification is for less than six (6) months and the Member again becomes eligible to practice his or her profession within six (6) months from the date of disqualification.

9.5    Retirement. A member shall be deemed to be retired when such Member ceases the practice of law.

9.6.    Withdrawal. A Member shall be deemed to have withdrawn from the Company upon the vote or written consent of Members holding an aggregate Membership Interest of 75% or more.

9.7.    Expulsion.  The Company shall not be required to redeem the Membership Interest of a Member who is expelled from the Company for cause. As used herein, "for cause" shall include (but not be limited to) the following: (a) disbarment; (b) the voluntary withdrawal of a Member from the Company in order to pursue the practice of law in the same or competing market, and as to which the Member may be engaged by existing clients of the Company; and (c) breach of fiduciary duty to the Company, bad faith or intentional misconduct by the Member with respect to the other Members.

## ARTICLE X
### Dissolution

10.1 Dissolution. The Company shall be dissolved and its affairs shall be wound up upon the first to occur of the following:

(a)  The latest date on which the Company is to dissolve, if any, as set forth in the Articles of Organization;

(b)  The vote or written consent of Member(s) holding at least 75% of the Membership Interests (of the Company or of the remaining Members of the Company, as applicable).

10.2 Winding Up.  Upon the dissolution of the Company the Member(s) may, in the name of and for an on behalf of the Company, prosecute and defend suits, whether civil, criminal or administrative, sell and close the Company's business, dispose of and convey the Company's property, discharge the Company's liabilities and distribute to the Member(s) any remaining assets of the Company, all without affecting the liability of Member(s). Upon winding up of the Company, the assets shall be distributed as follows:

(a)  To creditors, including any Member who is a creditor, to the extent permitted by law, in satisfaction of liabilities of the Company, whether by payment or by establishment of adequate reserves, other than liabilities for distributions to Member(s) under Section 507 or Section 509 of the New York Act;

- 10 -

(b)  To Member(s) and former Member(s) in satisfaction of liabilities for Distributions under Section 507 or Section 509 of the New York Act; and

(c)  To Member(s) first for the return of their Capital Contributions, to the extent not previously returned, and second respecting their Membership Interests, in the proportions in which the Member(s) share in Distributions in accordance with this Agreement.

10.3  Articles of Dissolution.  Within ninety days following the dissolution and the commencement of winding up of the Company, or at any other time there are no Member(s), articles of dissolution shall be filed with the New York Secretary of the State pursuant to the New York Act.

10.4  Deficit Capital Account.  Upon a liquidation of the Company within the meaning of Section 1.704-1(b) (2) (ii) (g) of the Treasury Regulations, if any Member has a Deficit Capital Account (after giving effect to all contributions, distributions, allocations and other adjustments for all Fiscal Years, including the Fiscal Year in which such liquidation occurs), the Member shall have no obligation to make any Capital Contribution, and the negative balance of any Capital Account shall not be considered a debt owed by the Member to the Company or to any other Person for any purpose.

10.5  Nonrecourse to Other Member(s).  Except as provided by applicable law or as expressly provided in this Agreement, upon dissolution, each Member shall receive a return of his, her or its Capital Contribution solely from the assets of the Company.  If the assets of the Company remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return any Capital Contribution of any Member, such Member shall have no recourse against any other Member.

10.6  Termination.  Upon completion of the dissolution, winding up, liquidation, and distribution of the assets of the Company, the Company shall be deemed terminated.

## ARTICLE XI
## General Provisions

11.1  Notices.  Any notice, demand or other communication required or permitted to be given pursuant to this Agreement shall have been sufficiently given for all purposes if (a) delivered personally to the party or to an executive officer of the party to whom such notice, demand or other communication is directed or (b) sent by registered or certified mail, postage prepaid, addressed to the Member or the Company at his, her or its address set forth in this Agreement.  Except as otherwise provided in this Agreement, any such notice shall be deemed to be given three business days after the date on which it was deposited in a regularly maintained receptacle for the deposit of United States mail, addressed and sent as set forth in this Section.

11.2  Amendments.  No amendment to this Agreement shall be effective unless made in writing duly executed by all Member(s) and specifically referring to each provision of this Agreement being amended.

11.3  Construction.  Whenever the singular number is used in this Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

11.4  Headings.  The headings in this Agreement are for convenience only and shall not be used to interpret or construe any provision of this Agreement.

11.5  Waiver.  No failure of a Member to exercise, and no delay by a Member in exercising, any right or remedy under this Agreement shall constitute a waiver of such right or remedy.  No waiver by a Member of any such right or remedy under this Agreement shall be effective unless made in a writing duly executed by all Member(s) and specifically referring to each such right or remedy being waived.

- 11 -

11.6  Severability.   Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law.   However, if any provision of this Agreement shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

11.7  Binding Effect.   This Agreement shall be binding upon and inure to the benefit of all Member(s), and each of the successors and assignees or the Member(s), except that right or obligation of a Member under this Agreement may be assigned by such Member to another person without first obtaining the written consent of all other Member(s).

11.8  Counterparts.   This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument.

11.9  Governing Law.   This Agreement shall be governed by, and interpreted and construed in accordance with, the laws of the State of New York, without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the individuals and entities signing this Agreement below conclusively evidence their agreement to the terms and conditions of this Agreement by so signing this Agreement.

_____
**Mitchell Kossoff, Sole Member**

- 12 -

**EXHIBIT A**

**Member(s)**

| Name and Address | Initial Capital Contribution | Percentage Membership Interest |
|---|---|---|
| Mitch Kossoff<br>245 East 58th St. #25A<br>New York, NY 10022 | $100 | 100% |

# EXHIBIT 4

**MITCHELL H. KOSSOFF**
ATTORNEY AT LAW

KOSSOFF, PLLC
217 BROADWAY, SUITE 401
NEW YORK, NY 10007

TEL: (212) 267-6364
FAX: (212) 385-2558
mkossoff@kaulaw.com