TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Minta J. Nester
Brian F. Shaughnessy

*Attorneys for Albert Togut, Not Individually*
*But Solely in His Capacity as Chapter 7 Interim Trustee*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
                                         :
              In the Matter              :    Chapter 7
                                         :    Case No. 21-10699 (DSJ)
                  -of-                    :
                                         :
KOSSOFF PLLC,                            :
                                         :
                                         :
                            Debtor.      :
                                         :
------------------------------------------------------------ X
```

## TRUSTEE'S RESPONSE TO KOSSOFF SUPPLEMENTAL SUBMISSION PURSUANT TO ORDER DESIGNATING <u>KOSSOFF AS THE RESPONSIBLE OFFICER OF THE DEBTOR</u>

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................3

    A.  Commencement of the Debtor's Case ...........................................................................3

    B.  The Trustee's Attempts to Obtain Discovery from Kossoff ......................................4

    C.  The Trustee's Rule 2004 Motions and Related Orders ................................................5

    D.  The Trustee's Designation Motion and Related Submissions....................................7

RESPONSE..........................................................................................................................10

    A.  The "Collective Entity" Doctrine Is Applicable Here...............................................10

    B.  Kossoff Has Not Satisfied His Burden of Demonstrating Why Performing the
        Debtor's Duties Would Violate His Fifth Amendment Privilege...........................13

    C.  Kossoff Has Shown No Basis to Quash the Third-Party Subpoenas .....................20

CONCLUSION.....................................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Braswell v. United States,*
 487 U.S. 99 (1988) ...............................................................................................12

*Henry v. Sneiders,*
 490 F.2d 315 (9th Cir. 1974).................................................................................17

*In re Bear Stearns & Co., Inc. v. Wyler,*
 182 F. Supp. 2d 679 (N.D. Ill. 2002) ....................................................................14

*In re Fearn,*
 96 B.R. 135 (Bankr. E.D. Ohio 1989) ...................................................................20

*In re Fin. Corp. of Am.,*
 119 B.R. 728 (C.D. Cal. 1990) ..............................................................................20

*In re Grand Jury Proceedings (The John Doe. Co., Inc.),*
 838 F.2d 624 (1st Cir. 1988) .................................................................................10

*In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002,*
 318 F.3d 379 (2d Cir. 2003)...................................................................................21

*In re Grand Jury Subpoenas Dated October 22, 1991 and November 1, 1991,*
 959 F.2d 1158 (2d Cir. 1992).................................................................................12

*In re ICS Cybernetics, Inc.,*
 107 B.R. 821 (Bankr. N.D.N.Y. 1989) ..................................................................19

*In re Ionosphere Clubs, Inc.,*
 156 B.R. 414 (S.D.N.Y. 1993) ...............................................................................20

*In re Kroh,*
 80 B.R. 488 (Bankr. W.D. Miss. 1987) ..................................................................20

*In re Schick,*
 215 B.R. 4 (Bankr. S.D.N.Y. 1997).............................................................13, 16, 19

*In re Valley Forge Plaza Assocs.,*
 109 B.R. 669 (E.D. Pa. 1990) ................................................................................20

*Matter of Application to Quash a Grand Jury Subpoena Duces Tecum, Dated December 28,*
 *1992,* 157 Misc. 2d 432 (Sup. Ct. N.Y. City Mar. 5, 1993)...................................18

*Samad Bros., Inc. v. Bokara Rug Co.,*
 No. 09 Civ. 5843 2010 WL 5094344 (S.D.N.Y. Nov. 30, 2010) ...........................22

*United States v. Hubbell*,
    530 U.S. 27 (2000) ..........................................................................................14, 18

*United States v. Mejia*,
    655 F.3d 126 (2d Cir. 2011) ...................................................................................21

*United States v. Moseley*,
    832 F. Supp. 56 (W.D.N.Y. 1993) .....................................................................12, 13

*US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
    No. 12 Civ. 6811, 2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012) ...........................21

**Statutes**

22 N.Y.C.R.R. § 1200.0 .........................................................................5, 9, 18, 20

N.Y. Consol. Laws, Limited Liability Company Law § 101 ...............................11

N.Y. Consol. Laws, Limited Liability Company Law § 1213 .............................11

N.Y. Consol. Laws, Limited Liability Company Law § 203(c).............................12

**Rules**

Fed. R. Bankr. P. 1007 .............................................................................................5

Fed. R. Bankr. P. 9001(5) ......................................................................................11

Fed. R. Civ. P. 45 ...................................................................................................22

Fed. R. Civ. P. 45(e)(2)(B)....................................................................................22

**Other Authorities**

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed.
    2017).......................................................................................................................21

TO THE HONORABLE DAVID S. JONES,
UNITED STATES BANKRUPTCY JUDGE:

Albert Togut, not individually but solely in his capacity as the Chapter 7

Interim Trustee (the "Trustee") of the estate of Kossoff PLLC (the "Debtor"), by his

attorneys, Togut, Segal & Segal LLP, hereby submits this response (the "Response") to

the *Kossoff Supplemental Submission in Opposition to the Request for the Production of Certain*

*Documents on the Ground that the Act of Production Would Violate Mitchell Kossoff's Fifth*

*Amendment Privilege and Moving to Quash All Subpoenas Calling for the Production of*

*Documents Reflecting His Privileged Communications* [Docket No. 116] (the "Kossoff

Submission").  In support of the Response, the Trustee respectfully sets forth that:

## **PRELIMINARY STATEMENT**

Since his appointment, the Trustee's "very important work to help resolve

the affairs of the estate"[1] has been continuously impeded by the improper demands of

Mitchell H. Kossoff ("Kossoff") for a grant of immunity in exchange for his production

of Debtor documents, information, and cooperation.  Kossoff's ransom demands and

delay tactics have taken various forms, including improper blanket invocations of the

Fifth Amendment privilege, ineffective and procedurally defective requests to quash

third-party subpoenas, flawed attempts to shift burdens to the Trustee, and conclusory

and unsupportable assertions of other privileges.

As is painstakingly demonstrated below, Kossoff and his criminal counsel

are playing fast and loose with the concept of the Fifth Amendment privilege.  They use

the words to try to hinder the Trustee's efforts, but when it comes to citing relevant law

and showing that it is applicable to this case, they do not, and cannot, provide any

---

[1]    *See* June 24, 2021 Hr'g Tr. at 41:21-25.

applicable authority that could justify Kossoff's refusal to cooperate and perform

obligations that are required by law and orders of this Court. Kossoff's invocation of

the Fifth Amendment privilege, in the context of the law firm's bankruptcy case and the

production of Debtor documents and information, is simply wrong, unsupportable, and

bordering on bad faith. One would expect more from a prominent lawyer and his very

experienced criminal counsel. These are seasoned professionals. They know that they

are trying to mislead this Court and the Trustee. It must be stopped, because the delays

caused by these actions are preventing the Trustee from marshaling assets for the

benefit of creditors and they are needlessly increasing administrative expenses that

prejudice the estate and its stakeholders.

Kossoff's improper efforts continue in the Kossoff Submission,

notwithstanding this Court's entry of the Designation Order (defined below)

designating Kossoff as "the person responsible for performing the Debtor's duties in

this case." Kossoff has not met his Fifth Amendment privilege burdens despite having

been given multiple opportunities to do so by this Court. He has also failed to satisfy

his burden to quash subpoenas issued by the Trustee to third-parties.

The reason for Kossoff's inability to establish Fifth Amendment privileges

concerning his turnover obligations regarding Debtor records is clear: the privilege is

purely personal and it applies only to natural persons. Kossoff, the person who has

been designated by this Court to perform the Debtor's duties, including turnover

obligations, cannot assert that privilege because he is the custodian of the Debtor

records sought by the Trustee. On this basis alone, Kossoff has no ability to assert the

Fifth Amendment privilege to withhold the Requested Information (defined below).

Nevertheless, Kossoff now appears to erroneously argue that the documents and

information to be produced are not the Debtor's records, and instead are the type of

records to which the "act of production" doctrine may apply because he and the Debtor represent a sole proprietorship. As demonstrated below, this newest contention also fails because it rests upon a faulty fiction advanced in the Kossoff Submission.

The Trustee respectfully requests that the Court enter an order directing Kossoff to produce the Schedules (defined below), appear and testify under oath at a meeting of creditors pursuant to section 341 of the Bankruptcy Code (and any adjournments of same), and produce the remaining categories of Requested Information within his possession, custody, and control.

## BACKGROUND[2]

### A.    Commencement of the Debtor's Case

1.    On April 13, 2021 (the "Petition Date"), creditors of the Debtor (collectively, the "Petitioning Creditors") filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Involuntary Petition") against the Debtor in the above-captioned case (the "Chapter 7 Case").

2.    Prior to the Petition Date, the Debtor operated as a law firm located at 217 Broadway in New York City, New York (the "Premises") and serviced clients in the real estate industry. Docket No. 26-4 ¶ 10. The Debtor held itself out as providing full-service real estate legal services specializing in both litigation and transactional matters related to areas of real property law, including leasing, sale and acquisition of real property interests, commercial landlord tenant matters, real estate litigation, and city, state and federal agency regulatory matters. *Id*.

---

[2]    A more expansive recitation of the background of the case is contained in the *Application for an Order (A) Designating Mitchell H. Kossoff as the Responsible Officer of the Debtor and (B) Compelling Him to (1) Produce Information Requested by the Chapter 7 Trustee; (2) Appear for Examinations Under Oath at the Bankruptcy Code Section 341 Meeting of Creditors; and (3) Otherwise Cooperate with the Chapter 7 Trustee* [Docket No. 36] (the "Designation Motion").

3.      The Petitioning Creditors are clients of the Debtor and together assert claims for "Unreturned IOLA Funds" and "Misappropriated IOLA Funds" totaling approximately $8 million [Docket No. 1].  Other former clients have also asserted similar claims against the Debtor, such that known claims for missing escrow funds total approximately $17 million.

4.      The Debtor did not appear in response to the Involuntary Petition, and on May 11, 2021, this Court entered the *Order for Relief and Order to File Schedules and Other Documents* [Docket No. 14] (the "Order for Relief").

5.      The Order for Relief directs the Debtor to file "all schedules, statements, lists and other documents that are required under the Federal and Local Rules of Bankruptcy Procedure" (the "Schedules") no later than May 25, 2021 [Docket No. 14].

6.      On May 12, 2021, Mr. Togut was appointed as the Chapter 7 Interim Trustee of the Debtor, accepted his appointment, and duly qualified.

7.      The Debtor has not yet filed any of the Schedules.

8.      Pleadings filed by Kossoff in this case contain representations that Kossoff is the founding and sole managing member of the Debtor, and the person with the most knowledge of the Debtor's records and affairs.  *See, e.g.*, Docket Nos. 30, 30-1.

**B.      The Trustee's Attempts to Obtain Discovery from Kossoff**

9.      The Trustee has sought Kossoff's assistance in collecting the Debtor's documents and information, which is needed for the Trustee's investigation of the Debtor's affairs.  Among other things, the Trustee has requested that Kossoff produce categories of the Debtor's documents and information (the "Requested Information"), including:

a.  List of the Debtor's bank accounts with account numbers;

b.  Bank records;

c.  Cash receipts journals;

d.  Cash disbursements journals;

e.  Credit card records;

f.  Client lists;

g.  List of accounts receivable and amounts;

h.  Records required pursuant to N.Y. Code of Professional Responsibility Rule 1.15 (22 N.Y.C.R.R. § 1200.0), including records of all deposits and withdrawals from accounts specified in subsection (b);

i.  Inventories of seized records provided by law enforcement;

j.  All of these documents and information are required by the Order for Relief and Bankruptcy Rule 1007; and

k.  Other documents as requested by the Trustee.

10.    Kossoff has repeatedly told this Court and the Trustee that he is unwilling to identify or produce documents to the Trustee and that he will assert a privilege against self-incrimination under the Fifth Amendment unless this Court grants him broad immunity because he is being investigated by the Manhattan District Attorney (the "DA").[3]  Indeed, in response to the Trustee's requests, Kossoff has consistently asserted a blanket Fifth Amendment privilege.  *See, e.g.,* Docket No. 30.

C.    **The Trustee's Rule 2004 Motions and Related Orders**

11.    On May 24, 2021, the Trustee filed the *Chapter 7 Interim Trustee's Ex Parte Application for an Order (I) Directing the Preservation of Documents and Recorded*

---

[3]    Kossoff has recently advised that an investigation by the United States Attorney for the Eastern District of New York has been terminated.

*Information and (II) Authorizing the Issuance of Subpoenas for the Production of Documents and Depositions Testimony Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Docket No. 26] (the "<u>Rule 2004 Motion</u>").

12.     On May 26, 2021, counsel for the Debtor, Kossoff, and Kossoff's affiliated entity Tenantracers, LLC filed an opposition to the Rule 2004 Motion, asserting that "Mr. Kossoff intends to invoke his Fifth Amendment privilege against self-incrimination and will refuse to answer questions that may tend to incriminate him." *See* Docket No. 30 p. 2.  He also asserted that "Mr. Kossoff alone would be the only person to properly identify, collect, describe and submit documents to the Bankruptcy Court or its Trustee. *Id*. p. 3.

13.     Pursuant to the Initial Rule 2004 Order, this Court conducted a preliminary injunction hearing on May 27, 2021.

14.     On June 4, 2021, Walter Mack, Kossoff's counsel, filed the *Objection to Preliminary Injunction Order and Trustee Issuance of Subpoenas for Testimony and Documents* [Docket No. 48].

15.     Pursuant to the *Order Scheduling Final Hearing to Consider Injunctive Relief* [Docket No. 33], the Court held a final hearing to consider the injunctive relief sought by the Trustee on June 10, 2021.  Later that day, the Court entered the *Final Order Granting Injunctive Relief* [Docket No. 62].

16.     On June 18, the Trustee filed the *Chapter 7 Interim Trustee's Application for Entry of an Order Enforcing Automatic Stay and Directing Mitchell H. Kossoff and Tenantracers, LLC to Provide the Trustee with Access to the Fifth Floor Premises to Inspect and Take Possession of Property of the Estate* [Docket No. 85] (the "<u>Access Motion</u>").

17.     On July 12, 2021, the Court granted the Access Motion [Docket No. 117].

### D.    The Trustee's Designation Motion and Related Submissions

18.    On May 28, 2021, the Trustee filed the Designation Motion.  The

Designation Motion sought, among other things, an order directing Kossoff to produce

Debtor documents and information, including the Requested Information.

19.    On June 16, 2021, Kossoff filed the *Objection to Bankruptcy Trustee's*

*Application for an Order (A) Designating Mitchell H. Kossoff as the Responsible Officer of the*

*Debtor and (B) Compelling Him to (1) Produce Information Requested by the Chapter 7 Trustee;*

*(2) Appear for Examination Under Oath at the Bankruptcy Code Section 341 Meeting of*

*Creditors;  and (3) Otherwise Cooperate with the Chapter 7 Trustee and Motion to Quash All*

*Subpoenas Compelling Testimony or Document Production from Him, His Fiduciaries or His*

*Defense Team* [Docket No. 80] and the memorandum of law in support of thereof

[Docket No. 80-1].

20.    On June 22, 2021, the Trustee filed the *Chapter 7 Trustee's Reply to*

*Objection to Bankruptcy Trustee's Application for an Order (A) Designating Mitchell H.*

*Kossoff as the Responsible Officer of the Debtor and (B) Compelling Him to (1) Produce*

*Information Requested by Chapter 7 Trustee;  (2) Appear for Examination Under Oath at the*

*Bankruptcy Code 341 Meeting of Creditors;  and (3) Otherwise Cooperate with the Chapter 7*

*Trustee and Motion to Quash All Subpoenas Compelling Testimony and Document Production*

*from Him, His Fiduciaries or His Defense Team* [Docket No. 89] (the "Designation Reply").

21.    A hearing was conducted by the Court on June 24, 2021 to consider

the Designation Motion and the pleadings filed in connection with it (the "June 24

Hearing").  *See* Docket No. 86.

22.    During the June 24 Hearing, the Court observed "that blanket

assertions are insufficient and that the party asserting the privilege needs to explain at

least in circumstances where the applicability of the asserting the privilege isn't self-

evident why it applies." June 24, 2021 Hr'g Tr. at 8:18-21; *see also id.* at 23:15-23 ("…I do take the view and agree with the trustee that – and the law that a blanket invocation of the privilege is insufficient. . . . [T]he Court has to assess the implications of particular questions when asked and assess whether there is an evidence risk of incrimination posed by the inquiry. And if not, the Court has the duty of inquiry to determine whether or not there is such a reasonable risk presented."). The Court also observed that the Trustee is trying to do "very important work to try to help resolve the affairs of the estate." *Id.* at 41:21-25.

23.     On June 25, 2021, the Court entered the *Order Designating Mitchell H. Kossoff as the Responsible Officer of the Debtor* [Docket No. 93] (the "Designation Order"), which provides that "Kossoff is designated as the person responsible for performing the Debtor's duties in this case . . . ."

24.     The Designation Order provides, among other things, that counsel for the Trustee and Kossoff would promptly meet and confer in good faith concerning Kossoff's duties and the identity of the documents Kossoff will produce to the Trustee, including the Requested Information and any and all copies and / or electronic back-up materials of them, and describe which items he will not produce to the Trustee. *See* Docket No. 93.

25.     The Designation Order further provides that "if Kossoff takes the view that identifying documents he possesses would violate his Fifth Amendment right of self-incrimination, Kossoff shall so state, with as specific reference as possible consistent with his Fifth Amendment privilege concern to the records or types of records at issue." *Id.*

26.     On June 25, 2021 and June 30, 2021, counsel for the Trustee and Kossoff met and conferred regarding Kossoff's duties and the identity of documents that Kossoff would be willing to produce to the Trustee.  *See* Docket No. 93.

27.     On July 1, 2021, the Trustee filed the *Notice of Filing of Meet and Confer Status Report Pursuant to June 25, 2021 Order* [Docket No. 105] (the "Status Report").

28.     As set forth in the Status Report, Kossoff's counsel produced three categories of Requested Information to the Trustee:  (1) a list of the Debtor's bank accounts with account numbers, though certain numbers appear to be incomplete; (2) inventories of records seized by law enforcement (which were prepared by law enforcement);  and (3) certain organizational documents of the Debtor, including the Debtor's articles of organization as filed with the New York Secretary of State and its operating agreement.[4]  *See* Docket No. 105.  In addition, Kossoff has agreed to allow the Trustee access to the offices located on the fifth floor of the Premises in order to collect responsive documentation.  *See id.*

29.     However, Kossoff has refused to produce any of the current, relevant Debtor's bank records, cash receipt journals, credit card records, and records that are required to be maintained by law firms pursuant to N.Y. Code of Professional Responsibility D.R. 9-102 (collectively, the "Additional Disputed Records").  *See id.*[5]

---

[4]   Counsel has also indicated that he will be willing to provide the Debtor's and Kossoff's tax returns to the extent that they have not been produced to the Trustee by third-parties.  *See id.*

[5]   On July 15, 2021, Kossoff's counsel permitted the Trustee's accountants to remove limited documents from the Fifth Floor Premises, as required by the Court's order granting the Access Motion.  However, with the possible exception of certain Debtor payable invoices and paid accounts receivable invoices, all that was made available were dated documents, none of which appear to be useful in determining what happened to the nearly $17 million of funds sought by creditors of the Debtor.  It would be imprudent to conclude that this was anything other than a calculated effort to masquerade the production of dated materials as compliance with Kossoff's duties.

Without conceding the existence or possession, custody, or control of the Additional Disputed Records, Kossoff refused to produce such documents absent an adjudication by the Court.

30.    Kossoff has also declined to prepare the Schedules, or to produce a list of accounts receivable, absent assurances from the Trustee that doing so would not constitute a violation of Kossoff's Fifth Amendment privilege. *See id.*[6] Kossoff has taken this position even though the Debtor issued invoices to its clients during the months immediately preceding the Petition Date.

## RESPONSE

### A.    The "Collective Entity" Doctrine Is Applicable Here

31.    As set forth in the Designation Motion, "an individual cannot avoid producing records of a collective entity, held by him in a representative capacity, even if those records would tend to incriminate him." *In re Grand Jury Proceedings (The John Doe. Co., Inc.),* 838 F.2d 624, 625 (1st Cir. 1988).

32.    In an effort to evade the application of the "collective entity" doctrine, Kossoff seems to argue, for the first time in the Kossoff Submission, that he and the Debtor, a professional limited liability company, are one and the same, either because the Debtor was a sole proprietorship or because the Debtor is "for all intents and purposes, the same as its sole shareholder Mitch Kossoff," against whom litigation is pending. Kossoff Submission at 3. For the reasons set forth below, both assertions are irrelevant and untrue.

---

[6]    While Kossoff has advised that no comprehensive client list is within his possession, custody, or control, he has declined to attempt to construct such a list based on his recollection or available documentation absent the assurances described here. *See id.*

### 1.    *The Debtor is Not a Sole Proprietorship*

33.    Contrary to the assertions contained in the Kossoff Submission, *see* Kossoff Submission at 2, the Debtor was organized as a professional limited liability company, not a sole proprietorship.  *See* Docket No. 116 Ex. 2 (Articles of Organization).[7]  Indeed, Kossoff produced the Debtor's "Articles of Organization of Kossoff, PLLC," which were filed with the New York Secretary of State, and the Kossoff, PLLC Operating Agreement [Docket No. 116], which demonstrate that the Debtor is a corporate entity separate and apart from Kossoff.

34.    As an initial matter, Kossoff's assertions are inconsistent with the Designation Order, in which this Court designated Kossoff as the responsible officer of the Debtor pursuant to Fed. R. Bankr. P. 9001(5).  The Designation Order is based upon, among other things, the Court's findings during the June 24 Hearing:  "So I just wanted to pause on that and note that the requirements of Rule 9001(5) and the condition for designation under that rule are plainly met.  The rules contemplate that, if the debtor is an entity, then acts required to be performed can be assigned to a designee."  *See* June 24, 202 Hr'g Tr. at 7:10-14.

35.    The Court's holding and the Designation Order are proper and now final.  Indeed, a professional limited liability company is a specific form of business organization governed by state statute.  *See generally* N.Y. Consol. Laws, Limited Liability Company Law § 101, *et seq.*; *see also id.* at § 1213  ("This chapter, except article

---

[7]    The Kossoff Submission appears to misunderstand the Trustee's earlier argument, suggesting that the Trustee somehow concedes the existence of the Debtor as a sole proprietorship.  *See* Kossoff Submission at 5 ("The Trustee has argued previously that even though the Debtor was a professional limited liability company operated essentially a sole proprietorship by Mr. Kossoff . . . ").  This slight of hand is incorrect.  The Trustee has simply observed that Kossoff's own submissions describe him as the natural first choice for designation pursuant to Bankruptcy Rule 9001(5).  *See, e.g.*, Docket No. 36 (citing Docket Nos. 30 and 30-1).  Further, the Trustee has made clear that the Trustee cited such statements "for the purposes of asserting that Kossoff can no longer suggest that the production would incriminate him by indicating a level of control."  Docket No. 36 at n.4.

eight and article thirteen, shall be applicable to a professional service limited liability

company except to the extent that the provisions thereof conflict with this article.").

36.     Also, New York state law permits a professional limited liability

company to have a single member.  *See* N.Y. Consol. Laws, Limited Liability Company

Law § 203(c)  ("At the time of its formation, a limited liability company must have at

least one member.").  Contrary to Kossoff's unsupported assertions to the contrary, a

single member professional liability company is not somehow transformed into, or

treated as, a sole proprietorship when doing so suits the needs of the sole member.

37.     Nevertheless, Kossoff ignores these clear distinctions and attempts

to argue that his role of sole managing member somehow defeats the realities of the

form of business organization that *he* chose for the Debtor.  In so doing, Kossoff places

improper reliance on *Braswell v. United States,* 487 U.S. 99 (1988).  In *Braswell,* the

Supreme Court explicitly held that the Fifth Amendment is never implicated when the

custodian is compelled to produce corporate records "regardless of how small the

corporation may be."  *Id.* at 109.  In *United States v. Moseley,* 832 F. Supp. 56 (W.D.N.Y.

1993), the district court addressed footnote 11 of the *Braswell* opinion, the same

language quoted in the Kossoff Submission, and noted that in *Braswell*, the Supreme

Court did not decide and "explicitly left open the question of 'whether the agency

rationale supports compelling a custodian to produce corporate records when the

custodian is able to establish, by showing . . . that he is the sole employee and officer of

the corporation, that the jury would inevitably conclude that he produced the records.'"

*See* 832 F. Supp. at 58 (quoting *Braswell,* 487 U.S. at 118, n.11) .

38.     Indeed, the *Moseley* court reasoned that the Second Circuit rejected

the suggestion in footnote 11 of *Braswell* with its decision in *In re Grand Jury Subpoenas

Dated October 22, 1991 and November 1, 1991,* 959 F.2d 1158 (2d Cir. 1992), which

expressly rejected the claim by the president and sole stockholder that the act of production would incriminate him, and it cited *Braswell* for the proposition that the custodian has no Fifth Amendment privilege even if he is the corporation's sole stockholder. *See* 832 F. Supp. at 59.

### 2. The State and Federal Litigations Pending Against Kossoff are Irrelevant to the Issues Here

39.     The Kossoff Supplement next inexplicably complains that the Trustee has failed to take steps to protect Kossoff in his individual defendant capacity in various civil litigations against him in state and federal courts. The Trustee has no such duty, and Kossoff's status in civil lawsuits is irrelevant to his obligations as the person responsible to perform the Debtor's duties in this case and the privilege issues being advanced by Kossff.

40.     The Trustee is trying to administer the Debtor's estate, and as part of that effort, he has filed numerous notices of bankruptcy and of the automatic stay in actions where the Debtor has been named as a defendant. Nothing more is required. The automatic stay is self-effectuating as to the Debtor, and none of those lawsuits may proceed against the Debtor. Kossoff is not the Debtor; nor has he established any right to the protections that the automatic stay provides to the Debtor and its estate. The automatic stay has no relevance to Kossoff's obligations under Bankruptcy Rule 9001(5) and the Designation Order.

### B. Kossoff Has Not Satisfied His Burden of Demonstrating Why Performing the Debtor's Duties Would Violate His Fifth Amendment Privilege

41.     The burden of establishing that the Fifth Amendment privilege applies in a particular setting rests on the party asserting it. *See, e.g., In re Schick,* 215 B.R. 4, 9 (Bankr. S.D.N.Y. 1997). Accordingly, Kossoff bears the burden of

demonstrating that the "act of production" doctrine is applicable and that no other exception applies. A blanket assertion of the Fifth Amendment privilege is insufficient to satisfy this burden. *See id.* at 11 n.10. Nor are conclusory assertions sufficient. *See id.* at 9.

42. With only blanket invocations of the Fifth Amendment privilege and conclusory statements, Kossoff has failed to satisfy his burden. Nor can he satisfy this burden. As set forth in greater detail in the Designation Motion and Designation Reply, case law makes clear that the actions and productions sought by the Trustee are not self-incriminatory testimony shielded by the "act of production" doctrine, and even if they were, exceptions would apply that require production.

43. *United States v. Hubbell*, 530 U.S. 27 (2000), upon which Kossoff relies, is distinguishable and does not alter this analysis. Unlike here, the act of production was deemed incriminating in *Hubbell* because the purpose of the government's subpoena was to determine whether defendant complied with a prior plea agreement that required him to turn over all relevant materials to the government. *Id.* at 30. Thus, if the *Hubbell* defendant produced any documents at all, it would indicate that he had not fully complied with the plea agreement. *Id.* at 42.

44. In *In re Bear Stearns & Co., Inc. v. Wyler*, 182 F. Supp. 2d 679 (N.D. Ill. 2002), the court refused to "make a leap of faith from [defendant's] rather unadorned evocation of *Hubbell* to the incriminating nature of the production at issue in the instant case." *Id.* at 683 (relating to wire transfer records, telephone records, and bank records). In addition, in *Hubbell,* the government had no prior knowledge of either the existence or the whereabouts of thousands of pages of documents produced, 530 U.S. at 45, whereas in this case, the existence of the documents is a "foregone conclusion," because

14

they are required to have been maintained and they, or copies of them, have been seized by the DA.

45.     In light of Kossoff's failure to satisfy his burden, the Trustee respectfully requests that the Court enter an order directing Kossoff to: produce the Schedules and unequivocally represent in writing to the Court and the Trustee which of the Requested Information, whether in original, copy, electronic or other form, is in his possession or control; appear and testify under oath at a meeting of creditors pursuant to section 341 of the Bankruptcy Code (and any adjournments of same); and produce the remaining categories of Requested Information within his possession, custody, and control.

### 1.     *Kossoff's Blanket Fifth Amendment Invocation Regarding the Schedules Is Improper and Without Merit*

46.     The Kossoff Submission fails to demonstrate that completing the Schedules would amount to self-incriminating testimony entitled to protection under the "act of production" doctrine.

47.     As an initial matter, as this Court has recognized, a blanket invocation of the privilege is improper. *See* June 24, 2021 Hr'g Tr. at 8:16-21. Instead, a person who seeks to invoke the Fifth Amendment privilege in connection with bankruptcy schedules must come forward with credible reasons why answering the questions in the official form of the Schedules would pose real danger of incrimination, and this must be done on a question-by-question or request-by-request basis. *See id.* at 24:7-15 (citing Collier on Bankruptcy ¶ 344.033(b) and observing that "a debtor may not simply refuse to file required schedules on the basis of a blanket assertion of privilege").

48.     Furthermore, to satisfactorily demonstrate the applicability of the "act of production" doctrine, Kossoff must show that completing the Schedules would

be both testimonial and incriminating.  *See, e.g., Schick,* 215 B.R. at 9.  However, as to the specific requests in the Schedules, Kossoff offers nothing more than the statement that "[t]he preparation of schedules goes beyond the production of documents called for by a subpoena; it requires Mr. Kossoff to use 'the contents of his own mind' to create documents for the Trustee, including for example, a listing of all creditors known by him to exist.'"  Kossoff Submission at 7.

49.    As such, Kossoff only identifies one requested topic in the Schedules with any level of specificity – i.e., a listing of creditors – and even then offers, at best, conclusory assertions that doing providing such information would be incriminating.

50.    The Schedules request the identification of certain information and/or its location from business records that are not testimonial.  *See, e.g., Schick,* 215 B.R. at 10 ("[E]ven if the surrender of the Computer tacitly conceded its existence, location and authenticity . . . Schick has failed to demonstrate that this testimony would be incriminating.  It is not a crime to possess a laptop . . . . .  The existence [and possession] of the Computer . . . are irrelevant to the charges of bank and wire fraud.").

51.    Accordingly, Kossoff has not demonstrated that the Fifth Amendment may be invoked to prevent him from completing the Schedules.

**2.    *Kossoff Should Be Compelled to Produce the Additional Disputed Records.***

52.    The Kossoff Submission also fails to satisfy Kossoff's burden of demonstrating that the production of the Additional Disputed Records would be both incriminating and testimonial.

53.    Kossoff has admitted that files containing responsive information were seized by the District Attorney pursuant to a search warrant that was executed

upon the Debtor's office, Kossoff, and Tenantracers. *See* Docket No. 30-1 at 3; Docket No. 116. Courts have recognized that the production of documents that are already in the hands of the government agents conducting the investigation cannot be incriminating. *See Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974). In addition, these records are generally identified on the inventories of the items seized by the DA. *See* Docket No. 116, Ex. 2. However, the Kossoff Submission makes no attempt to explain how such a principle is inapplicable here.

54.    Further, though Kossoff takes the new and inconsistent position in the Kossoff Submission that the Debtor "had more than several individuals who served as document custodians comfortable with the books, records and storage systems of the firm, but not Mitchell Kossoff," Kossoff Submission at 6, Kossoff has been designated by this Court as the person responsible for producing the Requested Information, and he has already conceded his control over the Requested Information. *See* Docket No. 30 at 3 (noting that "Mr. Kossoff alone would be the person to properly identify, collect, describe and submit documents to the Bankruptcy Court or its Trustee"); Docket No. 30-1 at ¶ 4 ("The only person who has knowledge, experience and information concerning these entities is Mr. Kossoff himself.").

55.    The Trustee respectfully submits that the Court should reject Kossoff's apparent effort to have the Court disregard its findings and the Designation Order, and force the Trustee to find another person, if any, with access to and knowledge of the Requested Information.

56.    Where, as here, the existence and location of documents to be produced is a "foregone conclusion" – i.e., the requesting party can demonstrate that it knew before making the request that the documents existed and that the producing party possessed them – the act of producing the documents is considered to be a

17

foregone conclusion and therefore not sufficiently testimonial to be protected by the

Fifth Amendment. *See, e.g., Matter of Application to Quash a Grand Jury Subpoena Duces*

*Tecum, Dated December 28, 1992,* 157 Misc. 2d 432, 440 (Sup. Ct. N.Y. City Mar. 5, 1993).

57.    As described above, the Kossoff Submission's reliance on *United*

*States v. Hubbell,* 530 U.S. 27 (2000), is misplaced here because that case is

distinguishable.  In *Hubbell*, the purpose of the government's subpoena was to

determine whether the defendant had complied with an earlier plea agreement that

required him to turn over all relevant material to the government. *See id.* at 30.  That

simply is not the scenario before this Court.  Unlike here, in *Hubbell,* the government

had no prior knowledge of either the existence or the whereabouts of thousands of

pages of documents. *See id.* at 45.  Here, the existence of the Requested Information is a

"foregone conclusion."[8]

58.    Even if the act of producing the Additional Disputed Records were

both incriminating and testimonial (which it is not), Kossoff ignores that the "required

records" exception "requires production even if the compelled production is testimonial

and incriminating. *Schick,* 215 B.R. at 11.  All of the Additional Disputed Records are

precisely the type of materials that fit within the "required records" exception.

59.    Specifically, N.Y. Code of Professional Responsibility Rule 1.15 (22

N.Y.C.R.R. § 120), which is one of the categories of documents sought by the Trustee,

covers the balance of the Additional Disputed Records. *See* 22 N.Y.C.R.R. § 1200.0 at

Rule 1.15(d)(1)(i), (ii), (vi), and (viii) (covering certain bank account records, copies of all

records showing payments to persons not in the lawyer's regular employ, and bank

statements and related materials).

---

[8]    The DA has refused to voluntarily provide the Trustee with access to the Requested Information that
it has sized.

60.     The "required records" exception is no less applicable where the

obligation is imposed on the entity, but the subject of the criminal investigation is an

individual or officer.  *See, e.g., In re ICS Cybernetics, Inc.*, 107 B.R. 821, 831 (Bankr.

N.D.N.Y. 1989) ("The Court grants that portion of the Committee's motion as it relates

to the production of required records both corporate and personal, such as those under

the New York Bus. Corp. Law (McKinney 1986), e.g., §§ 402 (certificate of

incorporation), 624 (corporate books, records and minutes), Title 11 and Title 26 of the

United States Code and other applicable statutes brought to the Court's attention by

way of written affidavit.");  N.Y. Bus. Corp. Law § 624(a) (requiring corporation to keep

books and records and minutes);  *see also Schick,* 215 B.R. at 11 (reasoning that record

keeping requirements on attorneys would satisfy the "required records" exception

where Schick was a licensed attorney who often received money from and on behalf of

third-parties, which he deposited into his firm or individual attorney accounts).[9]

61.     Accordingly, Kossoff should be compelled to produce all of the

Additional Disputed Records within his possession, custody, or control.[10]

### 3.     *Kossoff Should Be Compelled to Produce Client Lists and Lists and Amounts of Accounts Receivable*

62.     As set forth in the Status Letter, Kossoff continues to refuse to

produce lists and amounts of the Debtor's accounts receivable, or to provide a client list

to the Trustee.  *See* Docket No. 105.  For the reasons set forth in the Designation Motion,

Designation Reply, and the Access Motion, and for the same reasons discussed in

---

[9]     The *ICS Cybernetics* court observed that the corporate debtor's shareholder, director, and officer, could not assert privilege over questions concerning the debtor's original A-3 schedule or those concerning the state of the debtor's incorporation, "since both concern required records under section 521(1) of the Code and the New York Business Corporation Law, respectively."  *See* 107 B.R. 829.

[10]    Kossoff's assertions about his resignation from the New York State Bar and what the Grievance Committee of the Bar has or has not chosen to know are irrelevant to the issues before this Court.

Section B.2 above, such records are not subject to the Fifth Amendment privilege, and the Kossoff Submission does not even mention them. *See generally* 22 N.Y.C.R.R. § 1200.0 at Rule 1.15(d) (requiring the maintenance of, among other things, certain client and billing records). Kossoff's refusal to produce client lists and accounts receivable information is especially improper and egregious given that the Debtor issued invoices to clients during the months preceding the Petition Date. For this reason, Kossoff has failed to satisfy his burden to invoke the Fifth Amendment privilege as to the client lists and the accounts receivable information.

### C.    Kossoff Has Shown No Basis to Quash the Third-Party Subpoenas

63.    Kossoff's request in the Kossoff Submission to quash subpoenas issued by the Trustee to internet providers and certain of Kossoff's relatives is procedurally improper, irrelevant to Kossoff's obligations pursuant to the Designation Order, and should be rejected.

64.    Bankruptcy trustees are granted a virtually unfettered right to inquire into all transactions and occurrences that relate to a debtor, for it is only in this manner that he can reasonably be expected to discover the existence and location of assets of the estate. *See In re Kroh,* 80 B.R. 488, 491 (Bankr. W.D. Miss. 1987) (citation omitted). A Rule 2004 examination may be made of any entity or person with knowledge of the debtor's acts, property, liabilities, or financial affairs relating to the bankruptcy proceedings. *See, e.g., In re Valley Forge Plaza Assocs.,* 109 B.R. 669, 674 (E.D. Pa. 1990); *In re Fearn,* 96 B.R. 135, 138 (Bankr. E.D. Ohio 1989). Emphasizing the broad purpose of Rule 2004, courts have been inclined to allow examination of any third party who is shown to have had dealings with the debtor. *See In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd,* 17 F.3d 600 (2d Cir. 1994); *In re Fin. Corp. of Am.,* 119 B.R. 728, 733 (C.D. Cal. 1990).

65.    The Trustee has issued subpoenas to certain email providers and members of Kossoff's family, among others, pursuant to the express authority provided by this Court in its Initial Rule 2004 Order [Docket No. 27].  There is no reason to quash these subpoenas.

66.    Generally, a party has no standing to seek to quash a subpoena to someone who is not a party to the action.  *See* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2017);  *see also US Bank Nat'l Ass'n v. PHL Variable Ins. Co.,* No. 12 Civ. 6811, 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) ("A party lacks standing to challenge, on the grounds of relevance or burden, a subpoena served on a non-party.").  There is a narrow exception to this general rule where "the objecting party claims some personal right or privilege with regard to the documents sought."  9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459.

67.    Kossoff attempts to invoke certain privileges, including the attorney-client privilege, in support of his request to quash.  As the party asserting privilege, however, Kossoff bears the burden of establishing the applicability of that privilege.  *See, e.g., United States v. Mejia,* 655 F.3d 126, 132 (2d Cir. 2011).  Courts have held that this "burden is a heavy one, because privileges are neither lightly created nor expansively construed."  *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002,* 318 F.3d 379, 384 (2d Cir. 2003).

68.    Kossoff asserts, in a conclusory fashion, that the discovery requested by the Trustee's subpoenas seek Kossoff's privileged documents and information.[11]  He asserts attorney-client communications were conducted using "one

---

[11]    The Kossoff Submission notes, without citation, that the United States Department of Justice has a "firmly stated policy that its investigators avoid, unless essential, inquiries which could disrupt

21

of the very Internet Providers subpoenaed by the Trustee" but he fails to identify which, if any, of the email accounts were used for the other allegedly privileged communications. *See id.* He also has the ability to identify the dates, senders, and recipients of alleged privileged communications, but he has failed to do so. For this reason, Kossoff has failed to meet his burden to establish the applicability of any privilege concerning materials or communications that the Trustee seeks from third-parties. *See, e.g., Samad Bros., Inc. v. Bokara Rug Co.,* No. 09 Civ. 5843 2010 WL 5094344, at \*4 (S.D.N.Y. Nov. 30, 2010) (finding that the "mere assertion that '[d]ocuments responsive to virtually all the requests would [include] communications with [plaintiff's] counsel created in preparation for and during this lawsuit, which are protected by the attorney work product doctrine" is insufficient to sustain the burden on the motion to quash based on privilege).

69.    Moreover, any privileges that Kossoff may have in this regard do not require the subpoenas to be quashed. Indeed, the very authority cited by the Kossoff Submission, Fed. R. Civ. P. 45, makes clear that privileged information may be produced in the course of discovery. When that occurs, certain obligations arise, but none of them can be identified or implemented unless and until Kossoff provides any level of detail concerning the communications that he asserts are protected. *See* Fed. R. Civ. P. 45(e)(2)(B).

70.    Indeed, to the extent that Kossoff's position is that he continues to use such email accounts (or has continued to use such email accounts until recently), the contention is inconsistent with the contention that he lacks possession, custody, or

---

family privacy and cohesion." Kossoff Submission at 10. The Trustee respectfully submits that any such policy is irrelevant to the inquiry here and that such subpoenas are necessary in light of, among other things, Kossoff's continued refusals to cooperate with the Trustee.

control of sources of potentially responsive materials that could be searched. *See generally* Docket No. 30.

## CONCLUSION

The Trustee's efforts to investigate the Debtor's affairs, administer this estate, and respond to claims and demands of creditors and other stakeholders, cannot be impeded by Kossoff's improper blanket assertions of Fifth Amendment and other privileges, and Kossoff should be compelled to produce the balance of the Requested Information.

**WHEREFORE,** the Trustee respectfully requests entry of an order compelling Kossoff to perform all of the Debtor's duties, including: (1) complying with the Order for Relief, (2) producing the Requested Information to the Trustee, (3) appearing for an examination under oath at the Section 341 Meeting and at any adjournment thereof, and (4) cooperating fully with the Trustee; and granting such other relief as may be appropriate.

DATED:    New York, New York
           July 16, 2021

Respectfully submitted,
ALBERT TOGUT,
Not individually but solely in his capacity as
Chapter 7 Interim Trustee of
Kossoff PLLC
By His Counsel,
TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Neil Berger*
NEIL BERGER
MINTA J. NESTER
BRIAN F. SHAUGHNESSY
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000