TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Minta J. Nester
Brian F. Shaughnessy

*Attorneys for Albert Togut, Not Individually*
*But Solely in His Capacity as Chapter 7 Interim Trustee*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
| | : | |
| In the Matter | : | Chapter 7 |
| | : | Case No. 21-10699 (DSJ) |
| -of- | : | |
| | : | |
| KOSSOFF PLLC, | : | |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

-------------------------------------------------------------- X

## CHAPTER 7 INTERIM TRUSTEE'S OBJECTION TO MOTION
## FOR LIMITED STAY PENDING APPEAL OF AUGUST 5, 2021 ORDER

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .......................................................................................................................3

   I.   The Chapter 7 Case..........................................................................................................3

   II.  The Trustee's Attempts to Obtain Discovery from Kossoff .......................................4

   III. The Trustee's Rule 2004 Motion and Related Orders.................................................6

OBJECTION.............................................................................................................................13

   I.   Movants Have Not Demonstrated an Entitlement to the Requested Relief ..........13

       A.    Movants Have Little Chance of Success on Appeal ........................................14

       B.    The Trustee and Other Stakeholders Would  be Substantially
              Harmed by a Stay ..............................................................................................19

       C.    Movants' Showing of Irreparable Harm  Is Not Adequate to
              Justify the Requested Relief ..............................................................................23

       D.    The Public Interest Is Advanced By Enforcing the Order to Compel............24

   II.  Even if Movants Could Justify a Stay, a Bond Would be Required .......................25

## TABLE OF AUTHORITITES

**Cases**

*Battino v. Cornelia Fifth Avenue, LLC,*
   861 F. Supp. 2d 392 (S.D.N.Y. 2021) ..................................................................17

*Bellis v. United States,*
   417 U.S. 85 (1974) ..........................................................................................18

*de la Fuente v. DCI Telecom., Inc.,*
   269 F. Supp. 2d 237 (S.D.N.Y. 2003) ................................................................26

*In re Adelphia Communications Corp.,*
   361 B.R. 337 (Bankr. S.D.N.Y. 2007)...........................................................13, 25

*In re American Dev. Int'l Corp.,*
   188 B.R. 925 (N.D. Tex. 1995)...........................................................................15

*In re Baker,*
   No. 05-Civ-3487, 2005 WL 2105802 (E.D.N.Y. Aug. 31, 2005) .........................14

*In re Brandenburg,*
   No. 06-30709, 2007 WL 117391 (Bankr. E.D. Tenn. Jan. 10, 2007) ...................19

*In re C.W. Mining Co.,*
   636 F.3d 1257 (10th Cir. 2011)..........................................................................14

*In re Calpine Corp.,*
   No. 05-60200, 2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008)............... passim

*In re DJK Residential, LLC,*
   No. 08-10375, 2008 WL 650389 (S.D.N.Y. Mar. 7, 2008)...........................13, 25

*In re Grand Jury Proceedings (The John Doe Co., Inc.),*
   838 F.2d 624 (1st Cir. 1988) ..............................................................................24

*In re Jacques,*
   115 B.R. 272 (Bankr. Nev. 1990) .................................................................18, 19

*In re Metiom, Inc.,*
   318 B.R. 263 (S.D.N.Y. 2004) ...........................................................................25

*In re Salant Corp.,*
   176 B.R. 131 (S.D.N.Y. 1994) ...........................................................................15

*In re Savage & Assocs., P.C.,*
   2005 WL 488643 (S.D.N.Y. Feb. 28, 2005)......................................................25

*In re Smith,*
2009 WL 366577 (E.D.N.Y. Feb. 12, 2009) ........................................................13

*In re Three Grand Jury Subpoenas Duces Tecum Dated Jan. 29, 1999,*
191 F.3d 173 (2d Cir. 1999) ..............................................................................18

*In re WestPoint Stevens, Inc.,*
No. 06-Civ-4128, 2007 WL 1346616 (S.D.N.Y. May 9, 2007) .....................13, 26

*In re Westwood Cmty. Two Ass'n, Inc.,*
293 F.3d 1332 (11th Cir. 2002).........................................................................14

*In re Wright,*
220 B.R. 543 (S.D.N.Y. 1998) ...........................................................................19

*Int'l Trade Admin. v. Rensselaer Polytechnic Inst.,*
936 F.2d 744 (2d Cir. 1991)..............................................................................15

*Lattanzio v. COMTA,*
481 F.3d 137 (2d Cir. 2007)..............................................................................17

*Log Furniture, Inc. v. Call,*
180 Fed. Appx. 785 (10th Cir. 2006)..................................................................15

*South Edge LLC v. JPMorgan Chase Bank, N.A.,*
Nos. 2:11-CV-00240-PMP-RJJ, 2:11-CV-00301-PMP0RJJ, 2011 WL 1626567 (D. Nev.
Apr. 28, 2011).................................................................................................14

*Travelers Ins. Co. v. H.K. Porter Co.,*
45 F.3d 737 (3d Cir. 1995)................................................................................15

*United States v. Doe,*
465 U.S. 605 (1984) .........................................................................................17

**Statutes**

11 U.S.C. § 1109(b) .............................................................................................15

11 U.S.C. § 521 ...................................................................................................15

11 U.S.C. § 704(a)(1)............................................................................................22

**Rules**

22 N.Y.C.R.R. § 1200.0 ...............................................................................5, 10, 22

Fed. R. Bankr. P. 8002 .........................................................................................16

Fed. R. Bankr. P. 8007(a)(1)(B) ............................................................................13

TO THE HONORABLE DAVID S. JONES,
UNITED STATES BANKRUPTCY JUDGE:

Albert Togut, not individually but solely in his capacity as Chapter 7

Interim Trustee (the "Trustee") of the estate of Kossoff PLLC (the "Debtor"), by his

counsel, Togut, Segal & Segal LLP, hereby submits this objection (the "Objection") to

the *Debtor's Motion for Limited Stay Pending Appeal of the August 5, 2021 Order Holding the*

*Fifth Amendment Privilege Against Self-Incrimination Inapplicable to Debtor and Compelling*

*Mitchell Kossoff to Create Documents, to Appear for Examination at the Creditor Committee*

*Meeting, and to Produce Documents and Other Information* [Docket No. 147] (the

"Motion"), filed by the Debtor and Mitchell H. Kossoff ("Kossoff" and together with the

Debtor, "Movants"), and respectfully states:

## PRELIMINARY STATEMENT[1]

Since his appointment, the Trustee's "very important work to help resolve

the affairs of the estate"[2] has been continuously impeded by Kossoff's improper

demands for a grant of immunity in exchange for his production of Debtor documents,

information, and cooperation.  Kossoff's attempts to avoid his obligations and to stall

the Trustee's investigation have become predictably formulaic, consisting of arguments

supported by nothing more than sweeping and inapplicable generalizations concerning

Fifth Amendment privileges and factually inaccurate assertions concerning the nature

of the Debtor's business structure and Kossoff's role as its representative.

On August 5, 2021, having previously designated Kossoff as a responsible

officer for the Debtor pursuant to Rule 9001(5) of the Federal Rules of Bankruptcy

---

[1]    Capitalized terms used but not defined in the Preliminary Statement shall have the meanings given to
them in subsequent sections of the Opposition.

[2]    *See* June 24, 2021 Hr'g Tr. at 41:21-25.

Procedure (the "Bankruptcy Rules"), the Court entered the Order to Compel, which directed Kossoff to fulfill his obligations to cooperate with and produce information to the Trustee, and in doing so, to act solely in his representative capacity. In reaching its conclusions, the Court recognized several independent grounds to justify its sound rulings, including, but not limited to, the "collective entity" doctrine and the "required records" exception.

On August 18, 2021, Movants sought leave to appeal the Order to Compel.[3] With the Motion, Movants now seek to stay the enforcement of the Order to Compel pending the outcome of their appeal.

The Motion is yet another ill-fated attempt to delay Kossoff's compliance with his court-ordered obligations and the Trustee's investigation. Movants have not and cannot establish any possibility of success on appeal: no new facts, law or error are identified in the Motion. Indeed, the Motion is akin to an improper motion for reconsideration.

Moreover, on balance, the remaining factors to be considered in connection with a stay pending appeal weigh heavily against granting the Motion:

 (i)  the Debtor's estate (the "Estate") and its stakeholders risk substantial harm as a result of the requested relief;

 (ii)  Kossoff will not suffer any irreparable injury concerning any Fifth Amendment privileges if the Order to Compel is enforced because none are available to him when complying with the Order to Compel;[4]

---

[3]  The Trustee has filed and served an objection to Movants' motion for leave to appeal. *See* Ex. "1" annexed hereto.

[4]  Notably, as a collective entity, the Debtor has no Fifth Amendment protections at issue here.

(iii)    there is no public interest in fostering Kossoff's refusal to comply with a lawful order that will facilitate the Trustee's investigation concerning $17 million of client trust funds for which Kossoff, an attorney, has failed to account;  and

(iv)    Kossoff has failed to propose posting any type of bond or other undertaking, as required by Bankruptcy Rule 8007.

Accordingly, the Trustee respectfully submits that the Motion should be denied.  However, to the extent that the Court is inclined to permit a stay pending appeal, Kossoff should be required to comply with Bankruptcy Rule 8007 and to post a bond in favor of the Trustee in the amount of not less than $17 million.

## BACKGROUND

### I.    The Chapter 7 Case

1.    On April 13, 2021 (the "Petition Date"), creditors of the Debtor (collectively, the "Petitioning Creditors") filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Involuntary Petition") in the United States Bankruptcy Court for the Southern District of New York (the "Court") against the Debtor in the above-captioned case (the "Chapter 7 Case").

2.    Prior to the Petition Date, the Debtor operated as a law firm located at 217 Broadway in New York City, New York, and serviced clients in the real estate industry.  *See* Docket No. 26-4 ¶ 10.  The Debtor held itself out as providing full-service real estate legal services specializing in litigation and transactional matters related to areas of real property law, including leasing, sale and acquisition of real property interests, commercial landlord tenant matters, real estate litigation, and city, state and federal agency regulatory matters.  *See id.*

3.    Contrary to the assertion in the Motion (and the inaccurate concept of a unity of identity that Kossoff has repeatedly sought to convey), *see* Mot. at 1, Kossoff was not the sole proprietor of the Debtor.  Rather, the Debtor was a professional limited liability company, organized under the laws of New York, and Kossoff was its sole managing member.  *See* Docket No. 116, Ex. 3 (Articles of Organization and Operating Agreement); *see also* Docket No. 30;  Docket No. 30-1.

4.    The Petitioning Creditors are clients of the Debtor and together assert claims for "Unreturned IOLA Funds" and "Misappropriated IOLA Funds" totaling approximately $8 million [Docket No. 1].  Other former clients have also asserted similar claims against the Debtor, such that known claims for missing escrow funds total approximately $17 million.

5.    The Debtor did not appear in response to the Involuntary Petition, and on May 11, 2021, this Court entered the *Order for Relief and Order to File Schedules and Other Documents* [Docket No. 14] (the "Order for Relief").

6.    The Order for Relief directs the Debtor to file "all schedules, statements, lists and other documents that are required under the Federal and Local Rules of Bankruptcy Procedure" (the "Schedules") no later than May 25, 2021.  *See* Docket No. 14.

7.    On May 12, 2021, Mr. Togut was appointed as the Chapter 7 Interim Trustee of the Debtor, accepted his appointment, and duly qualified.

8.    The Debtor has not yet filed any of the Schedules.

## II.    The Trustee's Attempts to Obtain Discovery from Kossoff

9.    The Trustee has sought Kossoff's assistance in collecting the Debtor's documents and information, which is needed for the Trustee's investigation of the Debtor's affairs.  Among other things, the Trustee has requested that Kossoff

produce categories of the Debtor's documents and information (the "Requested Information"), including:

    a.   List of the Debtor's bank accounts with account numbers;

    b.   Bank records;

    c.   Cash receipts journals;

    d.   Cash disbursements journals;

    e.   Credit card records;

    f.   Client lists;

    g.   List of accounts receivable and amounts;

    h.   Records required pursuant to N.Y. Code of Professional Responsibility Rule 1.15 (22 N.Y.C.R.R. § 1200.0, including records of all deposits and withdrawals from accounts specified in subsection (b);

    i.   Inventories of seized records provided by law enforcement;

    j.   All of these documents and information are required by the Order for Relief and Bankruptcy Rule 1007; and

    k.   Other documents as requested by the Trustee.

10.    Kossoff has repeatedly told the Bankruptcy Court and the Trustee that he is unwilling to identify or produce documents to the Trustee and that he will assert a privilege against self-incrimination under the Fifth Amendment unless the Bankruptcy Court grants him broad immunity because he is being investigated by the Manhattan District Attorney (the "DA").[5]  Indeed, in response to the Trustee's requests, Kossoff has consistently asserted a blanket Fifth Amendment privilege. *See, e.g.,* Docket No. 30.

---

[5]    Kossoff has recently advised that an investigation by the United States Attorney for the Eastern District of New York has been terminated.

### III.    The Trustee's Rule 2004 Motion and Related Orders

11.    On May 24, 2021, the Trustee filed the *Chapter 7 Interim Trustee's Ex Parte Application for an Order (I) Directing the Preservation of Documents and Recorded Information and (II) Authorizing the Issuance of Subpoenas for the Production of Documents and Depositions Testimony Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Docket No. 26] (the "Rule 2004 Motion").

12.    Also on May 24, 2021, the Court entered the *Order Authorizing Trustee to Issue Subpoenas and Obtain Testimony and for Injunctive Relief* [Docket No. 27] (the "Initial Rule 2004 Order").

13.    On May 26, 2021, counsel for the Debtor, Kossoff, and Kossoff's affiliated entity Tenantracers, LLC filed an opposition to the Rule 2004 Motion, asserting that "Mr. Kossoff intends to invoke his Fifth Amendment privilege against self-incrimination and will refuse to answer questions that may tend to incriminate him." *See* Docket No. 30 p. 2.  He also asserted that "Mr. Kossoff alone would be the only person to properly identify, collect, describe and submit documents to the Bankruptcy Court or its Trustee.  *Id*. at p. 3.

14.    Pursuant to the Initial Rule 2004 Order, this Court conducted a preliminary injunction hearing on May 27, 2021.

15.    On June 4, 2021, Walter Mack, Kossoff's counsel, filed the *Objection to Preliminary Injunction Order and Trustee Issuance of Subpoenas for Testimony and Documents* [Docket No. 48].

16.    Pursuant to the *Order Scheduling Final Hearing to Consider Injunctive Relief* [Docket No. 33], the Court held a final hearing to consider the injunctive relief

sought by the Trustee on June 10, 2021.  Later that day, the Court entered the *Final Order Granting Injunctive Relief* [Docket No. 62].[6]

## IV.    The Designation Order and Related Filings

17.    On May 28, 2021, the Trustee filed the *Application for an Order (A) Designating Mitchell H. Kossoff as the Responsible Officer of the Debtor and (B) Compelling Him to (1) Produce Information Requested by the Chapter 7 Trustee;  (2) Appear for Examinations Under Oath at the Bankruptcy Code Section 341 Meeting of Creditors;  and (3) Otherwise Cooperate with the Chapter 7 Trustee* [Docket No. 36] (the "Designation Motion").  The Designation Motion sought, among other things, an order directing Kossoff to produce Debtor documents and information, including the Requested Information.

18.    On June 16, 2021, Kossoff filed the *Objection to Bankruptcy Trustee's Application for an Order (A) Designating Mitchell H. Kossoff as the Responsible Officer of the Debtor and (B) Compelling Him to (1) Produce Information Requested by the Chapter 7 Trustee; (2) Appear for Examination Under Oath at the Bankruptcy Code Section 341 Meeting of Creditors;  and (3) Otherwise Cooperate with the Chapter 7 Trustee and Motion to Quash All Subpoenas Compelling Testimony or Document Production from Him, His Fiduciaries or His Defense Team* [Docket No. 80] and the memorandum of law in support of thereof [Docket No. 80-1].

19.    On June 22, 2021, the Trustee filed the *Chapter 7 Trustee's Reply to Objection to Bankruptcy Trustee's Application for an Order (A) Designating Mitchell H. Kossoff as the Responsible Officer of the Debtor and (B) Compelling Him to (1) Produce*

---

[6]    The Trustee also filed a second motion based upon Bankruptcy Rule 2004;  specifically, on June 18, 2021, the Trustee filed the *Chapter 7 Interim Trustee's Application for Entry of an Order Enforcing Automatic Stay and Directing Mitchell H. Kossoff and Tenantracers, LLC to Provide the Trustee with Access to the Fifth Floor Premises to Inspect and Take Possession of Property of the Estate* [Docket No. 85] (the "Access Motion").  On July 12, 2021, the Court granted the Access Motion [Docket No. 117].

*Information Requested by Chapter 7 Trustee; (2) Appear for Examination Under Oath at the Bankruptcy Code 341 Meeting of Creditors; and (3) Otherwise Cooperate with the Chapter 7 Trustee and Motion to Quash All Subpoenas Compelling Testimony and Document Production from Him, His Fiduciaries or His Defense Team* [Docket No. 89].

20. A hearing was conducted by the Court on June 24, 2021 to consider the Designation Motion and the pleadings filed in connection with it (the "June 24 Hearing"). *See* Docket No. 86.

21. During the June 24 Hearing, the Court observed "that blanket assertions are insufficient and that the party asserting the privilege needs to explain at least in circumstances where the applicability of the asserting the privilege isn't self-evident why it applies." June 24, 2021 Hr'g Tr. at 8:18-21; *see also id.* at 23:15-23 ("…I do take the view and agree with the trustee that – and the law that a blanket invocation of the privilege is insufficient. . . . [T]he Court has to assess the implications of particular questions when asked and assess whether there is an evidence risk of incrimination posed by the inquiry. And if not, the Court has the duty of inquiry to determine whether or not there is such a reasonable risk presented."). The Court also observed that the Trustee is trying to do "very important work to try to help resolve the affairs of the estate." *Id.* at 41:21-25.

22. On June 25, 2021, the Court entered the *Order Designating Mitchell H. Kossoff as the Responsible Officer of the Debtor* [Docket No. 93] (the "Designation Order"), which provides that "Kossoff is designated as the person responsible for performing the Debtor's duties in this case . . . ."

23. The Designation Order is now final, having never been challenged after entry.

24.    The Designation Order provides, among other things, that counsel for the Trustee and Kossoff would promptly meet and confer in good faith concerning Kossoff's duties and the identity of the documents Kossoff will produce to the Trustee, including the Requested Information and any and all copies and/or electronic back-up materials of them, and describe which items he will not produce to the Trustee. *See* Docket No. 93.

25.    The Designation Order further provides that "if Kossoff takes the view that identifying documents he possesses would violate his Fifth Amendment right of self-incrimination, Kossoff shall so state, with as specific reference as possible consistent with his Fifth Amendment privilege concern to the records or types of records at issue." *Id.*

26.    On June 25, 2021 and June 30, 2021, counsel for the Trustee and Kossoff met and conferred regarding Kossoff's duties and the identity of documents that Kossoff would be willing to produce to the Trustee. *See* Docket No. 93.

27.    On July 1, 2021, the Trustee filed the *Notice of Filing of Meet and Confer Status Report Pursuant to June 25, 2021 Order* [Docket No. 105] (the "Status Report").

28.    As set forth in the Status Report, Kossoff's counsel produced three categories of Requested Information to the Trustee:  (1) a list of the Debtor's bank accounts with account numbers, though certain numbers appear to be incomplete; (2) inventories of records seized by law enforcement (which were prepared by law enforcement);  and (3) certain organizational documents of the Debtor, including the Debtor's articles of organization as filed with the New York Secretary of State and its

operating agreement.[7]  *See* Docket No. 105.  In addition, Kossoff has agreed to allow the Trustee access to the offices located on the fifth floor of the Premises in order to collect responsive documentation.  *See id.*

29.     However, Kossoff has refused to produce any of the current, relevant Debtor's bank records, cash receipt journals, credit card records, and records that are required to be maintained by law firms pursuant to N.Y. Code of Professional Responsibility D.R. 9-102[8] (collectively, the "<u>Additional Disputed Records</u>").  *See id.*[9] Without conceding the existence or possession, custody, or control of the Additional Disputed Records, Kossoff refused to produce such documents absent an adjudication by the Bankruptcy Court.

30.     Kossoff has also declined to prepare the Schedules, or to produce a list of accounts receivable, absent assurances from the Trustee that doing so would not constitute a violation of Kossoff's Fifth Amendment privilege.  *See id.*[10]  Kossoff has taken this untenable position even though the Debtor issued invoices to its clients during the months immediately preceding the Petition Date.

---

[7]   Counsel has also indicated that he will be willing to provide the Debtor's and Kossoff's tax returns to the extent that they have not been produced to the Trustee by third-parties, but he has not yet done so.  *See id.*

[8]   *See also* N.Y. Code of Professional Responsibility Rule 1.15 (22 N.Y.C.R.R. § 1200.0).

[9]   On July 15, 2021, Kossoff's counsel permitted the Trustee's accountants to remove limited documents from the Fifth Floor Premises, as required by the Court's order granting the Access Motion. However, with the possible exception of certain Debtor payable invoices and paid accounts receivable invoices, all that was made available were dated documents, none of which appear to be useful in determining what happened to the nearly $17 million of funds sought by creditors of the Debtor. It would be imprudent to conclude that this was anything other than a calculated effort to masquerade the production of dated materials as compliance with Kossoff's duties.

[10]  While Kossoff has advised that no comprehensive client list is within his possession, custody, or control, he has declined to attempt to construct such a list based on his recollection or available documentation absent the assurances described here.  *See id.*

V.    **The Order to Compel**

31.    On July 22, 2021, the Bankruptcy Court conducted a hearing to consider Kossoff's obligations (the "July 22 Hearing").  A true and correct copy of an excerpt of the transcript of the July 22 Hearing is attached hereto as Exhibit "2."

32.    On August 5, 2021, the Bankruptcy Court entered the *Order Compelling Mitchell H. Kossoff to (1) Produce Information and Documents Required by the Chapter 7 Trustee;  (2) Appear for Examination at Section 341 Meetings of Creditors;  and (3) Otherwise Cooperate with the Chapter 7 Trustee* [Docket No. 137] (the "Order to Compel"). Among other things, the Order to Compel provides that "the collective entity doctrine overrides and renders inapplicable privileges, including the Fifth Amendment privilege against self-incrimination and the act of production privilege, for acts of production compelled to be performed by Kossoff who, by reason of the Designation Order, is acting not in his individual capacity but in his representative capacity on behalf of the Debtor."

33.    The Order to Compel further directs Kossoff to:

   a.    "[N]ot individually, but in his representative capacity of the Debtor, . . . take all steps necessary to perform the Debtor's duties pursuant to the Order for Relief and the Designation Order, including the preparation of the Debtor's Schedules…;"

   b.    "[F]or the reasons set forth on the record of the July 22 Hearing, not individually but in his representative capacity as the Court-appointed responsible officer of the Debtor . . . take all steps necessary to obtain all of the Requested Information and the Additional Disputed

11

Records including but not limited to the known creditors of the Debtor, current and former clients of the Debtor, internal bank receipts and disbursements records, and accounts receivable records of the Debtor, and all IOLA records required to be maintained by the Debtor, in his possession, custody or control, and to produce them and/or cause them to be produced to the Trustee…;"

c.  "[F]or the reasons set forth on the record at the July 22 Hearing, . . . appear for examination under oath not individually but in his representative capacity on behalf of the Debtor at the Section 341 Meeting in this case and at any adjourned dates of such meeting…;"  and

d.  "[F]or the reasons set forth on the record at the July 22 Hearing, Kossoff, not individually but in his representative capacity, is directed to otherwise fully cooperate with the Trustee on behalf of the Debtor in accordance with Bankruptcy Code section 521…"

**VI.    The Appeal**

34.    On August 18, 2021, the Appellants filed a notice of appeal [Docket No. 144), seeking to commence an appeal the Order to Compel (the "Appeal").

35.    Also on August 18, 2021, the Appellants filed the *Motion for Leave to Appeal* [Docket No. 145] in the Bankruptcy Court, in which both the Debtor and Kossoff sought leave to appeal the Order to Compel.

36.    The Motion was docketed on the District Court's docket on August 24, 2021 [S.D.N.Y. Docket No. 3].

**OBJECTION**

37.     A stay pending appeal is recognized as "extraordinary relief," *In re DJK Residential, LLC,* No. 08-10375, 2008 WL 650389, at *5 (S.D.N.Y. Mar. 7, 2008), and is "only granted in limited circumstances."  *In re Smith,* 2009 WL 366577, at *2 (E.D.N.Y. Feb. 12, 2009) (citation omitted).

38.     For the reasons set forth herein, Movants have not and cannot demonstrate grounds for a stay pending the appeal of the Order to Compel.  Any stay should be conditioned on Kossoff posting a bond in favor of the Trustee of not less than $17 million to protect the Debtor's stakeholders who would be harmed by the stay requested in the Motion.

## I.     Movants Have Not Demonstrated an Entitlement to the Requested Relief

39.     In the context of a stay pending appeal, the "burden on the movant is a heavy one."  *DJK Residential,* 2008 WL 650389, at *2.  This heavy burden is satisfied only if the movant satisfies the following four factors (the "Factors"):  (1) the movant has a substantial possibility of success on the merits of the appeal;  (2) a stay would inflict no substantial injury on any other party;  (3) it would suffer irreparable injury if a stay is denied;  and (4) the public interest favors a stay.  *See In re Calpine Corp.,* No. 05-60200, 2008 WL 207841, at *4 (Bankr. S.D.N.Y. Jan. 24, 2008);  *In re WestPoint Stevens, Inc.,* No. 06-Civ-4128, 2007 WL 1346616, at *4 (S.D.N.Y. May 9, 2007).  Whether Movants are entitled to the relief they seek depends upon a balancing of these four factors.  *See In re Adelphia Communications Corp.,* 361 B.R. 337, 347 (Bankr. S.D.N.Y. 2007).

40.     In addition to those burdens, a party seeking a stay pending appeal must post a bond to protect persons who may suffer damages as a result of such stay.  *See* Fed. R. Bankr. P. 8007(a)(1)(B).

41. As demonstrated below, the Motion satisfies none of the four Factors. Quite the contrary: all of the Factors weigh heavily against granting the stay sought by the Motion.

### A.    Movants Have Little Chance of Success on Appeal

42. The Motion should be denied because Movants cannot demonstrate any substantial possibility of success. Indeed, the single most important factor for procuring a stay pending appeal or injunctive relief under Bankruptcy Rule 9005 is the likelihood of success on the merits. *See In re Baker*, No. 05-Civ-3487, 2005 WL 2105802, at *3 (E.D.N.Y. Aug. 31, 2005) (citation omitted).

### 1.    *The Debtor Lacks Standing to Appeal*

43. As an initial matter, the Debtor lacks standing to appeal for at least two reasons. As a result, no appeal by the Debtor would be successful.

44. ***First***, once a Chapter 7 trustee is appointed, a corporate debtor no longer authorized to bring an appeal. *See, e.g., In re C.W. Mining Co.*, 636 F.3d 1257, 1265 (10th Cir. 2011) ("[f]ollowing the appointment of a trustee in a corporate Chapter 7 bankruptcy, the corporation's former managers are not authorized to bring the corporation's appeal—even if that appeal contests of the very initiation of the bankruptcy itself"); *South Edge LLC v. JPMorgan Chase Bank, N.A.*, Nos. 2:11-CV-00240-PMP-RJJ, 2:11-CV-00301-PMP0RJJ, 2011 WL 1626567 (D. Nev. Apr. 28, 2011) (limited liability corporation debtors lack standing to file a notice of appeal after a trustee is appointed).

45. The rule that "'only the bankruptcy trustee may appeal an order from a bankruptcy court' was created 'as a means to control, in an orderly manner, proceedings'" in a Chapter 7 case. *In re C.W. Mining Co.*, 636 F. 3rd at 1262 (citing *In re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d 1332, 1334 (11th Cir. 2002)); *see also Log*

*Furniture, Inc. v. Call*, 180 Fed. Appx. 785, 787-88 (10th Cir. 2006) ("The only person with standing or legal capacity to represent [Debtor] in any litigation, including these appeals, is its Trustee.").

46.    ***Second***, the Debtor was not aggrieved by the Order to Compel.  To have standing to appeal a bankruptcy court order, a party must be "a party aggrieved" by that order.  *See, e.g., Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995); *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991).  "This person aggrieved requirement is more exacting than the requirements for a general Article III standing." *In re American Dev. Int'l Corp.*, 188 B.R. 925, 932 (N.D. Tex. 1995) (quotation omitted).  "Generally, only persons who are 'directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order." *Id.* (citation and internal quotation marks omitted).  Courts are guided by two factors:  (1) whether the appellant is a "party-in-interest" as defined in 11 U.S.C. § 1109(b);  and (2) does the appellant possess a pecuniary interest. *See In re Salant Corp.*, 176 B.R. 131, 135 (S.D.N.Y. 1994) (citation omitted).

47.    Here, the Debtor does not have standing to appeal the Order to Compel under this standard.  The Order to Compel plainly addresses only Kossoff's obligations in his representative capacity on behalf of the Debtor.  Consequently, the Debtor is not aggrieved because Debtor's property is not diminished, its burdens are not increased[11], and its rights are not impaired. *See Travelers Ins. Co.*, 45 F.3d at 742.

## 2.    *Movants Will Not Prevail in an Appeal of the Order to Compel*

48.    Even if the Debtor had standing to appeal the Order to Compel, which it does not for the reasons cited above, Movants' arguments lack merit.  Based on

---

[11]    All of the obligations contained in the Order to Compel are statutorily mandated. *See* 11 U.S.C. § 521.

the record of proceedings in this Court, there is no reasonable basis to conclude that Movants will prevail in the appeal of the Order to Compel, which granted relief that built upon the previously-entered Designation Order.

49.    In fact, the Movants appear to concede that their real concern is not with the relief granted in the Order to Compel, but rather with the factual findings underlying the Designation Order.  However, Movants did not appeal the Designation Order, which is now final and non-appealable.  *See* Fed. R. Bankr. P. 8002.  This failure is fatal to the arguments contained in the Motion.

50.    Indeed, the Motion is nothing more than a re-argument of the factually and legally incorrect arguments that Movants previously asserted in opposition to entry of the Designation Order.  Moreover, Movants fail to identify any factual or legal error committed by the Court in entering the Designation Order and the Order to Compel.  Indeed, the house of cards supporting Movants' request for a stay fails because the Designation Order is final.  Kossoff has been directed to act in a *representative capacity only*, and in that capacity, no Fifth Amendment privilege is available.  Therefore, no Fifth Amendment privilege will be waived by Kossoff's compliance with the Order to Compel.

51.    Moreover, nothing in the Motion casts doubt upon this Court's findings.  Instead, the Motion:  provides easily distinguishable case law; mischaracterized facts;  and makes sweeping and in applicable generalizations about the Fifth Amendment.

52.    Contrary to Movants' assertion, there is no real possibility of success of the Appeal of the Court's finding that the "collective entity" doctrine applied to the professional limited liability company.  *See* Mot. at ¶ 21.  Significantly, Movants also fail to acknowledge that Kossoff is the designated representative of the Debtor

16

pursuant to the final Designation Order.  Movants fail to address a single case cited by
the Court in support of its holding that rejected Movants' assertion that there is no
meaningful differentiation between Kossoff's own acts and those of the Debtor was
incorrect as a matter of law.  *See* July 22, 2021 Hr'g Tr. at 47:10-48:11 (citing, among
other cases *Lattanzio v. COMTA,* 481 F.3d 137, 140 (2d Cir. 2007) and *Battino v. Cornelia
Fifth Avenue, LLC,* 861 F. Supp. 2d 392, 408 (S.D.N.Y. 2021)).  Instead, Movants cite only
one case, where the owner of sole proprietorship invoked the Fifth Amendment to
avoid producing subpoenaed records.  *See* Mot. at ¶ 21 (citing *United States v. Doe,* 465
U.S. 605, 612-14 (1984));  *see also United States v. Doe,* 465 U.S. 605, 612-14 (1984) (finding
that owner of sole proprietorship could assert the act of production privilege to avoid
producing materials in response to subpoena).  However, Movants' attempts to marshal
facts to liken the Debtor to a sole proprietorship fail.  The Motion completely ignores
the fact that New York state law permits a limited liability company to have a sole
member, and that this fact alone cannot transform a registered PLLC into a different
corporate form upon the whim of the principal.  *See Lattanzio*, 481 F.3d at 140 ("Unlike a
sole proprietorship, a sole member limited liability company is a distinct legal entity
that is separate from its owner.");  *see also Battino*, 861 F. Supp. 2d at 408  ("It is black
letter law that a limited liability company exists as a separate entity from its members.")
(citation omitted).

53.     The Motion further argues, without citation support, that Kossoff
does not have access to necessary material and information to comply with the Order to
Compel.  *See* Mot. at ¶ 23.  This argument, too, is unlikely to succeed on appeal.  This
assertion contradicts Kossoff's own prior assertions that he would produce responsive
documents for review *in camera* (a point that Movants press on appeal).  Moreover, this
Court observed that Kossoff can direct the Debtor's accountants and other

representatives to supply him with the documents and information needed to comply with the Order to Compel, but he has chosen not to do that.

54.     Nor will Movants succeed on appeal based upon Kossoff's half-hearted and unsupported assertions concerning his employment status. *In re Three Grand Jury Subpoenas Duces Tecum Dated Jan. 29, 1999,* 191 F.3d 173 (2d Cir. 1999) is distinguishable because it involved former employees who had actually resigned from the corporation or had their employment terminated prior to the issuance of the relevant subpoenas. *See id.* at 174-75.  Here, Kossoff is the managing member of the Debtor, a law firm that is dissolving.  Accordingly, the situation here is more akin to *Bellis v. United States,* 417 U.S. 85, 96 n.3 (1974), where the Supreme Court found that a former managing partner of a dissolved law firm could not assert privilege over partnership records still in his possession during grand jury proceeding.  *See also* June 24, 2021 Hr'g Tr. at 9:1-12.

55.     Finally, the Motion asserts that Kossoff's completion of schedules will be deemed testimonial and therefore render him unable to assert Fifth Amendment privileges.  *See* Mot. at ¶ 25.  Here, too, Movants have little possibility of success on appeal.  Movants' argument conflates the waiver of the Fifth Amendment privilege with situations like the one here where the Fifth Amendment simply does not apply. Indeed, the position does not even find support in the cases identified in the Motion.  *In re Jacques,* 115 B.R. 272 (Bankr. Nev. 1990), cited in the Motion, does not provide support for the proposition that Kossoff risks waiving his Fifth Amendment privilege by preparing schedules in his representative capacity.  Instead, the *Jacques* court held that because the *individual debtor* was entitled to invoke the Fifth Amendment at a section 341 meeting, he should not be held in contempt for refusing to answer questions and he could also assert the Fifth Amendment regarding questions concerning the financial

18

statements and schedules that are required to be submitted under the Bankruptcy Code. *Jacques,* 115 B.R. at 273. Movants' reliance on *In re Brandenburg,* No. 06-30709, 2007 WL 117391 (Bankr. E.D. Tenn. Jan. 10, 2007) is also misplaced, as it similarly involved an individual debtor. The only case cited in the Motion on this topic that addressed a non-individual debtor was *In re Wright,* 220 B.R. 543 (S.D.N.Y. 1998). However, the *Wright* language cited by Movants simply means that a debtor may assert his Fifth Amendment rights in a bankruptcy proceeding to the extent such privileges apply. *See id.* at 544. Kossoff has no Fifth Amendment privilege while acting in his representative capacity pursuant to the Designation Order, as required by the Order to Compel. Given the procedural posture of the matter presented, the *Wright* court could constitute a waiver of Fifth Amendment rights. Ultimately, the *Wright* court dismissed the debtor's appeal on the ground that it lacked jurisdiction to determine what was essentially a request for an advisory opinion, but before doing so, the *Wright* court observed that there is a presumption against finding in favor of Fifth Amendment rights on the basis of prior testimony. *See id.*[12]

56.     In sum, Movants have failed to make a strong showing that they would succeed in appealing the Order to Compel.

**B.     The Trustee and Other Stakeholders Would be Substantially Harmed by a Stay**

57.     Kossoff's attempts to avoid his obligations have already caused the estate, and thereby the Debtor's stakeholders, significant time, costs and resources. Further delay caused by any stay also increases the risk that the Trustee will not be able to recover funds that were improperly transferred from the Debtor's accounts.

---

[12]   The *Wright* court also observed that the debtor was "seeking immunity under the guise of a protective order." *Id.*

58.    The Trustee cannot conduct a meaningful investigation without the requested materials.  While the Trustee has issued numerous subpoenas to third-parties, third-party document production will likely provide, at best, an incomplete and disjointed picture of the Debtor's affairs.  To date, the DA has resisted the Trustee's attempts to obtain copies of documents that it seized from the Debtor's premises.

59.    Without Kossoff's assistance and compliance with the Order to Compel, the Trustee cannot even be confident that he has a complete list of all of the Debtor's bank accounts.  Without that information, the Trustee cannot determine where all of the $17 million of missing funds was held, where it came from, or where it was transferred.  This includes transfers within the different bank accounts that the Debtor and/or Kossoff maintained at various times.  This missing information also impedes the Trustee's efforts to identify subsequent transferees from whom recoveries may be sought.  And while Kossoff seeks to obtain further unwarranted delays, statutes of limitation may be expiring and creditor rights are being prejudiced.

60.    The Trustee can try to obtain every piece of bank account information that may be in the possession of third parties, yet he still needs the Debtor's internal accounting records (*e.g.*, the Debtor's general ledger and QuickBooks files) to reconcile and understand the significance of that banking activity.  The Debtor's IOLA account statements, for instance, show numerous incoming and outgoing transfers.  However, without the Debtor's internal record keeping of those IOLA accounts, the Trustee will not be able to determine the source of deposits and disbursements, or the purpose of each transaction, because the account statements do not provide that information, for thousands of entries concerning transactions involving tens of millions of dollars.  The following examples, among many others, prove this point:

- The January 30, 2021 – February 26, 2021 account statement for the Debtor's JPMorgan Chase IOLA account, alone, lists dozens of deposits and additions totaling $2,218,219.20 and "electronic withdrawals" of $2,027,134.90, but does not contain any notations that would help the Trustee understand the purpose of the listed transactions, the identity of transferees of significant transfers, or whether the transactions were legitimate. *See* Ex. "3." The Requested Materials, including the Debtor's internal accountings, are needed to analyze these transactions.

- On September 24 and 25, 2020, the Debtor's IOLA account discloses a total payment of $500,000 (in two $250,000 payments) to law firm Nesenoff & Miltenberg, LLP. The references for both payments listed "302 Canal." During the relevant period, the total payments made into the IOLA account by 302 Canal and two individuals associated with 302 Canal, Jason Breitstone and David Shorenstein, total $322,501, significantly less than the total amount transferred to the Nesenoff firm. It is unclear why these transfers do not reconcile, whether there were additional payments made into the IOLA account that do not have a clear connection to these transactions, or whether the Debtor used funds that belonged to others to fund these transactions. *See* Ex. "4" at 2, 3, 6, 10, 15, 16.

- An April 2021 statement for the Debtor's Signature Bank IOLA and "Monogram Checking" accounts list dozens of transactions, many of which contain little or no detail. For example, there are dozens of deposits and payments listed that total more than $1 million with no detail other than check/wire numbers and random names – no purpose described, no recipient mentioned. There are numerous transactions simply listed as "Mobile Deposit." And there is also a "Misc Debit" of $47,725.83 on April 9, 2021. It is impossible to discern from these statements anything substantive concerning these transactions, or the dozens more that are listed, except that both the IOLA Account and checking account were emptied as of April 30, 2021. *See* Ex. "5" at 2, 5, 6, 7.

61.     For the same reasons described above, the Trustee needs the

Debtor's internal disbursement journals to identify: (i) the purpose of the cash receipts

and disbursements; (ii) how they may be linked to receipts and/or other

disbursements; (iii) the parties to those transactions; (iv) the obligations that were fully

or partially satisfied;  and (v) whether property or interests in property were acquired, and by whom.  All of these internal accountings are required to be maintained by law firms in New York pursuant to Rule 1.15 of the New York State Rules of Professional Conduct.  *See* 22 N.Y.C.R.R. § 1200.0.

62.    The Trustee likewise cannot determine whether certain of the Debtor's transactions are avoidable under the Bankruptcy Code (*e.g.*, as fraudulent transfers) without the Debtor's internal accounting records.  Identifying transferees and subsequent transferees through the Debtor's accounting records also would enable the Trustee to identify whether certain persons or entities are holding property / funds that constitute property of the Estate that should be turned over to the Trustee.  Those funds, if any, may be subject to claims of the transferee's own creditors – putting at risk the Trustee's ability to recover such funds.

63.    Moreover, without a complete, current client list from the Debtor, the Trustee cannot determine the full extent of the alleged misappropriation of funds or the corresponding scope of potential damages incurred by the Debtor's clients and creditors.  For example, the client list provided by Mack fails to provide any client contact information and is dated as of May 5, 2020, more than a year prior to the Bankruptcy Court's appointment of the Trustee.  *See* Ex. "6."

64.    Similarly, the Trustee needs the Debtor's internal accounts receivable reconciliations to enable him to send comprehensive and current payment demand letters.

65.    The Trustee needs the requested materials now.  Determining creditor recoveries is dependent on the Trustee's ability to conduct a forensic investigation "as expeditiously as is compatible with the best interests of parties in interest."  11 U.S.C. § 704(a)(1).  Without reliable internal records – *i.e.*, the Requested

22

Materials – the Trustee cannot do this quickly or efficiently.  The work is harder, takes much longer, and is much more expensive, all to the detriment of the Debtor's creditors/victims.  Indeed, because the Trustee has not yet obtained access to the Debtor's internal accounting records, the Trustee and his professionals have spent numerous hours during the past months trying, without success, to reconcile the Debtor's years of unexplained and suspect financial activity.  Those efforts have been exponentially more expensive than if the Trustee had been given immediate access to the Requested Materials.  Continued delay in access to this information will increase such costs to an already cash poor Estate, all to the detriment of the Debtor's creditors.

66.    Accordingly, contrary to the suggestions contained in the Motion, the Estate and its stakeholders face meaningful and significant harm if the requested relief is granted.

### C.    Movants' Showing of Irreparable Harm Is Not Adequate to Justify the Requested Relief

67.    A showing of irreparable harm is a "principal prerequisite for the issuance" of a stay under Bankruptcy Rule 8005.  *Calpine,* 2008 WL 207841, at *4 (citation omitted).  To constitute irreparable harm, the alleged injury must be "neither remote nor speculative, actual and imminent."  *Id.* at *4.  Moreover, the existence of irreparable harm is not dispositive where there is no substantial possibility of success on the merits.  *See In re General Motors Corp.,* 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009) ("I'll assume, without deciding, that the balancing approach is the more appropriate, but also note that it doesn't matter here, since the last three factors-likelihood of success, prejudice to those opposing the stay, and the public interest-so overwhelmingly compel denying the stay.").

68.    Movants assert that they would be irreparably harmed if the Order to Compel was enforced, because Fifth Amendment rights would be forever waived. To be clear, the only Fifth Amendment rights even arguably at issue are those of Kossoff because the Debtor is not a natural person and it does not have any ability to assert Fifth Amendment privileges.  In any event, as set forth above, such a harm is not sufficient to satisfy Movants' burden in light of the low possibility of success on the merits and the harm facing other parties if the Court granted the stay.  *See, e.g.*, *In re Grand Jury Proceedings (The John Doe Co., Inc.),* 838 F.2d 624, 625 (1st Cir. 1988) (finding that the Fifth Amendment does not permit an individual to "avoid producing records of a collective entity, held by him in a representative capacity, even if those records would tend to incriminate him").

69.    For these reasons, Movants have failed to satisfy the burden for showing an entitlement to the requested relief notwithstanding the potential harm alleged in the Motion.[13]

### D.    The Public Interest Is Advanced By Enforcing the Order to Compel

70.    Finally, Movants have not shown that the public interest favors a stay.  Rather, considerations of public interest weigh against a stay.

71.    The Trustee respectfully submits that no public interest is advanced by enabling an attorney to unjustifiably defy Court orders and to withhold information concerning millions of dollars missing from a law firm trust account.

72.    The public interest "cannot tolerate any scenario under which private agendas can thwart the maximization of value."  *Calpine,* 2008 WL 207841, at *7.

---

[13]    Indeed, Movants have not challenged the Court's findings concerning the "required records" doctrine.  For that reason, even if Movants were successful on their appeal, this unchallenged grounds of support for the Order to Compel would remain and Movants would be in the same situation they would be in if the Order to Compel were not stayed.

This fundamental principle strongly weighs in favor of denial of Movants' requested relief, particularly because Kossoff proposes to place the estate at risk without a bond.

73.    Similarly, courts have identified strong public interests in the swift and efficient resolution of bankruptcy proceedings, and in protecting the "finality of decisions, especially in a bankruptcy proceeding." *In re Savage & Assocs., P.C.*, 2005 WL 488643, at *2 (S.D.N.Y. Feb. 28, 2005) ("[P]ublic interest favors the expedient administration of the bankruptcy proceedings."); *In re Metiom, Inc.*, 318 B.R. 263, 272 (S.D.N.Y. 2004) ("The Court finds that the public interest in the expeditious administration of claims lacking a substantial possibility of success, outweighs the public interest in resolving issues presented here on appeal."); *Calpine,* 2008 WL 207841, at *6 (collecting cases); *DJK Residential,* 2008 WL 650389, at *4.  Both of these interests are served by the denial of the Motion and by authorizing the Trustee to move forward with his investigation and administration of the estate.  Denying a stay would thus promote respect for the courts and fair administration of justice.

74.    Accordingly, the Trustee respectfully submits that the Motion should be denied.

## II.    Even if Movants Could Justify a Stay, a Bond Would be Required

75.    Even if the Court were to find that Movants have satisfied all of the requirements justifying injunctive relief, which they have not, such relief cannot be granted unless Kossoff posts a bond to protect the Estate from the damages that might be caused by the delay resulting from the requested relief.

76.    Absent "exceptional circumstances," the appealing party must post a bond "at or near the full amount of the potential harm to the non-moving parties." *Adelphia,* 361 B.R. at 351.  Indeed, the bond requirement may not be eliminated or reduced unless doing so "does not unduly endanger the [prevailing party's] interest."

*de la Fuente v. DCI Telecom., Inc.,* 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003) (citations omitted).  Movants have failed to satisfy, let alone address, their heavy burden of providing concrete evidence why the Court should depart from the standard requirement of granting injunctive relief pending appeal only after the posting of a sufficient bond.  *Calpine,* 2008 WL 207841, at *7; *see also WestPoint,* 2007 WL 1346616, at *7.

77.     As set forth above, the delay imposed by the requested relief increases the risk that the Trustee will not be able to recover funds that were improperly transferred from the Debtor.  It has been alleged at least $17 million has gone missing from the Debtor's accounts, and proofs of claim continue to be filed in the Debtor's case.

78.     Accordingly, the Trustee respectfully requests that any stay be conditioned upon Kossoff posting of a bond in favor of the Trustee in the amount of not less than $17 million.

**[*concluded on following page*]**

## **CONCLUSION**

For all the reasons set forth above, the Trustee respectfully requests that

the Motion be denied, and that the Court enter any other and further relief as is just and

appropriate.

Dated:  New York, New York
        September 7, 2021

                                          ALBERT TOGUT,
not individually but solely in his capacity as
Chapter 7 Interim Trustee for
Kossoff PLLC
By His Counsel,
TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Neil Berger*
NEIL BERGER
MINTA J. NESTER
BRIAN F. SHAUGHNESSY
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000