TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Minta J. Nester
Brian F. Shaughnessy

*Attorneys for Albert Togut, Not Individually*
*But Solely in His Capacity as Chapter 7 Interim Trustee*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
In the Matter                     :        Chapter 7
                                  :        Case No. 21-10699 (DSJ)
         -of-                     :
                                  :
KOSSOFF PLLC,                     :
                                  :
                                  :
                       Debtor.    :
                                  :
------------------------------------------------------------ X

# CHAPTER 7 INTERIM TRUSTEE'S RESPONSE
# TO MOTION FOR ADEQUATE PROTECTION BY
# COLUMBUS PROPERTIES, INC. AND COLONNADE MANAGEMENT, CORP.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................4

   I.   The Chapter 7 Case........................................................................................................4

   II.  The Trustee's Attempts to Obtain a Client List................................................................6

   III. The Trustee's Client Files Motion....................................................................................7

   IV. The Trustee's Implementation of the Client Files Procedures .................................8

ARGUMENT .............................................................................................................................9

   I.   The Law Does Not Provide for the Relief Sought by the Landlord ......................10

      A.  The Landlord is an Unsecured Creditor and is Not Entitled to
          Adequate Protection Liens or Claims....................................................................10

      B.  The Landlord is Not Entitled to Relief under Section 365(d)(3)
          of the Bankruptcy Code ........................................................................................11

      C.  The Motion Ignores the Clear Application of Section 503(b)
          of the Bankruptcy Code ........................................................................................13

      D.  Even if the Landlord was Entitled to Adequate Protection Payments,
          Which it is not, the Landlord is Not Entitled to a Superpriority
          Administrative Expense Claim................................................................................16

   II.  The Court Should Deny the Motion Because the Equitable Considerations and
      Practical Realities of this Chapter 7 Case Do Not Support the Relief Sought .......17

      A.  The Landlord Failed to Object to the Client File Procedures ...........................17

CONCLUSION..........................................................................................................................18

## **TABLE OF AUTHORITES**

**Cases**

*In re Ames Dept. Stores*, 306 B.R. 43 (Bankr. S.D.N.Y. 2004)..............................................12, 13

*In re Blackwood Assocs., L.P.*, 153 F.3d 61 (2d Cir. 1998) ..........................................................15

*In re Blehm Land & Cattle Co.*, 859 F.2d 137 (10th Cir. 1988) ...................................................14

*In re Dairy Convenience Stores, Inc.*, 351 F.3d 66 (2d Cir. 2003)...............................................10

*In re Ernst Home Center, Inc.*, 209 B.R. 955 (Bankr. W.D. Wash. 1997) ...........................14, 15

*In re Mendez*, 259 B.R. 754 (Bankr. M.D. Fla. 2001).................................................................15

*In re Metromedia Fiber Network, Inc.*, 290 B.R. 487 (Bankr. S.D.N.Y.  2003)....................10, 14

*In re Microvideo Learning Systems, Inc.*, 232 B.R. 602 (Bankr. S.D.N.Y. 1999) ...............11, 12

*In re Patient Educ. Media, Inc.*, 221 B.R. 97 (Bankr. S.D.N.Y. 1998) .......................................13

*In re Pettingill Enters.*, 486 B.R. 524 (Bankr. D.N.M. 2013)......................................................14

*In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392 (Bankr. S.D.N.Y. 2001) .......................11, 13

*In re Pudgie's Dev. Of NY, Inc.*, 239 B.R. 688 (S.D.N.Y. 1999)...........................................11, 12

*In re Stone Barn Manhattan LLC I*, 398 B.R. 359 (Bankr. S.D.N.Y. 2008) ...............................13

*In re Worldcom, Inc.*, 304 B.R. 611 (Bankr. S.D.N.Y. 2004) ......................................................10

*Matter of Cybernetics Servs., Inc.*, 94 B.R. 951 (Bankr. W.D. Mich. 1989) .............................14

**Statutes**

11 U.S.C. § 361 .............................................................................................................8, 9, 10

11 U.S.C. § 363(e)..........................................................................................................8, 10, 14

11 U.S.C. § 365(d)(3) ................................................................................................10, 11, 12, 13

11 U.S.C. § 503(b)(1)............................................................................................................13, 15

11 U.S.C. § 506(a) .................................................................................................................10

11 U.S.C. 507(b) .................................................................................................................8, 15

TO THE HONORABLE DAVID S. JONES,
UNITED STATES BANKRUPTCY JUDGE:

Albert Togut, not individually but solely in his capacity as Chapter 7
Interim Trustee (the "Trustee") of the estate of Kossoff PLLC (the "Debtor"), by his
counsel, Togut, Segal & Segal LLP, hereby submits this response (the "Response") to the
*Motion for Adequate Protection of Columbus Properties, Inc. and Colonnade Management,
Corp.* [Docket No. 173] (the "Motion") filed by Columbus Properties, Inc. ("Columbus")
and Colonnade Management, Corp. ("Colonnade" and together with the Columbus, the
"Landlord"), and respectfully states:[1]

### PRELIMINARY STATEMENT[2]

The Landlord's motion is the result of the actions of Mitchell H. Kossoff
("Kossoff") that have put the Landlord and Trustee in a difficult position.  It is Kossoff's
failures – to act responsibly toward his firm's former clients and to withhold
cooperation from the Trustee – that has created the problem.  According to creditors,
more than $17 million of their moneys that were to have been held in escrow for them
has disappeared.  The Trustee could seek to trace and recover moneys if Kossoff would
comply with the several court orders entered that direct him to cooperate.  But Kossoff
has remained defiant and has attempted to hold the Estate hostage unless his demand
for immunity is met.  The harm he caused leading up to the filing of the involuntary
petition in this case continues to date.

---

[1]   The Trustee notes that the Motion refers to the "ABS Lenders," who are undefined and unknown,
and do not appear to be parties in this Chapter 7 Case.  The Motion also makes reference to
"adequate protection for diminution in the value of the Fleet (defined below)" but no such showing
or definition is provided.

[2]   Capitalized terms used but not defined in the Preliminary Statement shall have the meanings given to
them in subsequent sections of the Response.

As soon as Kossoff knew his firm could not continue to operate, he had a professional responsibility to his clients to inform them and return their files. Had he done so, the premises could have been vacated and the harm to the Landlord minimized. The harm has been caused by Kossoff, not the Trustee.

The Trustee appreciates the Landlord's cooperation. The Landlord has been great to deal with in helping the Trustee. So, although the Objection that follows reads as adversarial, it is only because the legal relief being sought is not supported by the Bankruptcy Code or applicable cases. And not that it may be much solace for the Landlord, but the Trustee is in the same boat – unsecured and unpaid. And the Trustee suspects that the unpaid fees for his professionals eclipse the unpaid rent to the Landlord. Aside from his statutory duties, the Trustee has every incentive to recover as much money as possible. He, too, would like to get his professionals paid.

The fatal defect to the Landlord's Motion is that it is not a secured creditor. Like the Trustee, the Landlord is an unsecured creditor of the Debtor's estate (the "Estate"). As such, it cannot obtain "a lien on the Debtor's assets securing payment of the [Lease] Obligations, and/or . . . a superpriority claim in the amount Obligations" as forms of "adequate protection" pursuant to Bankruptcy Code sections 361 and 363(e). *See* Mot. at ¶ 6. It also seeks immediate payment of rent pursuant to Bankruptcy Code section 365(d)(3).

The United States Court of Appeals for the Second Circuit (the "Second Circuit") and this Court have uniformly held that the adequate protection provisions of Bankruptcy Code sections 361 and 363 protect only the interests of secured creditors, and not the interests of unsecured creditors like the Landlord. The Landlord is not a secured creditor of the Debtor because it does not leave a "lien on property in which the estate has an interest," as required by Bankruptcy Code section

2

506(a).  Consequently, the Landlord is not a secured creditor, the forms of adequate protection sought by the Landlord are not available to it, and its request for such relief should be denied.

Moreover, the Landlord's demand for immediate payment of rent under the Lease pursuant Bankruptcy Code section 365(d)(3) is misplaced because that provision applies only requests made before and on account of rent due prior to the rejection of an unexpired lease.  The Motion was made after the Lease was rejected on September 8, 2021.  In addition, the Landlord's demand for immediate payment is an improper demand for a superpriority claim against an estate that is currently administratively insolvent.  Courts in this district consistently deny such a demand.  As a result, this branch of the Motion should also be denied.

This Court has seen first-hand the Trustee's efforts to wind down the Debtor's affairs, which have been impeded by forces beyond his control.  The abrupt cessation of the Debtor's business operations as a full-service real estate law firm resulted in, among other things, approximately 2,000 banker's boxes of client files (the "Client Files") having been left in disarray at the Premises and without any inventory or current client list.

The Debtor and Kossoff, the designated representative of the Debtor, should have returned to the Client Files to clients who seek them.  Because Kossoff has failed to do so, and as part of his efforts to protect the Estate, the Trustee is trying to assist those clients, but the Trustee's efforts to do so have been made extraordinarily difficult because Kossoff has repeatedly failed to provide a current client list to the Trustee, despite repeated requests and orders of this Court directing Kossoff to do so.  *See, e.g.,* Docket Nos. 27, 93, 137.  Moreover, the Trustee has been advised that the Manhattan District Attorney (the "DA") seized all of the Debtor's computer servers

3

from the Premises prior to the Petition Date, and the DA has refused to provide the Trustee with any access to what he seized. This too has impeded the Trustee's efforts to vacate the Premises.

Nevertheless, as the Trustee has assured the Court and the Landlord that notwithstanding the challenges that have been presented in this Chapter 7 Case, he has and continues to make efforts to investigate the Debtor's financial affairs and to vacate the Premises as quickly as is possible. *See* May 27, 2021 Hr'g Tr. at 21:18-21, 22:2-4.

Indeed, the Trustee filed the Client Files Procedures Motion promptly when he was able to accumulate a balance on hand in the Estate that should be sufficient to address the costs and expenses of giving notice of the Client Files Procedures, and removing, storing and/or destroying Client Files that aren't retrieved by the Debtor's former clients.[3] The Trustee is proceeding with the Client Files Procedures as quickly as the Court has authorized to date, and he is doing so with a limited balance on hand in this Estate. Neither the Estate nor its stakeholders should be prejudiced by the relief sought by the Landlord, which would undermine the Client Files Procedures and the Trustee's efforts to administer the Estate.

Based on the foregoing and what is set forth below, the Trustee respectfully submits that the Motion should be denied in its entirety.

## BACKGROUND

### I.    The Chapter 7 Case

1.    On April 13, 2021 (the "Petition Date"), creditors of the Debtor (collectively, the "Petitioning Creditors") filed an involuntary petition (the "Involuntary Petition") for relief under Chapter 7 of title 11 of the United States Code

---

[3]    The Court has not yet authorized the Trustee to destroy Client Files that are not retrieved by clients.

(the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court") against the Debtor in the above-captioned case (the "Chapter 7 Case").

2.    Prior to the Petition Date, the Debtor operated as a law firm located at 217 Broadway, Suite 401 in New York, New York (the "Premises"), and serviced clients in the real estate industry.  *See* Docket No. 26, Ex. 4 ¶ 10.  The Debtor held itself out as providing full-service real estate legal services specializing in litigation and transactional matters related to areas of real property law, including leasing, sale and acquisition of real property interests, commercial landlord tenant matters, real estate litigation, and city, state and federal agency regulatory matters.  *See id*.[4]

3.    The Petitioning Creditors are clients of the Debtor and together assert claims for "Unreturned IOLA Funds" and "Misappropriated IOLA Funds" totaling approximately $8 million [Docket No. 1].  Other former clients have also asserted similar claims against the Debtor, such that known claims for missing escrow funds total approximately $17 million.

4.    The Debtor did not appear in response to the Involuntary Petition, and on May 11, 2021, this Court entered the *Order for Relief and Order to File Schedules and Other Documents* [Docket No. 14] (the "Order for Relief").

5.    The Order for Relief directs the Debtor to file "all schedules, statements, lists and other documents that are required under the Federal and Local Rules of Bankruptcy Procedure" (the "Schedules") no later than May 25, 2021.  *See* Docket No. 14.

---

[4]    The Debtor was a professional limited liability company, organized under the laws of the State of New York, and Kossoff was its sole managing member.  *See* Docket No. 116, Ex. 3 (Articles of Organization and Operating Agreement);  *see also* Docket No. 30;  Docket No. 30-1.

6.      On May 12, 2021, Mr. Togut was appointed as the Chapter 7 Interim Trustee of the Debtor, accepted his appointment, and duly qualified.

7.      The Debtor has not yet filed any of the Schedules.

8.      Indeed, Kossoff, who has been designated by this Court to perform the Debtor's duties[5] has repeatedly delayed and avoided his obligations under the Bankruptcy Code and this Court's orders to provide information and cooperate with the Trustee.  *See, e.g.*, Docket Nos. 30, 48, 80, 145, 147.

## II.      The Trustee's Attempts to Obtain a Client List

9.      The docket for this Chapter 7 Case demonstrates the Trustee's extensive efforts to obtain Kossoff's cooperation and his turnover of documents and information needed to administer the Estate.  *See, e.g.*, Docket No. 93;  *see also, e.g.*, Docket Nos. 36, 105, 125.  Among other items, a critical piece of information needed to administer the Estate is a current list of the Debtor's clients (the "Client List").  *See, e.g.*, Docket No. 125 ¶ 9 (listing "[c]lient lists" in the categories of documents and information the Trustee requested from Kossoff);  *see also* Aug. 31, 2021 Hr'g Tr. at 12:20-21 ("It would help enormously if Mr. Mack could get us a client list.");  July 22, 2021 Hr'g Tr. at 41:5-8 ("We need [a client list] so we can file a motion to establish procedures for client file retrieval and disposition.  We need to provide adequate notice to current and former clients.").

10.      Kossoff has refused to produce a current Client List or any documents or information, despite the Court's orders, based upon an assertion of the Fifth Amendment privilege.  *See, e.g.*, Docket No. 30.

---

[5]    Kossoff's appeal from this Court's order compelling him to comply with its designation order was denied by the United States District Court for the Southern District of New York on the merits, and it also denied Kossoff's motion for a stay pending appeal.  *See Kossoff PLLC and Mitchell H. Kossoff v. Albert Togut (In re Kossoff PLLC)*, No. 21-Civ.-7122 (AKH) (S.D.N.Y. Sept. 30, 2021) [Docket No. 17].

### III.  The Trustee's Client Files Motion

11.     The Premises contains thirty internal offices, three file rooms and multiple filing cabinets and workstations.  However, no inventory of Client Files was found at the Premises nor was one turned over by Kossoff.  Moreover, the Trustee found Client Files throughout the Premises, and in many instances, portions of those files were located in different locations in the Premises.  Consequently, the Trustee's ability to respond to client requests for their Client Files has been time-consuming and labor intensive.

12.     Kossoff and the Debtor have the obligation to return Client Files, but they failed to do so.  As a result, on August 6, 2021, the Trustee filed the *Trustee's Application for Order Approving and Authorizing Implementation of Procedures for Disposition of Client Files* [Docket No. 140] (the "Client Files Motion").  The Client Files Motion sought approval of streamlined procedures for the disposition of the approximately 2,000 bankers boxes of Client Files located on the Premises (the "Client File Procedures").  *See* Docket No. 140, Ex. A;  Aug. 31 Hr'g Tr. at 4:25-26.  The Client Files Motion was filed promptly when the Trustee concluded that Estate collections would be sufficient to address the costs and expenses of giving notice of the Client Files Procedures to the Debtor's clients and for the retrieval, storage, moving and/or destruction of Client Files.

13.     Notably, the Client Files Motion contemplated a deadline for clients to inform the Trustee that they seek to retrieve their Client Files and to do so on a timeline that is shorter than the deadlines that were approved in other law firm bankruptcy cases.[6]  *See* Docket No. 140, Ex. C.

---

[6]  In seeking the expedited procedures, the Trustee reiterated representations at earlier hearings.  *See, e.g.,* May 27, 2021 Hr'g Tr. at 21:18-21 ("We are working as quickly as we can, Your Honor.  And as to the fourth floor…we'll move out of that premises as quickly as we're able.");  *id.* at 22:2-4 ("I commit

14.     The Client Files Motion was served on the Landlord and other parties in interest, *see* [Docket Nos. 159, 160, 172], and no objections to it were filed.

15.     During the hearing held on August 31, 2021 to consider approval of the Client File Procedures (the "August 31st Hearing"), the Court "So Ordered" and approved the Client File Procedures, including the notice deadline contemplated therein, and the Court authorized the Trustee to serve and publish a notice of intent to dispose of Client Files and to initiate the process of returning Client Files to the Debtor's clients. *See* Aug. 31, 2021 Hr'g Tr. at 36:6-7.  The Court entered an order approving the Client Files Procedures on September 17, 2021 [Docket No. 175] (the "Client Files Procedures Approval Order").

16.     Although the Landlord filed a *Notice of Appearance and Demand for Notice and for Service of Papers* [Docket No. 10] (the "Landlord Appearance"), it did not appear at the August 31st Hearing.[7]

IV.     **The Trustee's Implementation of the Client Files Procedures**

17.     On September 1, 2, and 9, 2021, The Trustee caused notice of the Client File Procedures to be delivered by mail (or electronic mail where available) to over 1,400 individuals and entities.  *See* Docket Nos. 159, 160, 172.  The Trustee also published notice of the Client File Procedures in the September 8, 2021 New York edition of the *Wall Street Journal*.  *See* Docket. No. 183.

18.     To date, the Trustee has received approximately 70 requests from former clients of the Debtor for the return of their Client Files.  More than 100 bankers

---

to the landlord that we will continue to work collaboratively with them to get out of their space as quickly as we can.").

[7]     The Trustee provided the Landlord a copy of the August 31, 2021 hearing transcript.

boxes, 400 redweld folders, 20 mail tote boxes and 120 file cabinet folders have been retrieved by clients from the Premises.

## V.    The Landlord and the Lease

19.    Prior to the Petition Date, the Debtor occupied the Premises pursuant to a lease agreement with the Columbus, as lessor, and dated December 1, 2016 (the "Lease").  As set forth in the Motion, monthly base rent during 2021, prior to rejection of the Lease, was $54,871.28.[8]

20.    The Lease does not contain any provision granting liens in favor of the Landlord against the Debtor's assets or property of the Estate, and the Trustee's lien search of the Debtor did not disclose any lien having been recorded in favor of the Landlord.

21.    On September 8, 2021, the Lease was deemed rejected by operation of section 365(d)(4) of the Bankruptcy Code (the "Rejection Date").

## ARGUMENT

22.    The Landlord is not entitled to any of the forms of the "adequate protection" payments, liens or claims that it seeks pursuant to Bankruptcy Code sections 361, 363(e) and 507(b).  Moreover, the Landlord is not entitled to immediate payment of rent or use and occupancy charges pursuant to Bankruptcy Code section 365(d)(3) at this time.  Accordingly, the Trustee respectfully submits that the Motion be denied in its entirety.

---

[8]    The Motion incorrectly asserts that rent is "hundreds of thousands of dollars per month. . ."  Mot. at ¶ 1 (original underscoring).

I.    **The Law Does Not Provide for the Relief Sought by the Landlord**

    A.    **The Landlord is an Unsecured Creditor and it is Not Entitled to Adequate Protection Liens or Claims**

        23.    The Landlord has not and cannot identify any provision of the Lease that gives it any lien or lien rights against any of the Debtor's property or property of this Estate. Consequently, there is no contractual basis for the adequate protection lien requested by the Landlord. In addition, nothing in the Lease gives the Landlord any right to obtain a superpriority claim.

        24.    Moreover, the Landlord's reliance on Bankruptcy Code sections 361 and 363 as the bases for its request for a "first priority lien on the Debtor's assets . . ." and a superpriority claim is misplaced.

        25.    Adequate protection liens and superpriority claims granted pursuant to Bankruptcy Code section 361 are limited:

> When adequate protection is required under section 362, 363, or 364 of this title . . . such adequate protection may be provided by –
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

*See* 11 U.S.C. § 361.

26.    The Second Circuit has held that "[t]he adequate protection provision of 11 U.S.C. § 361 protects only secured creditors." *In re Dairy Convenience Stores, Inc.*, 351 F.3d 86, 90 (2d Cir. 2003).

27.    In addition, this Court has repeatedly ruled that Bankruptcy Code section 363(e) "essentially requires that *where a creditor can demonstrate it has a security interest in the property*, such creditor is entitled to adequate protection of that interest." *In re Worldcom, Inc.*, 304 B.R. 611, 618 (Bankr. S.D.N.Y. 2004) (emphasis added); *In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 490-92 (Bankr. S.D.N.Y. 2003).

28.    Finally, Bankruptcy Code section 506(a) defines a "secured claim" as "[a]n allowed claim of a creditor secured by *a lien on property in which the estate has an interest.*" 11 U.S.C. § 506(a) (emphasis added).

29.    The Landlord has no contractual or statutory lien rights against the property of the Debtor or its Estate. As a result, there can be no "additional or replacement lien" that can be granted or fashioned in favor of the Landlord. Moreover, because the Landlord is not a secured creditor, it is not entitled to a superpriority claim on any other form of "adequate protection" pursuant to Bankruptcy Code sections 361, 363 or otherwise.

30.    Based on the foregoing, the Landlord's request for an adequate protection is unavailable pursuant to the express provisions of the Bankruptcy Code and consistent case law in this Circuit.

**B.    The Landlord is Not Entitled to Relief Under Bankruptcy Code Section 365(d)(3)**

31.    Bankruptcy Code section 365(d)(3) governs a landlord's entitlement to postpetition rent payments prior to the rejection of a nonresidential lease of real property, and it cannot be read to support the superpriority claim requested by the

Landlord.[9]  At most, this statute permits a landlord to seek immediate payment of rent through the assumption or rejection of the lease, and not for the entire post-petition period.  Moreover, to the extent that Bankruptcy Code section 365(d)(3) would otherwise apply, courts in this jurisdiction have declined to compel immediate payment when doing so would increase the risk of administrative insolvency of the estate.

32.    Courts have recognized Bankruptcy Code section 365(d)(3) as the specific Congressional expression to provide protection to landlords during the period between entry of an order for relief and assumption or rejection of a nonresidential real property lease.  *See P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 396-97 (Bankr. S.D.N.Y. 2001) (holding the purpose of section 365(d)(3) of the Bankruptcy Code is to "ameliorate the immediate financial burden borne by lessors of nonresidential real property during the period in which trustees decided whether to assume a lease") (citation omitted).  However, that relief is not available after a lease is rejected, and especially not when an estate is administratively insolvent.  *See In re Microvideo Learning Sys., Inc.*, 232 B.R. 602, 609 (Bankr. S.D.N.Y. 1999).  A landlord may not allow unpaid rent to accrue pre-rejection with the expectation that those obligations will be given superpriority thereafter.  *In re Pudgie's Dev. Of NY, Inc.*, 239 B.R. 688, 696 (S.D.N.Y. 1999).

33.    Indeed, while Bankruptcy Code section 365(d)(3) entitles the Landlord to an administrative expense claim for unpaid rent prior to rejection of the Lease, immediate payment is not available when "there is a risk of insolvency, [and] the effect of requiring immediate payment of lease obligations is to give lessors a superpriority administrative expense claim."  *Pudgie's Dev. Of NY, Inc.*, 239 B.R. at 693.

---

[9]    Bankruptcy Code section 365(d)(3) provides that "[t]he trustee shall timely perform all the obligations of the debtor arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1).  *See* 11 U.S.C. § 365(d)(3).

34.     This Court has held that "[t]he vast majority of courts have held that section 365(d)(3) does not create, *sub silento*, an additional class of super-priority administrative expense claims." *Microvideo Learning Sys., Inc.*, 232 B.R. at 605-06 (citing cases); *see also Pudgie's Dev. Of NY, Inc.*, 239 B.R. at 695 ("The right to 'timely performance,'…is not equivalent to superpriority."). Thus, "when an estate is administratively insolvent, unpaid section 365(d)(3) claims share *pari passau* with other unpaid administrative expenses." *In re Ames Dept. Stores*, 306 B.R. 43, 48 (Bankr. S.D.N.Y. 2004).

35.     The Trustee has more than once represented that the balance on hand in the Estate is currently insufficient to address all of the administrative expenses in this Chapter 7 Case. *See, e.g.*, June 10, 2021 Hr'g. Tr. at 25:3-4.  In addition, this Chapter 7 Case has been litigious and administrative expenses continue to accrue as the case proceeds, including with respect to the Motion, especially until the Trustee receives meaningful assistance from Kossoff.  Accordingly, directing immediate payment of past due and future monthly payments to the Landlord would deepen the current administrative insolvency of the Estate in a manner that is not contemplated by the Bankruptcy Code, or a result allowed by the vast majority of bankruptcy courts. *See, e.g. Pudgie's Dev. Of NY, Inc.*, 239 B.R. at 695; *Microvideo Learning Sys., Inc.*, 232 B.R. at 605.

36.     Based upon the foregoing, the Trustee respectfully submits that this branch of the Motion should be also denied.

**C.     The Motion Ignores the Application of Bankruptcy Code Section 503(b)**

37.     The Landlord also ignores the status of the Estate as a "holdover tenant" for the period after the Rejection Date.  That holdover status defeats the Landlord's demand for the amount of the amount of rent reserved in the Lease for post-

13

Rejection Date use and occupancy of the Premises, but determination of that rate should follow discovery.

38.     The Estate is a holdover tenant because it occupies the Premises after the Rejection Date. *See Ames Dept. Stores, Inc.*, 306 B.R. at 62 n. 68 ("By maintaining occupancy of the [premises] after the rejection period, the debtor becomes a holdover tenant.") (citation omitted).  In a holdover tenant situation, real property lessors are entitled to claims against the estate for the holdover tenant's "use and occupancy" of the real property. *Id.* at n. 67.  Post-rejection "use and occupancy" claims are analyzed under Bankruptcy Code section 503(b)(1), which requires a demonstrable benefit to the estate rather than a loss to the real property lessor. *Id.; see also P.J. Clarke's Restaurant Corp.*, 265 B.R. at 400 ("If the [l]andlord is not entitled to the benefits of § 365(d)(3), it must justify its claim to an administrative expense under § 503(b)(1), and under § 503(b)(1) the most important factor is the benefit conferred upon the debtor's estate, rather than the loss to the landlord.").

39.     In addition, claims under Bankruptcy Code section 503(b) must be for "reasonable value," which must be examined under the circumstances of the particular use and occupancy, which requires payment of an amount less than the rent provided for under the particular lease. *See Patient Educ. Media, Inc.*, 221 B.R. 97, 102 (Bankr. S.D.N.Y. 1998) (holding use and occupancy claims are tied to "actual use, as opposed to mere possession").  Here, the Premises are being used for storage of the Client Files, and not for an operating law firm.  In addition, the market and rates for office space in New York City is likely very different from the date when the Lease was signed.

40.     Even where such a benefit is or can be demonstrated, payment on account of an administrative claim may be authorized only at the end of the case along

14

with distributions to other creditors. *In re Stone Barn Manhattan LLC I,* 398 B.R. 359, 362 (Bankr. S.D.N.Y. 2008) *("[A]dministrative expenses ordinarily do not have to be paid until the end of a case.")*

41.     The Landlord relies upon inapplicable case law for its demand for forms of "adequate protection" payments for the period after the Rejection Date.

42.     First, the Landlord incorrectly asserts that "[s]ection 363(e) grants the Landlord the right to adequate protection of its property," but fails to cite any relevant applicable Bankruptcy Code provision or case law in support of this assertion and fails to indicate whether such right applies to the period before or after the Rejection Date, which is an important distinction for the reasons set forth above.

43.     Next, no case cited in the Motion granted adequate protection payments to landlords for periods after the rejection of a nonresidential real property lease by a holdover tenant. The Landlord's reliance on *In re Metromedia Fiber Network, Inc.*, 290 B.R. 487 (Bankr. S.D.N.Y. 2003), *In re Blehm Land & Cattle Co.*, 859 F.2d 137 (10th Cir. 1988), and *In re Pettingill Enters.*, 486 B.R. 524 (Bankr. D.N.M. 2013) is misplaced. *See* Mot. at ¶¶ 13, 18. None of these cases involved an unsecured lessor of nonresidential real property. Rather, *Blehm Land & Cattle Co.* involved a creditor secured by a deed of trust, while both *Metromedia* and *Pettingill Enters.* involved a secured equipment lessor creditor. *See Blehm Land & Cattle Co.*, 859 F.2d at 139; *Metromedia Fiber Network, Inc.*, 290 B.R. at 488; *Pettingill Enters., Inc.*, 486 B.R. at 528.

44.     The only cases cited in the Motion that even address adequate protection to a real property lessor are *Matter of Cybernetics Servs., Inc.*, 94 B.R. 951 (Bankr. W.D. Mich. 1989) ("*Cybernetics*") and *In re Ernst Home Ctr., Inc.*, 209 B.R. 955 (Bankr. W.D. Wash. 1997) ("*Ernst Home*"), yet reliance on those decisions is also misplaced.

45.     The *Cybernetics* court was addressing payment of rent in the context of a stay pending the result of an appeal concerning a disputed lease assumption. *See* 94 B.R. at 954. In *Ernst Home Ctr.*, the court denied the landlord's request for adequate protection: "landlords are not entitled to a superpriority claim in the event that they have an unpaid administrative expense as a result of a debtor's failure to comply with section 365(d)(3)." *Ernst Home Ctr.*, 209 B.R. at 967 n. 10 (citation omitted).

46.     For these reasons, the Trustee respectfully submits that the Landlord is entitled, at most, to an administrative expense claim under Bankruptcy Code section 503(b) that, if allowed, should be paid at the end of this Chapter 7 Case.

**D.    Even if the Landlord is Entitled to Adequate Protection Payments, Which it is Not, the Landlord is Not Entitled to a Superpriority Administrative Expense Claim**

47.     The Landlord improperly relies on Bankruptcy Code section 507(b) as the basis for the Landlord's entitlement to a superpriority administrative expense claim. *See* Mot. at ¶ 17.

48.     Indeed, the Landlord selectively omitted from its quotation the operative provision of Bankruptcy Code section 507(b) that limits adequate protection to "a holder of a claim *secured by a lien on property of the debtor*…" *See* 11 U.S.C. § 507(b) (emphasis added). In other words, relief under Bankruptcy Code section 507(b) only applies when adequate protection has been granted to a secured creditor. *Id.* As demonstrated above, the Landlord is not a secured creditor.

49.     Indeed, both of the cases cited by the Landlord in the Motion address relief to secured creditors pursuant to Bankruptcy Code section 507(b).[10]

---

[10]   The Motion cites to *In re Blackwood Assocs., L.P.*, 153 F.3d 61, 68 (2d Cir. 1998) ("[A] *secured creditor* has [section 507(b)] superpriority for a claim in the amount that the debtor's use of the *collateral*…diminishes the value of the *collateral*.") (emphasis added) and *In re Mendez*, 259 B.R. 754, 757 (Bankr. M.D. Fla. 2001) ("Essentially, § 507(b) grants a *secured creditor* a first priority claim to the extent that the debtor's use of the *collateral* diminishes its value.") (emphasis added). *See* Mot. at ¶ 17.

Because the plain language of Bankruptcy Code section 507(b) requires adequate protection to be granted only to a secured creditor, the statute is inapplicable to the relief sought by the Landlord, which has no lien rights.

50. The Motion asserts, without any support, that "most courts have given equivalent treatment to lessors if there is a failure of adequate protection." *See* Mot. at n. 3. As explained above, none of *Blehm Land & Cattle Co.*, *Peetingill Enters.*, or *Ernst Home Ctr.* involve a court granting adequate protection to an unsecured real property lessor under Bankruptcy Code section 363(e) for the period after the lease rejection.

51. Based upon the foregoing, the Trustee respectfully submits that the Landlord is not entitled any superpriority claim for any period, let alone the period after the Rejection Date.

## II. The Court Should Deny the Motion Because the Equitable Considerations and Practical Realities of this Chapter 7 Case Do Not Support the Relief Sought

### A. The Landlord Failed to Object to the Client File Procedures

52. The Motion alleges that the Landlord "could no longer wait" to file the Motion. *See* Motion at ¶ 16. However, the Trustee is operating within the scope of the authority granted to him by the Client File Procedures Approval Order.

53. The Motion footnotes that as of the filing of the Motion, "no order granting the Client [Files] Motion has been granted." *See* Motion at ¶ 16. The Court should reject the Motion to the extent that statement is meant to collaterally attack the Client File Procedures Approval Order. The Landlord filed the Landlord Appearance, and it is aware that the Court "So Ordered" the Client Files Procedures at the August 31st Hearing.

54.    In addition, the Court approved implementation of the Client File Procedures which include notice and retrieval deadlines that are shorter than similar procedures that were approved in other law firm cases principally because the Trustee expressed concern regarding the accrual of administrative expenses associated with the Estate's occupancy of the Premises.  *See* Aug. 31, 2021 Hr'g Tr. at 14:25, 15:1-4;  Docket No. 140, Ex. C.

55.    The Trustee is not unsympathetic to the Landlord's position in this Chapter 7 Case, and he has been moving as quickly as has been possible given all of the challenges and circumstances present in this Chapter 7 Case.  However, granting the relief sought by the Landlord would be contrary to the express provisions of the Bankruptcy Code and case law in this Circuit, and it would improperly and inequitably prejudice all of the other creditors and stakeholders of the Estate.

## CONCLUSION

For the reasons set forth above, the Trustee respectfully requests that the Motion be denied, and that the Court grant such other and further relief as is just and appropriate.

Dated:   New York, New York
         October 12, 2021

ALBERT TOGUT,
not individually but solely in his capacity as
Chapter 7 Interim Trustee for
Kossoff PLLC
By His Counsel,
TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Neil Berger*
NEIL BERGER
MINTA J. NESTER
BRIAN F. SHAUGHNESSY
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

18