TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Brian F. Shaughnessy
Minta J. Nester

*Attorneys for Albert Togut, Not Individually*
*But Solely in His Capacity as Chapter 7 Interim Trustee*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- X
                                                            :
                 In the Matter                              :       Chapter 7
                                                            :       Case No. 21-10699 (DSJ)
                      -of-                                   :
                                                            :
KOSSOFF PLLC,                                               :
                                                            :
                                                            :
                              Debtor.                       :
                                                            :
----------------------------------------------------------- X

## TRUSTEE'S APPLICATION FOR AN ORDER COMPELLING
## DISCLOSURE OF CERTAIN GRAND JURY MATERIALS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

JURISDICTION AND VENUE ......................................................................................5

FACTUAL BACKGROUND ...........................................................................................6

    I.   The Chapter 7 Case.............................................................................................6

    II.  The Trustee's Inability to Obtain the Requested Materials from Kossoff ................7

    III. The Trustee's Motion to Compel in the New York State Criminal Court ..............11

REQUESTED RELIEF...................................................................................................12

BASIS FOR RELIEF .....................................................................................................12

    I.   Rule 6(e) Does Not Apply to the Requested Materials .............................................13

    II.  Even if Rule 6(e) Applies, Disclosure is Warranted Under *Douglas Oil* ................16

        A.  The Requested Materials Are Needed to
           Avoid Injustice in This Chapter 7 Case ...............................................................16

        B.  The Need for Disclosure Outweighs the Need for Continued Secrecy ............22

        C.  The Requested Materials Cover Only Information
           That is Essential to the Trustee's Investigation ...................................................24

CONCLUSION...............................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Aiani v. Donovan*, 950 N.Y.S.2d 745 (2d Dept. 2012)................................................................22

*Anilao v. Spota*, 918 F. Supp. 2d 157 (E.D.N.Y. 2013)............................................................12

*Del Cole v. Rice*, 2013 WL 12316374 (E.D.N.Y. Nov. 6, 2013)................................................24

*DiLeo v. Commissioner of Internal Revenue*, 959 F.2d 16 (2d Cir. 1992) .................................16

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211 (1979)............................11, 13, 16, 23

*Frederick v. New York City*, 2012 WL 4947806 (S.D.N.Y. Oct. 11, 2012) ...................12, 13, 24

*In re Metiom, Inc.*, 318 B.R. 263 (S.D.N.Y. 2004)...................................................................22

*In re Regular Grand Jury*, 741 F. Supp. 1027 (E.D.N.Y.1990) .................................................16

*In re Siskin*, No. 02-10373 SMB, 2011 WL 4899868 (Bankr. S.D.N.Y. Oct. 13, 2011) ...........15

*In re Yesko*, 2013 WL 5878411 (Bankr. S.D.N.Y. Nov. 1, 2013)...............................................22

*Palmer v. Estate of Stuart*, 2004 WL 2429806 (S.D.N.Y. Nov. 1, 2004) ......................13, 18, 24

*Ruther v. Boyle*, 879 F. Supp. 247 (E.D.N.Y. 1995) ................................................................14

*S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368 (D.C. Cir. 1980)..................................................14

*S.E.C. v. Everest Mgmt Corp.*, 87 F.R.D. 100 (S.D.N.Y. 1980)..................................................15

*U.S. v. Interstate Dress Carriers, Inc.*, 280 F.2d 52 (2d Cir. 1960) ......................................15, 16

*U.S. v. Manko*, 1997 WL 107440 (S.D.N.Y. Mar. 11, 1997)....................................13, 14, 23

*U.S. v. Saks & Co.*, 426 F. Supp. 812 (S.D.N.Y. 1976)..............................................................16

**Statutes**

11 U.S.C. § 101(15) .....................................................................................................................2

11 U.S.C. § 105(a) ....................................................................................................................1, 5

11 U.S.C. § 503 ..........................................................................................................................23

11 U.S.C. § 507 ..........................................................................................................................23

11 U.S.C. § 541 ..........................................................................................................................15

11 U.S.C. § 542(a) ......................................................................................................................15

11 U.S.C. § 542(e)...........................................................................................................1, 2, 5, 15

11 U.S.C. § 704(a)(1)..............................................................................................................15, 21

11 U.S.C. § 704(a)(4)................................................................................................................1, 15

11 U.S.C. § 726 ..........................................................................................................................23

28 U.S.C. § 157 ............................................................................................................................5

28 U.S.C. § 1334 ..........................................................................................................................5

28 U.S.C. § 1408 ..........................................................................................................................5

28 U.S.C. § 1409 ....................................................................................................................5

**Rules**

Fed. R. Crim. P. 6(e)(3)(E)(i) ...............................................................3, 5, 13, 14, 16

22 N.Y.C.R.R. § 1200.0 ................................................................................10, 20

22 N.Y.C.R.R. § 1200.46 ...........................................................................................7

TO THE HONORABLE DAVID S. JONES, BANKRUPTCY JUDGE:

Albert Togut, not individually but solely in his capacity as the Chapter 7 Interim Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Kossoff PLLC (the "Debtor"), by his attorneys, Togut, Segal & Segal, LLP, hereby respectfully submits this application (the "Motion") for an order, substantially in the form of Exhibit "A" annexed hereto, pursuant to sections 105(a) and 542(e) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Criminal Procedure 6(e)(3)(E)(i), to compel disclosure to the Trustee of certain grand jury materials by the Manhattan District Attorney (the "District Attorney") for inspection and copying.

In support of the Motion, the Trustee relies on, and incorporates herein by reference, the declaration of his financial advisor, Stephen Gray (the "Gray Decl."), which is annexed hereto as Exhibit "B," as well as the declaration of Neil Berger, Esq. (the "Berger Decl."), which is annexed hereto as Exhibit "C,"[1] and respectfully states:

## PRELIMINARY STATEMENT

Serving as a bankruptcy trustee is challenging in the best of cases but in those that begin with an involuntary petition and in which no matter what direction he goes, the Trustee cannot get cooperation, it becomes impossible. This case has been Kafkaesque; each of the Trustee's inquiries is met with no answers or non-answers. And now it has happened again, this time with a governmental unit charged with upholding justice and protecting the public, none other than the District Attorney of New York County. Not only is he blocking the Trustee's efforts but he is also impairing the interests of the victims that his office and the Trustee are trying to address.

---

[1]    All references herein to "Ex. _" are to the exhibits attached to the Berger Decl.

Trustees are statutorily charged in section 704(a)(4) of the Bankruptcy Code with the duty to "investigate the financial affairs of the debtor." Recognizing that debtors often have poor books and records or even none at all, the Bankruptcy Code gives the trustee broad powers to aid his investigation. One of those provisions is section 542(e), which directs that, subject to applicable privilege and after notice and a hearing, the Court may order an attorney, accountant, or any other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee. Throughout section 542, the Bankruptcy Code refers to its applicability to an "entity." "Entity" is defined in § 101(15) of the Bankruptcy Code to include a "governmental unit." Thus, the District Attorney is squarely within the purview of the Bankruptcy Code.

Notwithstanding this statutory obligation, the District Attorney has refused to cooperate with the Trustee. To make matters worse, he has done so without explanation and without even conceding that he seized the Debtor's books and records prior to the commencement of this case. Every time the Trustee pleads for help, the District Attorney has turned a deaf ear.

When that sort of thing happens, the Trustee may turn to this Court, but under U.S. Supreme Court precedent discussed below, he must first apply to the state court that supervises the District Attorney's conduct. In compliance with that precedent, the Trustee did move in the Supreme Court of the State of New York, Criminal Term Part 1 in New York County (the "Criminal Court"), in which, after an *ex parte* conference with the District Attorney from which the Trustee was excluded, the Court said it "is not unsympathetic to the difficult position the Trustee is placed," but then denied the Trustee's application.

2

Having satisfied the condition precedent required by the U.S. Supreme Court, the Trustee now comes to this Court. As will be shown below, this Court has the authority to direct the District Attorney to cooperate and give the Trustee access to the Debtor's books and records.

The logjam in this case needs to be broken. Mitchell Kossoff ("Kossoff"), despite twice being ordered to help the Trustee, has only ineffectually done so. The many subpoenas served by the Trustee have not gotten him what he needs. Even J.P. Morgan Chase initially denied the Trustee access to the Debtor's bank accounts, highly unusual in any bankruptcy case. Only after the Trustee was forced to move before this Court has that access been afforded.

Whatever information any bank has concerning the Debtor's financial affairs pales in comparison to what the District Attorney has in his possession. Nothing is more essential to the administration of a bankruptcy estate than the Debtor's books and records. The District Attorney has them and refuses to share. This Court needs to intercede and help the Trustee. There is nowhere else for him to turn.

Under federal law, the books and records of the Debtor, *i.e.*, business documents that were prepared prior to the commencement of any relevant grand jury proceeding, are outside the scope of Rule 6(e) (defined below). The Trustee seeks those documents solely for their intrinsic value, as part of his own statutorily-mandated investigation. The Trustee is not trying to ascertain what has occurred in connection with the grand jury proceedings. For that reason, alone, disclosure is warranted.

However, even if Rule 6(e) did apply, this Court should nonetheless compel disclosure under the *Douglas Oil* factors. The Trustee is not an aggrieved private party searching for random documents that might provide litigation leverage against persons that may be the subject of the District Attorney's investigation. The documents that he

3

seeks are identified with specificity below, and they are absolutely essential to what this Court has described as the Trustee's "very important work to help resolve the affairs of the estate,"[2] work that has been continuously frustrated by both Kossoff and the District Attorney.

As described herein, there are indisputable facts supporting the Trustee's Motion. <u>First</u>, the Trustee cannot obtain the Requested Materials (defined below) – which are the Debtor's internal records – from anyone other than the District Attorney. <u>Second</u>, the Trustee cannot meaningfully investigate the Debtor's affairs in a timely manner without the Requested Materials. For example, bank records recovered by means of painstaking and expensive subpoena enforcement, alone, are meaningless without the Debtor's internal accounting records to help interpret and reconcile them. <u>Third</u>, the Trustee's need for the Requested Materials is a pressing, present need. Every day that the Trustee is forced to pursue costly third-party discovery – which the District Attorney advocates as the alternative to providing the Trustee with access to the Requested Materials – exponentially increases the administrative costs of the Estate, which delays and impairs creditor recoveries. Moreover, delaying disclosure increases the risk that the Trustee will not be able to recover funds that were improperly transferred from the Debtor's accounts.

Public interest also favors timely disclosure of the Requested Materials. The Trustee seeks only copies of the Debtor's internal business documents. The Trustee's request is not about obtaining bombshell witness testimony. The District Attorney has not articulated any risk of flight by Kossoff or any witness. And there is no risk of witness tampering.

---

[2]   *See* Ex. 1 (6/24/21 Hr'g Tr.) at 41:21-25.

The Trustee seeks access to the Debtor's records solely for the purposes of fulfilling his statutory fiduciary duties under the Bankruptcy Code and serving the dual public interest to: (i) administer estates as quickly and efficiently as possible; and (ii) marshal and collect an estate that can respond to claims of creditors who have been harmed. The benefits of disclosure outweigh the risks by a significant margin.

The Trustee has broad experience in cooperating with many criminal investigations, prosecutions, and convictions of bad actors in bankruptcy cases. He is sensitive to the needs and goals of prosecutors. He is not asking for a turnover of what the District Attorney has and needs for his work. The Trustee merely is asking to inspect and copy relevant records needed to administer the Estate. He is willing to agree to take such copies on a confidential basis while he analyzes them for his investigation and development of claims against parties that may have improperly received funds that were fraudulently conveyed by the Debtor.

Based upon the forgoing and what is set forth below, the Trustee respectfully requests that the District Attorney be required to assist the Trustee's efforts, and not be allowed to continue to hinder them, and therefore requests that the Court grant the Motion and compel disclosure of the Requested Materials.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this case (the "Chapter 7 Case") and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The predicates for the relief requested by this Motion are sections 105(a)
and 542(e) of the Bankruptcy Code, and Rule 6(e)(3)(E)(i) of the Federal Rules of
Criminal Procedure ("Rule 6(e)").

## FACTUAL BACKGROUND

### I.      The Chapter 7 Case

3.      On April 13, 2021 (the "Petition Date"), certain creditors that were former
clients of the Debtor (collectively, the "Petitioning Creditors") filed an involuntary
petition for relief under Chapter 7 of the Bankruptcy Code (the "Involuntary Petition")
in this Court against the Debtor in the Chapter 7 Case.

4.      Prior to the Petition Date, the Debtor operated as a law firm located at 217
Broadway in New York City, New York (the "Premises"), and serviced clients in the
real estate industry.  (*See* Docket No. 26-4 ¶ 10.)  The Debtor held itself out as providing
full-service real estate legal services.  (*See id*.)  Kossoff was the Debtor's sole managing
member.  (*See* Docket No. 116, Ex. 3 (Articles of Organization and Operating
Agreement); *see also* Docket Nos. 30 and 30-1.)

5.      The Petitioning Creditors assert claims against the Debtor for, among
other things, "Unreturned IOLA Funds" and "Misappropriated IOLA Funds," totaling
approximately $8 million.  (Docket No. 1.)  Other former clients have also asserted
similar claims against the Debtor, such that known claims for missing escrow funds
total approximately $17 million.

6.      The Debtor did not appear in response to the Involuntary Petition, and on
May 11, 2021, this Court entered the *Order for Relief and Order to File Schedules and Other
Documents* [Docket No. 14] (the "Order for Relief").

7.      The Order for Relief directs the Debtor to file "all schedules, statements,
lists and other documents that are required under the Federal and Local Rules of

Bankruptcy Procedure" (the "Schedules") no later than May 25, 2021.  (*See* Docket No. 14.)

8.      On May 12, 2021, Mr. Togut was appointed as the Chapter 7 Interim Trustee of the Debtor, accepted his appointment, and duly qualified.

9.      On May 24, 2021, the Trustee moved for, and was granted, the ability to conduct Rule 2004 discovery.  (*See* Docket Nos. 26-27.)  Since then, the Trustee has issued dozens of subpoenas to third parties in an effort to investigate the Petitioning Creditors' allegations, including the financial and business affairs of Kossoff, the Debtor, and other related parties.

**II.    The Trustee's Inability to Obtain the Requested Materials from Kossoff**

10.      As part of his investigation, the Trustee has sought Kossoff's assistance in collecting, *inter alia*, the Debtor's most critical financial and business documents (the "Requested Materials"):

a.  Bank records and account numbers;

b.  Cash receipts journals;

c.  Cash disbursements journals;

d.  Credit card records and account numbers;

e.  Client lists;

f.  Lists of accounts receivable/accounts payable;

g.  Records required pursuant to N.Y. Code of Professional Responsibility D.R. 9-102, 22 N.Y.C.R.R. § 1200.46, including records of all deposits and withdrawals from accounts specified in subsection (b);

h.  Accounting records;  and

i.  Tax returns, reports and supporting materials.

Without the Requested Materials, the Trustee cannot complete his investigation or trace and attempt to recover the approximately $17 million for which the Debtor has failed to account.

11.    With no respect for the relevance and importance of the Requested Materials, Kossoff has repeatedly stated on the record that he will not identify or produce such documents to the Trustee because he is being investigated by the District Attorney, and because the District Attorney seized the Requested Materials.  During May 2021, for example, Kossoff said the following in opposition to the Trustee's motion to conduct Rule 2004 discovery [Docket No. 26]:  "Mr. Kossoff…will refuse to answer questions that may tend to incriminate him," and he "alone would be the only person to properly identify, collect, describe and submit documents to the Bankruptcy Court or its Trustee."  (Docket No. 30 at 2-3.)

12.    Since then, Kossoff has told the Court, time and again, including at a hearing on July 22, 2021, that he will continue to assert the Fifth Amendment privilege and refuse to cooperate with the Trustee until he exhausts all of his appellate rights or the criminal proceedings are resolved.  (Ex. 2 (7/22/21 Hr'g Tr.) at 10, 12-14, 30.)  As Kossoff's criminal counsel, Walter Mack, has stated:

> My concern is if you work in this space, you have to be very careful about not being in a situation where some appellate court or reviewing court says, okay, you in fact – by disclosing this information, you have waived whatever Fifth Amendment right.  So that is the – sort of the issue that I'm in.

(*Id.* at 16.)  According to Mack, Kossoff will not answer the Trustee's questions or even file the Debtor's Schedules, much less produce relevant documents/information, until Kossoff is no longer subject to criminal prosecution.  (*Id.* at 14, 30.)

13.    Even though the Court has issued orders (i) designating Kossoff as the responsible officer of the Debtor [Docket No. 93] and (ii) compelling Kossoff to

cooperate with the Trustee's discovery requests (the "Order to Compel") [Docket No. 137], and even though Kossoff's subsequent appellate efforts have failed,[3] Kossoff still refuses to cooperate with the Trustee. He still has not prepared the Schedules, and will not produce, among other things: a current client list, a list of creditors, and a list of accounts receivable. (*See* Docket No. 105.) Kossoff has taken this position even though the Debtor issued invoices to its clients during the months immediately preceding the Petition Date.

14.     Additionally, the few documents that Kossoff has produced thus far are largely irrelevant to the Trustee's investigation. For example, during June 2021, Kossoff produced the sum total of: (i) what appears to be an incomplete list of the Debtor's bank accounts with account numbers; (ii) inventories of the records seized by the District Attorney (which were prepared by law enforcement); and (iii) certain organizational documents of the Debtor. (*See id.*; Gray Decl. ¶ 8.) At that time, Kossoff also granted the Trustee access to the Debtor's fifth floor offices at 217 Broadway, New York City (*see* Docket No. 105), but the documents left there (*i.e.*, not seized by the District Attorney) are all dated and unhelpful to understanding Kossoff's alleged fraudulent conduct.[4] (Gray Decl. ¶ 8.) Kossoff did not produce anything else until two weeks ago, and the vast majority of those documents – which include tax return information, audit materials, client escrow files, and various other client files – are from

---

[3]    On September 23, 2021, this Court denied Kossoff's motion for a stay pending his appeal of the Order to Compel. (Docket No. 178.) On September 30, 2021, the United States District Court for the Southern District of New York denied Kossoff's motion for leave to appeal the Order to Compel on the merits. *See Kossoff v. Togut*, 21 Civ. 7122, Docket No. 17 (S.D.N.Y. Sept. 30, 2021).

[4]    For example, the fifth floor offices contained 2012 and 2015 statements for accounts that the Debtor maintained at Valley National Bank years ago and 2017 ADP earnings statements that do nothing to aid the Trustee's investigation. (*See* Ex. 3 (Inventory for Documents Retrieved by Trustee From 217 Broadway, 5th Floor Pursuant to July 12, 2021 Order).)

2018 and earlier.[5]  (*Id.*)  Kossoff has not produced a single computer file, and has produced barely anything from the 2019-2021 period, either because he refuses to produce that information or because the District Attorney is in sole possession of those records.  (*Id.*)

15.     The bottom line is that Kossoff has not produced any of the information seized by the District Attorney, *e.g.*, the Debtor's current internal banking/accounting records, cash receipt journals, credit card records, or any other records that are required to be maintained by law firms pursuant to N.Y. Code of Professional Responsibility D.R. 9-102.[6]  (*Id.* ¶ 9.)

16.     Putting aside Kossoff's refusal to cooperate, Mack has told this Court multiple times that the District Attorney seized all the key documents sought by the Trustee and that Kossoff retained no copies of that information.  For example, Mack stated in May 2021:

> The District Attorney executed a search warrant at the Offices of Kossoff PLLC, Mr. Kossoff and [Debtor affiliate] Tenantracers in mid-April, 2021, and removed voluminous files and computers directly relevant to the financial affairs of all said parties.  Those materials remain in the custody of the District Attorney . . . .  Mr. Kossoff has not had access to these seminal records since the execution of the Search Warrant.

(Docket No. 30, Aff. ¶ 3;  *see* Docket Nos. 48, 80, 80-1.)

17.     Mack reiterated this at the July 22, 2021 hearing, stating: "[M]ost of the records that arguably are being asked for [Kossoff] doesn't have.  And they are in the possession of the District Attorney's Office. . . . We have nothing."  (Ex. 2 (7/22/21 Hr'g Tr.) at 22-23.)

---

[5]     (*See* Ex. 4 (Inventory of Documents Retrieved by Trustee from Doar Rieck Kaley & Mack on 10/19/21).)

[6]     *See also* N.Y. Code of Professional Responsibility Rule 1.15 (22 N.Y.C.R.R. § 1200.0).

18.     On October 19, 2021, when Kossoff made his latest production of out-of-date materials to the Trustee, another one of Kossoff's lawyers, David Rivera, wrote to the Trustee that "more current files" of the Debtor "are in the possession of the Manhattan District Attorney's Office."  (Ex. 5.)

## III.    The Trustee's Motion to Compel in the New York State Criminal Court

19.     Given Kossoff's refusal to cooperate, and the fact that issuing numerous Rule 2004 subpoenas to third parties proved insufficient, the Trustee asked the District Attorney, more than once, for copies of the Requested Materials.  The District Attorney rejected those requests, and advised the Trustee that he would oppose any subpoena or motion seeking disclosure of any documents seized from the Debtor's Premises, even though the Trustee agreed to be bound by court-ordered confidentiality provisions that might be needed to protect the District Attorney's investigation.

20.     On June 22, 2021, consistent with U.S. Supreme Court precedent, the Trustee filed a motion in the Criminal Court, to compel disclosure of the Requested Materials by the District Attorney.  *See Douglas Oil Co. of Cal. v. Petrol Stops Nw.,* 441 U.S. 211, 226 (1979) ("[I]n general, requests for disclosure of grand jury transcripts should be directed to the court that supervise[s] the grand jury activities" first, because the supervising court has "first hand knowledge of the grand jury activities").  The District Attorney opposed the motion, but in doing so would not confirm whether he seized any materials from the Debtor's Premises or whether there are, in fact, any grand jury proceedings concerning Kossoff.

21.     On September 8, 2021,[7] the Criminal Court denied the Trustee's motion, holding that while "the Trustee has made a compelling and particularized need for

---

[7]    The Trustee did not receive a copy of the Criminal Court's decision until September 27, 2021.

access to" the Requested Materials, the District Attorney "provided *ex parte* information to this Court that tips the scale towards non-disclosure." (Ex. 6 at 3-4.) The "*ex parte* information" upon which the Criminal Court relied was discussed off the record, in chambers, without the Trustee present. The Trustee was therefore unable to respond to the District Attorney's main arguments in opposition to the motion, and the Trustee objected on that basis.

22.    The Trustee thus files this Motion.

## REQUESTED RELIEF

23.    The Trustee seeks entry by this Court, which is not bound by decisions of the Criminal Court, of an order compelling disclosure of the Requested Materials by the District Attorney to the Trustee for inspection and copying, subject to any additional protective measures or orders that the Court deems necessary and appropriate.

## BASIS FOR RELIEF

24.    "It is . . . well settled . . . that a federal court is not bound by state law protecting the secrecy of state grand jury proceedings." *Frederick v. New York City*, 2012 WL 4947806, at *11 (S.D.N.Y. Oct. 11, 2012) (internal quotation marks and citation omitted). "Rather, in cases where a state court denies access to grand jury transcripts, the burden falls on this Court to make an independent determination of whether the grand jury transcripts should be released." *Id.* (internal quotation marks and citations omitted); *see, e.g., Anilao v. Spota*, 918 F. Supp. 2d 157, 171 (E.D.N.Y. 2013) (same).

25.    Rule 6(e) provides that a court "may authorize disclosure – at a time, in a manner, and subject to any other conditions that it directs – of a grand-jury matter . . . preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i).

26.    In *Douglas Oil,* the Supreme Court announced a three-part test for

evaluating whether to permit disclosure of grand jury materials under Rule 6(e):

> Parties seeking grand jury transcripts under Rule 6(e) must show [i] that the
> material they seek is needed to avoid a possible injustice in another judicial
> proceeding, [ii] that the need for disclosure is greater than the need for continued
> secrecy, and [iii] that their request is structured to cover only material so needed.

441 U.S. at 222.  "In other words, to unseal grand jury records the parties must prove a

particularized need" for the requested documents.  *Frederick*, 2012 WL 4947806, at *7

(citing *U.S. v. Proctor & Gamble Co.*, 356 U.S. 677, 683 (1958)); *see also Palmer v. Estate of

Stuart*, 2004 WL 2429806, at *2 (S.D.N.Y. Nov. 1, 2004).  This standard "applies to cases

in which a party seeks to pierce the secrecy of state grand jury proceedings." *Frederick*,

2012 WL 4947806, at *7.

27.    To the extent, however, a court determines that Rule 6(e) does not apply

to the grand jury documents sought to be disclosed, "there is no requirement for

Applicants to show a 'particularized need' for" such documents.  *U.S. v. Manko*, 1997

WL 107440, at *4 (S.D.N.Y. Mar. 11, 1997) (citing authorities).

28.    Under this framework, this Court should compel disclosure of the

Requested Materials for two independent reasons.  <u>First</u>, as a threshold matter, Rule 6(e)

does not apply here because disclosure of the Requested Materials to the Trustee as part

of his statutorily-mandated investigation would not reveal what has occurred in – and

thus would not interfere with – any grand jury proceedings involving Kossoff.  <u>Second</u>,

even if Rule 6(e) did apply, the Trustee has a compelling and particularized need for the

Requested Materials that weighs heavily in favor of disclosure.

## I.    <u>Rule 6(e) Does Not Apply to the Requested Materials</u>

29.    Under Rule 6(e), "matters occurring before the grand jury may encompass

documents, as well as grand jury transcripts," but "the mere presentation of documents

to a grand jury, does not cloak them in secrecy." *Id.* at *2 (citation omitted). Grand jury documents "should remain secret only if their disclosure reveals 'what is said or what takes place in the grand jury room.'" *Id.* (citation omitted). If "the documents do not disclose 'matters occurring before the grand jury,' Rule 6(e) does not apply." *Id.* at *4; *see e.g.*, *Ruther v. Boyle*, 879 F. Supp. 247, 251 (E.D.N.Y. 1995)) (Rule 6(e) inapplicable to documents "created for purposes other than the grand jury investigation"); *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1383 (D.C. Cir. 1980)) (*en banc*), cert. denied, 449 U.S. 993 (1980)) (Rule 6(e) inapplicable to business records that revealed only what occurred in corporation's operations, not what occurred in front of grand jury).

30.     Here, the Trustee does not seek disclosure of a single document that could reveal anything of substance about the Kossoff grand jury proceedings. The Trustee does not presently seek copies of any transcripts, and he does not seek any documents that were prepared for, or in connection with, the grand jury. The Trustee seeks only copies of the Debtor's internal business documents – basic books and records, virtually all of which New York law requires to be maintained in the ordinary course by all law firms in this State, and which constitute property of the Estate. In short, the Requested Materials were "generated . . . independently of the grand jury investigation," and thus "reveal only the activities of [the Debtor]" prior to the grand jury investigation. *Manko*, 1997 WL 107440, at *4. The Requested Materials therefore "do not constitute" and "do not disclose" any "matters occurring before the grand jury." *Id.*

31.     Furthermore, the Trustee "seek[s] disclosure of [the Requested Materials] for their intrinsic value, not to ascertain the proceedings of the grand jury." *Id.* As the Second Circuit established decades ago in *U.S. v. Interstate Dress Carriers, Inc.*:

> [W]hen testimony or data is sought for its own sake – for its intrinsic value in furtherance of a lawful investigation – rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was

14

revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury.

280 F.2d 52, 54 (2d Cir. 1960).  For that reason, disclosure of grand jury documents "is appropriate where," as here, the "documents are sought to further legitimate purposes in connection with lawful investigations or judicial proceedings."  *S.E.C. v. Everest Mgmt Corp.*, 87 F.R.D. 100, 105 (S.D.N.Y. 1980).

32.    Pursuant to Bankruptcy Code section 704(a), the Trustee has a duty to, among other things, "investigate the financial affairs of the [D]ebtor."  11 U.S.C. § 704(a)(4).  The Bankruptcy Code requires the Trustee to discharge those duties "as expeditiously as is compatible with the best interests of parties in interest."  *Id.* § 704(a)(1).  The Trustee seeks access to the Requested Materials for their intrinsic value solely for the purpose of conducting the investigation at issue, in fulfillment of his statutory fiduciary duties.  The Trustee does "not seek to learn what use the grand jury has made of" the Requested Materials;  he wishes "only to inspect and copy the records, which happen to be in the control of the grand jury, for [his] own lawfully authorized investigation."  *Interstate Dress Carriers*, 280 F.2d at 54.

33.    And, there can be no doubt that the Trustee has an independent legal right to inspect the Requested Materials, all of which constitute property of the estate pursuant to section 541 of the Bankruptcy Code.  *See, e.g.*, *In re Siskin*, No. 02-10373 (SMB), 2011 WL 4899868, at *5 (Bankr. S.D.N.Y. Oct. 13, 2011) (holding that books and records are property of the estate);  *see also* 11 U.S.C. §§ 542(a) and (e)) (with certain exceptions not present here, any entity in possession, custody, or control of property that the trustee can use, sell, or lease must turn that property over to the trustee).

34.    Accordingly, "[n]o question of the 'disclosure of matters occurring before the grand jury' is . . . involved and Rule 6(e) does not prohibit examination" of the

Requested Materials. *Interstate Dress Carriers*, 280 F.2d at 54; *see, e.g.*, *DiLeo v. Commissioner of Internal Revenue*, 959 F.2d 16, 19-20 (2d Cir. 1992), *cert. denied*, 506 U.S. 868 (1992) (Rule 6(e) inapplicable to grand jury documents sought for intrinsic value as part of independent IRS investigation); *In re Regular Grand Jury*, 741 F. Supp. 1027, 1028 (E.D.N.Y.1990) (allowing disclosure of bank records, among other grand jury documents, where intrinsic value of documents would advance separate U.S. Department of Justice civil division investigation); *U.S. v. Saks & Co.*, 426 F. Supp. 812, 815 (S.D.N.Y. 1976) (disclosure warranted where FTC requested grand jury documents for intrinsic value as part of "independent lawful investigation").

## II.    Even if Rule 6(e) Applies, Disclosure is Warranted Under *Douglas Oil*

35.    Even if Rule 6(e) did apply to the Requested Materials, and it does not, this Court should nonetheless compel disclosure.  As the Criminal Court itself concluded, the Trustee has a "compelling and particularized need for access to" the Requested Materials.  (Ex. 6 at 3.)   While the Criminal Court ultimately denied the Trustee's motion to compel based on objectionable *ex parte* information provided by the District Attorney,[8] the publicly-available facts, alone, demonstrate that disclosure is warranted here under the *Douglas Oil* standard, as set forth below.

### A.    The Requested Materials Are Needed to Avoid Injustice in This Chapter 7 Case

36.    The Trustee has worked closely with his forensic experts for months to determine which specific information is needed to meaningfully and accurately investigate the Debtor's financial affairs.  Their conclusion is that the Trustee cannot

---

[8]    The Criminal Court's refusal to compel disclosure based on *ex parte* information supplied by the District Attorney was unfair and objectionable.  The Trustee is a federally-appointed fiduciary conducting a statutorily-mandated investigation.  He should have been given an opportunity to address the District Attorney's core arguments in opposition to disclosure.  This Court should not permit that to happen again, in connection with the instant Motion.

conduct that investigation without the Requested Materials, all of which are obtainable

from the District Attorney.  (Gray Decl. ¶ 6.)  And without access to the Debtor's own

books and records, the Trustee cannot effectively try to trace the millions of dollars

stolen from the Debtor's client creditors, let alone recover those funds.  Thus,

compelling disclosure by the District Attorney of the Requested Materials is necessary

to avoid not just possible, but certain injustice in this Chapter 7 Case.

### i.    The Requested Materials Are Obtainable Only From the District Attorney

37.    The Trustee cannot obtain any of the Requested Materials from Kossoff.

As discussed above, either Kossoff has "nothing" relevant, as Walter Mack has told this

Court on the record (Ex 2 (7/22/21 Hr'g Tr.) at 22-23), or Kossoff is still refusing to

produce key documents in violation of this Court's prior rulings.  The small number of

documents that Kossoff has produced are dated and largely irrelevant and, in any

event, are not duplicative of the Requested Materials.

38.    The Trustee's broad subpoena power in this case likewise cannot

substitute for disclosure of the Requested Materials, all of which are *internal* records of

the Debtor.  Third parties simply would not possess, and to date have not produced,

information such as the Debtor's:  (i) complete list of bank accounts;  (ii) internal cash

disbursement journals;  (iii) financial record keeping and other internal accounting

records;  (iv) current client lists;  and (v) lists of accounts receivable/accounts payable.

Indeed, neither records from the Debtor's banks nor workpapers from its outside

accountants would include the Debtor's own internal notations regarding particular

transactions and transfers.[9]  For example, trust funds are not, in the first instance,

---

[9]    Nothing herein is meant to prejudice the Trustee's rights to seek document productions from banks and other non-Debtor parties, which are needed for the Trustee's investigation.

treated as income or expenses, so they would not ordinarily be reportable to taxing authorities, and transactions in the Debtor's IOLA accounts would not be in the possession of the Debtor's outside accountants.

39.     If anything, the Trustee's extensive resort to the use of subpoenas over the last four months – without success – has reinforced his need for disclosure of the Requested Materials. *See Palmer*, 2004 WL 2429806, at *3 (compelling disclosure of grand jury minutes in part because "this Court cannot agree that [movant] has failed to show that interviews, depositions, subpoenas and trial testimony would not provide other means of obtaining the substance of the grand jury testimony").

### ii.    The Trustee Cannot Conduct a Meaningful or Accurate Investigation Without the Requested Materials

40.     The key to investigating Kossoff's misconduct is the Trustee's ability to comprehensively analyze both Kossoff's and the Debtor's financial activities.  However, all of the financial information that the Trustee has received by subpoena over the last several months has gaps that cannot be reconciled without the Requested Materials, *e.g.*, the Debtor's own accounting records.  (Gray Decl. ¶ 10.)  For example, the Trustee does not have a complete list of Kossoff's and the Debtor's bank accounts.  Without that information, the Trustee cannot determine where all of the approximately $17 million of missing funds were held, where it came from, or where it was transferred.  (*Id.*)  This includes transfers within the different bank accounts that the Debtor and/or Kossoff maintained at various times.  The Trustee needs the Requested Materials to attempt to trace those funds.  (*Id.*)

41.     The Trustee can try to obtain every piece of bank account information that may be in the possession of third parties, yet he still needs the Debtor's internal accounting records (*e.g.*, the Debtor's general ledger and QuickBooks files) to reconcile

and understand the significance of that banking activity.  (*Id.* ¶ 11.)  The Debtor's IOLA

account statements, for instance, show numerous incoming and outgoing transfers.

However, without the Debtor's internal record keeping of those IOLA accounts, the

Trustee will not be able to determine the source of deposits and disbursements, or the

purpose of each transaction, because the account statements do not, to date, provide all

that information, for thousands of entries concerning transactions involving tens of

millions of dollars.  (*Id.* ¶¶ 11-12.)  The following examples, among many others, prove

this point:

- The January 30, 2021 – February 26, 2021 account statement for the Debtor's JPMorgan Chase IOLA account, alone, lists dozens of deposits and additions totaling $2,218,219.20 and "electronic withdrawals" of $2,027,134.90, but does not contain any notations that would help the Trustee understand the purpose of the listed transactions, the identity of transferees of significant transfers, or whether the transactions were legitimate.  (*See* Ex. 7.)  The Requested Materials, including the Debtor's internal accountings, are needed to analyze these transactions.

- On September 24 and 25, 2020, the Debtor's IOLA account discloses a total payment of $500,000 (in two $250,000 payments) to law firm Nesenoff & Miltenberg, LLP.  The references for both payments listed "302 Canal."  During the relevant period, the total payments made into the IOLA account by 302 Canal and two individuals associated with 302 Canal, Jason Breitstone and David Shorenstein, total $322,501, significantly less than the total amount transferred to the Nesenoff firm.  It is unclear why these transfers do not reconcile, whether there were additional payments made into the IOLA account that do not have a clear connection to these transactions, or whether the Debtor used funds that belonged to the Debtor or others to fund these transactions.  (*See* Ex. 8 at 2, 3, 6, 10, 15, 16.)

- An April 2021 statement for the Debtor's Signature Bank IOLA and "Monogram Checking" accounts list dozens of transactions, many of which contain little or no detail.  For example, there are dozens of deposits and payments listed that total more than $1 million with no detail other than check/wire numbers and random names – no purpose described, no recipient mentioned.  There are numerous transactions simply listed as "Mobile Deposit."  And there is also a "Misc Debit" of $47,725.83 on April 9, 2021.  It is impossible to discern from these statements anything substantive concerning these transactions, or the dozens more that are listed, except that both the

19

IOLA Account and checking account were emptied as of April 30, 2021.  (*See* Ex. 9 at 2, 5, 6, 7.)

42.    For the same reasons described above, the Trustee needs the Debtor's internal disbursement journals to identify:  (i) the purpose of the cash receipts and disbursements;  (ii) how they may be linked to receipts and/or other disbursements;  (iii) the parties to those transactions;  (iv) the obligations that were fully or partially satisfied;  and (v) whether property or interests in property were acquired, and by whom.  (Gray Decl. ¶ 13.)  All of these internal accountings are required to be maintained by law firms in New York pursuant to Rule 1.15 of the New York State Rules of Professional Conduct.  *See* 22 N.Y.C.R.R. § 1200.0.

43.    The Trustee likewise cannot determine whether certain of the Debtor's transactions are avoidable under the Bankruptcy Code (*e.g.*, as preferences or fraudulent transfers) without the Debtor's internal accounting records.  Identifying transferees through the Debtor's accounting records also would enable the Trustee to identify whether certain persons or entities are holding property/funds that constitute property of the Estate that should be turned over to the Trustee.  Those funds, if any, may be subject to claims of the transferee's own creditors – putting at risk the Trustee's ability to recover such funds.

44.    The Trustee also needs the Debtor's current list of present and former clients.  Without a complete client list, the Trustee cannot determine the full extent of the alleged misappropriation of funds or the corresponding scope of potential damages incurred by the Debtor's clients and creditors.  For example, the client list produced by Mack fails to provide any client contact information and is dated as of May 5, 2020, more than a year prior to the Bankruptcy Court's appointment of the Trustee.  (*See* Ex. 10.)

20

45.     Similarly, the Trustee needs the Debtor's internal accounts receivable reconciliations to more accurately determine the amounts that former clients owe the Debtor for legal services rendered.  (Gray Decl. ¶ 14.)  The accounts receivable records to which the Trustee currently has access are often impossible to reconcile, which has led to unnecessary disputes between the Trustee and certain former clients as to what they actually owed the Debtor on the Petition Date.  (*Id.*)

### iii.     The Trustee Needs the Requested Materials Now

46.     Determining creditor recoveries is dependent on the Trustee's ability to conduct a forensic investigation "as expeditiously as is compatible with the best interests of parties in interest."  11 U.S.C. § 704(a)(1) .  Without reliable internal records – *i.e.*, the Requested Materials – the Trustee cannot do this quickly or efficiently.  (Gray Decl. ¶ 15.)  The work is harder, takes much longer, and is much more expensive, all to the detriment of the Debtor's creditors/victims.  Indeed, because the Trustee has not yet obtained access to the Debtor's internal accounting records, the Trustee and his professionals have spent numerous hours during the last two months trying, *without success*, to reconcile the Debtor's years of unexplained and suspect financial activity.  (*Id.*)  Those efforts have been exponentially more expensive than if the Trustee had been given immediate access to the Requested Materials.  Continued delay in access to this information will increase such costs to an already cash poor Estate, all to the detriment of the Debtor's creditors.

47.     While the Debtor's known bank accounts have been frozen, the Trustee is unable to determine, without the Requested Materials, whether there are other Debtor/Kossoff accounts that have not been frozen.  (*Id.* ¶ 16.)  And, the bank accounts that the Trustee has discovered were all virtually emptied before the Trustee was appointed.  Without a complete picture of what happened, the Trustee cannot

21

determine whether or not improperly transferred assets from those accounts are being

further distanced from the Trustee, *e.g.*, a fraudulent transferee further transferring

funds beyond the Trustee's reach.  (*Id.*)  The risk of harm from this happening

outweighs the need for continued absolute secrecy, especially because it will take time

to trace funds and transfers even with the Requested Materials in hand.  To say time is

of the essence would be an understatement.

**B.      The Need for Disclosure Outweighs the Need for Continued Secrecy**

48.      There is a dual public interest in disclosure of the Requested Materials.  As

the Second Department held in *Aiani v. Donovan*, a "compelling public interest exists in

assisting those," like the creditors at issue here, "who have been defrauded, and in

deterring others who might engage in fraudulent conduct in the future."  950 N.Y.S.2d

745, 748 (2d Dept. 2012)  It is also widely recognized that "there is a great public policy

in ensuring bankruptcy cases continue to an orderly, efficient resolution to maximize

and preserve the estate's assets."  *In re Yesko*, 2013 WL 5878411, at *3 (Bankr. S.D.N.Y.

Nov. 1, 2013) (citation omitted);  *see also In re Metiom, Inc.,* 318 B.R. 263, 272 (S.D.N.Y.

2004) (noting the "public interest in the expeditious administration of bankruptcy cases

[which] is impaired by obstructing the trustee's efforts to collect, liquidate and

distribute assets to creditors of the estate") (citation omitted).  Forcing the Trustee to

serve and enforce dozens of subpoenas and depose multiple witnesses to try to

understand what is likely expressly recorded in the Debtor's internal records is contrary

to this public policy and inefficient, and it would be largely futile.  The costs and

expenses of the Trustee's investigation are administrative expenses that are to be paid

before creditor claims.  Consequently, precluding disclosure is also prejudicial to

claimants' interests.  *See* 11 U.S.C. §§ 503, 507 and 726.

22

49.     Additionally, the traditional reasons for grand jury secrecy –
(i) preventing flight of the accused;  (ii) protection of the accused against unfounded
accusations if no indictment occurs; (iii) protection of grand jurors from interference;
(iv) preventing witness tampering;  and (v) assurance of prospective witness anonymity
– simply do not apply here. *See Douglas Oil*, 441 U.S. at 219-220.  There has been no
articulated risk of flight, and Kossoff's own criminal defense counsel told the
Bankruptcy Court back in July, and then again in September, that he is in active
negotiations with the District Attorney.  (*See* Ex. 2 (7/22/21 Hr'g Tr.) at 31;  Ex. 11
(9/14/21 Hr'g Tr.) at 15.)  Moreover, creditors have been pursuing Kossoff for
misappropriation since before the District Attorney executed his search warrant during
April 2021.  Disclosure of the Requested Materials is not going to reveal anything new
that has not already been alleged publicly by the Debtor's creditors in various state and
federal courts.  The District Attorney's investigation into Kossoff, and the subject matter
of that investigation, are public knowledge, as confirmed by statements of Kossoff's
own criminal counsel to this Court.  That, by itself, warrants compelling disclosure. *See,
e.g.*, *Manko*, 1997 WL 107440, at *3 (rejecting government's argument that disclosing
business records at issue would "compromise the secrecy of the grand jury because they
reveal the heart of the criminal case," on the basis that "the subject matter of the grand
jury's investigation is a matter of public knowledge").

50.     Nor are there any other reasons for maintaining grand jury secrecy here.
Kossoff does not need protection from the Trustee, who is simply trying to conduct a
reliable investigation as quickly and efficiently as possible.  Kossoff himself is not trying
to protect the secrecy of the grand jury – after all, it was his criminal counsel who
publicly confirmed the existence of the District Attorney's investigation. *See Frederick*,
2012 WL 4947806, at *13 (finding that "the purpose of protecting an 'innocent accused'

is of no weight" where the person subject to a grand jury had "chosen to identify himself publicly" as a "target of police investigation"). And there is no risk of exposing or interfering/tampering with grand jurors, given that the Trustee does not presently seek disclosure of any grand jury testimony or witness identities. In other words, there is no justifiable basis for the District Attorney to guard the secrecy of the Requested Materials.

### C.    The Requested Materials Cover Only Information That is Essential to the Trustee's Investigation

51.    For the reasons set forth in detail above (*supra* Section I.A), the Requested Materials are all essential to the Trustee's investigation. As the Criminal Court itself found, the Trustee has "a compelling and particularized need for access to" this information. (Ex. 6 at 3.) Thus, it should be disclosed. *See Del Cole v. Rice*, 2013 WL 12316374, at *5 (E.D.N.Y. Nov. 6, 2013) (disclosure warranted where request was "structured to cover the material required in this case in the interest of justice"); *Palmer*, 2004 WL 2429806, at *5 (finding that "the grand jury testimony sought is necessary to meet [the requesting party's] needs").

*[Concludes on following page]*

24

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the Motion in its

entirety.

DATED:   New York, New York
          November 2, 2021

                                    Respectfully submitted,

                                    ALBERT TOGUT,
                                    Not individually but solely in his capacity as
                                    Chapter 7 Interim Trustee of
                                    Kossoff PLLC
                                    By His Counsel,
                                    TOGUT, SEGAL & SEGAL LLP
                                    By:

                                    */s/ Neil Berger*
                                    NEIL BERGER
                                    BRIAN F. SHAUGHNESSY
                                    MINTA J. NESTER
                                    One Penn Plaza, Suite 3335
                                    New York, New York 10119
                                    (212) 594-5000