**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------- X
                                                    :
                    In the Matter                   :        Chapter 7
                                                    :        Case No. 21-10699 (DSJ)
                         -of-                        :
                                                    :
KOSSOFF PLLC,                                       :
                                                    :
                                                    :
                              Debtor.               :
                                                    :
--------------------------------------------------------------- X

**DECISION AND ORDER HOLDING MITCHELL H. KOSSOFF IN CIVIL CONTEMPT
AND IMPOSING INCARCERATION AS COERCIVE SANCTION UNLESS KOSSOFF
PURGES HIS CONTEMPT BY NOVEMBER 30, 2021**

Clients of a law firm commenced this involuntary Chapter 7 bankruptcy case when they

allegedly learned that approximately $8 million that the clients had on deposit in the law firm's

client escrow accounts were missing and unaccounted for.  Additional clients have raised similar

concerns, and the amount of reportedly missing client funds that had been entrusted to the firm

now has risen to approximately $17 million.  The firm is debtor Kossoff PLLC ("**Debtor**"), and

the firm's principal is (or was) attorney Mitchell H. Kossoff ("**Kossoff**").  Mr. Kossoff

reportedly is under criminal investigation in connection with the possible misappropriation of

client funds, and the Debtor law firm has ceased operations.  Chapter 7 Trustee Albert Togut (the

"**Chapter 7 Trustee**") is attempting to carry out his obligation to investigate the firm's affairs,

recover estate assets, and, to the greatest extent possible, facilitate creditor recoveries.

From early in the case, Mr. Kossoff has been subject to a series of orders requiring him to

produce relevant information and, in his capacity as the Court-ordered representative of the

Debtor, perform duties of the Debtor including completing required schedules, providing a list of

1

creditors, and appearing at a section 341 creditor meeting if and when such a meeting can be

conducted.  Mr. Kossoff has consistently failed to comply with his Court-ordered obligations, or

otherwise to assist the Trustee's efforts, except to an extremely limited and grudging extent,

while broadly asserting Fifth Amendment rights.  He continues his non-compliance even after

this Court rejected his arguments and held that his Fifth Amendment assertions do not excuse,

among other things, his duty to take acts to facilitate this bankruptcy in his representative

capacity on behalf of Debtor.  Further underscoring the clarity and validity of Mr. Kossoff's

obligations, the District Court declined Mr. Kossoff's application for a stay and for leave to

appeal this Court's order compelling him to perform these obligations.

The Chapter 7 Trustee now has moved to hold Mr. Kossoff in civil contempt of orders

requiring his cooperation.  [*See* Bankr. Docket No. 218 (the "**Contempt Motion**")].  Mr. Kossoff

opposed, complaining that the motion is "premature" even after he has engaged in months of

noncompliance and resistance.  [*See* Bankr. Docket No. 249 (the "**Opposition**")].  The Court has

repeatedly urged Mr. Kossoff to comply with his obligations, and has warned him that he stands

in violation of orders and is now in civil contempt, with a likelihood of incarceration as the least

onerous possibly effective means of inducing him to comply with the Court's lawful orders.  Yet

Mr. Kossoff persists in violating the Court's orders, including the unambiguous and critically

important requirement that he identify creditors and complete schedules.  Mr. Kossoff's

noncompliance has serious consequences, as Mr. Togut's work is stymied, expenses mount, and

Mr. Togut's task of tracing and recapturing any improper transfers grows ever more challenging.

Accordingly, the Court concludes that Mr. Kossoff is in civil contempt of the Court's

orders, specifically and at a minimum those that require him to prepare appropriate schedules

and identify creditors so as to facilitate necessary steps including the conduct of a section 341

creditors' meeting.  Unless Mr. Kossoff provides the required schedules and a creditor list on or

before November 30, 2021, and demonstrates to the Court that he has done so, the Court will

issue a bench warrant for Mr. Kossoff's arrest on or soon after December 1, as a coercive civil

contempt sanction intended to induce his compliance with his Court-ordered obligations.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having considered the full record of this case, and mindful that a court should not blindly

accept findings of fact and conclusions of law proffered by the parties (*see St. Clare's Hosp. and*

*Health Ctr. v. Ins. Co. of North Am., (In re St. Clare's Hosp. and Health Ctr.)*, 934 F.2d 15 (2d

Cir. 1991) (referencing *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656 (1964)),

and having conducted an independent analysis of the law and the facts, the Court makes the

following Findings of Fact and Conclusions of Law.  In addition to the cited bases for the

findings stated herein, the Court relies on the statements made during a November 16 hearing on

the Contempt Motion, for which the transcript is not yet available.  At that hearing, the Court

asked counsel for Mr. Kossoff to identify any and all factual statements he contested that were

included in a proposed Certification [the "**Proposed Certification**," Bankr. Docket No. 218 Ex.

4] that the Trustee sought to have this Court enter in connection with its Contempt Motion.  The

Court accepts as uncontested any facts that were stated in that Proposed Certification yet not

contested by Mr. Kossoff during the November 16 hearing or in a subsequent counter-proposed

certification that Mr. Kossoff submitted [Bankr. Docket No. 282 Ex. B].

### I.    Jurisdiction and Venue

1.    The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is

a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (O).  Venue is proper in this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The Contempt Motion requested that this Court issue the Proposed Certification, which would function as proposed findings of fact and conclusions of law subject to review by the District Court.  During argument, however, the Chapter 7 Trustee also cited a prior instance of this Court's direct imposition of incarceration as a sanction for civil contempt.  Upon review of the parties' contentions, the Court entered an order inviting, but not requiring, a supplemental filing by any party wishing to assert that the Court lacks authority to enter a final order or findings of fact and conclusions of law holding an individual in civil contempt, and to impose sanctions up to and including incarceration in the event of continued noncompliance by the party found to be in civil contempt.  [Bankr. Docket No. 282.]

3.      Mr. Kossoff filed a "Supplemental Opposition" [Bankr. Docket No. 283] stating that "Mr. Kossoff does not contest the authority of the Bankruptcy Court to issue an order . . . find[ing] our client in civil contempt of the Court's Orders."  [*Id.* at 1].  Mr. Kossoff did, however, "contest the authority of the Bankruptcy Court to issue a bench warrant to be executed by the United States Marshals Service without the approval and imprimatur of an Article III United States District Court and the District Court's hearing Mr. Kossoff's Title 18 U.S.C[.] Section 3141, *et seq.* bail arguments. . . ."  [*Id.* at 2].  Despite raising this contention, Mr. Kossoff cited no legal authority calling into question this Court's authority to issue bench warrants in the exercise of its inherent civil-contempt sanction authority, and abundant law confirms that the Court has such authority.  [*See infra* Part VIII (Discussion); 11 U.S.C. § 105(a); Fed. R. Bankr. P. 9020; *Rosen v. Breitner & Hoffman, P.C., (In re Flushing Hosp. & Med. Ctr.)*, 395 B.R. 229, 241 (Bankr. E.D.N.Y. 2008); *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 534 (Bankr. S.D.N.Y. 2007); *199 East 7th Street LLC*, No. 14-13254 (SCC), ECF No. 154 (Bankr. S.D.N.Y. Jan. 18, 2017)].  Further, the criminal code provision Mr. Kossoff invokes, 18 U.S.C. § 3141, is

inapplicable to this Court's exercise of its inherent authority to enforce its own orders. *See In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 WL 3716398, at *7 (Bankr. S.D.N.Y. Aug. 20, 2021). Rather, that section provides that a "judicial officer authorized to order the arrest of a person under section 3141 of this title before whom an arrested person is brought shall order that such person be released or detained . . . ," *id.*, while section 3041 of Title 18 concerns the judicial authority over persons arrested "for any offense against the United States"— not persons arrested as a coercive civil contempt sanction aimed at inducing compliance with this or any Court's orders.

## II.    The Chapter 7 Case

4.       On April 13, 2021 (the "**Petition Date**"), creditors of the Debtor (collectively, the "**Petitioning Creditors**") commenced this Chapter 7 case in this Court by filing an involuntary petition for relief under Chapter 7 of the Bankruptcy Code (the "**Involuntary Petition**").

5.       Prior to the Petition Date, the Debtor operated as a law firm located at 217 Broadway in New York City, and serviced clients in the real estate industry. [*See* Bankr. Docket No. 26-4 ¶ 10].[1] The Debtor held itself out as providing full-service real estate legal services specializing in litigation and transactional matters related to areas of real property law, including leasing, sale and acquisition of real property interests, commercial landlord tenant matters, real estate litigation, and city, state and federal agency regulatory matters. [*See id.*].

6.       The Debtor was a professional limited liability company, organized under the laws of New York, and Mr. Kossoff was its sole member. [*See* Bankr. Docket No. 116, Ex. 3

---

[1]       References to "Bankr. Docket No. __" refer to the docket of the Chapter 7 Case, Case No. 21-10699 (DSJ) (Bankr. S.D.N.Y.). References to "S.D.N.Y. Docket No. __" refer to the docket of the Appeal (defined below), Case No. 1:21-cv-07122-AKH (S.D.N.Y.).

(Articles of Organization and Operating Agreement); *see also* Bankr. Docket No. 30; Bankr. Docket No. 30-1].

7.      The Petitioning Creditors are clients of the Debtor and together assert claims for "Unreturned IOLA Funds" and "Misappropriated IOLA Funds" totaling approximately $8 million.  [Bankr. Docket No. 1].  Other former clients have also asserted similar claims against the Debtor, such that known claims for missing escrow funds total approximately $17 million. [Bankr. Docket No. 218 ¶ 6; 218-1 ¶ 4].

8.      Counsel for Mr. Kossoff has represented that the Manhattan District Attorney's Office (the "**DA**") executed or caused to be executed a search warrant at the Debtor's offices in mid-April, 2021, and seized voluminous files, computers, and computer records.  [*See, e.g.*, Bankr. Docket No. 249 at 6].  Mr. Kossoff's counsel further represents that those materials remain in the custody of the DA and have not been returned to Mr. Kossoff.  [*Id.*].  The Trustee has requested copies of Debtor's records possessed by the DA, but the DA has declined to produce them to the Trustee, and the Trustee has filed a motion to compel the DA to provide those records.  [Bankr. Docket No. 217].  A hearing on that motion is scheduled for early December.

9.      The Debtor did not appear in response to the Involuntary Petition as required by the Bankruptcy Code and Rules, and, on May 11, 2021, the Bankruptcy Court entered the *Order for Relief and Order to File Schedules and Other Documents* [Bankr. Docket No. 14] (the "**Order for Relief**").

10.     The Order for Relief directs the Debtor to file "all schedules, statements, lists and other documents that are required under the Federal and Local Rules of Bankruptcy Procedure" (the "**Schedules**") no later than May 25, 2021.  [*See* Bankr. Docket No. 14].

11.     On May 12, 2021, Mr. Togut was appointed as the Chapter 7 Interim Trustee of the Debtor, accepted his appointment, and duly qualified.  [*See* Bankr. Docket No. 15].

12.     The Debtor has not yet filed any of the Schedules.  [*See generally* Bankr. Docket; forthcoming Transcript of Hearing dated November 16, 2021] (lack of schedules acknowledged by counsel for Mr. Kossoff).

## III.    The Trustee's Attempts to Obtain Discovery and Cooperation from Kossoff

13.     Before and during the November 16 hearing, the Trustee represented, and Mr. Kossoff did not deny despite specific inquiry by the Court, that the Trustee has sought Mr. Kossoff's assistance in performing Debtor's duties in the bankruptcy case and in collecting the Debtor's documents and information that is needed for the Trustee's investigation of the Debtor's affairs.  Among other things, the Trustee has requested that Mr. Kossoff produce categories of the Debtor's documents and information (the "**Requested Information**"), including:

      a.  List of the Debtor's bank accounts with account numbers;

      b.  Bank records;

      c.  Cash receipts journals;

      d.  Cash disbursements journals;

      e.  Credit card records;

    f.   Client lists;

    g.   List of accounts receivable and amounts;

    h.   Records required pursuant to N.Y. Code of Professional Responsibility Rule 1.15 (22 N.Y.C.R.R. § 1200.0, including records of all deposits and withdrawals from accounts specified in subsection (b);

    i.   Inventories of seized records provided by law enforcement;

    j.   All of these documents and information are required by the Order for Relief and Bankruptcy Rule 1007;  and

    k.   Other documents as requested by the Trustee.

[*See, e.g.*, ECF No. 218 ¶ 11].

14.    Mr. Kossoff initially told the Bankruptcy Court and the Trustee that he was unwilling to identify or produce documents to the Trustee and that he would assert a privilege against self-incrimination under the Fifth Amendment unless the Bankruptcy Court grants him broad immunity because he is being investigated by the DA.[2]  [*See, e.g.*, Bankr. Docket No. 30]. In response to the Trustee's requests, Mr. Kossoff broadly asserted a Fifth Amendment privilege without identifying specific records, topics, or questions as the subject of his privilege invocation.  [*See, e.g., id.*].

---

[2]    Mr. Kossoff initially also stated that there was a separate investigation by the United States Attorney for the Eastern District of New York, but he since has stated that that investigation apparently has been closed or is not active at this time.

### III.    The Trustee's Rule 2004 Motion and Related Orders

15.    On May 24, 2021, the Trustee filed the *Chapter 7 Interim Trustee's Ex Parte Application for an Order (I) Directing the Preservation of Documents and Recorded Information and (II) Authorizing the Issuance of Subpoenas for the Production of Documents and Deposition Testimony Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Bankr. Docket No. 26] (the "**Rule 2004 Motion**").

16.    Also on May 24, 2021, this Court entered the *Order Authorizing Trustee to Issue Subpoenas and Obtain Testimony and for Injunctive Relief* [Bankr. Docket No. 27] (the "**Initial Rule 2004 Order**").

17.    On May 26, 2021, counsel for the Debtor, Mr. Kossoff, and Mr. Kossoff's affiliated entity Tenantracers, LLC filed an opposition to the Rule 2004 Motion, asserting that "Mr. Kossoff intends to invoke his Fifth Amendment privilege against self-incrimination and will refuse to answer questions that may tend to incriminate him." [*See* Bankr. Docket No. 30 at 2]. He also asserted that "Mr. Kossoff alone would be the only person to properly identify, collect, describe and submit documents to the Bankruptcy Court or its Trustee." [*Id*. at 3].

18.    Pursuant to the Initial Rule 2004 Order, this Court conducted a preliminary injunction hearing on May 27, 2021.

19.    On June 4, 2021, Mr. Kossoff through his counsel filed the *Objection to Preliminary Injunction Order and Trustee Issuance of Subpoenas for Testimony and Documents* [Bankr. Docket No. 48].

20.    Pursuant to the *Order Scheduling Final Hearing to Consider Injunctive Relief* [Bankr. Docket No. 33]*,* this Court held a final hearing to consider the injunctive relief sought by

the Trustee on June 10, 2021.  Later that day, the Court entered the *Final Order Granting*

*Injunctive Relief* [Bankr. Docket No. 62].[3]

## IV.    **The Designation Order and Related Filings**

21.    On May 28, 2021, the Trustee filed the *Application for an Order (A) Designating*

*Mitchell H. Kossoff as the Responsible Officer of the Debtor and (B) Compelling Him to (1)*

*Produce Information Requested by the Chapter 7 Trustee; (2) Appear for Examinations Under*

*Oath at the Bankruptcy Code Section 341 Meeting of Creditors; and (3) Otherwise Cooperate*

*with the Chapter 7 Trustee* [Bankr. Docket No. 36] (the "**Designation Motion**").  The

Designation Motion sought, among other things, an order "compelling Kossoff to perform all of

the Debtor's duties including [] complying with the Order for Relief" [Bankr. Docket No. 14],

which among other things required Debtor to file the Schedules.  The Designation Motion also

sought an order directing Mr. Kossoff to produce Debtor's documents and information, including

the Requested Information.

22.    On June 16, 2021, Mr. Kossoff filed the *Objection to Bankruptcy Trustee's*

*Application for an Order (A) Designating Mitchell H. Kossoff as the Responsible Officer of the*

*Debtor and (B) Compelling Him to (1) Produce Information Requested by the Chapter 7 Trustee;*

*(2) Appear for Examination Under Oath at the Bankruptcy Code Section 341 Meeting of*

*Creditors;  and (3) Otherwise Cooperate with the Chapter 7 Trustee and Motion to Quash All*

---

[3]    The Trustee also filed a second motion based upon Bankruptcy Rule 2004; specifically, on
June 18, 2021, the Trustee filed the *Chapter 7 Interim Trustee's Application for Entry of an
Order Enforcing Automatic Stay and Directing Mitchell H. Kossoff and Tenantracers, LLC
to Provide the Trustee with Access to the Fifth Floor Premises to Inspect and Take
Possession of Property of the Estate* [Bankr. Docket No. 85] (the "**Access Motion**").  On
July 12, 2021, the Bankruptcy Court granted the Access Motion [Bankr. Docket No. 117].

*Subpoenas Compelling Testimony or Document Production from Him, His Fiduciaries or His Defense Team* [Bankr. Docket No. 80] supported by a memorandum of law that among other things contended broadly that the relief sought would violate Mr. Kossoff's rights under the Fifth Amendment act-of-production doctrine [Bankr. Docket No. 80-1].

23.    On June 22, 2021, the Trustee filed the *Chapter 7 Trustee's Reply to Objection to Bankruptcy Trustee's Application for an Order (A) Designating Mitchell H. Kossoff as the Responsible Officer of the Debtor and (B) Compelling Him to (1) Produce Information Requested by Chapter 7 Trustee;  (2) Appear for Examination Under Oath at the Bankruptcy Code 341 Meeting of Creditors;  and (3) Otherwise Cooperate with the Chapter 7 Trustee and Motion to Quash All Subpoenas Compelling Testimony and Document Production from Him, His Fiduciaries or His Defense Team* [Bankr. Docket No. 89].

24.    This Court conducted a hearing on June 24, 2021 to consider the Designation Motion (the "**June 24 Hearing**").  [*See* Bankr. Docket No. 86].

25.    During the June 24 Hearing, this Court observed "that blanket assertions are insufficient and that the party asserting the privilege needs to explain at least in circumstances where the applicability of the . . . privilege isn't self-evident why it applies."  [Bankr. Docket No. 101 (June 24, 2021 Hr'g Tr.) at 8:18–21; *see also id.* at 23:15–23 ("…I do take the view and agree with the trustee ... and the law that a blanket invocation of the privilege is insufficient. . . . [T]he Court has to assess the implications of particular questions when asked and assess whether there is an eviden[t] risk of incrimination posed by the inquiry.  And if not, the Court has the duty of inquiry to determine whether or not there is such a reasonable risk presented.")].  The Court also observed that the Trustee is trying to do "very important work to try to help resolve the affairs of the estate."  [*Id.* at 41:21–25].

11

26.     On June 25, 2021, the Bankruptcy Court granted the Designation Motion by entering the *Order Designating Mitchell H. Kossoff as the Responsible Officer of the Debtor* [Bankr. Docket No. 93] (the "**Designation Order**"), which provides in part that "Kossoff is designated as the person responsible for performing the Debtor's duties in this case . . . ." [*Id.* at 2]. The Designation Order further required that counsel for the Trustee and Mr. Kossoff were to promptly meet and confer in good faith concerning Mr. Kossoff's duties and the identity of the documents Mr. Kossoff will produce to the Trustee, including the Requested Information and all copies and/or electronic back-up materials of them, and describe which items he will not produce to the Trustee, or, "if Kossoff takes the view that identifying documents he possesses would violate his Fifth Amendment right against self-incrimination, Kossoff shall so state, with as specific reference as possible consistent with his Fifth Amendment privilege concern to the records or types of records at issue." [*See id.*].

27.     The Designation Order is now final, having never been challenged after entry.

28.     On June 25, 2021 and June 30, 2021, counsel for the Trustee and Mr. Kossoff met and conferred regarding Mr. Kossoff's duties and the identity of documents that Mr. Kossoff would be willing to produce to the Trustee. [*See* Bankr. Docket No. 105-1 at 2].

29.     On July 1, 2021, the Trustee filed the *Notice of Filing of Meet and Confer Status Report Pursuant to June 25, 2021 Order* [Bankr. Docket No. 105] (the "**Status Report**").

30.     As set forth in the Status Report, Mr. Kossoff's counsel produced three categories of Requested Information to the Trustee:  (1) a list of the Debtor's bank accounts with account numbers, though certain numbers appear to be incomplete;  (2) inventories of records seized by law enforcement (which were prepared by law enforcement);  and (3) certain organizational

documents of the Debtor, including the Debtor's articles of organization as filed with the New York Secretary of State and its operating agreement. [*See* Bankr. Docket No. 105-1 at 3]. In addition, Mr. Kossoff agreed to allow the Trustee access to the offices located on the fifth floor of the Premises to collect responsive documentation. [*See id.*].

31.    The Trustee has asserted that Mr. Kossoff has failed to produce any of the current, relevant Debtor's bank records, cash receipt journals, credit card records, and records that are required to be maintained by law firms pursuant to N.Y. Code of Professional Responsibility D.R. 9-102[4] (collectively, the "**Additional Disputed Records**"). [*See id.*[5]]. Mr. Kossoff contests this assertion, and, during the November 16, 2021 hearing, represented that he has now turned over to the Trustee all of the relevant documents in his possession, custody and control, with the exception of documents as to which he has asserted privilege in the privilege log that is attached as an exhibit to Bankr. Docket No. 252. The Trustee also has represented that, without conceding the existence or possession, custody, or control of the Additional Disputed Records, Mr. Kossoff had refused to produce additional documents absent an adjudication by this Court. [*Id.* at 3–4].

32.    Mr. Kossoff has also failed to prepare the Schedules, or to produce a list of accounts receivable. [*See* Bankr. Docket No. 218 ¶¶ 10, 33]. While Mr. Kossoff has advised

---

[4]    *See also* N.Y. Code of Professional Responsibility Rule 1.15 (22 N.Y.C.R.R. § 1200.0).

[5]    The Trustee advised this Court that on July 15, 2021, Mr. Kossoff's counsel permitted the Trustee's accountants to remove limited documents from the Fifth Floor Premises, as required by this Court's order granting the Access Motion, but that with the possible exception of certain Debtor payable invoices and paid accounts receivable invoices, all that was made available were dated documents, none of which appear to be useful in determining what happened to the nearly $17 million of funds sought by creditors of the Debtor.

that no comprehensive client list is within his possession, custody, or control, he has not

provided such a list based on his recollection or available documentation.  [*See id.*].

## V.      The Order to Compel

33.      After receiving the Status Report, on July 22, 2021, this Court conducted a

hearing to consider Mr. Kossoff's obligations (the "**July 22 Hearing**").

34.      On August 5, 2021, this Court entered the *Order Compelling Mitchell H. Kossoff*

*to (1) Produce Information and Documents Required by the Chapter 7 Trustee; (2) Appear for*

*Examination at Section 341 Meetings of Creditors; and (3) Otherwise Cooperate with the*

*Chapter 7 Trustee* [Bankr. Docket No. 137] (the "**Order to Compel**").

35.      Among other things, the Order to Compel held that "the collective entity doctrine

overrides and renders inapplicable privileges, including the Fifth Amendment privilege against

self-incrimination and the act of production privilege, for acts of production compelled to be

performed by Kossoff who, by reason of the Designation Order, is acting not in his individual

capacity but in his representative capacity on behalf of the Debtor."  [*Id.*].

36.      The Order to Compel further directs Mr. Kossoff to:

   a.  "[N]ot individually[,] but in his representative capacity of the Debtor, . . . take
       all steps necessary to perform the Debtor's duties pursuant to the Order for
       Relief and the Designation Order, including the preparation of the Debtor's
       Schedules…";

   b.  "[F]or the reasons set forth on the record of the July 22 Hearing, not
       individually but in his representative capacity as the Court-appointed
       responsible officer of the Debtor . . . take all steps necessary to obtain all of
       the Requested Information and the Additional Disputed Records including but
       not limited to the known creditors of the Debtor, current and former clients of
       the Debtor, internal bank receipts and disbursements records, and accounts
       receivable records of the Debtor, and all IOLA records required to be

14

maintained by the Debtor, in his possession, custody or control, and to produce them and/or cause them to be produced to the Trustee…";

c.    "[F]or the reasons set forth on the record at the July 22 Hearing, . . . appear for examination under oath not individually but in his representative capacity on behalf of the Debtor at the Section 341 Meeting in this case and at any adjourned dates of such meeting…";  and

d.    "[F]or the reasons set forth on the record at the July 22 Hearing, Kossoff, not individually but in his representative capacity, is directed to otherwise fully cooperate with the Trustee on behalf of the Debtor in accordance with Bankruptcy Code section 521…."

[Bankr. Docket No. 137].

## VI.    The Appeal and Attempts to Stay the Order to Compel Pending Appeal

37.    On August 18, 2021, Mr. Kossoff and the Debtor (together, the "**Appellants**"), by Mr. Kossoff's counsel and without the support of the Chapter 7 Trustee (who is authorized to act for the estate), filed a notice of appeal [Bankr. Docket No. 144], seeking to commence an appeal of the Order to Compel (the "**Appeal**").

38.    Also on August 18, 2021, without seeking to expedite a hearing, Appellants filed the *Motion for Leave to Appeal* [Bankr. Docket No. 145] (the "**Motion for Leave to Appeal**") in this Court, in which both the Debtor and Mr. Kossoff sought leave to appeal the Order to Compel.  The Motion for Leave to Appeal was entered on the District Court's docket on August 24, 2021 [S.D.N.Y. Docket No. 3].

39.    On September 1, 2021, the Chapter 7 Trustee filed the *Chapter 7 Interim Trustee's Opposition to Motion for Leave to Appeal* [S.D.N.Y. Docket No. 5].  On September 16, 2021, Appellants filed the *Reply Memorandum of Law in Further Support of Motion for Leave to Appeal* [S.D.N.Y. Docket No. 10].

40.     On August 19, 2021, Appellants filed in this Court the *Debtor's Motion for Limited Stay Pending Appeal of the August 5, 2021 Order Holding the Fifth Amendment Inapplicable to Debtor and Compelling Mitchell Kossoff to Create Documents, to Appear for Examination at the Creditor Committee Meeting, and to Produce Documents and Other Information* [Bankr. Docket No. 147] (the "**Bankruptcy Court Stay Motion**").

41.     On September 7, 2021, the Trustee filed the *Chapter 7 Interim Trustee's Objection to Motion for Limited Stay Pending Appeal of August 5, 2021 Order* [Bankr. Docket No. 156].

42.     On September 10, 2021, Appellants filed the *Movants' Reply in Further Support of Motion for Limited Stay Pending Appeal of the August 5, 2021 Order Holding the Fifth Amendment Privilege Against Self-Incrimination Inapplicable to Debtor and Compelling Mitchell Kossoff to Create Documents, to Appear for Examination at the Creditor Committee Meeting, and to Produce Documents and Other Information* [Bankr. Docket No. 167].

43.     On September 14, 2021, this Court conducted a hearing to consider the Bankruptcy Court Stay Motion.

44.     On September 23, 2021, this Court entered an *Order Denying Motion for Stay Pending Appeal*, which denied the stay application, with the denial order "effective as of 5:00 p.m. September 27, 2021, absent further order of a reviewing Court." [Bankr. Docket No. 178].

45.     The District Court subsequently entered an *Order Denying Motion to Appeal,* dated September 30, 2021, thereby foreclosing an appeal from the Order to Compel and denying any stay of that order [S.D.N.Y. Docket No. 17].

**VII.    <u>Kossoff's Continued Non-Compliance with the Order to Compel</u>**

16

46.     The Trustee's counsel has represented that the parties had telephonic discussions concerning Mr. Kossoff's cooperation with the Trustee following entry of the District Court's *Order Denying Motion to Appeal* and the resulting denial of a stay.  The Trustee contends that the Kossoff Production is deficient and fails to fully comply with the Order to Compel.  Mr. Kossoff disputes that contention, and, as noted, his counsel represented that Mr. Kossoff has now produced all responsive records in his possession, custody, or control, and that he lacks access to the bulk of Debtor's records because they have been seized by the DA.  It remains unclear to this Court whether Mr. Kossoff or his counsel have requested copies of all records that reportedly were seized by the DA, which, if available to him, would undermine his repeated statements that the DA's seizure of records has left Mr. Kossoff unable to cooperate with the Chapter 7 Trustee's information requests or the Court's orders that he provide information to facilitate the bankruptcy.

47.     As of the date hereof, and as his counsel explicitly acknowledged during the November 16 hearing, Mr. Kossoff has not prepared or filed the Schedules, nor has he identified creditors of the Debtor of whom he is aware, which the Trustee represents is necessary for proper noticing and conduct of a section 341 creditors' meeting.  *See also* Bankr. R. 1007(a)(2) ("In an involuntary case, the debtor shall file, within seven days after entry of the order for relief, a list containing the name and address of each entity included or to be included on" schedules); 1983 Advisory Committee Notes to Rule 1007 ("Subdivision (a) requires at least a list of creditors with their names and addresses to be filed with the petition.  This list is needed for notice of the meeting of creditors . . . and notice of the order for relief" and "will also serve to meet the requirements of § 521").  Nor has Mr. Kossoff appeared for examination at a section 341 meeting of creditors; Mr. Kossoff objects that he cannot be faulted for his non-appearance

17

because no such meeting has occurred, while the Trustee responds that the lack of a section 341 meeting results from Mr. Kossoff's own violation of orders requiring him to provide information needed to conduct such a meeting, including, specifically, the required list of the Debtor's creditors.

48.    Mr. Kossoff's failure to fully comply with the Order to Compel – even if limited to his failure to provide the required Schedules and a list of creditors of whom he is aware – impedes the Trustee's efforts to conduct his investigation of the Debtor's affairs as mandated by Bankruptcy Code section 704.  This failure has caused serious harms and largely thwarted the Chapter 7 Trustee's efforts to bring order to Debtor's affairs and to attempt to recover at least some of the funds creditors are owed.  Further, Mr. Kossoff's intransigence has vastly increased the administrative costs and expenses of administering the Debtor's estate, which further prejudices the Debtor's creditors by diminishing the amount available to fund any future creditor recovery.  Further, the Trustee has persuasively stated that the ongoing delay causes ever-increasing harm as misappropriated assets may be dissipated or transferred, and statutes of limitations run.

49.    Mr. Kossoff's ongoing violation of this Court's orders – in particular, the Order to Compel and the earlier Designation Order – is unquestionably deliberate and willful.  His obligations are clear and unambiguous, and Mr. Kossoff repeatedly been urged and afforded more than adequate opportunity to comply.  In particular, even crediting Mr. Kossoff's representation that he has now produced all responsive, non-privileged records in his possession, custody, or control, Mr. Kossoff has not completed or presented schedules or a creditors' list despite being required to do so by orders dating back to the June 25 Designation Order and by the subsequent Order to Compel, which required him to "not individually, but in his

representative capacity of the Debtor, . . . take all steps necessary to perform the Debtor's duties

pursuant to the Order for Relief and the Designation Order, including the preparation of the

Debtor's Schedules."  The Court specifically finds that the "steps necessary to perform the

Debtor's duties" included an obligation to facilitate the section 341 meeting by identifying

creditors known to Mr. Kossoff, which Mr. Kossoff still has refused to do.  Nor, as previously

stated, has Mr. Kossoff completed the Schedules.

50.    Mr. Kossoff's continuing noncompliance has been shown by clear and convincing

evidence, and indeed in material part is uncontested.  And Mr. Kossoff's noncompliance

continues to this day even after repeated urgings by this Court to come into compliance, and

warnings that he risks serious sanctions, up to and including incarceration, if he does not comply

with his Court-ordered obligations.  [*See, e.g.*, Bankr. Docket Nos. 236 (November 5, 2021 order

granting extension of time for Mr. Kossoff to respond to the Motion for Contempt, stating, "Mr.

Kossoff is encouraged to take steps before then to reduce or eliminate the outstanding issues that

give rise to the Trustee's motion for contempt sanctions"), 282 at 1].  The Court therefore finds

that Mr. Kossoff's noncompliance is willful and knowing, and that Mr. Kossoff has not

diligently attempted in a reasonable manner to comply with his Court-ordered obligations,

including, specifically, to identify known creditors and to complete and provide the Schedules.

## VIII.   DISCUSSION

Bankruptcy courts are vested with the inherent authority to enforce compliance with their

orders through the issuance of civil contempt orders.  *See* 11 U.S.C. § 105(a); Fed. R. Bankr. P.

9020; *Rosen v. Breitner & Hoffman, P.C., (In re Flushing Hosp. & Med. Ctr.)*, 395 B.R. 229,

241 (Bankr. E.D.N.Y. 2008); *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 534 (Bankr.

S.D.N.Y. 2007); *199 East 7th Street LLC*, No. 14-13254 (SCC), ECF No. 154 (Bankr. S.D.N.Y.

Jan. 18, 2017).  Mr. Kossoff's Supplemental Opposition states that he does not contest this

authority.

A court's inherent power to hold a party in civil contempt may be exercised only when (i)

the order the party allegedly failed to comply with is clear and unambiguous, (ii) the proof of

noncompliance is clear and convincing, and (iii) the party has not diligently attempted in a

reasonable manner to comply with the order.  *See King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058

(2d Cir. 1995); *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. at 535.  "The purpose of civil

contempt is to compel a reluctant party to do what a court requires of him."  *In re Chief Exec.

Officers Clubs, Inc.*, 359 B.R. at 534 (citations omitted).  Sanctions for civil contempt may be

imposed both to coerce future compliance with a court order issued for another party's benefit

and to compensate for any harm that previously resulted from the noncompliance.  *Id.* (citations

omitted).  In fashioning an appropriate remedy, courts must consider "the nature of the harm and

the probable effect of alternative sanctions."  *Id.* at 536 (citing *EEOC v. Loc. 28, Sheet Metal

Workers*, 247 F.3d 333, 336 (2d Cir. 2001) (per curiam)).

Courts – including bankruptcy courts – may utilize incarceration as a coercive sanction

for civil contempt, so long as "the contemnor is able to purge the contempt and obtain his release

by committing an affirmative act."  *In re 1990's Caterers Ltd.*, 531 B.R. 309, 319–20 (Bankr.

E.D.N.Y. 2015) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828–29 (1994) (internal citations and quotation marks omitted); *Hicks ex rel. Feiock v. Feiock*, 485 U.S 624, 635 n.7 (1988); *Lawrence v. Goldberg (In re Lawrence)*, 279 F.3d 1294, 1297 (11th Cir. 2002) (affirming bankruptcy court's imprisonment of a debtor for civil contempt for failing to comply with a turnover order); *In re CTLI, LLC*, 534 B.R. 895, 912 (Bankr. S.D. Tex. 2015) (recounting an individual's failure to comply with a court order to relinquish control of his social media accounts, and the court's subsequent order holding the individual in contempt and taking him into custody until he purged that contempt); *In re Count Liberty, LLC*, 370 B.R. 259, 274 (Bankr. C.D. Cal. 2007) (stating that incarceration is an appropriate coercive sanction so long as "the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order."); *Chief Exec. Officers Clubs, Inc.*, 359 B.R. at 536–537, 542–43 (determining that the bankruptcy court had the authority, as a coercive civil contempt sanction, to imprison an officer of the debtor until he returned funds improperly transferred from the debtor's bank accounts in violation of a court order)); *199 East 7th Street LLC*, *supra*.  Mr. Kossoff's Supplemental Objection "contest[s]" this authority, but unpersuasively and without basis; he cites supporting no law other than inapplicable provisions of the criminal code.  [*See supra* at ¶ 3].

Where (i) it is unlikely that increased monetary sanctions would improve the likelihood of compliance and (ii) there has been a pattern of noncompliance, courts have held that the coercive sanction of incarceration is particularly appropriate.  *See In re 1990's Caterers Ltd.*, 531 B.R. at 320 (citing *In re Vaso Active Pharms., Inc.*, 514 B.R. 416, 426 (Bankr. D. Del. 2014) (collecting cases); *Souther v. Tate (In re Tate)*, 521 B.R. 427, 439–44 (S.D. Ga. 2014)

(discussing the bankruptcy court's authority to impose and the propriety of imposing incarceration as a coercive sanction for civil contempt)).

As the foregoing detailed factual findings and the totality of the record in this case establish by clear and convincing evidence, Mr. Kossoff has knowingly and purposefully violated this Court's orders, which clearly and unambiguously directed him to complete the Schedules and perform other duties of Debtor including by identifying known creditors. Mr. Kossoff's violations exhibit a continuous pattern of delay and resistance to his obligations before this Court. In no sense has he made any diligent effort to comply with the Court's orders; to the contrary, he has done as little as possible, and that only grudgingly, and after as much delay as possible. Further, Mr. Kossoff's continuing insistence that he deserves additional time in light of his criminal exposure, [*see, e.g.*, Bankr. Docket No. 249], is unfounded and no excuse; the Court has rejected these contentions before, his Court-ordered obligations are valid and final, and his request for additional time at this late date is no basis to deny an order of civil contempt given his months of disregard for the Court's orders.

Further, Mr. Kossoff's disregard of the Court's orders is continuing, and is causing ongoing and compounding harm to many people, among them the Debtor's numerous clients, its former employees, and its and its clients' counterparties. The Trustee is charged with attempting to bring order to the disarray in which Mr. Kossoff has left the Debtor, and Mr. Kossoff's intransigence has made his task all but impossible. Specifically, Mr. Kossoff has wasted the Trustee's time and severely taxed the Trustee's limited resources and has compromised the Trustee's ability to pursue estate funds and attempt to minimize the damage that Mr. Kossoff's underlying alleged conduct allegedly has caused. The mere passage of time costs money and reduces the Trustee's likelihood of success in his important work. And these harms continue to

22

compound; time is of the essence to secure Mr. Kossoff's overdue cooperation so that the

Trustee can attempt to advance his critical work.

The Court thus concludes that an immediate order is required, and that Mr. Kossoff is in

civil contempt of this Court's orders, including but not limited to his failure to provide Schedules

as required by the Designation Order and the Order to Compel, and his failure to provide

necessary information to the Trustee including but not limited to a list of creditors so that the

bankruptcy case can be properly administered.[6]  All requirements for the Court finding civil

contempt are present here.  *See, e.g.*, *Allied Vision, Ltd.*, 65 F.3d at 1058 (party may be found in

civil contempt when (i) the order the party allegedly failed to comply with is clear and

unambiguous, (ii) the proof of noncompliance is clear and convincing, and (iii) the party has not

diligently attempted in a reasonable manner to comply with the order).

There remains the question of what sanction is appropriate.  As noted, sanctions for civil

contempt may be imposed both to coerce future compliance with a court order issued for another

party's benefit and to compensate for any harm that previously resulted from the noncompliance.

*In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. at 534 (citations omitted).  In this case, the Court

is focusing exclusively on coercing compliance by Mr. Kossoff, mindful that, in fashioning an

appropriate remedy, courts must consider "the nature of the harm and the probable effect of

---

[6] By specifying these concrete manifestations of Mr. Kossoff's noncompliance with unambiguous aspects of the Court's orders, the Court does not excuse other ways in which Mr. Kossoff has not complied.  Given his November 16 assertion that he has now provided all records in his possession, custody, or control, the Court does not believe that clear and convincing evidence exists on the current record of a continuing noncompliance with document production obligations.  Such evidence could be adduced in the future if necessary.  The Court nevertheless hopes that this order will induce Mr. Kossoff's compliance both with his requirements to provide schedules and a list of creditors, and with his additional informational and other obligations.  Today's order is without prejudice to further contempt applications if warranted in the view of any party in interest.

alternative sanctions." *Id.* at 536 (citing *EEOC v. Loc 28, Sheet Metal Workers*, 247 F.3d 333, 336 (2d Cir. 2001)).

The Court concludes that no sanction less onerous than the prospect of incarceration is sufficiently likely to persuade Mr. Kossoff to belatedly perform his Court-ordered obligations. Mr. Kossoff for many months has engaged in purposeful and willful disregard of the Court's orders; he has chosen to elevate his own perceived interests above his legal obligation to comply with the Court's orders. And his belated statement in the post-argument Supplemental Opposition that he will provide some semblance of schedules by November 30, after having heard this Court's oral ruling that he is in civil contempt with incarceration the least onerous viable sanction to induce compliance, is not a convincing reason to deviate from the coercive threat of incarceration; rather, that threat appears to be the only measure that may induce Mr. Kossoff to comply. To no avail, this Court has long urged Mr. Kossoff to comply with his obligations and has warned him of the possible consequences of continued noncompliance, while affording him ample opportunity to purge his ongoing contempt by coming into belated compliance with the Court's orders and his legal obligations. Further, although the Court has received no evidence concerning Mr. Kossoff's personal finances, he clearly faces significant personal monetary liabilities, and he has experienced severe negative reputational and professional consequences flowing from the revelations that led to this case. Given these realities, a mere verbal censure or contempt finding, or any amount of financial sanctions, all but certainly would not induce compliance by Mr. Kossoff.

\*\*\*

Based on the foregoing, it is hereby ORDERED that Mr. Kossoff shall have until on or before November 30, 2021, to purge his contempt and make an appropriate filing demonstrating

24

that he has done so, to which the Trustee and any other party in interest may respond upon a

schedule to be determined by the Court.  If Mr. Kossoff fails to make the required showing on or

before November 30, then, on or after December 1, 2021, and with no further notice or

application of any party being required, the Court may issue a bench warrant and/or any other

appropriate measure to authorize Mr. Kossoff to be arrested as a sanction for his ongoing civil

contempt of this Court's orders.  Any such order shall be without prejudice to Mr. Kossoff's

entitlement to make whatever requests he desires regarding the circumstances and timing of his

surrender and incarceration.  If Mr. Kossoff is arrested, he will be entitled to file a letter or other

submission demonstrating that he has purged his contempt or will do so by taking concrete steps

by a date certain to bring himself into compliance, whereupon the Court will promptly schedule a

further hearing to determine whether Mr. Kossoff should be released from custody.

IT IS SO ORDERED.


Dated: New York, New York
       November 22, 2021

                              _____s/ David S. Jones_____
                              Honorable David S. Jones
                              United States Bankruptcy Judge