12/30/22

Hon. David S Jones
US Bankruptcy Court
Southern District
1 Bowling Green
NY, NY 10004

Re: In Re Kossoff (21-10699)
Togut v. Valley National et al (22-01113)
Motion for Judgment on the Pleadings

Dear Judge Jones:

I received in the mail yesterday a copy of the letter motion which was forwarded to you by Walter Mack, Esq. on my behalf. However, in reviewing the same I discovered that one of my Exhibits was inadvertently not inserted in the version of the letter motion sent to you.

As a result I have taken the time based on what I received from Mr. Mack and what was omitted to cobble together an accurate version of my letter motion, together with some minor changes made by me upon review

12/30/22

Hon. David S. Jones
Togut v. VMB et al
Motion for Judgment
on the Pleadings
— Page Two —

The within document should replace in its entirety any prior version of this motion received by you and I apologize in advance for any inconvenience or confusion caused by this.

Further I am reserving today by mail both the Trustee and David Bolton, Esq. with this revised version.

Happy New Year!

Respectfully submitted,

Mitchell Kossoff

DATE: 12/30/22

FROM: Mitchell Kossoff

cc: David Bolton, Esq.
Jared Borriello, Esq.
Walter Mack, Esq.

AMENDED

Hon. David S. Jones
United States Bankruptcy Court
Southern District
One Bowling Green
New York, New York 10004

RE: In Re Kossoff PLLC (21-10699)
Togut v. Valley National Bank et al (22-01113)
Motion for Judgment on the Pleadings

Dear Judge Jones:

~~I am hoping that either Walter Mack, Esq. or David Bolton, Esq. will forward a copy of this~~ letter to you since I cannot do so directly because of the limitations of the "JayPay" email system. Also as I am sure this Court and the parties understand that because of the character limitations of the JAYAY system (6000 per email), I cannot tell while composing a letter how many separate transmissions will be required for its completion, and so I have chosen instead at the bottom of each page to place a legend as to its continuation where applicable.

~~Further and~~ As set forth in my prior correspondence to the Court, dated 11/20/22, I have elected not to enter into a "408" stipulation with Trustee's counsel based upon, inter alia, Team Togut's failure to produce for my review the VNB/BP loan guarantees which according to the within adversarial proceeding form the predicate for the relief requested against myself and my late mother, Phyllis Kossoff. Instead in a parallel attempt to avoid wasting significant judicial resources, I now set forth this request for a judgment on the pleadings dismissing this complaint against myself and by necessary implication against the Estate of Phyllis Kossoff, Deceased. I also ask that given my severely curtailed ability and resources as an incarcerated individual that this correspondence be treated in all respects as a motion for the relief requested herein.

In accordance with Rule 12(c) of the Federal Rules of Civil Procedure (FRCP) entitled, "Motion for Judgment on the Pleadings: After the pleadings are closed -but early enough not to delay trial, a party may move for judgment on the pleadings." Further Rule 7012(b) of the Federal

Hon. David S. Jones
Re: Togut v. VNB et al.
Motion for Judgment
on the Pleadings                2

Rules of Bankruptcy Procedure (FRBP) specifically acknowledges the applicability of FRCP Rule 12(c) in adversarial proceedings commenced in Bankruptcy Court as long as I state for the record whether or not this is a core proceeding. As a result and for the sake of completeness, I hereby consent to entry of final orders or judgments by this Court as they might pertain to the within adversarial proceeding.

Turning now to the matter at hand and for purposes of this motion only, the within facts established by the allegations contained in the complaint are not disputed:

1. Both my mother and I executed personal guarantees in connection with certain loans made by Valley National Bank (VNB) to Burton Packaging (BP) and that when those loans were paid, any liability on our loan guarantees was discharged. That the debtor from proceeds received from its own separate loan transactions with VNB then used a portion of these sums to pay off the BP/VNB loans. [handwritten annotation: That these transfers from Debtor which BP then used to pay off its own VNB loans gave rise to [illegible] question of the VNB/BP loans and form the basis for the Trustee's] Complaint at Paragraphs 2, 6, 22, 34, 65, 75 and 90. (See Footnote One). [handwritten: lawsuit against us.]

---

Footnote 1: It seems as if the lynchpin of the trustee's argument for guarantor liability is that the loans to BP from VNB were in default and therefor without the transfer of money from debtor to BP which in turn used the proceeds of these debtor loans to discharge its debt to VNB, that both my mother and I would have been liable on our BP loan guarantees to VNB. Thus as the story goes, those monies that were loaned by debtor to BP directly benefitted us as guarantors and thus under the fraudulent transfer sections of the Bankruptcy Code both my mother and I are liable for a return of these monies to the Trustee. The only problem with this winding narrative is that nowhere within the four corners of the complaint is there a simple allegation that at any time prior to their discharge were any of the BP/VNB loans in that state of default required to trigger liability for either my mother or myself under the terms of our respective loan guarantees. Nor can the Trustee prove any state of facts that would substantiate this allegation had it been made in the first instance, because at least to date he has not even produced full and complete copies of these loan guarantees. Thus the crux of the complaint that these transfers in the form of loans by debtor to Burton in 2015 and 2016 were for the benefit of the guarantors is nothing more than pure speculation. Moreover, the Trustee does, in fact, have in his possesion a certain document, dated 11/30/14, which extended the BP loans with VNB through 5/31/17 and yet the Trustee argues that less than 2 months later on January 26, 2015 (Complaint at p.51) the BP/VNB loans were in such a state of disaray as to trigger liability pursuant to the terms of certain BP loan guarantees which the Trustee, to date, has failed to produce. Clearly and as far as VNB was concerned two months earlier on 11/30/14 the BP loans

Hon. David S. Jones
Re: Togut v. VNB et al.
Motion for Judgment
on the Pleadings                                    3

**FOOTNOTE #1 (CONT...)**

were certainly not in default otherwise the bank would not have permitted the very same loans to have been renewed and extended. Further the bulk of the "facts" which the Trustee cites in Paragraph "37" of the Complaint in an attempt bolster his contention that the BP/VNB loans were in default took place prior the extension of these same loans on November 30, 2014 - thus these fanciful allegations are completely dispelled by the presence and execution of this later instrument.

2. that the fraudulent transfers which the Trustee seeks to avoid and thereafter hold Phyllis Kossoff (PK) and myself (MK) liable occurred on January 26, 2015 in the sum of $305,055.50 and on June 20, 2016 in the sum of $324,645.48 (Complaint at Paragraphs 51, 59, 66, 70, 77 & 81);

3. that by virtue of the foregoing facts, the complaint asserts that the following provisions of the Bankruptcy Code, the Fair Debt Collection Practices Act, and New York State's Debtor Creditor Law either independently and/or in concert lay the legal predicate for a recovery against both MK & PK:

Bankruptcy Code (BC) Sections 502, 544, 548, 550 & 551

Fair Debt Collection Practices Act (FDCPA) Sections 3304 & 3306

New York Debtor Creditor Law (DCL) Sections 273-276, 276-a, 278 & 279

(Complaint at Paragraphs 120, 126, 137, 144, 152, 158 & 171); and

4. in addition, the Complaint also espouses an alternate equitable theory as the basis for a recovery against PK & MK by alleging that they were unjustly enriched by virtue of the fraudulent transfers (Complaint at Paragraphs 180-184).

As can be seen from the foregoing in a scatter gun approach the Trustee propounds many different statutory sources of liability for PK & MK in this adversarial proceeding - some of which are easily dispatched. In this regard it is noted that on a blanket basis the provisions justifying liability under the DCL are clearly inapplicable inasmuch as each section cited states that they are effective as of April 4, 2020 and ONLY APPLY TO A TRANSFER MADE ON OR AFTER THAT DATE and as set forth above the fraudulent transfers which allegedly formed the basis of PK & MK liability occurred on January 26, 2015 and on June 20, 2016. Similarly Bankruptcy Code section 548 pertains only to the trustee's ability to avoid certain preferential/fraudulent transfers of an interest of the debtor that occurred at most 2 years before

Hon. David S. Jones
Re: Togut v. VNB et al.
Motion for Judgment
on the Pleadings 4

the date of filing of the intant bankruptcy petition in 2021. Here the transfers alleged herein that form the basis of MK & PK guarantor liability were in 2015 and in 2016 - both of which are without this 2 year look back period.

Further and while it is true that under certain circumstances Sections 502 and 544 of the Bankruptcy Code grant a Trustee the authority to bring both state law as well as FDCPA claims in an adversarial proceeding in bankruptcy court, the championing of these claims by the Trustee is only possible if they could have been brought under their separate statutory schemes in the first instance. In the case of NYS claims under the DCL or otherwise, Section 213(1) of the CPLR makes it clear that no fraudulent transfer claim can be brought more than six years prior to its occurence. The same result follows under 3306(b) of the FDCPA. See, In re APCO Merchant Services, Inc., 585 B.R. 306 (US Bankruptcy Court, EDNY, 2018);
Jaliman v. D.H. Blair & Co., 105 AD3d 646(1st Dept., 2013); United States v. Forbes, 740 F.Supp.2d (2010); and West McKinney's Commentary C213:1 and C213:8. As a result and under no set of circumstances, based on the facts alleged, can the trustee recover any sums allocable to the 1/26/15 transfer inasmuch as it took place more than 6 years prior to the bankruptcy filing date.

I will devote for the sake of completeness infra, a segment of this motion to an in depth examination of the interplay between applicable sections of the FDCPA and the DCL/State Law with Sections 502, 544 & 550 of the Bankruptcy Code as they pertain to the alleged fraudulent transfer which took place on 6/20/16 (which was within the six year limitations period). However and before this analysis, it is respectfully posited herein that if neither PK nor MK as guarantors qualify as individuals for whose benefit the voidable transfers were made pursuant to 11 USCA 550(a)(1), then in that event no further arguments to bolster the relief requested within the confines of this motion for Judgment on the Pleadings are necessary.

Section 550(a)(1) of the Bankruptcy Code is indeed the basis upon which courts have held under certain circumstances that a guarantor who does not directly receive the transferred property might still be held liable for a return to the debtor's estate of the proceeds of an avoidable fraudulent transfer. This provision states in pertinent part as follows:

"Section 550. LIABILITY OF TRANSFEREE OF AVOIDED TRANSFER.

(a) Except as otherwise provided in this section, to the extent a transfer is avoided under Sections 544, 545, 547, 548, 549, 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from -

(1) the initial transferee of such transferor OR the entity for whose benefit such transfer was made; or...".

Hon. David S. Jones
Re: Togut v. VNB et al.
Motion for Judgment
on the Pleadings                              5

It is thus necessary to explore given the facts alleged in the complaint whether or not under applicable case law if there is any basis for liability for either PK or MK under this Section.

The facts which the trustee believes give rise to guarantor liability for PK & MK under Section 550(a)(1) are set forth above, but are also summarized and restated herein for illustrative puroses. The complaint sets forth that the Debtor made two fraudulent transfers to BP in 2015 and in 2016 which funds once deposited into BP's bank account were thereupon used by BP to pay off some loans which it owed to Valley National Bank (VNB) which loans were also guaranteed by PK & MK. Further it is noted that BP was not a mere shell or conduit set up by debtor in order to wash funds destined to be remitted to VNB, quite the contrary BP was a packaging business in continuous operation for more than 60 years prior to the debtor's formation in December of 2013 (Complaint at paragraphs "7"-"10"). Further and based on documents supplied to me by the Trustee, the BP/VNB loans which MK & PK guaranteed were initially extended to BP in June of 2008 - years before the debtor's formation.

It is posited herein that based on the foregoing, there can be no liability for either PK or MK in their capacities as guarantors of the VNB/BP loans because neither of them qualifies under Section 550(a)(1) as either the initial transferee of the debtor's property or a person for whose benefit such transfers were made. BP was the initial transferee of the debtor's property because it used the funds for its own purposes i.e. to discharge its debts to VNB which BP had been gradually paying down since these loans were initially extended by VNB to BP in 2008. Moreover, the fact that BP could not have used the funds transferred by debtor other than to pay off its own VNB debt does not affect the critical factor here that BP, as opposed to VNB, was the initial transferee. Moreover and since BP was the initial transferee as opposed to a mere conduit, then whether PK & MK may, or may not, have been benefitted when BP paid off the loans to VNB which they had personally guaranteed is an impermissible inquiry because the statute does not extend liability to guarantors under these facts. Put perhaps more simply -the payments to BP by debtor was the initial transfer which did not serve to discharge PK & MK on their VNB loan guarantees and as a result there was no benefit to them. If, however, the initial transferee had been VNB, as opposed to BP, then the result may have been different, but this is simply not the case. See generally, Bonded Financial Service, Inc. v. European Amercian Bank, 838 F2d890 (USCA, 7th Cir., 1988).

Hon. David S. Jones
Re: Togut v. VNB et al.
Motion for Judgment
on the Pleadings                                  6

Almost identical facts were considered by the United States Court of Appeals in Lowry as Trustee v. Security Pacific Business Credit, Inc., 892 F2d 26 (USCA, 4th Cir., 1989) when it upheld the lower's court grant of summary judgment dismissing the trustee's adversarial proceeding filed on behalf of a debtor named Columbia Data Products, Inc. In this case the debtor's property was initially transferred to an entity called Logan Circuits, Inc. which upon receipt of the same by agreement between the parties immediately forwarded the monies to defendant Security to paydown loans previously advanced by Security to Logan. In its decision the Security Court held that even though Logan was duty bound to transfer the debtor's funds to Security upon receipt, this restriction did not change the fact that Logan was the initial transferee as opposed to a mere conduit since Logan used debtor's transfers for its own purposes. In upholding the grant of summary judgment dismissing the trustee's adversarial proceeding, the Court ruled that defendant Security was neither the initial transferee nor the entity for whose benefit the transfer was made.

A very thoughtful, recent and insightful analysis of Section 550(a)(1) of the Bankruptcy Code and who is, and who is not, considered a benefitted entity or person with respect to avoidable and fraudulent transfers appears in 9C AmJur2d Bankruptcy 2251 (11/22 update) wherein it is noted as follows:

Section 2251. ENTITY FOR WHOSE BENEFIT

TRANSFER WAS MADE.

"...A paradigm entity for whose benefit a transfer is made is a guarantor on an obligation OWED BY THE DEBTOR (emphasis supplied), the guarantor will not receive the debtor's property fraudulently transferred in satisfaction of the underlying obligation but, nevertheless, will benefit in that the guarantor's liability will also be satisfied.

Only a person or entity who directlty benefits from the INITIAL FRAUDULENT TRANSFER (emphasis supplied) may be regarded as 'the entity for whose benefit such transfer was made,' a subsequent transferee is not such an entity.

Thus a bank which deposits a debtor's check in a depositor's account and applies the amount to reduce the amount of the check to reduce the balance of the loan or overdraft owed by the depositor is not an 'entity for whose benefit' the initial transfer of funds from the debtor to the depositor is made. Similarly, funds fradulently transferred from a debtor's bank account to another entity's bank account may not be recovered from the person to whom checks on that entity's account are ultimately issued on the ground that the person for whose benefit the fraudulent transfer was made.

Hon. David S. Jones
Re: Togut v. VNB et al.
Motion for Judgment
on the Pleadings                                7

However, one who conspires with a debtor to receive a fraudulent transfer only after it has been "washed" through an innocent 3rd party or conduit, will not escape liability. In this situation, the conspirator may be regarded as a subsequent transferee who lacks good faith and is therefor liable, alternatively, the innocent third party may be ignored and the conspirator treated as initial transferee who lacks good faith and is liable"(citations omitted).

**SEE INSERT**

into the shoes of a creditor holding an allowable claim, there must be an actual existing creditor holding such an allowable unsecured claim who would have had the right to assert the same outside of bankruptcy. See, Bonded Financial Services, Inc., supra. Thus and under Section 544 of the Code it is incumbent upon the Trustee to allege in his complaint a predicate or triggering creditor who would have otherwise been able to sue and void the transfer in question. In this regard once a predicate or triggering creditor is established then any other similarly situated creditor is entitled to share in the proceeds of any voided transfer and recovery.

In an attempt to fulfill this prerequisite under Section 544 of the Bankruptcy Code, the Trustee proposes in the Complaint that the IRS who was owed certain withholding taxes by the Debtor for the tax year ending 2015 is just such a predicate creditor (See Complaint at Paragraph 109). Certainly such a liability for unpaid payroll taxes for the year ending 12/31/15 did not exist under Section 3304 and/or 3306 of the FDCPA at the time of the alleged fraudulent transfer in January of 2015 and so recovery of these funds is not only time barred as set forth above but also prohibited because the IRS was not a creditor at the time of this initial transfer. So, as before, we are left with an examination of solely the June 2016 transfer in order to determine whether the alleged IRS claim related to the 2015 Tax Year can be the basis for avoiding this later transfer which is a prerequiste for any recovery under Sections 544 and 550(a) of the Code.

An examination of the allegations of the Complaint relative to the IRS' claim reveals the following assertions by the Trustee:

(a) that I listed in the Schedules that the Debtor owed as of the Petition date the sum of $382,000 to the IRS; however, in my Answer I state that although I listed the IRS as a claimant for this amount, I denied that the claim was valid and further stated that it was being actively contested as of the Petition date (See Paragraphs 103 of the Complaint and the Answer);

(b) that the debtor had received a certain assessment notice, dated 3/28/16, from the IRS which was denied in my Answer (See Paragraphs 105 of the Complaint and the Answer); and

(1)

INSERT TO PAGE SEVEN.

Thus and as set forth above, since BP was the initial transferee, the fact that VNB deposited the Debtor's funds into BP's account and then upon written instructions from BP applied the funds to reduce a loan owed to VNB by BP does not make VNB either an initial transferee or an entity from whose benefit the initial transfer of funds from the Debtor to the depositor was made. Even though the funds deposited by Debtor to BP were earmarked for a paydown of the BP/VNB loans this result is not changed since the funds were deposited into BP's account which BP then used to discharge its own debt to VNB. Therefore, BP exercised sufficient dominion & control to avoid this transfer being a mere sham transaction where BP acted only as a conduit. Based on the foregoing, both MK's & PK's guaranty of the VNB loans which were subsequently discharged when BP paid off the VNB loans cannot possibly be the basis of liability for either of us under §550 of the Bankruptcy Code.

INSERT TO PAGE SEVEN

All the Trustee had to do to avoid this result was to sue me in my capacity as guarantor of the YMB loans to the Debtor (see Footnote 2) as opposed to suing me in my capacity as a guarantor of the BP loans to YMB. However, the Trustee for reasons known only to him chose not to do this and so now he is stuck with the results of this choice.

Before leaving our analysis of basic liability pursuant to §550(a)(1) of the Bankruptcy Code, I think that it is worth noting that §550(d) states that "... the Trustee is entitled to only a single satisfaction under subsection (a) of this section." Which means that although more than one creditor may be held responsible for a single avoidable transaction under §550(a), such recovery is subject to the Trustee's right to only a single satisfaction of each preference and/or fraudulent

---

Footnote 2: It is noted that only MK, and not PK, was a guarantor of YMB's loan to the Debtor. (See Complaint at paragraphs 54, 67 & 80)

INSERT TO PAGE SEVEN.

Transfer claim. See, Harris as Trustee v. Brent Towing Company, Inc. 939 F2d 355 (USCA, Sixth Cir., 1991) and Whitlock v. Lowe, 945 F3d 943 (USCA, 5th. Cir., 2019). In the instant proceeding the Trustee has brought multiple causes of action against various defendants some of whom he is suing in different capacities (i.e. YMB as lender to the debtor and YMB as lender to BP) in order to recover funds based upon the same basic fraudulent transfer scheme. If as the Trustee indicated by counsel in our last conference with this Court, there is a settlement with YMB, then any moneys received by the Trustee in this regard should be employed to offset any sums to be due owing from MK & PK should the instant motion be granted and liability be determined after trial. In so noting I disagree and urge that at least to this extent any settlement arrived at between YMB and the Trustee is NOT confidential because it must by necessity as set forth above be divulged. Similarly I note for the record that nothing within the four corners of the

INSERT TO PAGE SIX/AH

"JOB STIPULATIONS" executed by VHB and PK is there a provision that the written position statements and the Trustee's reply thereto (as opposed to settlement discussions and correspondence) be kept confidential and so I again renew my request that as a party I am entitled to, and should be forwarded, copies of these documents.

Assuming, arguendo, that somehow the Trustee convinces this court that there exists a factual dispute as to whether or not PK & MK can be held liable under Section 550(a)(1) of the Code, the question still remains as to whether or not the Trustee has stated facts sufficient to have the transfer complained of voided on one of the sections contained noted & set out in § 550(a). As discussed previously, because of time limitation issues and since the transfers complained of which form the basis of PK's & MK's alleged liability took place in January of 2015 and June of 2016, the preferential transfer provisions of the code are not applicable because

INSERT TO PAGE SEVEN

The transfers in question took place more than 2 years prior to the filing of the bankruptcy proceedings. Moreover, the January 2015 transfer under both federal and state law cannot be considered because it took place more than 6 years prior to the bankruptcy petition filing date. What is left then is a simple inquiry as to whether or not the trustee can recover monies from the defendants based upon any other provisions of the Bankruptcy Code.

11 USCA 544 would ordinarily provide the trustee with such rights given the facts alleged and this section is specifically referred to in §550(a) of the Code as a provision which a trustee might resort to in voiding a transaction which would be considered fraudulent under any other laws. The language which might give birth to such liability appears in §544(b)(1) to the effect that "..., the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under

INSERT TO PAGE 7

applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title...". Thus §544 grants the bankruptcy trustee the right to bring state law claims to avoid and recover transfers of a debtor that the unsecured creditor would have been able to assert outside of bankruptcy. See, Nine West Securities Litigation, 482 F.Supp.3d 187 (USDC/SDNY 2020.) Likewise and pursuant to §§ 3304 + 3306 of the FDCPA, a trustee may step into the shoes of a federal creditor and avoid the transfer of an interest of the debtor within 6 years of the bankruptcy filing date. See, In re APCO Merchant Services, Inc., supra. However and in order for the trustee to bring a strong-arm avoidance proceeding to a transfer either under state or federal law by stepping

Hon. David S. Jones
Re: Togut v. VNB et al.
Motion for Judgment
on the Pleadings                                          8

(c) that the IRS Claim was for unpaid withholding taxes in the actual sum of $335,411.08 (See Complaint at Paragraph 106).

It is further noted herein that the Trustee was given notice by the debtor aside from my responses to the Complaint that this IRS claim was being actively contested as of the date of the Petition's filing because there was more than one explicit notation of this fact within the bodies of the Schedules and Amended Schedules filed by me. Moreover, and among the documents turned over by me prior to my incarceration I actually delivered to the Trustee full and complete copies of written protests to the proposed assessment filed by me in a timely fashion with the IRS.

That the facts which undercut the validity of the IRS' proposed assessment are as follows:

(a) that at some point during 2015, debtor discharged ADP as its agent for collecting and paying payroll taxes, as well as filing required tax returns in connection therewith;

(b) that ADP regardless of the fact that it was no longer debtor's agent filed "zero payment" 940 and 941 tax returns on behalf of the debtor for certain quarters occuring after its discharge;

(c) that one of the regional offices of the IRS based upon these false tax returns filed by ADP whose corporate offices were in California estimated a tax payment shortfall which gave rise to the proposed assessment contained in the 3/28/16 deficiency notice. I also note for the record that this IRS Notice was addressed to the Debtor c/o ADP in California and I was not aware of its existence until a copy of the same was forwarded to me by the Trustee;

(d) that the Debtor did in fact pay to the IRS all monies due and owing for withholding taxes after it took over from ADP and prepared and filed its own 940 and 941 returns for the same period during which ADP had falsely indicated no such taxes had been paid;

(e) that there actually was a payment shortfall by the debtor for the last quarter of 2015 which was indicated in the 940 and 941 returns that it prepared and filed and as a result another regional office of the IRS issued an assessment and Notice of Tax Lien for this 4th quarter shortfall;

(f) that the assessment and tax lien was filed, paid and released before the alleged June, 2016 fraudulent transfer; and

(g) that as a result of the foregoing, no taxes were owed to the IRS enabling it to have brought a claim under the FDCPA or NY State law to void transfers and recover sums on either of the dates of the alleged fradulent transfers and so the IRS was and is not a predicate creditor and any claims by the Trustee against PK and MK pursuant to the interplay between Sections 544 and

Hon. David S. Jones
Re: Togut v. VNB et al.
Motion for Judgment
on the Pleadings                                                    9

550(a) of the Bankruptcy Code must be dismissed even assuming that there might have been liability based upon the PK&MK loan guarantees under Section 550(a)(1) in the first instance.

I can produce the IRS Notice of Tax Lien and Release of Lien based upon the 2015 tax withholding deficiencies, but this will require some effort. In any event it is posited that this IRS claim was as of the date of the Bankruptcy Petition's filing (i) actively being contested by the debtor, (ii) not liquidated, and (iii) not even in active collection by the IRS. So at the very least if the Trustee's complaint survives all of its other infirmities an immediate hearing should be held under the Bankruptcy Code with respect the validity of this IRS claim.

For all of the reasons set forth above, there is no statutory basis on either a state or federal level to hold either PK or MK liable to the debtor's estate based upon their written guarantees of the BP/VNB loans. But before concluding this motion, I would be remiss if I did not examine the four corners of the written contract of guaranty itself and, as well, the Trustee's unjust enrichment claim in order to determine whether or not either these guarantees and/or or the equitable "unjust enrichment" doctrine form a cognizable predicate for the relief requested by the Trustee pursuant to common law precedents.

It is first worthy of restatement that the as set forth at the beginning of this motion, the Trustee to date has failed to produce the actual written contracts of guaranty or even prove that any default existed prior to the discharge of these guarantees that would have been sufficient to invoke guarantor liability in the first instance. The only paperwork that has been introduced to date concerning the terms and conditions of the full MK & PK VNB/BP loan guarantees which were executed in or about 2008 consists of two BP/VNB loan extension agreements, dated 11/30/14 and 6/28/13 respectively, and one BP/VNB loan modification agreement, dated 10/13/13. In all three documents the following language appears at the end thereof which was signed by both myself and my mother as guarantors:

"For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned guarantor(s) hereby irrevocably and unconditionally acknowledge and confirm to the Lender that the guaranty of the obligations of the Borrower including without limitation respecting the Note continues in full force and effect and is a valid and binding obligation of the undersigned guarantor(s) in accordance with its terms, that no defenses, offsets, claims, counterclaims exist with respect to such guaranty(s), and that each such guaranty is enforceable in accordance with its terms, and guarantees and shall continue to guarantee in accordance with its terms the performance of all amounts guaranteed thereby

Hon. David S. Jones
Re: Togut v. VNB et al.
Motion for Judgment
on the Pleadings                     10

including without limitation, in addition to all other liabilities and obligations guaranteed thereby, all liabilities and obligations of the Borrower to the Lender repecting the Note and the other Loan documents as affected thereby...".

The Lender and Borrower referenced in the above provision are VNB and BP and there is absolutely no document which suggests that the VNB/BP loans were ever assigned to, or assumed by, anyone else. Quite the contrary the BP/VNB loans were discharged, not assigned, when paid and new loan facilities were extended by VNB to the debtor and the loan documents evidencing the same, including a brand new loan guaranty from me, which were all markedly different from the BP loan documents in almost every material aspect with terms and conditions suitable for various loans to a law firm as opposed to a manufacturing plant. Given the above irrefutable facts, extant New York case law supports only one inescapable conclusion that there is absolutely no liability to either the debtor, to VNB and/or to the Trustee based upon the MK/PK guarantees extended in connection with the BP/VNB loans.

As I am sure this Court is aware, under New York Law a guarantor's obligation must be narrowly construed and cannot be extended by construction beyond the plain and explicit language of the contract. See KLS Diversified Master Fund, LP v. McDevit, 507 F.Supp.3d 508 (USDC/SDNY, 2020); PC444,LLC v. Priority Pediatrics, 133 AD3d 45 (2015); and Fehr Bros., Inc. v. Scheinman 121 AD2d 13(1980).
Moreover, a guarantor's obligations cannot be extended or enlarged without the guarantor's consent since he or she cannot be held responsible to guarantee a performance different from that which was intended when the guaranty was executed. Just so it has also been noted that when a guarantor has bound himself to satisfy an obligation of a specified debtor, he or she may not be held liable for the debt of another debtor unless the contract clearly discloses such an intent. See 95 Lorimer, LLC v. Insurance Co. of State of Pennsylvania, 6 Misc3d 500 (2004) and NYC Department of Finance v. Twin Rivers,Inc. 920 F.Supp2d(SDNY,1996). Based on all the rulings and as was the case in our statutory analysis, the trustee cannot find any common law or factual support for guarantor liability to the debtor based on the terms and provisions of the BP/VNB loan guarantees.

As one can see guarantor liability under the Bankruptcy Code when the guarantor is deemed to be the initial beneficiary of the avoided transfer is completely inapposite to the huge body of law that severely limits a guarantor's liability to 3rd parties. As a result it would actually work a great inequity to futher entertain the trustee's attempt to hold either myself or my mother liable on an unjust enrichment theory. This is particularly true when as here the trustee is impermissibly overreaching in a vain attempt to find a deeper pocket when in reality he should have sued me alone in my capacity as a guarantor of the debtor's VNB loans as opposed to both my mother and I as guarantors of the BP/VNB loans.

Hon. David S. Jones
Re: Togut v. VNB et al.
Motion for Judgment
on the Pleadings                     11

In any event it is also well settled law that an unjust enrichment claim is not available where it simply duplicates or replaces a conventional contract claim and is not a catchall cause of action to be used when others fail. See Corsello v. Verizon New York, Inc. 18NY3d 777 (2012). Further and perhaps more to the point unjust enrichment is a quasi-contractual claim which exists only in the absence of a valid contract. The existence of a valid and

enforceable written contract governing a particular subject matter precludes recovery in quasi contract for events arising out of the same subject matter. SH575 Holdings LLC v. Reliable Abstract, 149 NYS3d 62 (1st Dept., 2021). Here as admitted by the Trustee and as set forth above, there is a contract (the VNB loan guaranty) which for liability purposes must be stricty construed and which governs the subject matter. So Trustee's reliance on this equitable avenue of possible recovery as against MK & PK is misplaced and is destined to fail as a matter of law. Also and for the record it is also noted that should this Court in any event hold that this equitable doctrine might be applicable, recovery on a theory of unjust enrichment is subject to a time limitation of six years from the date of the wrongful act and so, as under other theories of recovery propounded by the Trustee, the statute of limitations imposes an absolute bar on any attempt to recover any of debtor's property which was the subject of the January 2015 transfer. See Ferring B.V. v. Allergan, Inc. 932FSupp2d 493 (2013).

In summary the within Motion a for Judgment on the Pleadings should be granted in whole or in part on the following bases:

(a) MK&PK have no liability pursuant to Section 550(a)(1) of the Bankruptcy Code based on their loan guarantees because they were neither the initial transferees of the alleged fraudulent and voidable transfers nor were they the persons for whose benefit the transfers were made;

(b) that MK & PK have no liability under sections 547 and/or 548 of the Bankruptcy Code because the alleged frauulent transfers in question both took place much earlier than two years prior to the filing of the Bankruptcy Petition;

(c) that based on pertinent provisions of the Bankruptcy Code, the CPLR, the FDCPA and other statutpry provisions and/or common law holdings, MK & PK have no liability as a matter of law with respect to the alleged January, 2015 fraudulent transfer because it took place more than 6 years prior to the filing of the Bakruptcy Petition;

(d) that MK & PK have no liability pursuant to Section 544 of the Bankruptcy Code because the

Hon. David S. Jones
Re: Togut v. VNB et al.
Motion for Judgment
on the Pleadings                                             12

debtor did not owe any sums to the IRS on either of the alleged fraudulent transfer dates and thus the trustee has failed to name a viable predicate creditor in the Complaint; and

(e) that under common law the terms of the loan guarantees themselves do not form the basis for liability based upon the facts alleged and, as well, unjust enrichment cannot be the basis of liability for PK & MK where, as here, there exists a clear written contract which defines the rights and laibilities of the parties thereto.

Again I thank the Court for allowing me to bring the within Motion by letter giving my circumstances as an incarcerated individual and I await further instructions as to whether a motion submission schedule and hearing date will be set.

Happy Holidays!
Respectfully submitted,

/s/ Mitchell Kossoff

Mitchell Kossoff, pro se