TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Brian F. Shaughnessy
Jared C. Borriello

*Attorneys for Albert Togut, Not Individually
But Solely in His Capacity as Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- X
| | : | |
|---|---|---|
| In the Matter | : | Chapter 7 |
| | : | Case No. 21-10699 (DSJ) |
| -of- | : | |
| | : | |
| KOSSOFF PLLC, | : | |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |
-------------------------------------------------------------- X

**NOTICE OF HEARING TO CONSIDER TRUSTEE'S
SECOND APPLICATION FOR AN ORDER APPROVING
THE SALE OF CONDOMINIUM LOCATED AT UNIT I-9, TWIN
LIGHTS TERRACE CONDOMINIUM, HIGHLANDS, NEW JERSEY FREE
AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

    **PLEASE TAKE NOTICE** that on the date hereof, Albert Togut, not

individually but solely in his capacity as the Chapter 7 Trustee for the estate of the

above-captioned debtor, filed the attached *Trustee's Second Application for an Order*

*Approving the Sale of Condominium Located at Unit I-9, Twin Lights Terrace Condominium,*

*Highlands, New Jersey Free and Clear of Liens, Claims, Encumbrances and Other Interests;*

*and (II) Authorizing the Trustee to Retain Deposit* (the "Motion").

    **PLEASE TAKE FURTHER NOTICE** that a telephonic hearing

(the "Hearing") to consider the Motion and all pleadings filed in response thereto, if

any, will be held before the Honorable David S. Jones, United States Bankruptcy Judge

for the Southern District of New York (the "Bankruptcy Court"), One Bowling Green,
Room 501, New York, New York 10004, on **March 28, 2023 at 10:00 a.m. (Eastern Time).**

       **PLEASE TAKE FURTHER NOTICE** that the Hearing shall take place via
Zoom for Government.  Those wishing to appear before the Court at the Hearing must
register for appearance utilizing the Electronic Appearance portal located at the
Bankruptcy Court's website: https://ecf.nysb.uscourts.gov/cgi-
bin/nysbAppearances.pl.  Appearances must be entered no later than March 27, 2023 at
4:00 p.m. (Prevailing Eastern Time).

       **PLEASE TAKE FURTHER NOTICE** that responses or objections, if any,
must also be filed with the Bankruptcy Court electronically in accordance with General
Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the
Bankruptcy Court's case filing system and by all other parties in interest with a hard
copy delivered directly to the Chambers of the Honorable David S. Jones, and shall be
served by first-class mail upon:  (i) Togut, Segal & Segal LLP, attorneys for the Trustee,
One Penn Plaza, Suite 3335, New York, New York 10119, Attn:  Neil Berger, Esq.
(neilberger@teamtogut.com) and John Gallego, Esq. (jgallego@teamtogut.com);  (ii) the
United States Trustee for the Southern District of New York, One Bowling Green, Room
534, New York, New York 10004, Attn:  Andrew Velez-Rivera, Esq. (Andy.Velez-
Rivera@usdoj.gov);  (iii) Dasaro Law Firm, P.C., attorneys for the buyers, 761 Palmer
Avenue, Holmdel, New Jersey 07733, Attn: Margaret Walz, Esq. (Margaret
@dasarolaw.com); and (iv) any parties required to be served under any applicable
Bankruptcy Rule or Local Bankruptcy Rule, so as to be received no later than **March 27,
2023, at 4:00 p.m. (Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and served in accordance with the foregoing procedures by the Objection Deadline, the Court may approve the Motion, and objections not timely filed and served in accordance with the foregoing by the Objection Deadline will not be considered and will be deemed overruled.

Dated:  New York, New York
        February 27, 2023

Respectfully submitted,

ALBERT TOGUT, not individually but
solely in his capacity as Chapter 7 Trustee
By His Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Neil Berger*
NEIL BERGER
BRIAN F. SHAUGHNESSY
JARED C. BORRIELLO
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

Hearing Date:  March 28, 2023, at 10:00 a.m. (ET)
Objection Deadline:  March 21, 2023, at 4:00 p.m. (ET)

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Brian F. Shaughnessy
Jared C. Borriello

*Attorneys for Albert Togut, Not Individually
But Solely in His Capacity as Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X
                          :
In the Matter                   :      Chapter 7
                          :
       -of-                   :
                          :      Case No.: 21-10699 (DSJ)
KOSSOFF PLLC,           :
                          :
                 Debtor.    :
                          :
------------------------------------------------------------ X

**TRUSTEE'S SECOND APPLICATION**
**FOR AN ORDER APPROVING THE SALE**
**OF CONDOMINIUM LOCATED AT UNIT I-9, TWIN**
**LIGHTS TERRACE CONDOMINIUM, HIGHLANDS, NEW JERSEY FREE**
**AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

TO THE HONORABLE DAVID S. JONES,
UNITED STATES BANKRUPTCY JUDGE:

         Albert Togut, not individually but solely in his capacity as the Chapter 7

Trustee (the "Trustee") of the estate of Kossoff PLLC (the "Debtor") in the above-

captioned Chapter 7 case (the "Chapter 7 Case"), by his attorneys, Togut, Segal &

Segal LLP (the "Togut Firm"), hereby makes this application (the "Motion") for an

order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"),

pursuant to sections 105(a) and 363 of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), Rule 6004-1 of the Local Bankruptcy Rules for the

Southern District of New York (the "Local Bankruptcy Rules") and General Order M-83,

approving the sale (the "Sale") of a condominium located at and known as Unit I-9,

Twin Lights Terrace Condominium, Highlands, New Jersey 07732 (the

"Condominium") to the Buyers (as defined below) free and clear of all liens, claims,

encumbrances and other interests pursuant to the terms of the Purchase Agreement

(as defined below).  In support of the Motion, the Trustee submits the declaration of

Neil Berger, Esq., a member of the Togut Firm, attached hereto as **Exhibit B**, and

respectfully states:

### PRELIMINARY STATEMENT[1]

Prior to the Petition Date, Mitchell H. Kossoff ("Kossoff"), the Debtor's

sole member, owned the Condominium.  After the Petition Date, title to the

Condominium was transferred to the Trustee pursuant to the criminal plea agreement

between Kossoff and the Manhattan District Attorney (the "DA").  The Condominium

is property of the Debtor's estate which may be sold by the Trustee pursuant to section

363 of the Bankruptcy Code.

Prior to transferring title to the Trustee, Kossoff leased the Condominium

to Anya Kirillova (the "Tenant") pursuant to a two-year lease dated December 31, 2016

(the "Lease").  The Lease expired during December 2020 and it was not renewed, but

the Tenant continued to occupy the Condominium.

On September 1, 2022, the Trustee filed an application for an order

approving a sale of the Condominium to the Tenant (the "Initial Sale"), and on October

6, 2022, the Court entered an order (the "Initial Sale Order") approving the Initial Sale.

---

[1]    Capitalized terms used but not defined in this Preliminary Statement shall have the meaning ascribed
to such terms where otherwise defined in this Motion.

However, the Initial Sale did not close because the Tenant terminated her purchase contract with the Trustee (the "Initial Sale Contract") after she was unable to obtain financing. Because the Tenant did not timely terminate the Initial Sale Contract pursuant to its terms, the Trustee informed the Tenant that she had breached the Initial Sale Contract and that the Trustee will retain the Deposit. The Tenant vacated the Condominium on December 1, 2022. The Trustee intends to seek collection of all unpaid rent due from the Tenant from the date that Kossoff transferred title of the Condominium to the Trustee until the date that the Tenant vacated the property.

After receiving the Tenant's termination letter, the Trustee showed the Condominium to multiple prospective buyers including at least two potential bidders who were introduced to the Condominium by local New Jersey real estate brokers,[2] and he solicited bids from each of them.

By this Motion, the Trustee seeks authority to sell the Condominium to Ciaran and Jean Canavan (jointly, the "Buyers") for $435,000 (the "Purchase Price"). The Purchase Price is the highest and best bid for the Condominium that the Trustee received after the termination, and it will be paid in full in cash. The Purchase Price exceeds the aggregate amount of known claims that are secured by liens that have been recorded against the Condominium. Moreover, given the absence of a broker fee as part of the Sale to the Buyers, the Purchase Price maximizes the value of the Condominium.

The Trustee has concluded, in his business judgment, that the Sale of the Condominium to the Buyers is the most efficient and value-maximizing means to liquidate this estate asset because it eliminates the costs, expenses and delays that

---

[2]   The Trustee has not retained a real estate broker for the sale of the Condominium.

would be incurred if the Trustee were required to sell the Condominium with the assistance of a real estate broker and/or by a public auction. Based upon the foregoing and what is set forth below, the Trustee respectfully requests that the Court approve the Sale and enter an order substantially in the form of the Proposed Order.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.) (the "Amended Standing Order"). This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue of this Chapter 7 Case and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, Local Bankruptcy Rule 6004-1 and General Order M-383.

## BACKGROUND

### I.      The Chapter 7 Case

4.      On April 13, 2021 (the "Petition Date"), creditors of the Debtor commenced the Chapter 7 Case by filing a petition for relief under Chapter 7 of the Bankruptcy Code against the Debtor in this Court.

5.      On May 11, 2021, this Court entered an order for relief under Chapter 7 of the Bankruptcy Code [Docket No. 14].

6.      On May 12, 2021, the Trustee was appointed as the Chapter 7 Interim Trustee of the Debtor [Docket No. 15]; he accepted his appointment, duly

qualified, and following the section 341 meeting of creditors, he is currently acting as the trustee of the Debtor's estate.

7.      On December 15, 2021, the Debtor filed schedules of assets and liabilities and a statement of financial affairs [Docket No. 310], and on April 5, 2022, the Debtor filed amendments thereto [Docket No. 359] (cumulatively, the "Schedules").

8.      On February 24, 2022, the Trustee conducted the meeting of creditors pursuant to section 341 of the Bankruptcy Code [Docket No. 349] (the "341 Meeting").

## II.    The Condominium is Property of the Debtor's Estate

9.      On December 13, 2021, Kossoff entered into a plea agreement (the "Plea Agreement") with the DA and pled guilty to various criminal charges related to his misappropriation of funds held by the Debtor.  A condition of the Plea Agreement required that Kossoff convey title of the Condominium to the Trustee.

10.     On December 21, 2021, Kossoff executed and delivered a deed for the Condominium (the "Deed") to the Trustee and the Trustee recorded the Deed in the Monmouth County Clerk's Office.  As a result, the Condominium constitutes property of the Debtor's estate that may be sold by the Trustee, subject to Court approval, pursuant to section 363 of the Bankruptcy Code.

11.     The transfer of the Condominium by Kossoff to the Trustee was exempted from real property transfer taxes pursuant to N.J. Rev. Stat. § 46:15-10 (2021) as a transfer "[b]y a receiver, trustee in bankruptcy or liquidation, or assignee for the benefit of creditors."  The Trustee respectfully submits that the Sale to the Buyers is also exempt from real property transfer taxes under New Jersey law under the same exemption.  Indeed, the Initial Sale Order included that exemption.

5

### III.    Claims Against the Condominium

12.    During November 2016, Kossoff (individually and not on behalf of the Debtor) purchased the Condominium in his name.  He financed that purchase with a loan secured by a mortgage against the Condominium (the "Mortgage") in favor of MLB Residential Lending LLC ("MLB Residential") in the amount of $224,000, plus interest.

13.    On or about June 29, 2020, MLB Residential assigned its interest in the Mortgage to HOF 1 Legal Title Trust 1, and thereafter the Mortgage was and remains serviced by Select Portfolio Servicing, Inc. (the "Mortgage Servicer").

14.    As of the date hereof, the outstanding balance under the Mortgage is approximately $250,000.

15.    On or about April 1, 2021, Kossoff defaulted under the terms of the Mortgage by failing to make monthly payments that were due and payable to the Mortgage Servicer.

16.    The Trustee notified the Mortgage Servicer of the circumstances surrounding the Condominium and its status as property of the Debtor's estate by correspondence dated January 14, 2022, February 23, 2022, and March 14, 2022.  In that correspondence, the Trustee notified the Mortgage Servicer of his intent to sell the Condominium and use part of the proceeds to satisfy the Mortgage.  The Mortgage Servicer has not raised any objection to the Trustee's proposed course of action to sell the Condominium.  Moreover, the Mortgage Servicer provided provisions that were included in the Initial Sale Order, and they are included in the Proposed Order that is annexed hereto.

17.    On April 12, 2022, the Twin Lights Terrace Condominium Association (the "Association") recorded a lien to secure payment of $4,757.89 on

6

account of unpaid condominium association dues and charges (the "Condo Association Lien" and together with the Mortgage, the "Liens"). The Trustee has informed the Twin Lights Terrace Condominium Association of the circumstances surrounding the Condominium, the Trustee's intended Sale and that the claim that is secured by the Condo Association Lien would be satisfied from the proceeds from the Sale, subject to confirmation of the balance owed. The Association's proposed provisions were also included in the Initial Sale Order and they are included in the Proposed Order.

18.    The Trustee is not aware of any additional lien, interest or encumbrance against the Condominium.

**IV.    The Initial Sale**

19.    On December 3, 2016, Kossoff, as landlord, executed a lease agreement with the Tenant for a two-year lease term ending December 31, 2018 (the "Lease"). Kossoff and the Tenant extended the term of the Lease until December 31, 2020.[3]

20.    Pursuant to the Lease, the Tenant was obligated to pay rent to Kossoff on a monthly basis. During the 341 Meeting, Kossoff testified that despite occupying the Condominium after the Lease terminated on December 31, 2020, the Tenant had not made rent payments and that he had not demanded that the Tenant resume rent payments.

21.    On March 14, 2022, the Trustee notified the Tenant that: the Condominium is property of the Debtor's estate; the Trustee intended to sell the Condominium; and the Trustee would consider an offer by the Tenant to purchase the

---

[3]    Kossoff testified during the 341 Meeting that the Tenant is the only tenant that occupied the Condominium during the time Kossoff owned it.

7

Condominium.  The Tenant did not resume rent payments after the Condominium became property of the Debtor's estate.

22.     The Tenant offered to purchase the Condominium for $450,000 (the "Tenant Offer"), which the Trustee considered in consultation with his special real estate counsel in this Chapter 7 Case ("Phillips Nizer").  The Trustee's independent diligence revealed that the Tenant Offer exceeded the purchase price paid for comparable condominiums during the prior year, and that the amount of the Tenant Offer equaled the then appraised value of the Condominium.  The sale to the Tenant also eliminated the cost and expense of removing the Tenant from the Condominium.

23.     The Trustee and the Tenant negotiated the Initial Sale Contract, which provided for a deposit that totaled $35,000 (the "Deposit").

24.     The Initial Sale Contract also included a sixty (60) day notice period (the "Financing Notice Period") to terminate the Initial Sale Contract in the event the Tenant failed to satisfy the financing contingency (the "Financing Contingency") contained in the Initial Sale Contract.  The Financing Notice Period expired on October 25, 2022.

25.     After the Financing Notice Period expired, on November 23, 2022, the Trustee received the Tenant's termination letter, which advised that the Tenant was unable to satisfy the Financing Contingency and that she terminated the Initial Sale Contract.  In response to the Trustee's demands, the Tenant vacated the Condominium on December 1, 2022.

26.     Because the Trustee did not receive the Tenant's termination letter within the Financing Notice Period, the Trustee informed the Tenant that she had breached the Initial Sale Contract and that the Trustee will retain the Deposit.  Moreover, the Trustee intends to seek collection of all unpaid rent due (the "Unpaid

8

Rent") from the Tenant from the date that Kossoff transferred title to the Trustee until the date that she vacated the Condominium. Entry of the Proposed Order is without prejudice to the Trustee's rights, claims and defenses regarding the Deposit and Unpaid Rent, all of which are expressly preserved and not waived.

**V.    The Trustee's Proposed Sale**

27.    After receiving the Tenant's termination letter, the Trustee showed the Condominium to multiple prospective buyers, and he solicited bids from them for the purchase of the Condominium.  At least two of those prospective bidders were introduced to the Trustee by two real estate brokers located near the Condominium who participate in online multiple listing services.

28.    The Trustee received an all-cash bid from the Buyers in the amount of $435,000 on an "as is, where is" basis.  The Trustee and the Buyers negotiated a contract of sale (the "Purchase Agreement"), a copy of which is attached hereto as **Exhibit C**.

29.    The Trustee respectfully submits that the terms of the Purchase Agreement are fair and reasonable, and in the best interests of the Debtor's estate, its creditors and other parties in interest because, among other reasons, it provides for an all cash transaction for a purchase price that equals or exceeds the approximate net sale proceeds of a sale of the Condominium for the last appraised value if obtaining a real estate broker.

## VI.    The Purchase Agreement

30.    The following is a summary of the material terms of the Purchase

Agreement:[4]

- **Purchase Price**:  $435,000.

- **Deposit**:  $43,500, which has been delivered to Phillips Nizer.

- **Closing Conditions Required by the Buyers**:  The Buyers' closing conditions include, among other things: (i) the conditions of title to the Condominium, and the ability of the Trustee to deliver possession of the Condominium at closing free of liens, claims and encumbrances, as provided in the Purchase Agreement; (ii) the delivery of customary closing documents;  and (iii) a Sale Order being entered pursuant to section 363 of the Bankruptcy Code, which order has not been stayed.

- **Closing Conditions Required by the Trustee**:  Trustee's closing conditions will generally be limited to:  (i) the accuracy of the Buyers' representatives and warranties; (ii) the Buyers' compliance with covenants and obligations contained in the Purchase Agreement;  and (iii) entry of the Sale Order.

- **Closing Date**:  Not later than fifteen (15) days after the Court enters the Approval Order (as defined in the Purchase Agreement).

- **No Reliance on Warranties or Representations**:  The Condominium will be conveyed by the Trustee to, and accepted by, the Buyers, "AS IS", "WHERE IS", "WITHOUT FAULTS", "WITHOUT ANY EXPRESS OR IMPLIED WARRANTY OR REPRESENTATION OF ANY KIND", subject to use, wear, tear and natural deterioration between the date the parties execute the Purchase Agreement and the date the Sale closes. Without limiting the generality of the foregoing, neither the Trustee, the Debtor nor any other person or entity makes any warranty or representation regarding the

---

[4]    The summary of the Purchase Agreement provided herein is provided for the convenience of the Court and parties in interest.  In the event of any inconsistency between the summary in this Motion and the terms of the Purchase Agreement, the terms of the Purchase Agreement shall govern.

condition, working order, existence, quantity or location
with respect to the physical condition or any other
matters or things affecting the Condominium.

31.    The Trustee respectfully submits that the Purchase Agreement is
the result of arm's-length, good faith negotiations between the Trustee and the Buyers,
all of whom were represented by counsel.

## VII.    Extraordinary Provisions of the Proposed Sale

32.    Pursuant to the Amended Guidelines for the Conduct of Asset
Sales established and adopted by the Court pursuant to General Order M-383 (the "Sale
Guidelines"), the Trustee is required to highlight any "extraordinary provisions" in
connection with the Sale of the Condominium.

33.    The Sale is a private sale that the Trustee seeks to consummate
without an auction, although the Trustee did independently solicit and obtain
competing bids for the Condominium from multiple potential bidders, two of whom
were represented by real estate brokers.  The Trustee determined that a private sale
without an auction would maximize the value of the Condominium because it avoids
the time and expense of engaging a broker to market the Condominium in a real estate
market-environment that would not yield a purchase price above the Purchase Price
when accounting for broker fees.  This proposed Sale also presents an efficient means to
promptly sell the Condominium in a market that is being impacted by increasing
interest rates.

34.    The proceeds of the Sale will be used to satisfy closing expenses
and to satisfy the reconciled amounts of the claims that are secured by the Liens against
the Condominium.

35.    The Trustee requests that the Proposed Order include the same
determination that was included in the Initial Sale Order that the Sale of the

11

Condominium to the Buyers is exempt from any real property transfer taxes under New Jersey law in accordance with the exemption from such taxes set forth in N.J. Rev. Stat. § 46:15-10 (2021) as a transfer "[b]y a receiver, trustee in bankruptcy or liquidation, or assignee for the benefit of creditors."

## RELIEF REQUESTED

36.     The Trustee seeks entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, approving (a) the Sale to the Buyers free and clear of liens, claims, encumbrances and other interests pursuant to the terms of the Purchase Agreement, (b) approving the form and manner of notice of the Sale set forth herein, and (c) granting related relief.

37.     The Trustee has served a copy of this Motion, with the notice of hearing affixed hereto (the "Notice of Hearing"), and its exhibits by first class mail and/or e-mail, upon the parties set forth in the Notice provision below (the "Notice Parties").  The Notice of Hearing sets forth the date and time of the hearing at which the Court will consider approval of the Sale (the "Sale Hearing").  The Motion provides parties in interest with the terms of the Sale, and the Notice of Hearing provides instructions for the filing of objections, if any, to the Sale and notifies the Notice Parties of the deadline for filing timely objections (the "Objection Deadline").

## BASIS FOR RELIEF

### I.     The Sale of the Condominium is a Sound Exercise of the Trustee's Business Judgment

38.     Section 363(b) of the Bankruptcy Code governs transactions outside the ordinary course of business involving property of a debtor's estate and provides, in relevant part, that, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…."  11 U.S.C. § 363(b).  In

12

addition, pursuant to Bankruptcy Rule 6004(f)(1), "sales not in the ordinary course of business may be by private sale…"  Fed. R. Bankr. P. 6004(f)(1).

39.     Once a Chapter 7 trustee demonstrates a sound business justification for a proposed sale or use of property of the estate outside the ordinary course of business, the proposed transaction should be approved by the Court.  *See In re Chrysler LLC*, 576 F.3d 108, 117-18 (2d Cir. 2009) (citing *In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007) ("In this Circuit, the sale of an asset of the estates under § 363(b) is permissible if the 'judge determining [the] § 363(b) application expressly find[s] from the evidence presented before [him or her] at the hearing [that there is] a good business reason to grant such an application.'"));  *see also In re Gen. Motors Corp.*, 407 B.R. 463, 491 (Bankr. S.D.N.Y. 2009).

40.     The Trustee respectfully submits that a sound business justification for the Sale has been set forth herein.  The Sale is justified because the Purchase Price provides a value to the Debtor's estate that is equal to or greater to that would be realized in a sale for the last appraised value of the Condominium after accounting for broker commissions and expenses.  In addition, the absence of a financing contingency in the Purchase Agreement provides greater certainty that the Sale to the Buyers will timely close.

41.     The Sale to the Buyers as a private sale also is in the best interests of the Debtor's estate because it is more cost efficient than a marketing and auction process, which would cause the estate to incur administrative expenses that would ultimately reduce net Sale proceeds.

42.     For these reasons, the Trustee has determined, in his considered business judgment, that the Sale pursuant to the terms of the Purchase Agreement is in

the best interests of the Debtor's estate.  Accordingly, the Trustee respectfully requests that the Sale be approved by the Court.

## II.   The Condominium May be Sold Free and Clear of Any Interests to the Extent Permitted by Section 363(f) of the Bankruptcy Code

43.    Pursuant to section 363(f) of the Bankruptcy Code, a trustee may sell property under section 363(b) of the Bankruptcy Code free and clear of any interests if one of the following conditions is satisfied:  (i) applicable nonbankruptcy law permits the sale of the property free and clear of such interest;  (ii) the entity holding the lien, claim or interest consents to the sale;  (iii) the interest is a lien and the price at which such property to be sold is greater than the aggregate value of all liens on the property;  (iv) the interest is in bona fide dispute;  or (v) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest.  *See* 11 U.S.C. § 363(f);  *see also In re Smart World Tech., LLC*, 423 F.3d 166, 169 n. 3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests.  It thus allows Purchaser … to acquire assets [from a debtor] without any accompanying liabilities."); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *3 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

44.    The Trustee respectfully submits that cause exists to authorize the Sale of the Condominium free and clear of all interests and Liens, as described herein and as provided in the Purchase Agreement, because more than one of the conditions contained in section 363(f) of the Bankruptcy Code are satisfied, with such Liens to attach to the Sale proceeds.

14

A. **Section 363(f)(2) is Satisfied:  Holders of
   Liens And Interests Implied Consent to the Sale**

45.     Where parties in interest are given sufficient opportunity by a

trustee to object to a proposed sale under section 363 of the Bankruptcy Code, and any

such parties do not object to the proposed sale, such parties should be deemed to have

consented.  *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is

true that the Bankruptcy Code limits the conditions under which an interest can be

extinguished by a bankruptcy sale, but one of those conditions is the consent of the

interest holder, and lack of objection (provided of course there is notice) counts as

consent.  It could not be otherwise;  transaction costs would be prohibitive if everyone

who *might* have an interest in the bankrupt's assets had to execute a formal consent

before they could be sold.") (internal citations omitted);  *Hargrave v. Township of

Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to

sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2));  *Citicorp

Homeowners Serv., Inc. v. Elliot (In re Elliot*), 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

Courts in this district have applied the same principle.  *See In re Enron Corp.*, 2003 WL

21755006, at *2 (Bankr. S.D.N.Y. 2003) (order deeming all parties who did not object to

proposed sale to have consented under section 363(f)(2)).

46.     The Mortgage Servicer has not expressed any objection to the Sale

despite the opportunity to do so prior to the filing of this Motion and in connection with

the Initial Sale Motion.  The Trustee also informed the Association of the proposed Sale

prior to the filing of the Initial Sale Motion, this Motion and the intended use of the

proceeds, and it has also not expressed any objection to the Sale.  The provisions that

the Mortgage Servicer and the Association sought for the Initial Sale Order are included

in the Proposed Order.  Consequently, it is anticipated that section 363(f)(2) of the

Bankruptcy Code will be satisfied because the Mortgage Servicer and the Association will be deemed to have consented to the Sale.

**B.      Section 363(f)(3) is Satisfied:  The Purchase Price Exceeds the Aggregate Value of the Liens Recorded Against the Condominium**

47.      A sale can be made free and clear of any liens pursuant to section 363(f)(3) of the Bankruptcy Code so long as the purchase price exceeds "the aggregate value of all liens on such property," and, as here, the liens attach to the sale proceeds pending further Court order.  11 U.S.C. § 363(f)(3).  To the best of the Trustee's knowledge, the Condominium is subject only to the Liens, which total approximately $255,000.  The Purchase Price of $435,000 exceeds the aggregate value of all known Liens against the Condominium.  Consequently, the Sale will satisfy section 363(f)(3) of the Bankruptcy Code.

**C.      Section 363(f)(5) is Satisfied**

48.      The Sale satisfies section 363(f)(5) of the Bankruptcy Code because the entities holding the Liens against the Condominium could be compelled to accept a monetary satisfaction of their Lien, and the Trustee proposes that any Lien against the Condominium will attach to the net proceeds of the Sale, subject to all claims and defenses that the estate may possess regarding such Liens, with the same priority, validity and extent they had on the Petition Date.  As a result, the Trustee respectfully submits the Sale of the Condominium free and clear of all Liens satisfies section 363(f)(5) of the Bankruptcy Code.

49.      Based on the foregoing, the Trustee submits that sufficient cause exists for the Sale of the Condominium free and clear of the Liens, with the Liens to attach to the proceeds of the Sale.

16

**III.    The Buyers Should be Afforded Good Faith Purchaser
        Protections Under Section 363(m) as a Good Faith Purchaser**

50.    Section 363(m) of the Bankruptcy Code protects a good faith

purchaser's interest in property purchased from a debtor's estate notwithstanding that

the sale conducted under section 363(b) may later be reversed or modified on appeal.

Specifically, section 363(m) of the Bankruptcy Code states that:

> The reversal or modification on appeal of an
> authorization under [section 363(b)] … does not affect
> the validity of a sale … to an entity that purchased …
> such property in good faith, whether or not such
> entity knew of the pendency of the appeal, unless
> such authorization and such sale … were stayed
> pending appeal.

11 U.S.C. § 363(m);  *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994)

("Section 363(m) … provides that good faith transfers of property will not be affected by

the reversal or modification on appeal of an unstayed order, whether or not the

transferee knew of the pendency of the appeal");  *In re Stein & Day, Inc.*, 113 B.R. 157,

162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are

protected from the reversal of a sale on appeal unless there is a stay pending appeal").

51.    The Second Circuit has indicated that a party would have to show

fraud or collusion between a buyer and the trustee to demonstrate a lack of good faith.

*See Kabro Assocs. of West Islip, LLC, v. Colony Hill Assocs. (In re Colony Hill Assocs.*), 111

F.3d 269, 276, (2d Cir. 1997) ("[t]ypically, the misconduct that would destroy a

[purchaser's] good faith status at a judicial sale involves fraud, collusion between the

[buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage

of other bidders");  *see also In re Angelika Films 57th, Inc.*, Nos. 97 Civ. 2239 (MBM), 97

Civ. 2241 (MBM), 1997 WL 283412, at *7 (S.D.N.Y. 1997);  *In re Bakalis*, 220 B.R. 525, 537

(Bankr. E.D.N.Y. 1998).

52.     Here, the Buyers and Trustee have satisfied the requirements of section 363(m) of the Bankruptcy Code.  The Purchase Agreement is the result of arm's-length, good-faith negotiations between the Trustee and the Buyers, and each of them are represented by their respective counsel.  The Trustee respectfully submits that the Buyers are "good-faith" purchasers within the meaning of section 363(m) of the Bankruptcy Code and should be entitled to its protection.  Accordingly, the Trustee requests that the Court make a finding that the Buyers are entitled to the protections of section 363(m) of the Bankruptcy Code.

**IV.     Notice of the Sale Hearing and the Sale
         is Reasonable and Should be Approved**

53.     Bankruptcy Rule 6004(a) provides that notice of a proposed sale of property of the estate, other than in the ordinary course of business, shall be given to all known creditors and parties-in-interest pursuant to Bankruptcy Rule 2002(a)(2), (c)(1), (i) and (k).

54.     Bankruptcy Rule 2002(a) requires that "the clerk, or some other person as the court may direct," give "the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of:  a proposed use, sale, or lease of property of the estate other than in the ordinary course of business…."  Fed. R. Bankr. P. 2002(a)(2).  Bankruptcy Rule 2002(c) requires that this notice include "the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections."  Fed. R. Bankr. P. 2002(c).

55.     Bankruptcy Rule 6004(c) and Local Bankruptcy Rule 6004-1 require that an application pursuant to section 363(f) of the Bankruptcy Code for authority to sell property free and clear of liens or other interests "shall be served on the parties who have liens or other interest in the property to be sold."  Fed. R. Bankr. P. 6004(c).  The

parties holding Liens and interests in the Condominium will receive notice of the Trustee's proposed Sale.

56.     The Trustee respectfully submits that the Notice of Hearing and this Motion set forth all the information that parties in interest require concerning the Sale, including:  the property of the Debtor's estate that is being sold by the Trustee;  the terms of the Sale;  the time, date and location of the Sale Hearing;  the Objection Deadline and instructions for timely filing objections to the Sale.  The Notice of Hearing will be served on all of the Notice Parties.

57.     The Trustee respectfully submits that the form and manner of notice proposed herein satisfy the requirements of Bankruptcy Rules 2002 and 6004, and Local Bankruptcy Rule 6004-1 and respectfully requests that the Court approve them.

## **WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

58.     The Trustee respectfully requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provided that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  In light of the notice of the Sale that was provided to parties in interest, and the fact that Liens against the Condominium will attach to the proceeds, and continue to accrue interest, the Trustee respectfully submits that no party will be prejudiced by a waiver of the stay imposed by Bankruptcy Rule 6004(h) and that such waiver will help to limit the accrual of interest charges.

## **NOTICE**

59.     Notice of this Motion, its exhibits and the Proposed Order has been served upon:  (1) Kossoff;  (2) counsel for the Buyers;  (3) the United States Trustee;  (4) counsel to the Mortgage Servicer;  (5) counsel to the Twin Lights Terrace

Condominium Association;  (6) the Office of the New Jersey Attorney General;  (7) the

New Jersey Division of Taxation;  (8) the Office of the Borough Attorney for the

Borough of Highlands;  (9) the Office of the Tax Assessor for the Borough of Highlands;

(10) counsel for the Tenant;  (11) all of the creditors who have filed a proof of claim in

the Chapter 7 Case;  and (12) all parties that have filed a Notice of Appearance in this

Chapter 7 Case.

## NO PRIOR REQUEST

60.     No previous application for the relief sought herein has been made

to this or any other court.

## CONCLUSION

**WHEREFORE,** the Trustee respectfully requests entry of an order

substantially in the form of the Proposed Order (a) approving the Sale of the

Condominium to the Buyers free and clear of liens, claims, encumbrances and other

interests pursuant to the terms of the Purchase Agreement, and (b) granting such other

or further relief as may be appropriate herein.

DATED:  New York, New York
              February 27, 2023

                          Respectfully submitted,

                          ALBERT TOGUT,
                          Not individually but solely in his capacity as
                          Chapter 7 Trustee of Kossoff PLLC
                          By His Attorneys,
                          TOGUT, SEGAL & SEGAL LLP
                          By:

                          */s/ Neil Berger*
                          NEIL BERGER
                          BRIAN F. SHAUGHNESSY
                          JARED C. BORRIELLO
                          One Penn Plaza, Suite 3335
                          New York, New York 10119
                          (212) 594-5000

## EXHIBIT A

**Proposed Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X
:
         In the Matter           :     Chapter 7
:
         -of-           :
:     Case No.: 21-10699 (DSJ)
KOSSOFF PLLC,         :
:
         Debtor.      :
:
---------------------------------------------------------------- X

**ORDER APPROVING THE SALE OF**
**CONDOMINIUM LOCATED AT UNIT I-9, TWIN LIGHTS**
**TERRACE CONDOMINIUM, HIGHLANDS, NEW JERSEY FREE**
**AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

Upon the application (the "<u>Motion</u>")[1] of Albert Togut, not individually

but solely in his capacity as the Chapter 7 Trustee (the "<u>Trustee</u>") of the estate of

Kossoff PLLC (the "<u>Debtor</u>"), the debtor in the above-captioned case, by his attorneys,

Togut, Segal & Segal LLP (the "<u>Togut Firm</u>"), for an order (this "<u>Order</u>") pursuant

sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, Local

Bankruptcy Rule 6004-1 and General Order M-383, approving (a) the sale of the

condominium (the "<u>Sale</u>") located at Unit I-9, Twin Lights Terrace Condominium,

Highlands, New Jersey (the "<u>Condominium</u>") to the Buyers free and clear of liens,

claims, encumbrances and other interests pursuant to the terms of the Purchase

Agreement, a copy of which is attached to the Motion as **<u>Exhibit C</u>**, (b) the form and

manner of notice of the Sale Hearing as set forth in the Motion, (c) authorizing the

Trustee to retain the Deposit, and (d) granting related relief;  and upon the Berger

Declaration;  and the Court having reviewed the Motion, the Berger Declaration, the

Purchase Agreement, and having heard the Trustee, by his attorneys, the Togut Firm,

during the March [__], 2023 hearing to consider the Motion (the "<u>Hearing</u>");  and this

---

[1]    Capitalized terms that are not defined herein shall have the meanings ascribed to them in the Motion.

Court having jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order;  and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b);  and venue of this Chapter 7 Case and the Motion being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409;  and it appearing that good and sufficient notice of the Motion, the Sale and the Hearing was provided by the Trustee and that no further notice is required;  and upon the record made during the Hearing and all prior pleadings and proceedings had herein;  and after due deliberation and sufficient cause being shown therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The statutory predicates for the relief sought in the Motion are sections 105(a), 363 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and Local Bankruptcy Rule 6004-1.

B.      Proper, timely, adequate and sufficient notice of the Motion, the relief requested therein, the Hearing, the Sale, and the transaction described in the Purchase Agreement has been provided by the Trustee in accordance with section 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

C.      Creditors, parties-in-interest and other entities have been afforded a reasonable opportunity to object or be heard regarding the Motion and the relief requested therein.

D.      The Trustee has authority to consummate the Sale in a private sale pursuant to Bankruptcy Rule 6004(f)(1) and Local Bankruptcy Rule 6004-1, and no consents or approvals, other than those expressly provided for in the Purchase Agreement and this Order, are required for the Trustee to consummate the Sale.

E.      Approval of the Purchase Agreement and consummation of the Sale are in the best interests of the Debtor's estate, its creditors, and other parties-in-interest.

2

F.     The Trustee has demonstrated (i) good, sufficient, and sound business purpose and justification and (ii) compelling circumstances for the Sale pursuant to sections 363(b) and (f) of the Bankruptcy Code.  The Trustee has sufficiently demonstrated that a private sale of the Condominium to the Buyers without conducting a public auction of the Condominium is in the best interests of the Debtor's estate, its creditors, and other parties-in-interest and the terms of the Purchase Agreement represent the best offer under the circumstances of the Chapter 7 Case.

G.     The Purchase Agreement was negotiated, proposed and entered into by and between the Trustee and the Buyers without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Trustee nor the Buyers have engaged in any conduct that would cause or permit the avoidance of the Purchase Agreement or the consummation of the Sale, or the imposition of costs or damages under section 363(n) of the Bankruptcy Code.

H.     The Buyers are good faith purchasers under section 363(m) of the Bankruptcy Code and, as such, are entitled to all of the protections afforded thereby in that:  (a) the Buyers recognized that the Trustee was free to deal with any other party interested in a transaction regarding the Sale;  (b) the Buyers agreed to provisions in the applicable Purchase Agreement to consummate the private sale of the Property;  (c) the Buyers made the best offer in respect of the Sale under the circumstances of this Chapter 7 Case;  (d) all payments to be made by or to the Buyers and other agreements or arrangements entered into by the Buyers in connection with the Sale are set forth in the Purchase Agreement and the Motion;  and (e) the negotiation and execution of the Purchase Agreement were in good faith and constitute arm's-length transactions between the Buyers and the Trustee.  The Buyers have acted in good faith and will continue to act in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale contemplated by the Purchase Agreement.

3

I.      The terms and conditions of the Purchase Agreement are fair and reasonable.  The consideration provided by the Buyers for the Condominium pursuant to the Purchase Agreement is (i) fair and reasonable, (ii) the best offer for the Condominium under the circumstances of this Chapter 7 Case, (iii) will provide a greater recovery for the Debtor's estate than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law.

J.      The amount of the Purchase Price for the Condominium exceeds the amounts of the known claims that are secured by the known liens and encumbrances against the Condominium.

K.      Select Portfolio Servicing, Inc. (the "Mortgage Servicer") is the servicing agent for DLJ Mortgage Capital, Inc., as assignee of HOF I Legal Title Trust 1, which holds the first mortgage on the Condominium.  Highlands is the local taxing authority for real property taxes related to the Condominium.

L.      Neither the Trustee nor the Buyers are or will be liable to any agent, broker, person or firm acting or purporting to act on behalf of either the Trustee or the Buyers for any commission, broker's fee or finder's fee respecting the Sale.

M.      The Condominium constitutes property of the Debtor's estate.  The Trustee is the sole and lawful owner of the Condominium and holds good title thereto. The transfer of the Condominium by the Trustee to the Buyers will be a legal, valid, and effective transfer of the Condominium, and will vest the Buyers with all right, title, and interest of the Trustee in and to the Condominium free and clear of all liens, claims, interests, obligations, rights, charges and encumbrances as provided in the Purchase Agreement.  After the closing of the Sale under the Purchase Agreement, the Buyers shall have no liability for any claims asserted against or liabilities of the Debtor or its estate that do not arise from or are related to the Condominium.

N.     The Trustee may sell the Condominium free and clear of all, liens, interests, obligations, rights, encumbrances, pledges, mortgages, deeds of trust, security interests, claims (including, any "claim" as defined in Section 101(5) of the Bankruptcy Code), charges, options, rights of first refusal, easements, servitudes, transfer restrictions under any agreement, judgments, hypothecations, demands, licenses, sublicenses, assignments, debts, obligations, guaranties, options, contractual commitments, restrictions, environmental liabilities, options to purchase, and options, in each case of whatever kind, nature, or description in, against or with respect to the Condominium, having arisen, existed or accrued prior to and through the closing of the Sale, whether direct or indirect, absolute or contingent, choate or inchoate, fixed or contingent, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute or otherwise and whether arising prior to, on or after the Petition Date (collectively, "Liens, Claims and/or Interests") because one or more of the standards set forth in section 363(f)(1)–(5) have been satisfied with regard to each such Lien, Claim and/or Interest.  Those non-debtor parties with Liens, Claims and/or Interests in or with respect to the Condominium who did not object, or who withdrew their objections to the Sale or the Motion, are deemed to have consented to the Sale of the Condominium free and clear of those non-debtor parties' Liens, Claims and/or Interests in the Condominium pursuant to section 363(f)(2) of the Bankruptcy Code.  Those non-debtor parties with Liens, Claims and/or Interests in or with respect to the Condominium who objected to the Motion, but who did not withdraw any such objection, can be compelled to accept a monetary satisfaction of their liens, claims or interests within the meaning of Section 363(f)(5) of the Bankruptcy Code.

O.     The Sale of the Condominium is exempt from any and all real estate transfer taxes, as it is a conveyance pursuant to the Bankruptcy Code by a Chapter 7 trustee in accordance with the real property transfer tax exemptions under

5

New Jersey law set forth in N.J. Rev. Stat. § 46:15-10 (2021).  Neither the Trustee nor the

Buyers shall be responsible for any real property transfer taxes under N.J. Rev. Stat.

§ 46:15-10 (2021).

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND**

**DECREED THAT:**

**General Provisions**

       1.      The Motion is GRANTED to the extent set forth herein.

       2.      The findings of fact set forth above and conclusions of law set forth

herein constitute this Court's findings of fact and conclusions of law pursuant to

Bankruptcy Rule 7052, made applicable to this Chapter 7 Case pursuant to Bankruptcy

Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion

of law, it shall be so deemed, and to the extent any conclusion of law later shall be

determined to be a finding of fact, it shall be so deemed.

       3.      All objections, if any, to the Motion or the relief requested therein

that have not been withdrawn, waived, or settled, and all reservations of rights

included in such objections, are hereby overruled on the merits with prejudice, and in

each case, all parties which asserted such objections and reservations of rights are

enjoined from taking any action against the Buyers or any other purchaser of the

Condominium, their affiliates or any agent of the foregoing in any manner including,

without limitation, to recover any claim which such person or entity has solely against

the Debtor or its estate.

**Approval of the Purchase Agreement**

       4.      The Sale and all of the terms and conditions and transactions

contemplated by the Purchase Agreement are hereby authorized and approved

pursuant to sections 105(a) and 363 of the Bankruptcy Code.

       5.      Pursuant to section 363 of the Bankruptcy Code, the Trustee is

authorized to consummate the Sale pursuant to and in accordance with the terms and

6

conditions of the Purchase Agreement and shall at all times act in accordance with the terms thereof and this Order.

6.      The Trustee is authorized to expend such funds, and he and his retained attorneys are authorized to execute and deliver, and empowered to perform under, consummate, and implement the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary, convenient or desirable to implement the Purchase Agreement and consummate the Sale pursuant thereto and effectuate the provisions of this Order and the transaction approved hereby, and to take all other actions as may be necessary for the purpose of assigning, transferring, granting, conveying and conferring to the Buyers, the Condominium, as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement and this Order.

**Transfer of the Condominium**

7.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the closing of the Sale (the "Closing"), the Condominium (and good and marketable title to such) and all of the attendant respective rights, title and interest therein shall be transferred to the Buyers free and clear of all Liens, Claims and/or Interests, including, without limitation, tax liens, with all such Liens, Claims and/or Interests to attach to the net cash proceeds of the Condominium in the order of their priority, with the same validity, force and effect which they now have as against the Condominium, subject to any claims and defenses, setoffs or rights of recoupment that the Trustee or the Debtor's estate may possess with respect thereto.

8.      Only to the extent expressly provided in the Purchase Agreement, all persons and entities (and their respective successors and assigns) including, but not limited to, all governmental, tax, and regulatory authorities, lenders, the Tenant, trade and other creditors, holding Liens, Claims and/or Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or

subordinated) against, in or with respect to the Trustee, the Debtor's estate and/or the Condominium arising or accruing under or out of, in connection with, or in any way relating to, the Trustee, the Debtor's estate, the Property, or the transfer of the Condominium to the Buyers, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Liens, Claims and/or Interests against the Condominium, the Buyers or any of the Buyers' successors or assigns.  Following the Closing under the Purchase Agreement, no holder of a Lien, Claim and/or Interest, including, without limitation, DLJ Mortgage Capital, Inc., the HOF 1 Legal Title Trust 1, the Mortgage Servicer, the Tenant, and the Twin Lights Terrace Condominium Association, shall interfere with the Buyers' title to or use and enjoyment of the Condominium based on or related to such Lien, Claim and/or Interest or any actions that the Trustee has taken or may take in this Chapter 7 Case.  Effective upon the Sale closing, the Buyers shall have no liability for any Claims (as defined in section 101(5) of the Bankruptcy Code) against the Trustee or the estate concerning the Condominium.

9.       The transfer of the Condominium to the Buyers pursuant to the Purchase Agreement constitutes a legal, valid, and effective transfer of the Condominium, and shall vest the Buyers with all right, title, and interest of the Trustee in and to the Condominium.

**Additional Provisions**

10.       Without limiting the other terms of this Order, prior to or upon the closing of the Sale, each entity holding a Lien, Claim and/or Interest in the Condominium is authorized and directed to execute such documents and take all other actions as may be necessary to release their interests, if any, in the Condominium as such Liens, Claims and/or Interests may have been recorded or may otherwise exist. This shall be (a) effective as a determination that, upon the closing of the Sale, all Liens, Claims and/or Interests existing with respect to the Condominium prior to the closing of the Sale have been unconditionally released, discharged and terminated as to the

Buyers and the Condominium, and that the conveyances described herein have been effected, and (b) binding upon all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Condominium.

11.     Each and every federal, state, and local governmental agency or department or office is hereby directed to accept this Order and any and all documents and instruments necessary and appropriate to consummate the transaction contemplated by the Purchase Agreement.

12.     At the Closing, (a) Mortgage Servicer shall be paid the amount of its payoff pursuant to a payoff letter which shall be issued and provided for the Closing, (b) the claim that is secured by the Condo Association Lien will be satisfied from the proceeds of the Sale, subject to confirmation of the balance owed, and (c) the real property taxes owed to Highlands shall be paid to Highlands from the proceeds of the Sale, subject to confirmation of the balance owed by the Debtor's estate.

13.     Without limiting the other provisions of this Order, if any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens or other documents or agreements evidencing interests with respect to the Condominium shall not have delivered to Trustee prior to the Sale closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Condominium or otherwise, then (a) the Trustee and his retained attorneys are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Condominium

and (b) the Buyers and/or the Trustee are hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims and/or Interests in, against or with respect to the Condominium.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, and local governmental agency, department, or office.

14.     The Condominium shall be conveyed by the Trustee to, and accepted by the Buyers "AS IS", "WHERE IS", "WITHOUT FAULTS", "WITHOUT ANY EXPRESS OR IMPLIED WARRANTY OR REPRESENTATION OF ANY KIND", except as expressly provided in the Purchase Agreement and this Order.  Without limiting the generality of the foregoing, neither the Trustee nor any other person or entity makes any warranty or representation regarding the condition, working order, existence, quantity or location of such assets, and the Buyers shall have no recourse and may not assert any claim against the Trustee, or his representatives, based on any such warranty or representation.

15.     The Court retains exclusive jurisdiction to enforce and implement this Order, the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects including, but not limited to, retaining jurisdiction to (a) compel compliance with this Order and the Purchase Agreement, (b) resolve any dispute, controversy or claim arising under or related to the Purchase Agreement, or the breach thereof and (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

16.     Entry of this Order shall in no way impair the ability of the Court, United States Trustee, or Trustee to implement or enforce other orders of the Court entered in the Chapter 7 Case, and all such orders shall continue in full force and effect.

17.     The Sale contemplated by the Purchase Agreement is undertaken

by the Buyers in good faith, as that term is used in section 363(m) of the Bankruptcy Code.  The Buyers are purchasers in good faith of the Condominium and are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.  Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyers.

18.     The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of the Trustee, the Debtor's estate, the Buyers, and any of such parties' respective affiliates, designees, successors, and assigns, and shall be binding in all respects upon all of the Debtor's estate's creditors, and all persons and entities receiving notice of the Notice, and/or the Hearing notwithstanding any subsequent appointment of any examiner(s) or receiver(s) under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtor, its estate, its creditors, or any examiner(s) or receiver(s).

19.     The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety.

20.     The Purchase Agreement and any related agreements, documents, or other instruments, if any, may be further modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

21.    Notwithstanding Bankruptcy Rule 6004(h) or any other Bankruptcy Rules or Local Bankruptcy Rules, this Order shall be effective and enforceable immediately upon its entry and its provisions shall be self-executing.  Any party objecting to this Order must exercise due diligence in filing an appeal and seeking a stay prior to the closing of the Sale or risk its appeal being foreclosed as moot.

DATED:  New York, New York
          March ___, 2023

_____
HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Berger Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
                                                       :

| | | |
|---|---|---|
| In the Matter | : | Chapter 7 |
| | : | |
| -of- | : | |
| | : | Case No.: 21-10699 (DSJ) |
| KOSSOFF PLLC, | : | |
| | : | |
| Debtor. | : | |
| | : | |

------------------------------------------------------------ X

**DECLARATION OF NEIL BERGER IN SUPPORT OF**
**THE TRUSTEE'S SECOND APPLICATION FOR AN ORDER**
**APPROVING THE SALE OF CONDOMINIUM LOCATED AT UNIT I-9,**
**TWIN LIGHTS TERRACE CONDOMINIUM, HIGHLANDS, NEW JERSEY**
**FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

Neil Berger, Esq. declares, under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am a partner with the law firm of Togut, Segal & Segal LLP, counsel to Albert Togut, not individually but solely in his capacity as the Chapter 7 Trustee (the "Trustee") of the estate of Kossoff PLLC (the "Debtor").

2. I submit this Declaration in support of the *Trustee's Second Application for an Order Approving the Sale of Condominium Located at Unit I-9, Twin Lights Terrace Condominium, Highlands, New Jersey Free and Clear of Liens, Claims, Encumbrances and Other Interests* (the "Motion"), which is filed contemporaneously herewith.[1]

3. The statements set forth herein are based upon my personal knowledge and belief, my privileged communications with the Trustee and his retained special real estate counsel and other professionals, my review of the documents filed on

---

[1] Capitalized terms used herein but not defined herein shall have the meanings ascribed in the Motion.

the docket that is maintained by for this Chapter 7 Case, the Lease and related documents and information obtained by the Trustee.

4.    The proposed sale (the "Sale") of the condominium located at Unit I-9, Twin Lights Terrace Condominium, Highlands, New Jersey (the "Condominium") to Ciaran and Jean Canavan (the "Buyers") for $435,000 (the "Purchase Price") pursuant to the terms of the Purchase Agreement is a valid exercise of the Trustee's business judgment and, given the circumstances of this Chapter 7 Case, is in the best interests of the Debtor's estate.

5.    The Condominium became property of the Debtor's estate when Kossoff executed and delivered the Deed for the Condominium to the Trustee as a condition of Kossoff's Plea Agreement and the Trustee recorded the Deed in the Monmouth County Clerk's Office.

6.    The transfer of the Condominium by Kossoff to the Trustee was deemed exempt from realty transfer fees under New Jersey law pursuant to N.J. Rev. Stat. § 46:15-10 (2021) as a transfer "[b]y a receiver, trustee in bankruptcy or liquidation, or assignee for the benefit of creditors."  The Trustee asserts that the Sale is also exempt from realty transfer fees under New Jersey law under the same exemption because he is transferring to the Buyers in his capacity as Trustee of the Debtor.

7.    After the Condominium became property of the Debtor's estate, the Trustee informed the Mortgage Servicer and the Twin Lights Terrace Condominium Association Lien of his intent to sell the Condominium and use the proceeds to satisfy the Mortgage, the Condo Association Lien and any other valid and recorded liens.  The outstanding balance of the Mortgage is approximately $250,000 and the Condo Association Lien secures a claim of approximately $5,000.

8.     The Trustee entered into the Initial Sale Contract with the Tenant, which provided for a sixty (60) day notice period (the "Financing Notice Period") to terminate the Initial Sale Contract in the event the financing contingency (the "Financing Contingency").  The Financing Notice Period expired on October 25, 2022. On November 23, 2022, after the Financing Notice Period expired, Trustee received the letter of termination from the Tenant which advised the Trustee that the Tenant was unable to obtain financing and that the Initial Sale Contract was terminated.  In response to the Trustee's demands, the Tenant vacated the Condominium on December 1, 2022.

9.     After receiving the Tenant's termination letter, the Trustee showed the Condominium to at least five prospective buyers, without retaining a real estate broker, and he solicited bids from them.  At least two of the prospective buyers were introduced to the Trustee by local real estate brokers with offices in New Jersey.

10.     The Trustee received an all-cash bid from the Buyers in the amount of $435,000 for the Condominium on an "as is, where is" basis.  The Trustee has consulted New Jersey real estate listing databases and a local broker (informally) and has determined that the Purchase Price to be paid by the Buyers is consistent with recent sale prices for similar real properties located in the Condominium development where the Condominium is located.

11.     The Purchase Agreement, a copy of which is attached to the Motion as **Exhibit C**, is the result of arm's-length good faith negotiations between the Trustee and the Buyers, each of whom are represented by counsel.  The Sale is a private sale that the Trustee seeks to consummate without a public auction, although the Trustee did solicit and obtain competing bids for the Condominium from multiple parties.  The Trustee determined that a private sale without an auction will maximize the value of

the Condominium because it avoids the time and expense of engaging a broker to market the Condominium in a real estate market environment that would not likely yield a purchase price above the Purchase Price when accounting for broker fees.

12.    The Trustee submits that the terms of the Purchase Agreement are fair, reasonable, and in the best interests of the Debtor's estate, its creditors, and other parties in interest.

13.    Based upon the foregoing and my privileged discussions with the Trustee, I believe that the Trustee has demonstrated a valid business justification for the Sale pursuant to the terms of the Purchase Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on February 23, 2023 in New York, New York

_/s/ Neil Berger_____
NEIL BERGER

## EXHIBIT C

**Purchase Agreement**

Prepared by:

_____

MARC A. LANDIS, ESQ.

# Contract For Sale of Real Estate

This Contract for Sale is made on this ____ day of February, 2023

**BETWEEN**
**Albert Togut, not individually but solely in his capacity as Chapter 7 Trustee of Kossoff PLLC**

Whose address is  One Penn Plaza, Suite 3335, New York, New York 10119
referred to as the "Seller,"

**AND**
**Ciaran Canavan and Jean Canavan**

Whose address is  105 University Dr., Lincroft, NJ 07738
referred to as the "Buyer"

The words "Buyer" and "Seller" include all Buyers and all Sellers listed above.

**1. Purchase Agreement.** The Seller agrees to sell and the Buyer agrees to buy the property described as Unit 1-9 located in the Twin Lights Terrace Condominium, Highlands, New Jersey 07732

**2. Property.** The property to be sold consists of (a) the land and all the buildings, other improvements and fixtures on the land; (b) all of the Seller's rights relating to the land; and (c) all personal property specifically included in this Contract.  The real property to be sold is commonly known as Unit 1-9 located in the Twin Lights Terrace Condominium, Highlands, in the County of Monmouth, and State of NEW JERSEY.  It is shown on the municipal tax map as lot 9 in block 11.08.

**3. Purchase Price.** The purchase price is Four Hundred Thirty-Five Thousand Dollars.  **$435,000.00**

**4. Payment of Purchase Price.** The Buyer will pay the purchase price as follows:  $43,500.00 upon signing of this Contract; the balance to be paid at Closing of title, subject to customary adjustments at Closing.  All payments shall be made by wire transfer of immediately available Federal funds or by certified check or official cashier's check.  This contract is not subject to a financing contingency.

**5. Deposit Moneys.** All deposit monies shall be held in the non-interest bearing attorney trust account of the Seller's Attorney, **Phillips Nizer LLP**, until Closing of title.  In the event of a breach of this Contract, either party may institute such action as may be cognizable in law or equity.

**6. Mortgage Contingency.** N/A

**7. Time and Place of Closing.** The Closing shall occur within fifteen (15) days after Seller obtains the Approval Order (as defined herein).  The Closing will be held via a "remote" or "escrow" closing.

**8. Transfer of Ownership.** At the Closing, the Seller will transfer ownership of the property to the Buyer, who will receive insurable title consistent with the Deed and affidavit of title contemplated herein.  The Seller will give the Buyer a properly executed deed (the "Deed") and an adequate affidavit of title in the form annexed to this Contract.

**9. Type of Deed.** A deed is a written document used to transfer ownership of property.  In this sale, the Seller agrees to provide and the Buyer agrees to accept a deed known as a Quitclaim Deed.

**10. Physical Condition of the Property.** As is, where is; no representations of any kind.

**11. Complete Agreement.** This Contract is the entire and only agreement between the Buyer and the Seller.  This Contract can only be changed by an agreement in writing signed by both Buyer and Seller or by the respective attorneys on their behalf.

**12. Parties Liable.** This Contract is binding upon all parties who sign it and all who succeed to their rights and responsibilities.

3513645.2



**13. Full Performance.** The acceptance of the Deed by Buyer shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Seller to be performed pursuant to the provisions of this Contract except those, if any, which are herein specifically stated to survive the Closing. In addition, no representation set forth in this Contract shall survive closing of title or delivery of the Deed unless this Contract expressly stated otherwise.

**14. Buyer Bankruptcy.** If for any reason the Buyer (or either of them individually) seeks relief under the provisions of the United States Bankruptcy Code (the "Code") or any similar state statute, the Buyer acknowledges and agrees that the automatic stay under Section 362 of the Code or any similar state statute shall not be applicable to the provisions of this Contract, including, without limitation, the contemplated sale of the Unit by the Seller to the Buyer, and the obligations of the Buyer to vacate and surrender possession of the Unit to the Seller. The Buyer's rights and remedies shall not in any way be affected by any relief sought by or against either or both of the Buyers under the Code.

**15. Counterparts.** This Contract may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile or pdf transmission of the parties' signatures shall be considered legal and binding for purposes of this Contract.

**16. Delivery.** Seller shall be permitted to deliver a fully-executed counterpart of this Contract to Buyer's attorney by e-mail and the Contract shall be deemed given on date sent by e-mail to Buyer's attorney.

**17. Extensions.** The attorneys for Seller and Buyer by letter may grant any extension of time to perform any act hereunder and such letter when signed by both attorneys will be binding on the parties hereto; provided, however, that no extension of the Closing for a period greater than 14 days may occur absent a written agreement signed by both Seller and Buyer.

**18. No Waiver.** The failure of either party to insist upon the performance of any obligation to be performed by the other party shall not be deemed to be a waiver thereof or of any preceding or succeeding breach thereof or of any other obligation. No provision of this Contract may be waived except by a writing signed by the party waiving any provision hereof. The waiver of any breach of this Contract shall not be deemed a waiver of any preceding or subsequent breach of the same obligation, or of any other obligation, to be performed hereunder. No extensions of time for the performance of any obligations or acts shall be deemed or construed as an extension of the time for the performance of any other obligations or acts.

**19. Bankruptcy Court Approval.** Buyer acknowledges that this Contract and the transactions contemplated hereby are subject to the approval of the Bankruptcy Court and the entry by the Bankruptcy Court of a final order approving the transaction contained in the Contract and affording Buyer Section 363 protections as a good faith purchaser (the "Approval Order") and Seller's obligation to consummate the transaction contemplated hereunder is subject to approval by the Bankruptcy Court. Notwithstanding any other provision of this Contract, this Contract shall not be binding on Seller nor effective against Seller in full or in part until properly executed and delivered by Seller and Buyer and the Approval Order is obtained.

Within five (5) business days following the acceptance and countersignature of this Contract by Seller, Seller, at Seller's sole cost and expense, will file with the Bankruptcy Court a motion seeking, *inter alia*, entry of the Approval Order (the "Approval Motion"). Buyer shall cooperate with Seller in the prosecution of the Approval Motion. At Closing, Seller shall deliver to Buyer a copy of the Approval Order. In the event that the Approval Order is not obtained within sixty (60) days following the filing of the Approval Motion, either party may cancel this Contract by written notice to the other party so long as the Approval Order is not issued prior to the delivery of such notice of cancellation.

**20. Agent for Service of Process.** Buyer hereby irrevocably designates and appoints Margaret Walz, Esq. (the "Agent"), having an address c/o Dasaro Law Firm, P.C., 761 Palmer Avenue, Holmdel, NJ 07733, as agent for service of process regarding the Debtors' Bankruptcy Court case, this Contract and any matter related thereto or hereto. The Agent, by signing below, irrevocably consents to and accepts its designation and appointment as agent for service of process upon Buyer and any assignee or transferee of Buyer herein.

**21. Trustee Liability; Trustee Authority.** Buyer acknowledges and agrees that Albert Togut (the "Trustee") is entering into this Contract not individually but solely in his capacity as Chapter 7 Trustee of Kossoff PLLC, Debtor, pursuant to Bankruptcy Court orders, and Buyer agrees that the neither Trustee nor his retained professionals shall have any personal liability or obligation whatsoever under this Contract. Seller has the sole authority to act in accordance with the Contract and to convey title on behalf of Debtor, subject to Bankruptcy Court approval.

**22. FIRPTA.** Seller is not a "foreign person" as defined in the Internal Revenue Code Withholding Section.

3513645.2

**23. Trustee Legal Fees.** The fees and expenses of Phillips Nizer LLP shall be fixed by an order of the Bankruptcy Court.

**24. As-Is Condition.** Buyer acknowledges that Buyer has inspected the Unit, is fully familiar with the physical condition and state of repair thereof, and, the Unit shall be conveyed by the Trustee to, and accepted by, Buyer "AS IS", "WHERE IS", "WITHOUT FAULTS", "WITHOUT ANY EXPRESS OR IMPLIED WARRANTY OR REPRESENTATION OF ANY KIND", subject to use, wear, tear and natural deterioration between now and the date of Closing, without any reduction in the Purchase Price for any change in the condition by reason thereof subsequent to the date of this Contract. Without limiting the generality of the foregoing, neither the Trustee, the Debtor nor any other person or entity makes any and specifically disclaims any representation, warranty, promise, covenant, agreement or guarantee of any kind or character, whether express or implied, oral or written, past, present or future, as to, concerning or with respect to the physical condition or any other matters or things affecting or related to the Unit or the appliances or other equipment or furniture or fixtures therein, if any, and Buyer hereby expressly acknowledges that no such representation, warranty, promises, covenant, agreement or guarantee has been made and Buyer shall have no recourse and may not assert any claim against the Trustee, the Debtor, their estates, or their agents, employees or any other representative of Seller or by any broker or any other person representing or purporting to represent Seller based on any such representations, warranties, promises, covenants, agreements or guarantees, which are not expressly set forth in this Contract, whether or not any such representations, warranties, promises, covenants, agreements or guarantees were made in writing or orally. Buyer shall be responsible for obtaining a certificate of occupancy if required for Closing.

**25. Due Diligence.** Buyer acknowledges that before entering into this Contract, Buyer has had a full opportunity to conduct due diligence with respect to the Unit, and has made such examination of the Unit, including, without limitation, the physical condition and all other matters or things affecting or relating to the Unit or the appliances or other equipment or furniture or fixtures therein, if any. In entering into this Contract, Buyer has not been induced by and has not relied upon any representation, warranty, promise, covenant, agreement or guarantee of any kind or character, whether express or implied, made by the Trustee, the Debtor, their estates, or their agents, employees or any other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

**26. Brokerage.** Buyer shall indemnify and hold harmless Seller from any claim for a brokerage commission in connection with this Contract and the transaction contemplated herein.

**SIGNED AND AGREED TO BY:**

Witnessed or Attested by:                   Date Signed:   2/9/2023

                                                                                    **(Seal)**

_____                   _____
**As to Buyer(s)**                          **Ciaran Canavan**                    **Buyer**

_____                   _____
**As to Buyer(s)**                          **Jean Canavan**                      **Buyer**

_____                   _____
**As to Seller(s)**                         **Albert Togut**                      **Seller**
                                            Not individually but solely is his capacity as
                                            **Chapter 7 Trustee of Kossoff PLLC**

The undersigned hereby irrevocably consents to designation and appointment as agent for service of process pursuant to Paragraph 20.

_____
xXkxxgxxxxXxxlxx Esq.
Julia S. Dasaro

3513645.2

# eSignature Details

**Signer ID:**      **ANtMAKALrhbhf8bdAz2t9zfc**
Signed by:      Jean Canavan
Sent to email:      jeancanavan1@gmail.com
IP Address:      52.119.91.124
Signed at:      Feb 9 2023, 2:27 pm EST

**Signer ID:**      **eQHuKonwVtLvwFNXFgNyLAyF**
Signed by:      Ciaran Canavan
Sent to email:      ciarancanavanawi@gmail.com
IP Address:      174.216.240.134
Signed at:      Feb 9 2023, 4:35 pm EST

**Signer ID:**      **4xmojPF2qxDANHVWjz9JQCTk**
Signed by:      Julia Dasaro
Sent to email:      julia@dasarolaw.com
IP Address:      73.226.175.222
Signed at:      Feb 13 2023, 8:07 pm EST

