TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Neil Berger
Jared C. Borriello

*Attorneys for the Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>KOSSOFF PLLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 21-10699 (DSJ)<br><br>(Jointly Administered) |
| ALBERT TOGUT, Not Individually but Solely in His Capacity as Chapter 7 Trustee of the Estate of Kossoff PLLC,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH V. JELIC,<br><br>Defendant. | Adv. Pro. No. 23-____ (DSJ) |

## COMPLAINT

Albert Togut, not individually but solely in his capacity as the Chapter 7 Trustee (the "Plaintiff" or the "Trustee") of the estate of Kossoff PLLC, the debtor in the above-captioned case (the "Debtor"), by his attorneys, Togut, Segal & Segal LLP, hereby submits this complaint (the "Complaint") to avoid and recover certain transfers made by the Debtor to or for the benefit of the above-captioned defendant (the "Defendant"), and alleges the following facts and claims upon information and belief based on

reasonable due diligence in the circumstances of the Debtor's case and the documents and information presently available to the Trustee:

## SUMMARY OF THE ACTION

1. The Trustee seeks a money judgment relating to certain avoidable transfers identified on **Exhibit A** attached hereto that were made by the Debtor to and/or for the benefit of Defendant during the ninety (90) day period preceding and including the date of the commencement of the Debtor's bankruptcy case (each transfer, an "Avoidable Transfer" and, collectively, the "Avoidable Transfers").

2. The Trustee seeks entry of a judgment against Defendant: (i) avoiding (a) pursuant to 11 U.S.C. (the "Bankruptcy Code") section 547(b), preferential transfers to and/or for the benefit of Defendant, or, in the alternative, subject to proof, (b) pursuant to Bankruptcy Code section 548(a)(1)(B) any transfers that may have been fraudulent transfers; (ii) pursuant to Bankruptcy Code section 550(a), directing Defendant to pay to the Trustee an amount to be determined at trial that is not less than the amount of the Avoidable Transfers, plus interest and costs; and (iii) pending such payment, disallowing any claim of Defendant against the Debtor pursuant to Bankruptcy Code section 502 (a)–(j).

3. To the extent that Defendant has filed a proof of claim in the Debtor's Chapter 7 case (the "Chapter 7 Case") or has otherwise requested payment from the Debtor's estate (collectively, the "Claims"), this Complaint is not intended to be, nor should it be construed as, a waiver of the Trustee's right to object to such Claims for any reason including, but not limited to, section 502 of the Bankruptcy Code, and such rights are expressly reserved.

## THE PARTIES

4. Plaintiff is the Chapter 7 Trustee of the Debtor.

5. Prior to the Petition Date (defined below), the Debtor operated as a law firm with an office located at 217 Broadway, New York, New York 10007.

6. Defendant resides at 133 West 22nd Street, #4C, New York, New York 10011.

## JURISDICTION AND VENUE

7. The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court" or the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. sections 157 and 1334 and the United States District Court for the Southern District of New York's Amended Standing Order of Reference, M-431 dated January 31, 2012, which refers such proceedings to the Bankruptcy Court.

8. This adversary proceeding is commenced pursuant to sections 502, 547, 548 and 550 of the Bankruptcy Code, Rules 3007, 6009 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

9. This adversary proceeding is a core proceeding under 28 U.S.C. sections 157(b)(2)(A), (B), (F), (H) and (O), and this Court has jurisdiction to hear and to determine this proceeding and to enter a final order and judgment. In the event that this Court or any other Court finds any part of this adversary proceeding to be "non-core," this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. section 1334 because the relief sought herein relates to the Debtor's bankruptcy case and will have a material impact on the administration of the Debtor's estate (the "Estate").

10. Plaintiff consents to entry of final orders and judgments by this Court in this adversary proceeding pursuant to Bankruptcy Rule 7008. Plaintiff also consents to entry of final orders and judgments by this Court if it is determined that this

Court, absent consent of the parties, cannot enter final orders on judgements consistent with Article III of the United States Constitution.

11. Venue is proper pursuant to 28 U.S.C. sections 1408 and 1409 because this adversary proceeding arises in and is related to the Debtor's bankruptcy case pending in this Court.

## FACTUAL ALLEGATIONS

A. **The Debtors' Bankruptcy Case**

12. On April 13, 2021 (the "Petition Date"), creditors of the Debtor commenced the Chapter 7 Case by filing an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against the Debtor in this Court (the "Petition").

13. On May 11, 2021, this Court entered an order for relief under Chapter 7 of the Bankruptcy Code [Dkt. No. 14].

14. On May 12, 2021, the Trustee was appointed as the Chapter 7 interim trustee of the Debtor [Dkt. No. 15]; he accepted his appointment, duly qualified, and following the section 341 meeting of creditors in this case, he is acting as the Trustee of the Debtor's estate.

15. On June 15, 2021, the Bankruptcy Court entered an order authorizing the Trustee to retain the Togut Firm [Dkt. No. 72].

16. On December 15, 2021 and April 4, 2022, the Debtor filed original and amended schedules of assets and liabilities and statements of financial affairs (the "Schedules") [Dkt. Nos. 310, 359].

B. **The Debtor's IOLA Accounts**

17. Like other law firms in the State of New York, the Debtor was obligated to maintain, and at all relevant times did maintain, in separate bank accounts: (i) funds that had been paid by the Debtor's clients in connection with legal services to

4

be rendered by the Debtor; and (ii) funds that the Debtor otherwise held in trust for its clients (collectively, the "Restricted Funds").

19. Under New York law, law firms are required to segregate such Restricted Funds from the firm's own operating funds and accounts, and lawyers are strictly prohibited from using such Restricted Funds unless and until the funds have been earned and deposited into the firm's/lawyer's own accounts. Any interest or dividends that accrue on the Restricted Funds held in the segregated escrow accounts are the property of the client.

19. The Debtor maintained what are known as Interest on Lawyer Accounts (the "IOLA Accounts") to purportedly safeguard such Restricted Funds held for, or on behalf of, its clients.

20. Under New York law, when a lawyer or a law firm receives funds from a client in a fiduciary capacity and the lawyer determines that the funds are unlikely to generate sufficient interest income to justify the expense of administering a separate segregated account for the client's benefit, the lawyer must deposit such Restricted Funds into his IOLA account. Any interest or dividends that accrue on Restricted Funds held in IOLA Accounts are themselves segregated and periodically provided to the New York Interest on Lawyer Account Fund, a New York government entity that distributes funds for the provision of basic legal services to the State's poor.

21. At all relevant times, Mitchell H. Kossoff, the Debtor's sole partner ("Kossoff") improperly used the Debtor's IOLA Accounts as if they were common depositories of not only Restricted Funds, but also his personal funds, loan proceeds, and other types of funds.

22. Kossoff regularly deposited non-client funds into the Debtor's IOLA Accounts. Kossoff also regularly transferred Restricted Funds from the Debtor's

5

IOLA Accounts to and for the benefit of parties other than the Debtor's clients, including to himself, his family members, and his personal creditors.

23. For example, between February 2017 and the Petition Date, Kossoff deposited at least $51,000 from his personal checking accounts into the Debtor's IOLA Accounts, and he caused the Debtor to transfer at least $136,000 from the Debtor's IOLA Accounts into personal checking accounts that he maintained for himself and his wife. A schedule of these deposits and transfers is annexed hereto as **Exhibit B** and is incorporated by reference as set forth herein.

24. In addition, the Debtor paid $205,000 to Phyllis Kossoff, Kossoff's mother, from the Debtor's IOLA Accounts on account of Kossoff's personal obligations to her during the period of March 2014 through May 2018. A schedule of these deposits and transfers is included in **Exhibit B** and is incorporated by reference as if fully set forth herein.

25. In addition, Kossoff caused the Debtor to make payments totaling at least $1,120,000 to one of his personal creditors from the Debtor's IOLA Accounts on account of his personal liabilities during the period of January 18, 2017 through February 19, 2021.

26. In his May 2022 Plea Agreement (the "Plea Agreement") with the Manhattan District Attorney, Kossoff admitted that:

> a. From at least December 2017 to April 2021, I was an attorney licensed to practice in New York and the sole member of Kossoff PLLC, a law firm located in Manhattan. Part of my law firm's business was to collect and hold funds in trust for my clients and other individuals involved in matters relating to my clients. I did not have permissions or authority to disburse the funds without authorization from the relevant parties to do so.

6

        b. . . . I admit that, from on or about December 21, 2017 to on or about April 9, 2021, in the County of New York, I engaged in a systematic ongoing course of conduct with the intent to defraud more than one person and to obtain property from more than one person by false or fraudulent pretenses, representations, or promises. In doing so, I obtained more than $1,000 from such person. In particular, I defrauded multiple clients, by falsely representing that certain funds would be held in escrow and, notwithstanding those representations, intentionally causing unauthorized and impermissible disbursement of those funds.

A copy of the Plea Agreement is annexed hereto as **Exhibit C**.

27. The Appendix to the Plea Agreement lists 35 persons and entities from whom Kossoff stole amounts totaling approximately $14.5 million, including Restricted Funds stolen from the Debtor's IOLA Accounts.

28. However, the Trustee's investigation to date, including his review of Claims filed in the Chapter 7 Case and in other litigations against Kossoff and the Debtor, has revealed that Kossoff stole approximately $18.5 million in Restricted Funds from the Debtor's clients.

29. Starting in December 2013 and continuing until January 2021, Kossoff caused the Debtor to make numerous improper deposits into and withdrawals from the Debtor's IOLA Accounts, including payments to Defendant from the Debtor's IOLA Accounts.

30. Throughout the Preference Period (defined below), the balances on hand in the IOLA Accounts were always inadequate to address legitimate claims for Restricted Funds in the IOLA Accounts.

31. As a result of the commingling of funds in the Debtor's IOLA Accounts, transfers from the IOLA Accounts constitute transfers of funds in which the Debtor had an interest.

7

C. **The Preferential Transfers**

32. During the ninety (90) days before and including the Petition Date, that is between January 13, 2021 through and including April 13, 2021 (the "Preference Period"), the Debtor continued to operate its business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to certain entities, including Defendant.

33. During the course of their relationship, the Debtor and Defendant entered into agreements and/or were participants in transactions, evidenced by contracts, agreements, invoices, communications and other documents, pursuant to which the Debtor and Defendant conducted business with one another.

34. Plaintiff seeks to avoid all of the transfers of an interest in any of the Debtor's property made by the Debtor from the IOLA Accounts to Defendant during the Preference Period.

## COUNT I - TO AVOID PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. SECTION 547(b)

35. Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

36. During the Preference Period, the Debtor made the Avoidable Transfers to, and/or for the benefit of, Defendant in the amounts set forth on **Exhibit A**, which is incorporated by reference herein.

37. During the Preference Period, Defendant was a creditor of the Debtor within the meanings of sections 101(5) and (10) and 547(b)(1) of the Bankruptcy Code at the time of each Avoidable Transfer.

38. The Avoidable Transfers were transfers of an interest in the Debtor's property.

8

39. According to the books and records of the Debtor, the Avoidable Transfers were made to, and/or for the benefit of, Defendant because each Avoidable Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor to Defendant.

40. The Avoidable Transfers were made for or on account of antecedent debts owed by the Debtor and described in **Exhibit A**.

41. The Avoidable Transfers were made while the Debtor was insolvent. The Trustee is entitled to the presumption of insolvency for each Avoidable Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

42. Further, as evidenced by, among other things: (i) the Petition; (ii) the Schedules; and (iii) the proofs of claim that have been filed against the Estate, the Debtor's liabilities exceeded the value of its assets during the Preference Period.

43. Plaintiff estimates that the general unsecured creditors of the Debtor will receive less than full value on account of their allowed claims against the Estate.

44. The Avoidable Transfers were made on or within 90 days prior to and including the Petition Date.

45. The Avoidable Transfers enabled Defendant to receive more than it would have received if (a) Defendant's then existing claims were paid under Chapter 7 of the Bankruptcy Code, (b) the Avoidable Transfers had not been made, and (c) Defendant received payment of such debt(s) to the extent provided by the provisions of the Bankruptcy Code.

46. Defendant was either the initial transferee of each Avoidable Transfer, the entity for whose benefit the Avoidable Transfers were made, or was the

immediate or mediate transferee of the initial transferee receiving the Avoidable Transfers.

47. By reason of the foregoing, each Avoidable Transfer should be avoided and set aside as a preferential transfer pursuant to section 547(b) of the Bankruptcy Code.

## COUNT II - TO AVOID FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. SECTION 548

48. Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

49. The Avoidable Transfers were made within two (2) years prior to the Petition Date.

50. The Avoidable Transfers were made to, or for the benefit of, Defendant.

51. Subject to proof, Plaintiff pleads, in the alternative, that to the extent that Defendant demonstrates that one or more of the Avoidable Transfers were not on account of an antecedent debt owed by the Debtor or were prepayments for, among other things, transactions or services, the Debtor did not receive reasonably equivalent value in exchange for the Avoidable Transfers because (a) the value of the services or other consideration received was less than the Avoidable Transfers, and (b) the Debtor was: (i) insolvent on the dates of the Avoidable Transfers or became insolvent as a result of the Avoidable Transfers; (ii) engaged in business or a transaction for which any property remaining with the Debtor was unreasonably small capital at the time of, or as a result of, the Avoidable Transfers; or (iii) the Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured (the "Potentially Fraudulent Transfers").

52. By reason of the foregoing, the Avoidable Transfers should be avoided and set aside as fraudulent transfers.

### COUNT III - TO RECOVER AVOIDABLE TRANSFERS PURSUANT TO 11 U.S.C. SECTION 550

53. Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

54. Plaintiff is entitled to avoid the Avoidable Transfers pursuant to section 547(b) of the Bankruptcy Code, or, alternatively, the Potentially Fraudulent Transfers (the Avoidable Transfers and the Potentially Fraudulent Transfers together, the "Transfers") pursuant to section 548 of the Bankruptcy Code.

55. Defendant was the initial transferee of the Transfers, the immediate or mediate transferee of such initial transferee, or the person for whose benefit the Transfers were made.

56. Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant an amount to be determined at trial that is not less than the total amount of the Transfers, plus interest thereon to the date of payment and the costs of this action.

### COUNT IV - TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. SECTION 502(d)

57. Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

58. Defendant is an entity from which property is recoverable under section 550 of the Bankruptcy Code.

59. Defendant was the initial transferee of the Transfers, the immediate or mediate transferee of such initial transferee, or the person for whose benefit the Transfers were made.

11

60. Defendant has not paid to Plaintiff the amount of the Transfers, or turned over such property to Plaintiff, for which Defendant is liable under section 550 of the Bankruptcy Code.

61. Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee against the Debtor's Estate must be disallowed until such time as Defendant pays to Plaintiff all amounts sought herein.

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment against Defendant:

a) avoiding all Avoidable Transfers pursuant to section 547(b) of the Bankruptcy Code, or, in the alternative, all Potentially Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code;

b) pursuant to section 550(a) of the Bankruptcy Code, directing Defendant to pay to Plaintiff an amount to be determined at trial that is not less than the full amount of the Transfers, plus interest and costs;

c) disallowing any Claims of Defendant pursuant to section 502(d) of the Bankruptcy Code;

d) awarding pre-judgment interest at the maximum legal rate running from the date of the Plaintiff's first demand to Defendant to return all Transfers to the date of judgment with respect to this Complaint (the "Judgment") herein;

e) awarding post-judgment interest at the maximum legal rate running from the date of the Judgment until the date the Judgment is paid in full, plus costs;

f) requiring Defendant to pay forthwith the amount of the Judgment; and

12

      g) granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 3, 2023

      ALBERT TOGUT, not individually but solely in his capacity as Chapter 7 Trustee,
By his Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Neil Berger*
ALBERT TOGUT
NEIL BERGER
One Penn Plaza
New York, New York 10119
(212) 594-5000

SCHEDULE OF TRANSFERS FROM IOLA ACCOUNT(S)
TO JOSEPH V. JELIC

Exhibit A

| Payee | Bank | Account No. | Transaction Date | Paid Date | Check No. | Amount |
|---|---|---|---|---|---|---|
| Joseph V. Jelic | JPM Chase | 9936 | 2/26/21 | 3/1/21 | 9064 | $ 1,681.89 |
| Joseph V. Jelic | JPM Chase | 9936 | 2/26/21 | 3/1/21 | 9063 | $22,500.00 |
| | | | | | Total: | $24,181.89 |