TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Neil Berger
Jared C. Borriello

*Attorneys for the Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------- X
                                                            :
In re:                                                      :        Chapter 7
                                                            :
KOSSOFF PLLC,                                               :        Case. No. 21-10699 (DSJ)
                                                            :
                              Debtor.                       :
----------------------------------------------------------- X
                                                            :
ALBERT TOGUT, Not Individually but Solely                   :
in His Capacity as Chapter 7 Trustee of the                 :
Estate of Kossoff PLLC,                                     :
                                                            :        Adv. Pro. No. 23-_____ (DSJ)
                              Plaintiff,                     :
                                                            :
                    v.                                      :
                                                            :
BLOOMINGDALE'S INC.;  and                                   :
PAMELA KOSSOFF,                                             :
                                                            :
                              Defendants.                   :
----------------------------------------------------------- X
```

## COMPLAINT

Albert Togut, not individually but solely in his capacity as the Chapter 7
Trustee (the "Plaintiff" or the "Trustee") of the estate of Kossoff PLLC (the "Debtor"),
by his attorneys, Togut, Segal & Segal LLP, hereby makes this complaint (the
"Complaint") against Bloomingdale's Inc. ("Bloomingdale's") and Pamela Kossoff
("Pamela" and together with Bloomingdale's, "Defendants") and in support thereof
respectfully alleges the following upon information and belief:

## SUMMARY OF THE ACTION[1]

1.      Prior to being disbarred and sent to prison on May 6, 2022 for stealing millions of dollars from the Debtor and dozens of the Debtor's clients, Mitchell Kossoff ("Kossoff") was a prominent real-estate attorney in New York City and served as the sole managing member of the Debtor.

2.      For years, Kossoff improperly used funds in the Debtor's bank accounts to pay for various luxury products purchased by Kossoff and his wife, Pamela, at Bloomingdale's retail stores.   The payment obligations for these products were Kossoff's and Pamela's, and the Debtor never had any contractual or legal obligation to make any payments to Bloomingdale's.

3.      In fact, the Debtor had no connection to Bloomingdale's.  Instead, Bloomingdale's products were sold to Kossoff and Pamela for their personal benefits without any value having been received by the Debtor in exchange for the purchase of those personal items or the Debtor's payment for them.

4.      In total, Kossoff caused $100,302 to be transferred from the Debtor's bank accounts to, or for the benefit of, Bloomingdale's, Kossoff and Pamela.  The Debtor, which was insolvent by any measure when the transfers to Bloomingdale's were made, never received any consideration in exchange for the transfers of its funds to Bloomingdale's.  Under these circumstances, the Debtor's transfers to Bloomingdale's are presumed to have been made with actual intent to defraud the Debtor's creditors.

5.      For the benefit of the Debtor's estate, the Trustee commences this Adversary Proceeding to (a) avoid and recover the Debtor's transfers made to, or for the

---

[1]   Capitalized terms used in this section but not defined shall have the meanings ascribed to such terms where defined in subsequent sections of this Complaint.

benefit of, Defendants as fraudulent conveyances; and (b) disallow any claims filed by Defendants in the Debtor's above-captioned Chapter 7 Case ("Chapter 7 Case").

## THE PARTIES AND RELEVANT NON-PARTIES

6.      Plaintiff is the Chapter 7 Trustee of the Debtor.

7.      The Debtor is a New York professional limited-liability company that, prior to April 13, 2021 (the "Petition Date"), operated as a law firm located at 217 Broadway, Suite 401, New York, New York 10007.

8.      The Debtor's Articles of Organization were filed with the New York Secretary of State on December 6, 2013.

9.      From its inception until the Petition Date, the Debtor served clients in New York City's real estate industry.

10.      Prior to the Petition Date, Kossoff was an attorney licensed to practice in the State of New York who specialized his law practice in structuring and negotiating real-estate transactions.

11.      Kossoff has been disbarred and he is now incarcerated, serving a jail term of 4.5 years to 13.5 years, based on his own admission that he stole more than $14 million from the Debtor, its clients and others.

12.      Over the course of his career, Kossoff was the sole managing member of several law firms bearing his name, including: (1) Kossoff, Alper & Unger; (2) Kossoff & Unger; and (3) the Debtor.

13.      Kossoff, Alper & Unger and Kossoff & Unger ceased to operate as law firms prior to the Debtor's formation and incorporation in December 2013.

14.      Kossoff is, and always has been, the Debtor's sole managing member and an "insider" of the Debtor as that term is defined in section 101(31) of title 11 of the United States Code (the "Bankruptcy Code").

3

15.     Pamela is Kossoff's wife and she is an individual residing in New York City.

16.     Pamela is an "insider" of the Debtor pursuant to Bankruptcy Code section 101(31)(B)(vi).

17.     Bloomingdale's is a corporation organized and existing under the laws of Delaware with a principal place of business in New York City.

## JURISDICTION AND VENUE

18.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this adversary proceeding (the "Adversary Proceeding") pursuant to 28 U.S.C. §§ 157 and 1334 and the United States District Court for the Southern District of New York's *Amended Standing Order of Reference, M-431* dated January 31, 2012, which refers such proceedings to this Court.

19.     This Adversary Proceeding is commenced pursuant to sections 105(a), 502(d), 544, 550, and 551 of the Bankruptcy Code; Rules 3007, 6009, and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); sections 273, 274, 275, 276, 276-a, 278, and 279 of the New York Debtor & Creditor Law as applicable to transactions occurring before April 4, 2020 ("NYDCL");  and sections 3304 and 3306 of title 28 chapter 176 of the United States Code (the "FDCPA").

20.     This Adversary Proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (F), (H), and (O), and this Court has jurisdiction to hear and to determine this proceeding and to enter a final order and judgment herein.  In the event that this Court or any other court finds any part of this Adversary Proceeding to be "non-core," this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. § 1334 because the relief sought herein relates to the Chapter 7 Case and will have a material impact on the administration of the Debtor's estate.

4

21.     Plaintiff consents to entry of final orders and judgments by this Court in this Adversary Proceeding pursuant to Bankruptcy Rule 7008.  Plaintiff also consents to entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

22.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this Adversary Proceeding arises in, and is related to, the Chapter 7 Case, which is pending in this district.

## FACTUAL ALLEGATIONS

### I.     Kossoff's Use of Debtor's Funds for Shopping at Bloomingdale's

23.     Pamela and Kossoff purchased various products from Bloomingdale's over the course of several years.

24.     Pamela and Kossoff charged these purchases to Bloomingdale's credit cards that were issued to each of them, and thereby incurred personal obligations to pay Bloomingdale's for the items they purchased.

25.     The amounts owed by Pamela and Kossoff were recorded and periodically updated as balances in Pamela's and Kossoff's respective credit card accounts with Bloomingdale's.

26.     Kossoff used Debtor's funds to pay ("Payments") the balances of the amounts that he and Pamela owed to Bloomingdale's on account of their purchases.

27.     Between December 9, 2013 and December 13, 2017 (the "Relevant Period"), Kossoff caused $100,302 to be debited by Bloomingdale's directly from the Debtor's bank accounts to, or for the benefit of, Defendants (the "Avoidable Transfers"). A schedule listing the Avoidable Transfers is attached hereto as **Exhibit 1** and incorporated by reference as if set forth herein.

5

II.    **The Debtor Had No Connection to the Bloomingdale's Purchases**

28.    Kossoff's and Pamela's transactions with Bloomingdale's during the Relevant Period had no connection to the Debtor.

29.    The Debtor had no legal or contractual obligation to make the Payments owed by Kossoff and Pamela to Bloomingdale's.

30.    Any measure of diligence by Bloomingdale's concerning the Payments would have revealed that Bloomingdale's was taking payments from the Debtor rather than Kossoff or Pamela, and that the Debtor had no obligation to make such transfers.

III.    **The Debtor's IOLA Accounts**

31.    Like other law firms in the State of New York, the Debtor was obligated to maintain, and at all relevant times did maintain, funds in separate bank accounts that:  (1) had been paid by the Debtor's clients as retainers for legal services to be rendered by the Debtor;  and (2) the Debtor otherwise held in trust for its clients.

32.    Under New York law, law firms are required to segregate such escrow accounts from the firm's own accounts, and lawyers are strictly prohibited from using such escrowed funds unless and until the funds have been earned and deposited into the firm's/lawyer's own accounts.  Any interest or dividends that accrue on funds held in the segregated escrow accounts are the property of the client.

33.    The Debtor maintained what are known as Interest on Lawyer Account ("IOLA") accounts to purportedly safeguard such client funds.

34.    Under New York law, when a lawyer or a law firm receives funds from a client in a fiduciary capacity and the lawyer determines that the funds are unlikely to generate sufficient income (in the form of interest) to justify the expense of administering a segregated account for the client's benefit, the lawyer must deposit

such funds into his IOLA account.  Any interest or dividends that accrue on funds held

in IOLA accounts are themselves segregated and periodically provided to the New

York Interest on Lawyer Account Fund (the "IOLA Fund"), a New York government

entity that distributes funds for the provision of basic legal services to the State's poor.

35.    At all relevant times, Kossoff improperly used the Debtor's IOLA

accounts as if they were common depositories of not only Debtor-client funds, but also

his personal funds, loan proceeds, and other types of funds.

36.    Kossoff regularly deposited non-client funds into the Debtor's

IOLA accounts.  Kossoff also regularly transferred funds from the Debtor's IOLA

accounts to and for the benefit of parties other than the Debtor's clients and the IOLA

Fund, including himself and his family members.

37.    For example, between February 2017 and the Petition Date, Kossoff

deposited at least $51,000 from his personal checking accounts into the Debtor's IOLA

accounts, and he caused the Debtor to transfer at least $136,000 from the Debtor's IOLA

accounts into his personal checking accounts.  A schedule of these deposits and

transfers is annexed hereto as **Exhibit 2** and is incorporated by reference as if set forth

herein.

38.    In addition, the Debtor paid $205,000 to Phyllis Kossoff, Mitchell

Kossoff's (i.e., Kossoff's) mother, from the Debtor's IOLA accounts on account of

Kossoff's personal obligations to her during the period of March 2014 through May

2018.

39.    In addition, Kossoff caused the Debtor to make payments totaling

at least $1,120,000 to one of his personal creditors from the Debtor's IOLA Accounts on

account of his personal liabilities during the period of January 18, 2017 through

February 19, 2021.

40.    Moreover, Kossoff regularly caused the Debtor to transfer funds from its IOLA accounts to its operating accounts without client authorizations.

41.    In his May 2022 Plea Agreement (the "Plea Agreement") with the Manhattan District Attorney, Kossoff admitted that:

> a.  From at least December 2017 to April 2021, I was an attorney licensed to practice in New York and the sole member of Kossoff PLLC, a law firm located in Manhattan.  Part of my law firm's business was to collect and hold funds in trust for my clients and other individuals involved in matters relating to my clients.  I did not have permissions or authority to disburse the funds without authorization from the relevant parties to do so.
>
> b.  . . . I admit that, from on or about December 21, 2017 to on or about April 9, 2021, in the County of New York, I engaged in a systematic ongoing course of conduct with the intent to defraud more than one person and to obtain property from more than one person by false or fraudulent pretenses, representations, or promises.  In doing so, I obtained more than $1,000 from such person.  In particular, I defrauded multiple clients…, by falsely representing that certain funds would be held in escrow and, notwithstanding those representations, intentionally causing unauthorized and impermissible disbursement of those funds.

A copy of the Plea Agreement is annexed hereto as **Exhibit 3**.

42.    The Appendix to the Plea Agreement indicates that Kossoff stole approximately $14.5 million from 35 persons and entities, including amounts stolen from the Debtor's IOLA accounts.

43.    However, the Trustee's investigation to date, including his review of claims filed in the Chapter 7 Case and in other litigations against Kossoff and the Debtor, has revealed that Kossoff stole approximately $18.5 million from the Debtor's clients.

44.     As a result of the commingling of funds in the Debtor's IOLA accounts, any transfers from the IOLA accounts to, or for the benefit of, Defendants constitute transfers of funds in which the Debtor had an interest.

**IV.     The Debtor Receives No Value for the Avoidable Transfers**

45.     The Debtor received no value in exchange for the Avoidable Transfers.  The Debtor was not an obligor to Bloomingdale's regarding the Payments.

46.     Neither the Bloomingdale's products purchased by Kossoff and Pamela nor the Payments for these products advanced any of the Debtor's legitimate business interests.

47.     The Defendants and Kossoff received all of the value of the Avoidable Transfers:  (a) Bloomingdale's received funds in the form of the Avoidable Transfers for Kossoff's and Pamela's purchases;  (b) Kossoff and Pamela saw a reduction of their personal obligations to Bloomingdale's;  and (c) Kossoff and Pamela received products from Bloomingdale's at no cost to them, all of which was at the expense of the Debtor and its creditors.

**V.     The Debtor Was Insolvent, Had an Unreasonably Small
         Capital Base, and Incurred, and Intended to Incur, Debts Beyond
         the Debtor's Ability to Repay During the Relevant Time Period**

48.     The Debtor's books and records demonstrate that the Debtor was insolvent no later than December 31, 2013 and remained insolvent at all relevant times thereafter until the Petition Date, by any measurement of insolvency.

49.     The following balance-sheet analysis of the Debtor's assets and liabilities based upon the Debtor's records demonstrates the Debtor's insolvency:

| DATE | ASSETS | LIABILITIES | NET ASSETS |
|---|---|---|---|
| 12/31/2013 | $572,508 | $2,840,663 | ($2,268,155) |
| 06/30/2014 | $233,469 | $2,844,222 | ($2,610,752) |
| 12/31/2014 | $843,893 | $2,804,103 | ($1,960,210) |
| 01/26/2015 | $585,160 | $3,220,650 | ($2,635,490) |
| 06/30/2015 | $1,367,474 | $5,432,675 | ($4,065,201) |
| 12/31/2015 | $770,028 | $7,386,390 | ($6,616,362) |
| 06/21/2016 | $1,009,438 | $7,850,757 | ($6,841,319) |
| 06/30/2016 | $757,104 | $8,829,352 | ($8,072,248) |
| 12/31/2016 | $1,310,242 | $11,800,038 | ($10,489,796) |
| 06/30/2017 | $1,377,668 | $12,327,635 | ($10,949,967) |
| 12/31/2017 | $1,202,186 | $14,392,997 | ($13,190,811) |
| 06/30/2018 | $1,392,697 | $15,859,134 | ($14,466,437) |
| 12/31/2018 | $1,688,485 | $19,211,671 | ($17,523,187) |
| 06/30/2019 | $1,834,435 | $20,545,379 | ($18,710,944) |
| 12/31/2019 | $1,207,978 | $25,479,490 | ($24,271,512) |
| 06/30/2020 | $1,375,584 | $27,387,619 | ($26,012,034) |
| 12/31/2020 | $1,116,077 | $29,600,162 | ($28,484,085) |
| 03/31/2021 | $936,069 | $29,959,993 | ($29,023,924) |

50.    Additional facts support the conclusion that the Debtor was

insolvent, insufficiently capitalized, and/or unable to pay its debts as they became due

during the periods relevant to this Complaint.  For example:

    a.    The Debtor conducted its business with insufficient capital no later than December 31, 2013, and remained insufficiently capitalized at all relevant times thereafter, until the Petition Date;

    b.    The Debtor incurred, was intending to incur, and/or believed that it would incur debts beyond its ability to pay such debts as they matured beginning on or after December 31, 2013, and continuing until the Petition Date;

    c.    The Debtor experienced regular overdrafts and negative bank account balances at Valley National

Bank and J.P. Morgan Chase Bank, N.A. during the Relevant Period;

d.  The Debtor failed to pay various creditors on a timely basis and could not timely meet its obligations as they became due during the Relevant Period;

e.  The Debtor regularly withheld and delayed the issuance of checks payable to various creditors and otherwise prioritized the payment of certain creditors (to the detriment of other creditors);

f.  Beginning in 2016 and continuing until April 2021, the Debtor borrowed and became obligated to repay at least $9.6 million in numerous high-interest-rate cash-advance transactions that purportedly pledged the Debtor's future accounts receivable as collateral for same-day cash;

g.  On February 10, 2022, the Internal Revenue Service (the "IRS") filed proof of claim number 37 in the Chapter 7 Case (the "IRS POC").  The IRS POC lists obligations owed by the Debtor for unpaid employee-withholding taxes in the amount of $335,411.08 due for periods beginning in 2015;

h.  In his plea agreement with the Manhattan District Attorney, Kossoff admitted that since at least December 2017, he stole more than $14 million from multiple persons and clients of the Debtor, including from the Debtor's IOLA accounts;  and

i.  Proofs of Claim filed in the Chapter 7 Case total not less than $20 million.

## VI.   The Debtor Is Forced into Bankruptcy

51.    On the Petition Date, creditors of the Debtor commenced the Chapter 7 Case by filing an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against the Debtor in this Court.

52.    On May 11, 2021, this Court entered an order for relief under Chapter 7 of the Bankruptcy Code [Docket No. 14].

53.     On May 12, 2021, the Trustee was appointed as the Chapter 7 Interim Trustee of the Debtor [Docket No. 15];  he accepted his appointment, duly qualified, and is currently acting as the trustee of the Debtor's estate.

**VII.    The IRS Holds a Prepetition Claim Against the Debtor**

54.     On December 15, 2021, the Debtor filed schedules of assets and liabilities and a statement of financial affairs [Docket No. 310], and on April 5, 2022, the Debtor filed amendments thereto (cumulatively, the "Schedules") [Docket No. 359].

55.     As of the Petition Date, the Debtor owed unpaid prepetition tax obligations to the IRS for the tax year ending December 31, 2015, which is subject to the IRS POC (the "IRS Claim").  The Debtor listed the IRS Claim as an unsecured priority claim in its Schedules in the amount of $382,000.

56.     The IRS's right to assess the IRS Claim on account of 2015 tax liabilities arose no later than January 1, 2016.

57.     The Debtor received notice of the tax assessment underlying the IRS Claim no later than March 28, 2016.

58.     The IRS POC lists the obligation owed by the Debtor as unpaid taxes in the amount of $335,411.08 under the Federal Insurance Contributions Act.

59.     The IRS Claim, as set forth in the timely-filed IRS POC, is an allowable claim under section 502 of the Bankruptcy Code.

60.     The IRS Claim is a debt owed to the United States of America.

61.     The IRS is a predicate "creditor" within the meaning of section 544(b) of the Bankruptcy Code.

62.     Since the IRS Claim extends back as far as the tax year ending December 31, 2015, IRS has been owed tax obligations from the Debtor at the time of the Avoidable Transfers (December 9, 2013—December 13, 2017).  *See* Ex. 1.

VIII.   **Kossoff Admits Scheme to Defraud and Is Sentenced to Prison**

63.     On December 13, 2021, in open court in New York, Kossoff pleaded guilty to, among other things, orchestrating a scheme to defraud the Debtor's clients. As discussed above, Kossoff admitted that he stole at least $14.5 million from dozens of clients and others, including millions of dollars that had been deposited into the Debtor's bank IOLA and operating accounts.

64.     On May 6, 2022, New York State Supreme Court Judge Laurie Peterson sentenced Kossoff to serve not less than 4.5 years, but no more than 13.5 years, in prison as punishment for his crimes.

## COUNT I

**AVOIDANCE AND RECOVERY OF
CONSTRUCTIVELY FRAUDULENT TRANSFERS
PURSUANT TO 11 U.S.C. §§ 544 AND 550; NYDCL §§ 273-75 AND 278-79;
AND FDCPA §§ 3304 AND 3306**

65.     Plaintiff repeats, reiterates and realleges each of the forgoing allegations of this Complaint as if fully set forth herein.

66.     Between December 9, 2013 and April 10, 2015, during the ten (10) years preceding the Petition Date, the Debtor made transfers to and for the benefit of Bloomingdale's (the "Group-One Transfers"), as identified by the dates and in the amounts set forth in the schedule which is annexed hereto as **Exhibit 4** and which is incorporated by reference as if fully set forth herein.

67.     The Debtor did not receive fair consideration or reasonably equivalent value in exchange for the Group-One Transfers because the Debtor did not receive any benefit from them.

68.     Instead, the Group-One Transfers benefited Kossoff and Defendants, who were the initial, immediate, and/or mediate transferees and/or

beneficiaries of the Group-One Transfers.

69.     Each of the Group-One Transfers caused and resulted in the transfer of the Debtor's assets to and for the benefit of Bloomingdale's, namely the receipt of Payments for the purchases by Kossoff and Pamela, to the detriment of the Debtor's present and/or future creditors.

70.     Each of the Group-One Transfers caused and resulted in the transfer of the Debtor's assets for the benefit of Kossoff and Pamela who were "insiders" of the Debtor at the times of each of the Group-One Transfers, namely, the extinction and/or reduction of Kossoff's and Pamela's personal obligations to Bloomingdale's and their acquisition of Bloomingdale's products at no cost to them, to the detriment of the Debtor's present and/or future creditors.

71.     The Debtor was insolvent when each of the Group-One Transfers were made or was rendered or became insolvent as a result of the Group-One Transfers.

72.     The Debtor made the Group-One Transfers when the Debtor was engaged, and/or was about to engage, in business or transactions for which its remaining property after making the Group-One Transfers was an unreasonably small amount of capital.

73.     The Debtor remained inadequately capitalized as a result of the Group-One Transfers until the Petition Date.

74.     The Debtor made the Group-One Transfers when the Debtor intended to incur, believed that it would incur, and/or reasonably should have believed that it would incur debts beyond its ability to pay them as they matured and/or became due.

75.     The Debtor remained unable to pay its debts as they matured and/or became due as a result of the Group-One Transfers until the Petition Date.

14

76.    The IRS is a predicate creditor for the purpose of avoiding the Group-One Transfers.

77.    Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy Code and (a) sections 273, 274, 275, 278, and/or 279 of the NYDCL and/or (b) sections 3304(a), 3304(b), and 3306 of the FDCPA, Plaintiff is entitled to a judgment against Defendants:  (i) avoiding the Group-One Transfers;  (ii) recovering each Group-One Transfer and/or its value from Defendants;  (iii) disallowing any claim filed by Defendants until such time as each Group-One Transfer and/or its value is repaid to the Plaintiff;  (iv) awarding attorneys' fees and costs from Defendants;  and (v) awarding any other relief that the Court deems just and proper.

### COUNT II

**AVOIDANCE AND RECOVERY OF
FRAUDULENT TRANSFERS PURSUANT TO
11 U.S.C. §§ 544 AND 550; NYDCL §§ 276, 276-a, AND 278-79; AND
FDCPA §§ 3304(b)(1)(A) AND 3306**

78.    Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

79.    Under oath and in open court at the hearing at which the New York court accepted his Plea Agreement, Kossoff admitted to "engag[ing] in a systematic ongoing course of conduct with the intent to defraud . . . multiple clients of [his] law firm"—present and/or future creditors of the Debtor—"[f]rom at least December 2017 to April 2021."  *See* Ex. 3.

80.    The Debtor made the Group-One Transfers with actual intent to hinder, delay, or defraud one or more present and/or future creditors of the Debtor.

81.    The Group-One Transfers did not, and were not intended to, benefit the Debtor.

82.     The Group-One Transfers were intended to, and did, benefit Kossoff and Defendants, who were the initial, immediate, and/or mediate transferees and/or beneficiaries of the Group-One Transfers.

83.     Each of the Group-One Transfers caused and resulted in the transfer of the Debtor's assets to and for the benefit of Bloomingdale's, namely the receipt of Payments for the purchases by Kossoff and Pamela, to the detriment of the Debtor's present and/or future creditors.

84.     Each of the Group-One Transfers caused and resulted in the transfer of the Debtor's assets for the benefit of Kossoff and Pamela who were "insiders" of the Debtor at the times of each of the Group-One Transfers, namely, the extinction and/or reduction of Kossoff's and Pamela's personal obligations to Bloomingdale's and their acquisition of Bloomingdale's products at no cost to them, to the detriment of the Debtor's present and/or future creditors.

85.     In addition to being fraudulent for these reasons, each of the Group-One Transfers made to, or for the benefit of, Defendants were made with actual intent to hinder, delay, or defraud present and/or future creditors of the Debtor insofar as each of the transfers transferred the Debtor's assets to reduce Kossoff's and Pamela's personal obligations to Bloomingdale's and to enable Kossoff and Pamela to retain their purchases of Bloomingdale's products.

86.     Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy Code, and (a) sections 276, 276-a, 278, and/or 279 of the NYDCL and/or (b) sections 3304(b)(1)(A) and 3306 of the FDCPA, Plaintiff is entitled to a judgment against Defendants:  (i) avoiding the Group-One Transfers;  (ii) recovering each Group-One Transfer and/or its value from Defendants;  (iii) disallowing any claim filed by Defendants until such time as each Group-One Transfer and/or its value is repaid to

16

the Plaintiff;  (iv) awarding attorneys' fees and costs from Defendants;  and

(v) awarding any other relief that the Court deems just and proper.

### COUNT III

**AVOIDANCE AND RECOVERY OF CONSTRUCTIVELY FRAUDULENT
TRANSFERS PURSUANT TO 11 U.S.C. §§ 544 AND 550;
NYDCL §§ 273-75 AND 278-79; AND FDCPA §§ 3304 AND 3306**

87.     Plaintiff repeats, reiterates, and realleges each of the foregoing
allegations of this Complaint as if fully set forth herein.

88.     Between April 27, 2015 and December 13, 2017, during the six (6)
years preceding the Petition Date, the Debtor made the Avoidable Transfers to and for
the benefit of Bloomingdale's (the "Group-Two Transfers"), as identified by the dates
and in the amounts set forth in the schedules which are annexed hereto as **Exhibit 5** and
which are incorporated by reference herein.

89.     The Debtor did not receive fair consideration or reasonably
equivalent value in exchange for the Group-Two Transfers because the Debtor did not
receive any benefit from them.

90.     Instead, the Group-Two Transfers were intended to, and did,
benefit Kossoff and Defendants, who were the initial, immediate, and/or mediate
transferees and/or beneficiaries of the Group-Two Transfers.

91.     Each of the Group-Two Transfers caused and resulted in the
transfer of the Debtor's assets to and for the benefit of Bloomingdale's, namely the
receipt of Payments for the purchases by Kossoff and Pamela, to the detriment of the
Debtor's present and/or future creditors.

92.     Each of the Group-Two Transfers caused and resulted in the
transfer of the Debtor's assets for the benefit of Kossoff and Pamela who were
"insiders" of the Debtor at the times of each of the Group-Two Transfers, namely, the

extinction and/or reduction of Kossoff's and Pamela's personal obligations to Bloomingdale's and their acquisition of Bloomingdale's products at no cost to them, to the detriment of the Debtor's present and/or future creditors.

93.   The Debtor was insolvent when each of the Group-Two Transfers were made or was rendered or became insolvent as a result of the Group-Two Transfers and the Obligation.

94.   The Debtor made the Group-Two Transfers when the Debtor was engaged, and/or was about to engage, in business or transactions for which its remaining property after making the Group-Two Transfers was an unreasonably small amount of capital.

95.   The Debtor remained inadequately capitalized as a result of the Group-Two Transfers until the Petition Date.

96.   The Debtor made the Group-Two Transfers when the Debtor intended to incur, believed that it would incur, and/or reasonably should have believed that it would incur debts beyond its ability to pay them as they matured and/or became due.

97.   The Debtor remained unable to pay its debts as they matured and/or became due as a result of the Group-Two Transfers until the Petition Date.

98.   The IRS is a predicate creditor for the purpose of avoiding the Group-Two Transfers.

99.   Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy Code and sections (a) 273, 274, 275, 278 and/or 279 of the NYDCL and/or (b) sections 3304(a), 3304(b), and 3306 of the FDCPA, Plaintiff is entitled to a judgment against Defendants:  (i) avoiding the Group-Two Transfers;  (ii) recovering each Group-Two Transfer and/or its value from Defendants;  (iii) disallowing any claims filed by

18

Defendants until such time as each Group-Two Transfer and/or its value is repaid to the Plaintiff;  (iv) awarding attorneys' fees and costs from Defendants;  and (v) awarding any other relief that the Court deems just and proper.

## COUNT IV

### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS AND OBLIGATION PURSUANT TO 11 U.S.C. §§ 544 AND 550; NYDCL §§ 276, 276-a, 278-279; AND FDCPA §§ 3304(b)(1)(A) AND 3306

100.    Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

101.    Under oath and in open court at the hearing at which the New York court accepted his Plea Agreement, Kossoff admitted to "engag[ing] in a systematic ongoing course of conduct with the intent to defraud . . . multiple clients of [his] law firm"—present and/or future creditors of the Debtor—"[f]rom at least December 2017 to April 2021."  *See* Ex. 3.

102.    The Debtor made the Group-Two Transfers with actual intent to hinder, delay, or defraud one or more present and/or future creditors of the Debtor.

103.    The Group-Two Transfers did not, and were not intended to, benefit the Debtor.

104.    The Group-Two Transfers were intended to, and did, benefit Kossoff and Defendants, who were the initial, immediate, and/or mediate transferees and/or beneficiaries of the Group-Two Transfers.

105.    Each of the Group-Two Transfers caused and resulted in the transfer of the Debtor's assets to and for the benefit of Bloomingdale's, namely the receipt of Payments for the purchases by Kossoff and Pamela, to the detriment of the Debtor's present and/or future creditors.

19

106.    Each of the Group-Two Transfers caused and resulted in the transfer of the Debtor's assets for the benefit of Kossoff and Pamela who were "insiders" of the Debtor at the times of each of the Group-Two Transfers, namely, the extinction and/or reduction of Kossoff's and Pamela's personal obligations to Bloomingdale's and their acquisition of Bloomingdale's products at no cost to them, to the detriment of the Debtor's present and/or future creditors.

107.    In addition to being fraudulent for the reasons set forth herein, each of the Group-Two Transfers made to, or for the benefit of, Defendants were made with actual intent to hinder, delay, or defraud present and/or future creditors of the Debtor insofar as each of the transfers transferred the Debtor's assets to reduce Kossoff's and Pamela's personal obligations to Bloomingdale's and to enable Kossoff and Pamela to retain their purchases of Bloomingdale's products.

108.    Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy Code and (a) sections 276, 276-a, 278 and/or 279 of the NYDCL and/or (b) sections 3304(b)(1)(A) and 3306 of the FDCPA, Plaintiff is entitled to a judgment against Defendants:  (i) avoiding the Group-Two Transfers;  (ii) recovering each Group-Two Transfer and/or its value from Defendants;  (iii) disallowing the any claim asserted by Defendants until such time as each Group-Two Transfer and/or its value is repaid to the Plaintiff;  (iv) awarding attorneys' fees and costs from Defendants;  and (v) awarding any other relief that the Court deems just and proper.

## COUNT V

## UNJUST ENRICHMENT

109.    Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

110.    The Debtor made the Avoidable Transfers to, for the benefit of, Defendants, which conferred benefits upon each of them in the amount of the value of the Avoidable Transfers.

111.    Defendants knowingly and voluntarily accepted and retained the benefits conferred upon them by the Debtor while knowing that they did not provide fair consideration or reasonably equivalent value to the Debtor in exchange for the Avoidable Transfers.

112.    Any measure of diligence by Defendants would have disclosed that the Debtor did not receive any benefit in exchange for the Avoidable Transfers.

113.    Defendants have been unjustly enriched at the expense of the Debtor's estate and its creditors.

114.    It would be inequitable and unjust for Defendants to retain the benefits conferred upon them in these circumstances.

115.    Accordingly, Plaintiff is entitled to a judgment allowing the Plaintiff to recover, for the benefit of the Debtor's estate, an amount to be determined at trial that reflects the value of Defendants' unjust enrichment resulting from the Avoidable Transfers, including the value of any other benefits fraudulently conferred upon such Defendant by the Debtor that Plaintiff may uncover during discovery.

## <u>RESERVATION OF RIGHTS</u>

116.    The Trustee does not waive and instead specifically reserves all of his rights, claims, and defenses as they pertain to the Debtor and any claims or liens that Defendants may assert against the Debtor's estate.  The Trustee expressly reserves the right to amend and supplement this Complaint or to commence a new action against Defendants with other claims as his investigation continues.

**WHEREFORE**, for the foregoing reasons, the Trustee respectfully requests that this Court enter judgment against the Defendants:

a. avoiding all Avoidable Transfers pursuant to section 544 of the Bankruptcy Code; NYDCL sections 273 *et seq.*; and sections 3304 and 3306 of the FDCPA;

b. pursuant to section 550(a) of the Bankruptcy Code, directing Defendants to pay to Plaintiff an amount to be determined at trial that is not less than the full value of the Avoidable Transfers that each of the Defendants received, plus interest and costs;

c. preserving all avoided transfers and lien for the benefit of the Debtor's estate pursuant to section 551 of the Bankruptcy Code;

d. disallowing all of Defendants' claims in the Debtor's case pursuant to section 502(d) of the Bankruptcy Code;

e. requiring Defendants to return the unjust benefits conferred upon them by the Debtor in an amount to be determined at trial that is not less than the full value of the Avoidable Transfers, plus interest and costs;

f. awarding pre-judgment interest at the maximum legal rate running from the date of the Plaintiff's first demand to Defendants to return all Avoidable Transfers to the date of judgment with respect to this Complaint (the "Judgment") herein;

g. awarding post-judgment interest at the maximum legal rate running from the date of the Judgment until the date the Judgment is paid in full, plus costs;

h. requiring Defendants to pay forthwith the amount of the Judgment;  and

       i.  granting Plaintiff such other and further relief as the Court deems just and proper.

Dated:  New York, New York
         April 7, 2023

                        ALBERT TOGUT, not individually but solely in his capacity as Chapter 7 Trustee, By his Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Neil Berger
ALBERT TOGUT
NEIL BERGER
JARED C. BORRIELLO
One Penn Plaza
New York, New York 10119
(212) 594-5000

*Attorneys for the Chapter 7 Trustee*

## EXHIBIT 1

**Avoidable Transfers**

**EXHIBIT 1**

### AVOIDABLE TRANSFERS
**(Mitchell Kossoff, Account No. Ending 5743)**
**(Pamela Kossoff, Account No. Ending 3618)**

| Payee | Bank | Transaction Date | Payment Date | Check No. | Amount |
|-------|------|------------------|--------------|-----------|--------|
| Bloomingdale's | JPM Chase | 12/3/13 | 12/9/13 | 9672 | $1,000.00 |
| Bloomingdale's | JPM Chase | 4/2/14 | 4/7/14 | 15342 | $1,500.00 |
| Bloomingdale's | JPM Chase | 4/29/14 | 5/6/14 | 15465 | $1,500.00 |
| Bloomingdale's | JPM Chase | 5/29/14 | 6/4/14 | 15595 | $1,500.00 |
| Bloomingdale's | JPM Chase | 7/2/14 | 7/7/14 | 15746 | $2,500.00 |
| Bloomingdale's | JPM Chase | 8/4/14 | 8/5/14 | 15896 | $750.00 |
| Bloomingdale's | JPM Chase | 8/15/14 | 8/18/14 | 15993 | $750.00 |
| Bloomingdale's | JPM Chase | 9/4/14 | 9/10/14 | 16095 | $1,500.00 |
| Bloomingdale's | JPM Chase | 9/18/14 | 9/22/14 | 16239 | $750.00 |
| Bloomingdale's | JPM Chase | 10/16/14 | 10/20/14 | 16427 | $750.00 |
| Bloomingdale's | JPM Chase | 10/3/14 | 10/23/14 | 16298 | $1,000.00 |
| Bloomingdale's | JPM Chase | 11/6/14 | 11/10/14 | 16570 | $1,000.00 |
| Bloomingdale's | JPM Chase | 11/18/14 | 11/20/14 | 16687 | $1,000.00 |
| Bloomingdale's | JPM Chase | 11/24/14 | 12/1/14 | 16752 | $1,000.00 |
| Bloomingdale's | JPM Chase | 12/16/14 | 12/22/14 | 16931 | $500.00 |
| Bloomingdale's | JPM Chase | 12/23/14 | 12/26/14 | 16989 | $1,000.00 |
| Bloomingdale's | JPM Chase | 1/16/15 | 1/21/15 | 20015 | $500.00 |
| Bloomingdale's | JPM Chase | 2/6/15 | 2/9/15 | 20170 | $1,500.00 |
| Bloomingdale's | JPM Chase | 2/17/15 | 2/20/15 | 20304 | $500.00 |
| Bloomingdale's | JPM Chase | 3/2/15 | 3/9/15 | 20429 | $1,000.00 |
| Bloomingdale's | JPM Chase | 3/18/15 | 3/24/15 | 20590 | $460.00 |
| Bloomingdale's | JPM Chase | 4/2/15 | 4/10/15 | 20735 | $1,000.00 |
| Bloomingdale's | JPM Chase | 4/15/15 | 4/27/15 | 20914 | $1,000.00 |
| Bloomingdale's | JPM Chase | 5/18/15 | 5/21/15 | 21312 | $1,000.00 |
| Bloomingdale's | JPM Chase | 6/5/15 | 6/10/15 | 21495 | $1,000.00 |
| Bloomingdale's | JPM Chase | 6/5/15 | 6/22/15 | 21145 | $1,000.00 |
| Bloomingdale's | JPM Chase | 6/18/15 | 6/25/15 | 21641 | $1,000.00 |
| Bloomingdale's | JPM Chase | 7/1/15 | 7/6/15 | 21794 | $1,000.00 |
| Bloomingdale's | JPM Chase | 7/16/15 | 7/23/15 | 21969 | $1,000.00 |

<u>**EXHIBIT 1**</u>

**AVOIDABLE TRANSFERS**
**(Mitchell Kossoff, Account No. Ending 5743)**
**(Pamela Kossoff, Account No. Ending 3618)**

| Payee | Bank | Transaction Date | Payment Date | Check No. | Amount |
|-------|------|------------------|--------------|-----------|--------|
| Bloomingdale's | JPM Chase | 8/6/15 | 8/7/15 | 22243 | $1,500.00 |
| Bloomingdale's | JPM Chase | 8/19/15 | 8/24/15 | 22375 | $1,100.00 |
| Bloomingdale's | JPM Chase | 9/3/15 | 9/8/15 | 22566 | $2,200.00 |
| Bloomingdale's | JPM Chase | 9/18/15 | 9/21/15 | 22712 | $50.00 |
| Bloomingdale's | JPM Chase | 9/28/15 | 10/1/15 | 22861 | $1,500.00 |
| Bloomingdale's | JPM Chase | 11/2/15 | 11/5/15 | 23336 | $2,500.00 |
| Bloomingdale's | JPM Chase | 11/18/15 | 11/23/15 | 23511 | $750.00 |
| Bloomingdale's | JPM Chase | 12/3/15 | 12/7/15 | 23711 | $2,500.00 |
| Bloomingdale's | JPM Chase | 12/17/15 | 12/21/15 | 23922 | $750.00 |
| Bloomingdale's | JPM Chase | 1/20/16 | 1/25/16 | 24303 | $750.00 |
| Bloomingdale's | JPM Chase | 1/27/16 | 2/1/16 | 24405 | $500.00 |
| Bloomingdale's | JPM Chase | 2/22/16 | 2/24/16 | 24696 | $750.00 |
| Bloomingdale's | JPM Chase | 3/7/16 | 3/7/16 | 2219 | $3,000.00 |
| Bloomingdale's | JPM Chase | 3/17/16 | 3/21/16 | 25119 | $1,000.00 |
| Bloomingdale's | JPM Chase | 3/30/16 | 4/4/16 | 25288 | $300.00 |
| Bloomingdale's | JPM Chase | 4/19/16 | 4/22/16 | 25537 | $1,000.00 |
| Bloomingdale's | JPM Chase | 5/4/16 | 5/9/16 | 25735 | $1,500.00 |
| Bloomingdale's | JPM Chase | 6/2/16 | 6/10/16 | 26151 | $2,500.00 |
| Bloomingdale's | JPM Chase | 6/16/16 | 6/20/16 | 26305 | $1,500.00 |
| Bloomingdale's | JPM Chase | 7/6/16 | 7/13/16 | 26554 | $2,500.00 |
| Bloomingdale's | JPM Chase | 5/18/16 | 8/3/16 | 25907 | $1,000.00 |
| Bloomingdale's | JPM Chase | 8/5/16 | 8/8/16 | 26922 | $2,500.00 |
| Bloomingdale's | JPM Chase | 8/17/16 | 8/19/16 | 27069 | $950.00 |
| Bloomingdale's | JPM Chase | 9/1/16 | 9/2/16 | 27277 | $500.00 |
| Bloomingdale's | JPM Chase | 9/1/16 | 9/2/16 | 27278 | $2,500.00 |
| Bloomingdale's | JPM Chase | 10/5/16 | 10/12/16 | 27727 | $2,000.00 |
| Bloomingdale's | JPM Chase | 10/11/16 | 10/14/16 | 27799 | $1,000.00 |
| Bloomingdale's | JPM Chase | 11/11/16 | 11/14/16 | 28181 | $150.00 |
| Bloomingdale's | JPM Chase | 1/6/17 | 1/10/17 | 28887 | $1,000.00 |
| Bloomingdale's | JPM Chase | 1/12/17 | 1/17/17 | 28942 | $500.00 |

**EXHIBIT 1**

## AVOIDABLE TRANSFERS
**(Mitchell Kossoff, Account No. Ending 5743)**
**(Pamela Kossoff, Account No. Ending 3618)**

| Payee | Bank | Transaction Date | Payment Date | Check No. | Amount |
|-------|------|------------------|--------------|-----------|--------|
| Bloomingdale's | JPM Chase | 1/25/17 | 2/3/17 | 29185 | $3,000.00 |
| Bloomingdale's | JPM Chase | 1/25/17 | 2/3/17 | 29186 | $2,500.00 |
| Bloomingdale's | JPM Chase | 1/25/17 | 2/3/17 | 29171 | $1,500.00 |
| Bloomingdale's | JPM Chase | 2/2/17 | 2/3/17 | 29184 | $1,000.00 |
| Bloomingdale's | JPM Chase | 2/17/17 | 2/21/17 | 29384 | $150.00 |
| Bloomingdale's | JPM Chase | 12/6/16 | 2/21/17 | 28488 | $100.00 |
| Bloomingdale's | JPM Chase | 3/2/17 | 3/6/17 | 29521 | $500.00 |
| Bloomingdale's | JPM Chase | 3/2/17 | 3/6/17 | 29522 | $750.00 |
| Bloomingdale's | JPM Chase | 3/28/17 | 3/29/17 | 29884 | $200.00 |
| Bloomingdale's | JPM Chase | 3/28/17 | 3/29/17 | 29885 | $227.00 |
| Bloomingdale's | JPM Chase | 3/28/17 | 3/29/17 | 29886 | $50.00 |
| Bloomingdale's | JPM Chase | 4/25/17 | 5/1/17 | 30260 | $1,450.00 |
| Bloomingdale's | JPM Chase | 6/2/17 | 6/7/17 | 30783 | $4,000.00 |
| Bloomingdale's | JPM Chase | 6/7/17 | 6/12/17 | 30853 | $115.00 |
| Bloomingdale's | JPM Chase | 7/6/17 | 7/7/17 | 31201 | $2,000.00 |
| Bloomingdale's | JPM Chase | 8/11/17 | 8/15/17 | 31689 | $3,500.00 |
| Bloomingdale's | JPM Chase | 9/1/17 | 9/6/17 | 32022 | $1,000.00 |
| Bloomingdale's | JPM Chase | 10/4/17 | 10/5/17 | 32408 | $4,000.00 |
| Bloomingdale's | JPM Chase | 11/2/17 | 11/6/17 | 32738 | $2,000.00 |
| Bloomingdale's | JPM Chase | 11/8/17 | 11/9/17 | 32810 | $50.00 |
| Bloomingdale's | JPM Chase | 12/8/17 | 12/11/17 | 33183 | $1,000.00 |
| Bloomingdale's | JPM Chase | 12/11/17 | 12/13/17 | 33239 | $1,000.00 |
| | | | | Total: | **$100,302.00** |

## EXHIBIT 2

**Deposits and Withdrawals of Debtor's IOLA Accounts**

## EXHIBIT 2

### DEPOSITS AND WITHDRAWALS OF DEBTOR'S IOLA ACCOUNTS

| Transaction Date | Payee/Payor | Transaction Type | Amount |
|---|---|---|---|
| **Transfers into IOLA from M. Kossoff** | | | |
| | | | |
| 2/14/17 | Mitchell H. Kossoff Pamela A. Kossoff | Transfer | $25,000.00 |
| 2/25/17 | Mitchell H. Kossoff Pamela A. Kossoff | Transfer | $21,000.00 |
| 1/7/21 | Mitchell H. Kossoff | Transfer | $5,000.00 |
| | **Total Transfers from M. Kossoff:** | | **$51,000.00** |
| | | | |
| **Transfers from IOLA to M. Kossoff** | | | |
| 2/15/17 | Mitchell H. Kossoff Pamela A. Kossoff | Transfer | $25,000.00 |
| 3/10/17 | Mitchell H. Kossoff Pamela A. Kossoff | Transfer | $21,000.00 |
| 2/9/18 | Mitchell H. Kossoff | Transfer | $65,000.00 |
| 3/3/21 | Mitchell H. Kossoff | Transfer | $25,000.00 |
| | **Total Transfers to M. Kossoff:** | | **$136,000.00** |

## EXHIBIT 3

**Kossoff Criminal Plea Agreement**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART N

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK | PLEA AGREEMENT |
| -against- | Docket No. CR-028944-21NY |
| MITCHELL KOSSOFF, | SCI No. |
| Defendant. | |

1.      This is the plea agreement (the "Agreement") between the Office of the District Attorney of the County of New York (the "District Attorney") and Mitchell Kossoff (the "Defendant").  This Agreement constitutes the entire agreement between the Defendant and the District Attorney.  There are no promises, agreements, or conditions, express or implied, other than those set forth in this document.  No modification, deletion, or addition to this Agreement will be valid or binding on either party unless put into writing, signed by both parties, and approved by the Court.

2.      At the time of the Defendant's plea, this Agreement shall be made a part of the record and the parties will request the Court's approval thereof.  This Agreement will become effective only upon the Court's approval.

3.      This Agreement covers the criminal conduct to which the Defendant is pleading guilty under this Agreement.  No other criminal conduct is covered by the terms of this Agreement.  This Agreement is limited to the District Attorney and cannot and does not bind other government agencies.

4.      Pursuant to this Agreement, the Defendant shall waive prosecution by indictment and plead guilty under a Superior Court Information to one count of Scheme to Defraud in the First Degree (Penal Law § 190.65[1][b]), one count of Grand Larceny in the First Degree (Penal Law § 155.42), one count of Grand Larceny in the Second Degree (Penal Law § 155.40[1]), and one count of Grand Larceny in the Third Degree (Penal Law § 155.35[1]).  The Defendant acknowledges that the maximum sentences that can be imposed for convictions of such offenses are as follows: an indeterminate prison term of 8 1/3 to 25 years for Grand Larceny in the First Degree (a Class B felony); an indeterminate prison term of 5 to 15 years for Grand Larceny in the Second Degree (a Class C felony); an indeterminate prison term of 2 1/3 to 7 years for Grand Larceny in the Third Degree (a Class D felony); and an indeterminate prison term of 1 1/3 to 4 years for Scheme to Defraud in the First Degree (a Class E felony).

5.      The Defendant acknowledges that by entering this plea of guilty, he will forfeit certain constitutional rights, including the right to a trial by jury, the right to confront his

accusers, and the privilege against self-incrimination. The Defendant specifically will waive, and hereby waives, all defenses and any claims or protections with relation to his plea arising out of any federal or state rights concerning double jeopardy, statute of limitations, speedy trial, speedy sentence, delayed prosecution, geographical jurisdiction, or venue.

6.      The Defendant shall execute a Waiver of Right to Appeal at the time of his plea. The Defendant shall acknowledge, and hereby acknowledges, that he would ordinarily retain his right to appeal even after pleading guilty, but that in this case, he is knowingly and voluntarily waiving that right in exchange for the favorable plea and sentence that he is receiving. The Defendant shall also acknowledge, and hereby acknowledges, that the appellate rights he is waiving are separate and apart from those rights that he shall automatically forfeit by his guilty plea.

7.      Upon the Defendant's plea of guilty, he will admit under oath before the Court to the following:

    a. From at least December 2017 to April 2021, I was an attorney licensed to practice in New York and the sole member of Kossoff PLLC, a law firm located in Manhattan. Part of my law firm's business was to collect and hold funds in trust for my clients and other individuals involved in matters relating to my clients. I did not have permission or authority to disburse the funds without authorization from the relevant parties to do so.

    b. As charged in Count One of the Superior Court Information, I admit that, from on or about December 21, 2017 to on or about April 9, 2021, in the County of New York, I engaged in a systematic ongoing course of conduct with the intent to defraud more than one person and to obtain property from more than one person by false or fraudulent pretenses, representations, or promises. In doing so, I obtained more than $1,000 from such persons. In particular, I defrauded multiple clients of my law firm, and other persons involved in matters relating to my clients, by falsely representing that certain funds would be held in escrow and, notwithstanding those representations, intentionally causing unauthorized and impermissible disbursements of those funds.

    c. As part of that scheme, and as charged in Counts Two through Four of the Superior Court Information, I admit to committing the following specific thefts, in the County of New York, from clients of my firm and other persons involved in matters relating to my clients:

        i. From on or about December 21, 2017 through on or about March 16, 2021, I stole more than $50,000 from Anolag LLC and Jacpot 2 LLC.

2

      ii. From on or about July 9, 2019 through on or about March 16, 2021, I stole more than $1,000,000 from 118 Duane LLC.

      iii. From on or about April 1, 2021 through on or about April 9, 2021, I stole more than $3,000 from Irwin Ostrega.

    d. I admit that the individuals and entities listed in the appendix attached to my written plea agreement are some of the victims of the crimes to which I am pleading guilty today. I also admit that, by committing those crimes, I caused those victims to incur the losses listed in the appendix and that I owe those amounts to those victims.

8.    The Defendant acknowledges that the individuals and entities listed in the appendix attached to this Agreement (the "Appendix") are victims of the crimes to which the Defendant is pleading guilty. The Defendant also acknowledges that the monetary amounts listed in the Appendix reflect losses that he caused and owes to the respective victims as a result of his crimes. The District Attorney and the Defendant agree that, at the time of the Defendant's sentencing, and as part of the Defendant's sentence, the Court shall issue judgment orders against the Defendant in favor of those victims listed in the Appendix. The Defendant acknowledges the bases for those judgment orders and agrees to waive, and hereby waives, any restitution/reparation hearing pursuant to Penal Law § 60.27(2) and Criminal Procedure Law § 400.30 in connection with his guilty pleas under this Agreement.

9.    The Defendant represents that he has full and sole title to a condominium with an address of Twinlights Terrace, Unit I-9, Highlands, New Jersey, 07732 (Block: 11.08; Lot: 9) (the "Condominium"), with a last known tax assessment value of approximately $311,400 for the year 2021, according to the public records of the Monmouth County Clerk's Office. Prior to the Defendant's sentencing, and as a condition of the promised sentences set forth in paragraph 10 below, the Defendant shall transfer title to the Condominium to Albert Togut (not individually but solely in his capacity as Chapter 7 Interim Trustee for Kossoff PLLC) and provide proof of such transfer to the District Attorney. If the transfer has not occurred prior to the Defendant's sentencing, the Defendant must show good cause why the transfer was not performed. The Defendant agrees that it shall be within the District Attorney's sole discretion to determine whether the transfer occurred or whether the Defendant has demonstrated good cause why it did not.

10.    The District Attorney and the Defendant agree that if the Defendant satisfies all of the conditions sets forth in this Agreement, as determined solely by the District Attorney, the District Attorney shall recommend and the Court shall impose the following indeterminate prison terms for the crimes to which the Defendant is pleading guilty, with all of the sentences to be run concurrently: 4.5 to 13.5 years for the count of Grand Larceny in the First Degree; 4.5 to 13.5 years for the count of Grand Larceny in the Second Degree; 2 1/3 to 7 years for the count of Grand Larceny in the Third Degree; and 1 1/3 to 4 years for the count of Scheme to Defraud in the First Degree.

3

11.    The District Attorney and the Defendant further agree that, between the date of the Defendant's guilty plea and the date of his sentencing, the Defendant shall return to court on all scheduled court dates, report to the New York City Department of Probation as ordered by the Court, and refrain from any behavior that would cause him to be re-arrested on criminal charges.  If the Defendant fails to satisfy any of those conditions or the conditions set forth in paragraph 9 above, as determined solely by the District Attorney, the District Attorney can recommend, and the Court can impose, any sentences authorized by law for the offenses to which the Defendant is pleading guilty under this Agreement.

12.    The Defendant enters into this Agreement, including all waivers contained herein, knowingly, intelligently, and voluntarily and after discussion and consultation with his attorney, Walter Mack.  The Defendant has had a full opportunity to discuss this Agreement with his attorney, and any questions he may have had have been answered to his satisfaction.

Dated: New York, New York

_____

_____           _____
Mitchell Kossoff                                                    Doar Rieck Kaley & Mack
Defendant                                                             Attorney for Defendant

_____           _____
Ryan Gee                                                              Catherine McCaw
Assistant District Attorney                                   Assistant District Attorney

Approved: _____
              Justice of the Supreme Court

4

## APPENDIX TO PLEA AGREEMENT
## PEOPLE V. MITCHELL KOSSOFF (DOCKET NO. CR-028944-21NY)

| VICTIM | AMOUNT OWED |
|---|---|
| Gran Sabana Corporation | $4,478,784.24 |
| 118 Duane LLC | $2,425,000.00 |
| SSM Realty Group II LLC | $1,300,000.00 |
| Darlene Hart and Lorraine Kinyk | $1,250,000.00 |
| Decker Associates LLC | $800,000.00 |
| 537 Realty Associates LLC | $590,000.00 |
| Prince Street Holdings LLC | $525,000.00 |
| Sasson Real Estate Group | $342,500.00 |
| Ilomai Kurrik and Arthur Nigel Jones | $305,064.16 |
| Heiner Freidrich | $291,000.00 |
| Louis Girodano and Jeanmarie Giordano | $250,000.00 |
| Jonathan Ostrow | $250,000.00 |
| Anolag LLC and Jacpot 2 LLC | $220,051.88 |
| 47 Mercer Street I LLC, 47 Mercer Street II LLC, 47 Mercer Street III LLC, and 47 Mercer Street IV LLC | $199,600.38 |
| Irwin Ostrega | $159,584.93 |
| Chad Eggers | $158,000.00 |
| Centennial Properties NY Inc. | $150,000.00 |
| Lawrence A. Alexander Irrevocable Trust | $117,000.00 |
| Robert Altemus | $89,900.00 |
| Darren Katz and Peter Myers | $77,000.00 |
| 5557 LLC | $75,000.00 |
| 51 West 11 Realty LLC and Beth Mollins | $65,000.00 |
| Georgica Capital Partners LLC | $61,250.00 |
| CF E 88 LLC and SM E 88 LLC | $60,000.00 |
| Thomas Sneva | $57,300.00 |
| 6 West 75th Street LLC and 112-113 West 75th Street LLC | $55,187.73 |
| Robert Rugani | $49,900.00 |
| Delis Realty Corporation | $45,000.00 |
| 112-113 West 75th Street LLC | $40,000.00 |
| Estate of Jasper Edward Peyton, Jr. | $34,000.00 |
| Jason Breitstone | $30,625.00 |
| David Shorenstein | $30,625.00 |
| Jason Rosenblum | $17,410.13 |
| 6 West 75th Street LLC | $10,000.00 |
| David Svenson | $7,589.87 |

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

**THE PEOPLE OF THE STATE OF NEW YORK**

-against-

**MITCHELL KOSSOFF,**

**Defendant.**

---

**PLEA AGREEMENT**

**DOCKET NO.**

**SCI NO.**

---

Cyrus R. Vance, Jr.
District Attorney
New York County
One Hogan Place
New York, New York 10013
(212) 335-9000

Ryan Gee
Assistant District Attorney
Of Counsel

**<u>EXHIBIT 4</u>**

**Group-One Transfers**

<u>**EXHIBIT 4**</u>

**GROUP-ONE TRANSFERS**
**(Mitchell Kossoff, Account No. Ending 5743)**
**(Pamela Kossoff, Account No. Ending 3618)**

| Payee | Bank | Transaction Date | Payment Date | Check No. | Amount |
|-------|------|------------------|--------------|-----------|--------|
| Bloomingdale's | JPM Chase | 12/3/13 | 12/9/13 | 9672 | $1,000.00 |
| Bloomingdale's | JPM Chase | 4/2/14 | 4/7/14 | 15342 | $1,500.00 |
| Bloomingdale's | JPM Chase | 4/29/14 | 5/6/14 | 15465 | $1,500.00 |
| Bloomingdale's | JPM Chase | 5/29/14 | 6/4/14 | 15595 | $1,500.00 |
| Bloomingdale's | JPM Chase | 7/2/14 | 7/7/14 | 15746 | $2,500.00 |
| Bloomingdale's | JPM Chase | 8/4/14 | 8/5/14 | 15896 | $750.00 |
| Bloomingdale's | JPM Chase | 8/15/14 | 8/18/14 | 15993 | $750.00 |
| Bloomingdale's | JPM Chase | 9/4/14 | 9/10/14 | 16095 | $1,500.00 |
| Bloomingdale's | JPM Chase | 9/18/14 | 9/22/14 | 16239 | $750.00 |
| Bloomingdale's | JPM Chase | 10/16/14 | 10/20/14 | 16427 | $750.00 |
| Bloomingdale's | JPM Chase | 10/3/14 | 10/23/14 | 16298 | $1,000.00 |
| Bloomingdale's | JPM Chase | 11/6/14 | 11/10/14 | 16570 | $1,000.00 |
| Bloomingdale's | JPM Chase | 11/18/14 | 11/20/14 | 16687 | $1,000.00 |
| Bloomingdale's | JPM Chase | 11/24/14 | 12/1/14 | 16752 | $1,000.00 |
| Bloomingdale's | JPM Chase | 12/16/14 | 12/22/14 | 16931 | $500.00 |
| Bloomingdale's | JPM Chase | 12/23/14 | 12/26/14 | 16989 | $1,000.00 |
| Bloomingdale's | JPM Chase | 1/16/15 | 1/21/15 | 20015 | $500.00 |
| Bloomingdale's | JPM Chase | 2/6/15 | 2/9/15 | 20170 | $1,500.00 |
| Bloomingdale's | JPM Chase | 2/17/15 | 2/20/15 | 20304 | $500.00 |
| Bloomingdale's | JPM Chase | 3/2/15 | 3/9/15 | 20429 | $1,000.00 |
| Bloomingdale's | JPM Chase | 3/18/15 | 3/24/15 | 20590 | $460.00 |
| Bloomingdale's | JPM Chase | 4/2/15 | 4/10/15 | 20735 | $1,000.00 |
| | | | | Total: | <u>**$22,960.00**</u> |

## **EXHIBIT 5**

**Group-Two Transfers**

**EXHIBIT 5**

## GROUP-TWO TRANSFERS
**(Mitchell Kossoff, Account No. Ending 5743)**
**(Pamela Kossoff, Account No. Ending 3618)**

| Payee | Bank | Transaction Date | Payment Date | Check No. | Amount |
|-------|------|------------------|--------------|-----------|--------|
| Bloomingdale's | JPM Chase | 4/15/15 | 4/27/15 | 20914 | $1,000.00 |
| Bloomingdale's | JPM Chase | 5/18/15 | 5/21/15 | 21312 | $1,000.00 |
| Bloomingdale's | JPM Chase | 6/5/15 | 6/10/15 | 21495 | $1,000.00 |
| Bloomingdale's | JPM Chase | 6/5/15 | 6/22/15 | 21145 | $1,000.00 |
| Bloomingdale's | JPM Chase | 6/18/15 | 6/25/15 | 21641 | $1,000.00 |
| Bloomingdale's | JPM Chase | 7/1/15 | 7/6/15 | 21794 | $1,000.00 |
| Bloomingdale's | JPM Chase | 7/16/15 | 7/23/15 | 21969 | $1,000.00 |
| Bloomingdale's | JPM Chase | 8/6/15 | 8/7/15 | 22243 | $1,500.00 |
| Bloomingdale's | JPM Chase | 8/19/15 | 8/24/15 | 22375 | $1,100.00 |
| Bloomingdale's | JPM Chase | 9/3/15 | 9/8/15 | 22566 | $2,200.00 |
| Bloomingdale's | JPM Chase | 9/18/15 | 9/21/15 | 22712 | $50.00 |
| Bloomingdale's | JPM Chase | 9/28/15 | 10/1/15 | 22861 | $1,500.00 |
| Bloomingdale's | JPM Chase | 11/2/15 | 11/5/15 | 23336 | $2,500.00 |
| Bloomingdale's | JPM Chase | 11/18/15 | 11/23/15 | 23511 | $750.00 |
| Bloomingdale's | JPM Chase | 12/3/15 | 12/7/15 | 23711 | $2,500.00 |
| Bloomingdale's | JPM Chase | 12/17/15 | 12/21/15 | 23922 | $750.00 |
| Bloomingdale's | JPM Chase | 1/20/16 | 1/25/16 | 24303 | $750.00 |
| Bloomingdale's | JPM Chase | 1/27/16 | 2/1/16 | 24405 | $500.00 |
| Bloomingdale's | JPM Chase | 2/22/16 | 2/24/16 | 24696 | $750.00 |
| Bloomingdale's | JPM Chase | 3/7/16 | 3/7/16 | 2219 | $3,000.00 |
| Bloomingdale's | JPM Chase | 3/17/16 | 3/21/16 | 25119 | $1,000.00 |
| Bloomingdale's | JPM Chase | 3/30/16 | 4/4/16 | 25288 | $300.00 |
| Bloomingdale's | JPM Chase | 4/19/16 | 4/22/16 | 25537 | $1,000.00 |
| Bloomingdale's | JPM Chase | 5/4/16 | 5/9/16 | 25735 | $1,500.00 |
| Bloomingdale's | JPM Chase | 6/2/16 | 6/10/16 | 26151 | $2,500.00 |
| Bloomingdale's | JPM Chase | 6/16/16 | 6/20/16 | 26305 | $1,500.00 |
| Bloomingdale's | JPM Chase | 7/6/16 | 7/13/16 | 26554 | $2,500.00 |
| Bloomingdale's | JPM Chase | 5/18/16 | 8/3/16 | 25907 | $1,000.00 |
| Bloomingdale's | JPM Chase | 8/5/16 | 8/8/16 | 26922 | $2,500.00 |
| Bloomingdale's | JPM Chase | 8/17/16 | 8/19/16 | 27069 | $950.00 |

**EXHIBIT 5**

## GROUP-TWO TRANSFERS
### (Mitchell Kossoff, Account No. Ending 5743)
### (Pamela Kossoff, Account No. Ending 3618)

| Payee | Bank | Transaction Date | Payment Date | Check No. | Amount |
|-------|------|------------------|--------------|-----------|--------|
| Bloomingdale's | JPM Chase | 9/1/16 | 9/2/16 | 27277 | $500.00 |
| Bloomingdale's | JPM Chase | 9/1/16 | 9/2/16 | 27278 | $2,500.00 |
| Bloomingdale's | JPM Chase | 10/5/16 | 10/12/16 | 27727 | $2,000.00 |
| Bloomingdale's | JPM Chase | 10/11/16 | 10/14/16 | 27799 | $1,000.00 |
| Bloomingdale's | JPM Chase | 11/11/16 | 11/14/16 | 28181 | $150.00 |
| Bloomingdale's | JPM Chase | 1/6/17 | 1/10/17 | 28887 | $1,000.00 |
| Bloomingdale's | JPM Chase | 1/12/17 | 1/17/17 | 28942 | $500.00 |
| Bloomingdale's | JPM Chase | 1/25/17 | 2/3/17 | 29185 | $3,000.00 |
| Bloomingdale's | JPM Chase | 1/25/17 | 2/3/17 | 29186 | $2,500.00 |
| Bloomingdale's | JPM Chase | 1/25/17 | 2/3/17 | 29171 | $1,500.00 |
| Bloomingdale's | JPM Chase | 2/2/17 | 2/3/17 | 29184 | $1,000.00 |
| Bloomingdale's | JPM Chase | 2/17/17 | 2/21/17 | 29384 | $150.00 |
| Bloomingdale's | JPM Chase | 12/6/16 | 2/21/17 | 28488 | $100.00 |
| Bloomingdale's | JPM Chase | 3/2/17 | 3/6/17 | 29521 | $500.00 |
| Bloomingdale's | JPM Chase | 3/2/17 | 3/6/17 | 29522 | $750.00 |
| Bloomingdale's | JPM Chase | 3/28/17 | 3/29/17 | 29884 | $200.00 |
| Bloomingdale's | JPM Chase | 3/28/17 | 3/29/17 | 29885 | $227.00 |
| Bloomingdale's | JPM Chase | 3/28/17 | 3/29/17 | 29886 | $50.00 |
| Bloomingdale's | JPM Chase | 4/25/17 | 5/1/17 | 30260 | $1,450.00 |
| Bloomingdale's | JPM Chase | 6/2/17 | 6/7/17 | 30783 | $4,000.00 |
| Bloomingdale's | JPM Chase | 6/7/17 | 6/12/17 | 30853 | $115.00 |
| Bloomingdale's | JPM Chase | 7/6/17 | 7/7/17 | 31201 | $2,000.00 |
| Bloomingdale's | JPM Chase | 8/11/17 | 8/15/17 | 31689 | $3,500.00 |
| Bloomingdale's | JPM Chase | 9/1/17 | 9/6/17 | 32022 | $1,000.00 |
| Bloomingdale's | JPM Chase | 10/4/17 | 10/5/17 | 32408 | $4,000.00 |
| Bloomingdale's | JPM Chase | 11/2/17 | 11/6/17 | 32738 | $2,000.00 |
| Bloomingdale's | JPM Chase | 11/8/17 | 11/9/17 | 32810 | $50.00 |
| Bloomingdale's | JPM Chase | 12/8/17 | 12/11/17 | 33183 | $1,000.00 |
| Bloomingdale's | JPM Chase | 12/11/17 | 12/13/17 | 33239 | $1,000.00 |
| | | | | Total: | $77,342.00 |