UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                      :
In the Matter                                         :        Chapter 7
                                                      :
        -of-                                          :        Case No. 21-10699 (DSJ)
                                                      :
KOSSOFF PLLC,                                         :
                                                      :
                        Debtor.                       :
                                                      :
-----------------------------------------------------------X

## MEMORANDUM OF DECISION AND ORDER
## GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**APPEARANCES:**

**CNA COVERAGE LITIGATION GROUP**
*Counsel to Continental Casualty Company*
125 Broad Street, 7th Floor
New York, NY 10004
By:     Janet J. Lee, Esq.

**WILEY REIN LLP**
*Counsel to Continental Casualty Company*
2050 M Street NW
Washington, DC 20036
By**:**     Morgan L. Chinoy, Esq.

**TOGUT, SEGAL & SEGAL LLP**
*Counsel for the Chapter 7 Trustee*
One Penn Plaza, Suite 3335
New York, NY 10119
By:     Neil Berger, Esq.
        Jared C. Borriello, Esq.

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

        Debtor's former liability insurer, Continental Casualty Company ("**Continental**"), moves

for relief from the automatic stay so that Continental can add Debtor Kossoff PLLC, a former New

York law firm, as a defendant in pending District Court litigation concerning whether Continental is obliged to provide coverage for liability claims brought against the firm and its attorneys, including claims arising from criminal conduct by Debtor's principal, attorney Mitchell H. Kossoff ("**Kossoff**").

This bankruptcy case arises from Kossoff's misappropriation of millions of dollars of client funds. Before the revelation of Kossoff's theft and the commencement of Debtor's bankruptcy, Debtor applied for and Continental issued a professional liability insurance coverage policy (the "**Policy**"). In issuing the Policy, Continental relied in part on representations made by Kossoff that he and the firm were unaware of any acts or omissions by firm attorneys that could be expected to give rise to claims against the firm.

When creditors of the firm learned of the misappropriation, they filed an involuntary petition for relief in this Court under Chapter 7 of the Bankruptcy Code, thus commencing bankruptcy proceedings as to Kossoff PLLC, but not as to Kossoff individually. Kossoff later pled guilty to criminal misappropriation of client funds before, during, and after the time when Debtor applied for the Policy. Subsequently, Continental brought a declaratory judgment action in the United States District Court for the Southern District of New York (the "**District Court**") against multiple defendants seeking a determination that Continental is entitled to rescind the Policy due to material misrepresentations in Debtor's insurance application, and that Continental has no obligation to provide defense or indemnity coverage for claims arising from Kossoff's misconduct or otherwise involving the firm (the "**Coverage Action**"). Continental contends that Debtor, as named insured on the Policy, is a necessary party to the Coverage Action. Yet, barred by the automatic stay, Continental was and is unable to join Debtor as a defendant in the District Court

proceeding.  Continental therefore seeks an order lifting the stay so that Continental can add Debtor

as a defendant to its already-pending coverage suit.

In its lift-stay motion, Continental contends that it is at risk of near-term economic harm if

it does not secure a prompt ruling on its coverage obligations, that the coverage dispute must be

adjudicated eventually, and that a comprehensive adjudication in the District Court is the most

efficient means to that end.  The Chapter 7 Trustee (the "**Trustee**") opposes, arguing that he has

limited resources and faces pressing litigation constraints ahead of a looming May 12 deadline to

file asset-recovery actions.  The Trustee argues that immediate litigation against Continental would

harm the interests of creditors and the bankruptcy Estate by diverting the Trustee from pressing

these efforts.

As explained below, Continental has shown cause for relief so that its coverage obligations

can be determined.  The Trustee has not identified stronger reasons not to lift the stay.  The stay

therefore is lifted effective May 26, 2023, for the limited purpose of joining Kossoff PLLC as a

defendant in the Coverage Action.

## I.    <u>BACKGROUND</u>

Debtor Kossoff PLLC was a New York law firm led by attorney Mitchell H. Kossoff.  In

July 2020, Debtor applied for professional liability insurance coverage from movant Continental.

[*See* ECF No. 448-2 at 53–61 of 66].  In the application, prepared by Kossoff as authorized

representative of the Debtor, Debtor represented that no attorney in the firm was aware of any

"actual or alleged act [or] omission . . . that a reasonable attorney would recognize might

reasonably be expected to result in a claim being made against the firm . . . or against any attorney

currently or formerly affiliated with the firm."  [*Id.* at 58 of 66; *see id.* at 61 of 66].  Relying in

3

part on this representation, Continental issued Policy No. 425173386 for the period of August 1, 2020, to August 1, 2021.  [*Id.* at 20–45 of 66].

The Policy is a "claims-made" policy, which is limited to liability for claims first made against the insured during the policy period.  [*Id.* at 20 of 66].  While Kossoff PLLC is the named insured, the Policy also covers partners and associates of the firm and lists by name twenty-four insured attorneys.  [*Id.* at 22, 27 of 66].

On or around April 7, 2021, Kossoff PLLC attorneys alerted Continental that they believed Kossoff may have misappropriated funds held in the firm's IOLA accounts.  [ECF No. 448 at 3]. Representatives of Debtor later notified Continental of a series of claims, potential claims, and disciplinary proceedings against Kossoff PLLC.  [*Id.* at 3–4].

On April 13, 2021, certain creditors whose funds were missing from Debtor's IOLA accounts commenced this bankruptcy case by filing an involuntary petition against Kossoff PLLC. [ECF No. 1].  The commencement of the bankruptcy case automatically stayed the commencement or continuation of any judicial action or proceeding against Debtor.  11 U.S.C. § 362(a)(1).

On May 11, 2021, the Court entered an order for relief and the Chapter 7 Trustee was appointed the following day.  [ECF Nos. 14–15].  According to the Trustee and consistent with this Court's observation, in the nearly two years since his appointment, the Trustee "has had to actively litigate to obtain books, records and documents concerning the Debtor's affairs" and  "is necessarily focused on formulating and asserting affirmative Estate recovery claims."  [ECF No. 498 at 2].

The Trustee is presently occupied filing recovery claims ahead of May 12, 2023, when, according to the Trustee, the section 546(a)(1) statute of limitations will expire on most of the

Estate's Chapter 5 claims.  [*Id.; see, e.g.*, ECF Nos. 521–57 (Trustee initiating twenty-eight adversary proceedings, eight motions to compel, and one tolling agreement)].

On December 13, 2021, Kossoff entered into a plea agreement, [ECF No. 448-2 at 47–51 of 66], in connection with the criminal proceeding styled *People of the State of New York v. Mitchell Kossoff*, Case No. 028944/2021, in the Supreme Court of the State of New York, County of New York.  Under the Plea Agreement, Kossoff admitted to defrauding clients and others in a "systematic ongoing" fraud spanning "[f]rom at least December 2017 to April 2021."  [*Id.* at 48 of 66].  Kossoff ultimately pled guilty to criminal charges and is currently incarcerated.

On August 18, 2022, Continental filed an action in the U.S. District Court for the Southern District of New York seeking a declaratory judgment that Continental is entitled to rescind the Policy based on alleged material misrepresentations made by Kossoff PLLC in its application. [ECF No. 448-2 at 2–18 of 66; *Continental Casualty Co. v. Mitchell H. Kossoff, et al.*, No. 22-cv-7044 (S.D.N.Y. filed Aug. 18, 2022) ("**S.D.N.Y. Dkt.**")].  As filed, Continental's complaint names as defendants the twenty-four individual attorneys insured under the policy.  The named defendants do not include Debtor, the "Named Insured" on the Policy.  [*See, e.g.,* S.D.N.Y. Dkt.; ECF No. 448 at 20 of 66].

Between October 2022 and December 2022, Continental entered stipulations of voluntary dismissal with fourteen of the twenty-four individual defendants in the Coverage Action, whereby the stipulating defendants agreed to be bound by, and barred from collaterally challenging, all rulings of the District Court concerning the declaratory relief sought by Continental in the Coverage Action.  [S.D.N.Y Dkt. Nos. 16, 18, 22, 24, 26, 39, 47].  Ten individual defendants remain in that proceeding.  [*See generally* ECF No. 498 at 26–38 of 38 (attaching District Court docket sheet indicating current and "Terminated" defendants)].  The District Court has not fixed

dates for trial or other deadlines, discovery has yet to commence, and there has been no motion practice. [*See id.*].

On November 21, 2022, Continental brought the instant motion seeking an order lifting the automatic stay for the limited purpose of joining Debtor as a defendant in the Coverage Action. [ECF No. 448 (the "**Motion**")].  On December 2, 2022, the District Court stayed the Coverage Action pending resolution of the Motion.  [S.D.N.Y. Dkt., ECF No. 45 ("Given the ongoing bankruptcy proceeding and Plaintiff's plans to amend the complaint, economy urges that this action be stayed pending the resolution of Plaintiff's efforts to obtain a lift of the automatic stay.")].

A hearing on Continental's Motion, originally scheduled for December 8, 2022, was consensually adjourned five times.  [ECF Nos. 456, 462, 468, 485, 487].  The Trustee filed an objection on February 23, 2023 [ECF No. 498 (the "**Objection**")], and Continental replied on February 27, 2023 [ECF No. 499 (the "**Reply**")].  On March 2, 2023, the Court heard oral argument on the Motion.  During the hearing, the Court encouraged the parties to attempt to seek agreement on how to proceed, possibly by agreeing to a lift of the stay effective on a date after a May 12 deadline that the Trustee's arguments emphasized.  No such agreement has been reported.

## II.    LEGAL STANDARD

The filing of a bankruptcy petition automatically triggers a broad stay on the commencement of legal proceedings against a debtor.  11 U.S.C. § 362(a)(1).  The automatic stay "serves one of the core purposes of bankruptcy, by enabling the bankruptcy court to centralize all disputes concerning property of the debtor's estate" so that reorganization or liquidation "can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *S.E.C. v. Miller*, 808 F.3d 623, 630 (2d Cir. 2015) (quotation marks and citations omitted).  "The stay is of

considerable importance in liquidation cases" as it "protects the trustee's ability to control the liquidation of property of the estate." 3 Collier on Bankruptcy ¶ 362.03[2] (16th ed. 2023). The stay is intended to preserve priority of claims by preventing creditors from using a non-bankruptcy forum to make an end-run around the bankruptcy proceeding. *See S.E.C. v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000) (stay "prevent[s] dissipation of the debtor's assets before orderly distribution to creditors can be effected") (citation omitted).

Section 362(d)(1) permits a bankruptcy court to modify the stay for "cause." 11 U.S.C. § 362(d). Neither section 362(d)(1) nor the legislative history defines what constitutes "cause" for relief from the automatic stay. *See In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). Rather, "cause" is "a broad and flexible concept that must be determined on a case-by-case basis." *In re AMR Corp.*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013) (citing *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002)). To determine whether relief from the automatic stay is appropriate, courts in the Second Circuit consider the twelve factors established in the Court of Appeals' decision in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax)*, 907 F.2d 1280 (2d Cir. 1990). The twelve *Sonnax* factors are:

(1)  whether relief would result in a partial or complete resolution of the issues;
(2)  lack of any connection with or interference with the bankruptcy case;
(3)  whether the other proceeding involves the debtor as a fiduciary;
(4)  whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5)  whether the debtor's insurer has assumed full responsibility for defending it;
(6)  whether the action primarily involves third parties;
(7)  whether litigation in another forum would prejudice the interests of other creditors;
(8)  whether the judgment claim arising from the other action is subject to equitable subordination;
(9)  whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10)  the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*Id.* at 1286. "The Court need only consider the relevant factors." *In re Containership Co. (TCC) A/S*, 466 B.R. 219, 225 (Bankr. S.D.N.Y. 2012). Further, the Court may apportion weight among the factors as it sees fit. *See In re Celsius Network LLC*, 642 B.R. 497, 502 (Bankr. S.D.N.Y. 2022).

"The burden of proof on a motion to lift or modify the automatic stay is a shifting one." *In re Sonnax*, 907 F.2d at 1285. To prevail, Continental must make an initial showing of "cause," after which the burden shifts to the Trustee to show that relief is inappropriate. *See id.*; *cf.* 11 U.S.C. 362(g) (party requesting relief under 362(d) "has the burden of proof on the issue of the debtor's equity in property" while "the party opposing such relief has the burden of proof on all other issues").

"The decision whether to lift the stay is entirely within the discretion of the Court." *In re Containership Co.*, 466 B.R. at 225. Nevertheless, the legislative history of section 362 illustrates that "Congress intended that one of the factors to consider when determining whether to modify the stay is whether doing so would permit pending litigation involving the debtor to continue in a nonbankruptcy forum," *In re Project Orange Assocs., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (quotation marks and citations omitted), as "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere," S.Rep. 95-989, 50, 1978 U.S.C.C.A.N. 5787, 5836.

When an insurer seeks stay relief to pursue rescission of a debtor's policy, such relief may be inappropriate if resolution of the debtor's relationship with its insurer "is of central importance

8

to the bankruptcy proceeding." *In re Johns-Manville Corp.*, 31 B.R. 965, 975 (S.D.N.Y. 1983) (denying stay relief for one of debtor's fourteen insurers, reasoning that "it is preferable to resolve all these issues in a single forum; and that piecemeal adjudication of these issues in different forums would be counterproductive"). In this context, courts are primarily concerned with whether stay relief would interfere with administration of the bankruptcy case and prejudice creditors. *In re Spectrum Info. Techs., Inc.*, 183 B.R. 360, 365 (Bankr. E.D.N.Y. 1995) (denying motion to lift stay to arbitrate rescission of D&O insurance policy, in part, because rescission "will inevitably affect [debtor's] unsecured creditors by affecting the size of the estate"); *In re Mego Int'l, Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) ("[insurer's] suit impacts upon property and administration of [debtor's] estate, suggesting that continuance of the stay is proper"). Lastly, if a debtor has already incurred legal expenses expecting reimbursement under its policy, that consideration may weigh against granting relief from the stay to adjudicate recission outside of bankruptcy court. *In re Mego*, 28 B.R. at 326 (denying relief in part because debtor incurred nearly $500,000 in expenses expecting reimbursement under D&O policy").

## III.    **DISCUSSION**

Continental seeks targeted relief to pursue a declaratory judgment resolving its obligations under the Policy, which it argues can and should be determined without delay. Continental does not contemplate bringing a monetary claim against the Estate. This reality differentiates *In re Dreier*, where the Court denied a motion for stay relief to pursue a pending action against the Chapter 7 debtor, in part, because the pending action could yield a large claim against the estate, 438 B.R. 449, 456 (Bankr. S.D.N.Y. 2010). In opposing the Motion, the Trustee emphasizes concerns about litigation expense and the distraction of litigating in District Court at the same time as the Trustee is seeking to recover Estate assets through proceedings in this Court.

The Trustee rightly observes that he has faced an uphill battle "actively litigat[ing] to obtain books, records and documents." [Obj. at 2]. As the Court has experienced firsthand, before the Trustee could begin to marshal Estate assets, the Trustee had to fight for information withheld by Debtor and its principal, Kossoff, and the Trustee has pursued discovery from innumerable third parties. Only in the past few months has the Trustee begun initiating adversary proceedings, and it has brought dozens. And now, the Trustee is "necessarily focused on formulating and asserting affirmative Estate recovery claims prior to the May 12, 2023 expiration of the statute of limitations applicable to nearly all of the Trustee's Chapter 5 claims." [*Id.*]. The Estate is cash-strapped and actively litigating against Continental now would be an unwanted added burden for the Trustee.

Against this backdrop, the Trustee contends that Continental cannot establish "cause" because the relief requested will "needlessly drag the Trustee into costly and burdensome litigation, for which there is no immediate urgency." [*Id.*]. The Trustee argues this is so because the universe of potential claims under the "claims made" policy closed on August 1, 2021, and, further, claims related to Continental's coverage are currently stayed. [*Id*. at 13–14]. These observations have some force.

Continental, meanwhile, faces potential demands and future liability for coverage that it insists it does not owe. While not denying the challenges the Trustee faces, Continental urges that it will be obligated to pay insureds' defense costs until and unless it secures a judgment that it is excused from its coverage obligations. Continental further observes that it received a number of notices of claims or potential claims that could become active and burdensome soon. Continental also argues that its obligations under the Policy must be determined eventually, and that both it and the Estate (and likely others) will benefit from a prompt resolution of whether the policy should be rescinded. [*See* Reply at 5]. Continental emphasizes that if Debtor is added as a defendant in

the existing Coverage Action, that case is already positioned to efficiently yield an authoritative and dispositive answer to the important question whether Continental is entitled to rescind the insurance policy.

As explained below, although it is a close discretionary call, the Court concludes that Continental has established cause to grant its Motion, and that the Trustee has not identified reasons that outweigh the reasons favoring allowing the District Court to proceed with Debtor as an added defendant.

Framing the pros and cons in terms of the *Sonnax* factors, the first, tenth, and twelfth factors strongly favor lifting the stay, as does factor 7, while other factors are not implicated, or are neutral, or favor maintaining the stay but to a lesser extent than the reasons present for lifting the stay.

Factor 1 is met and favors stay relief for the limited purpose of allowing Continental to seek a declaratory judgment against Debtor in District Court, because unified litigation regarding whether the policy is invalid would completely resolve coverage-related issues. Kossoff PLLC is the only affected party not already participating in the District Court action, and, if Continental is allowed to add Kossoff PLLC, then Continental will be able to resolve its obligations under the Policy with respect to all insureds in the one on-topic proceeding that is already underway. It is possible that a comprehensive answer might also be achieved through litigation in this Court, but it is not certain that the numerous individuals named in the policy could be successfully brought into litigation here. Even assuming they could be joined in proceedings in this Court, no such action is pending now, and the Trustee has not intimated any intention to begin such a proceeding. And the parties would not need to return to this Court after a comprehensive, final order or judgment is entered in District Court—unlike in, for example, *In re Residential Cap., LLC*, where the court denied stay relief, in part, because resolution in a pending non-bankruptcy proceeding

would not obviate the need to return to bankruptcy court to adjudicate merits of the claim, 501

B.R. 624, 644 (Bankr. S.D.N.Y. 2013).  Litigating separately in this Court solely against Debtor

would require a second proceeding on the same issue, and/or would risk a second layer of potential

appeal from this Court to the District Court that will be avoided by litigating all coverage issues in

District Court.  Accordingly, the first *Sonnax* factor favors granting stay relief.

For similar reasons, the tenth *Sonnax* factor—the "interests of judicial economy and the

expeditious and economical resolution of litigation"—favors lifting the stay.  Continental seeks to

proceed with one suit that will comprehensively and conclusively resolve its obligations under the

Kossoff PLLC Policy, both as to Kossoff PLLC and as to all twenty-four individual insureds.  The

Trustee has not suggested that any other equally efficient and comprehensive approach can be

achieved without lifting the stay.  Moreover, the District Court has already become familiar with

the dispute and expended efforts on it.  Thus, and because all related defendants have been joined

and engaged with the pending District Court case, the District Court proceeding is the most

efficient means of resolving the dispute, whether viewed as a question of "judicial economy" or as

a question of the "expeditious and economical resolution of litigation."

The twelfth *Sonnax* factor—the impact of the stay on the parties and the balance of harms—

likewise supports lifting the stay.  Continental seeks a prompt answer as to what if any obligations

it has on account of the Kossoff policy.  Until it obtains such an answer, it presumably will be

obliged to reserve funds on account of potential obligations on the policy, and it will incur ongoing

legal and administrative expenses.  More tangibly, Continental contends that "under New York

law, Continental is obligated to treat the policy as valid and in effect, especially with respect to the

duty to defend, until it obtains a judicial determination that the policy is rescinded."  [Hearing Tr.

12:12–15].  That risk seems real given the Trustee's ongoing commencement of asset recovery

actions, which may trigger demands on Continental, among other things due to counterclaims or cross-claims. These are real harms that can be avoided by lifting the stay.

On the other side of the harms ledger, the Trustee emphasizes his limited resources and heavy workload leading up to the May 12 deadline for commencing Chapter 5 asset-recovery actions. That concern is significant, but it can readily be obviated by delaying the effectiveness of lifting the stay until after May 12. The Trustee's workload will remain substantial, but presumably looking ahead the District Court can take the Trustee's competing obligations into account in setting an appropriate case management schedule, such that the District Court litigation—on issues that the Trustee needs to resolve eventually—will be manageable as one among many burdens.

Factor 7 also favors lifting the stay, or at least in no way counsels against doing so, for reasons similar to those weighed under factor 12. So long as interference with the Trustee's other vital work is avoided, litigation in another forum—the District Court—would not "prejudice the interests of other creditors." Rather, the litigation addresses a question that must be resolved, and will efficiently and effectively yield a necessary outcome regarding whether the Continental policy is available to fund any Estate obligations. Creditors will benefit from cost-effectively resolving this question.

These four factors strongly favor stay relief effective May 26, which is two weeks after the May 12 deadline that presents serious challenges for the Trustee. The remaining factors do not overcome the reasons for lifting the stay.

The second factor—possible connection or interference with the bankruptcy case—is present but only in part. There is a clear "connection" because the Estate's assets include its entitlements for claim coverage under the Kossoff PLLC policy. The availability of coverage is

an important question in determining the extent of Estate assets, and in determining what resources are available to satisfy claims against the Estate. But the Court is hard pressed to see how litigating this question in District Court, efficiently and definitively, would seriously interfere with the bankruptcy case. To the contrary, it may well benefit the bankruptcy case to determine whether insurance coverage is or is not available for the coverage period under the Continental policy. And the litigation burden on the Trustee, while possibly considerable, is in service of obtaining resolution of a question that the Estate needs answered.

The third, fourth, and fifth factors are not meaningfully implicated. The dispute does not involve the Trustee as a fiduciary other than for the Estate generally, and neither this Court nor the District Court is a "specialized tribunal." Either court is equipped to adjudicate the dispute. And whether the insurer has committed to defend the action is more logically tied to situations where nonparty litigants wish to pursue a claim that lies formally against the debtor, but that in reality is the responsibility of an insurer. That is not the situation here.

The sixth *Sonnax* factor—whether the case primarily involves non-debtors—is mixed, because Kossoff PLLC is the policy-holder, but the Coverage Action also involves twenty-four individual defendants who will benefit from knowing what coverage they enjoy, and that answer likely requires the participation of Kossoff PLLC. Non-debtors therefore predominate in raw numbers, but Kossoff PLLC is indispensable to resolving the dispute.

Factors 8 and 9—possible equitable subordination or a judicial lien—do not come into play here.

Finally, factor 11—whether the other case is "ready for trial"—is not met, but progress has occurred in the District Court case and could be lost if the stay is not lifted. Continental has served

14

most or all of 24 individual defendants and has entered stipulations of dismissal with 14 of them. The District Court case is far from resolved, but there is reason to suspect it can advance quickly, as Continental may contemplate an immediate, potentially dispositive motion.

Overall, the Court is persuaded that Continental has established cause to lift the stay so it can learn whether it does or does not have continuing obligations under the policy it issued Kossoff PLLC. Factors prominently including judicial economy, the interest of all parties including the Trustee and creditors in prompt and efficient resolution of disputes, and the balancing of harms and prejudice that would flow from lifting the stay versus preserving it all weigh in favor of lifting the stay. The reasons to do otherwise (such as the Trustee's limited resources, his burdensome workload, and his overstated assertion that there is no immediate need to resolve this question given the nature of the policy and the expiration of the policy period) have some force, but, in the Court's view, these do not outweigh the reasons for lifting the stay. Rather, allowing Continental and all affected parties to proceed in one suit will avoid possible multiple proceedings concerning the same issues. Such a unified proceeding may or may not be possible in this Court, and the Trustee has not proposed any comparably efficient way to determine the validity of the policy. And proceeding in District Court will not meaningfully harm the Trustee, the Estate, or its creditors, once the Trustee's near-term work crunch passes.

The Trustee has not identified a single case that supports his contention that "courts routinely deny motions to modify the automatic stay in Chapter 7 cases when the insurers seek to rescind the debtor's insurance" [Obj. at ¶ 30]. In support of this proposition, the Trustee relies on two Chapter 11 cases, both of which involve motions to lift the stay to adjudicate a coverage dispute, but both of which are otherwise distinguishable. In *In re Spectrum*, the court decided whether to lift the stay to allow arbitration of a coverage dispute and applied a three-factor test that

considered (1) whether a judicial forum was preferable to arbitration, (2) whether special expertise was needed to resolve the dispute, and (3) the track record of the arbitration panel, 183 B.R. at 364. The *In re Spectrum* court found all three factors favored a judicial forum, emphasizing that a potential need for "more than minimal" discovery favored federal court adjudication "rather than . . . arbitration where discovery rules may not be available." *Id.* *In re Spectrum* is inapposite because here there is no dispute that the Coverage Action will be decided in a federal court; the only question is which federal court. *In re Mego*, 28 B.R. 324, is likewise distinguishable. In that case, decided pre-*Sonnax,* the court denied relief from the stay to adjudicate rescission of debtor's insurance coverage where the debtor established direct harms of rescinding the policy, including over $500,000 in claims paid by debtor in reliance that such funds would be reimbursed under the policy, and the insurer did not show it would be prejudiced by continuance of the stay. *Id.* at 326. Here, the facts are reversed. The Trustee does not persuasively show that the Estate will concretely benefit from delaying resolution of the Coverage Action, while Continental has shown it will be prejudiced.

The Court credits the Trustee's concern that obliging the Trustee to actively litigate the Coverage Action before the May 12 time bar on commencing Chapter 5 asset recovery actions would or could interfere with the bankruptcy case and prejudice creditor's interests in successful asset recovery (*Sonnax* Factor 2). [Obj. at 10]. And the Court appreciates the Trustee's energetic efforts in challenging circumstances. The Trustee will remain busy but the harms of lifting the stay will decrease after the May 12 deadline passes. At argument, Continental's counsel was open to a grant of relief that would be effective after May 12 [Hearing Tr. 45:20–22], and the Court is directing such a result here. This timing accommodation will not eliminate all interference with the Trustee's other work on the bankruptcy case, but it reduces it.

16

In sum, although lifting the stay will require the Trustee to litigate insurance coverage issues at a time and place the Trustee does not favor, Continental has established that it will suffer harm and prejudice if the stay is not lifted, and has established cause to lift the automatic stay to permit it to pursue one consolidated determination of its coverage obligations with respect to Kossoff PLLC. Lifting the stay will permit efficient resolution of critical issues, it will avoid needless complexity of proceedings, it will serve judicial efficiency, and it will benefit all parties— even the Estate—by promoting a cost-effective and timely resolution of whether the Continental Policy is in force. The Court is persuaded that the present situation aligns with the rationale of *In re Project Orange Assoc.* and the legislative history that decision quotes. *See* 432 B.R. at 103. Continental has commenced a proceeding elsewhere that can generate necessary certainty as to the Estate's and Continental's obligations and entitlements. No "great prejudice" will result from allowing a unified adjudication in District Court, and, indeed, even the Estate may benefit as a result.

## IV.    CONCLUSION

For the foregoing reasons, the Motion is granted effective May 26, 2023. Continental is to submit a proposed order to effectuate this ruling. It is so ordered.

Dated: New York, New York
      May 10, 2023                     *s/ David S. Jones*
                                       Honorable David S. Jones
                                       United States Bankruptcy Judge