UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------

In re:

    KOSSOFF PLLC,                                                  **Case No. 21-10699 (DSJ)**
                                                                    **Chapter 7**

                      Debtor.

------------------------------------------------------------------

ALBERT TOGUT, Not Individually but Solely in
his Capacity as Chapter 7 Trustee of the Estate of
Kossoff PLLC,

                      Plaintiff,

    - against -                                        **Adv. Proc. No. 23-01094 (DSJ)**

BLOOMINGDALE'S INC. and PAMELA KOSSOFF,

                      Defendants.

------------------------------------------------------------------

**OBJECTION TO TRUSTEE'S APPLICATION FOR AN ORDER (I) DETERMINING THE DEBTOR'S PREPETITON TAX LIABILITY TO THE IRS; (II) DETERMINING THE PRIORITY STATUS OF DEBTOR'S PREPETITION TAX LIABILITY TO THE IRS; AND (III) ALLOWING THE AMENDED IRS PROOF OF CLAIM**

      Defendant Bloomingdales, Inc. ("Defendant"), through its attorneys Lemery Greisler LLC, respectfully objects to the Trustee's Application for an Order (I) Determining the Debtor's Prepetition Tax Liability to the IRS; (II) Determining the Priority Status of Debtor's Prepetition Tax Liability to the IRS; and (III) Allowing the Amended IRS Proof of Claim and, with respect thereto (the "Application"), states as follows.

## Preliminary Statement

    1.      The Trustee's Application presents the Court with an odd situation.

    2.      A claim is "deemed allowed, unless a party in interest … objects." *11 U.S.C. §502(a).*

    3.      Here, no party has filed an actual objection to the IRS's claim.

1

4. Rather, what has occurred, is that Mitchell Kossoff raised issues as to the validity of the IRS's claim, at least insofar as tax year 2015 is concerned. See Application (Doc. 702 in the main case) at ¶12.

5. As a result, the Trustee then brought on his Application which the Court previously endorsed as an appropriate vehicle to determine the validity of the claim. Application at ¶¶s 20-21.

## The Burdens of Proof

6. Courts within this circuit employ a burden-shifting methodology in which a proof of claim is *prima facie* evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion. *See In re Oneida Ltd.,* 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Cocoa Servs., L.L.C.,* No. 17-11936-JLG, 2018 WL 1801240, at *16 (Bankr. S.D.N.Y. Apr. 13, 2018). "To overcome the *prima facie* validity of the claim, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly),* 245 B.R. 768, 773 (2d Cir. BAP 2000) (internal citations omitted); *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-74 (3d Cir. 1992). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant. *In re Weatherell*, 2010 Bankr. LEXIS 3492, *3, 2010 WL 3938225, *1 (Bankr. D. Vt. Sept. 29, 2010); *Creamer v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.),* No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013). At that point, the claimant must prove by a preponderance of the evidence that under applicable law the claim should be allowed. *In re Oneida, Ltd.,* 400 B.R. at 389.

2

**The Trustee's Application**
**Shifts the Burden to the IRS to Prove the Validity of its Claim**

7. While brought about in an unusual procedural posture, it is the Trustee himself who has put the IRS' claim into controversy with his Application after Mr. Kossoff raised his issues.

8. As a result, it is incumbent upon the claimant, the IRS in this case, to prove up its claim.

9. The IRS has failed to support its claim with admissible proof. Likewise, the Trustee's Application also fails to back stop the claim with admissible proof.

**Summary of the Opposition**

10. The Application should be denied for the following reasons:

(a) The Application is not supported by admissible and competent evidence. The Trustee's expert Stephen Gray is not competent to testify as to the matters at hand. He has no tax background, did not do the underlying examination of Debtor's records and did not even write a report for the Trustee analyzing the issues. Rather, the Trustee's counsel prepared the declaration that is before the Court and Mr. Gray simply reviewed it. In no manner is he an expert competent to testify as to the matters at hand. No attempt has been made to support the admission into evidence of the numerous documents, which are inadmissible hearsay, attached to the Gray Declaration.

(b) The Application was not, as it should have been, supported by a declaration from IRS providing a basis to allow the claim.

(c) The IRS representative that was produced for deposition did not do an audit or assessment of the Debtor's tax liabilities for the periods in question and relied on IRS' records, records that she had no role in creating or maintaining, in preparing the claims she filed on behalf of the Service. Rather, she interacted with the Trustee's office in response to the inquiries of his counsel and eventually filed the amended proof of claim nearly two years following the bar date in this case and after Mr. Kossoff had initially raised his issues with the IRS' claim which prompted

3

the Trustee to approach IRS on the issues. There is simply no evidence before the Court from the IRS demonstrating the accuracy of its amended claim.

(d)     It should also be noted that both the Trustee's counsel and counsel for the IRS have recently, after Mr. Gray and the IRS representative were deposed, identified and produced additional records. As a result, discovery is not yet complete because the impacted creditors were unable to have the benefit of those records before depositions took place.

(e)     Finally, under Second Circuit authority it would not be equitable to allow the amended claim to the extent of 2015 alleged liabilities. While the Trustee most certainly disagrees with his contentions, Mr. Kossoff rebutted the presumption of validity of the original IRS claim to the extent of 2015 liabilities as detailed at ¶12 of the Application by citing to the IRS Certificate of Release of Federal Tax Lien. It was the incumbent on the IRS to prove up liabilities for 2015 and this, as set forth above, has not been done with competent, admissible, evidence. The impacted creditors, those being sued by the Trustee for fraudulent conveyances going back, in this case, to 2013, will be severely prejudiced by allowance of the claim because of IRS' alleged status as a predicate creditor. In light of the paucity of any admissible competent evidence supporting any liability for 2015, the amended claim should be disallowed to that extent.

### The Application is Not Supported by Competent Evidence
#### a. Mr. Gray's Declaration Should Carry No Weight

2.     The Trustee supports his Application with the Declaration of Stephen Gray.

3.     Under *Fed. R. Evid 702*, an expert witness may not testify unless such expert has sufficient credentials in term of knowledge, skill, experience, training, or education. Any one of the following will suffice, but the court must determine whether the proffered expert is

"appropriately"[1] qualified as an expert by knowledge, skill, experience, training, or education. Further, an expert's opinion is not admissible, *regardless* of his or her credentials, unless such opinion has a "sound basis."[2] As such, the court must determine if the expert has a sufficient basis to make it truly helpful to the trier of fact (FRE 702(b)—(d)). Thus, the Court's inquiry into admissible expert testimony focuses on three issues: (i) whether the witness is qualified to be an expert; (ii) whether the opinion is based upon reliable data and methodology; and (iii) whether the expert's testimony on a particular issue will assist the trier of fact (Pac. Life Ins. Co. v. Bank of N.Y. Mellon, 571 F. Supp 3d 106, 112 (S.D.N.Y. 2021) citing Nimely v. City of New York 414 F. 3d 381, 396-97 (2d Cir. 2005).

4. Here, Mr. Gray is not qualified to offer an opinion on the matters in dispute. His opinion, such as it is, is not supported by a sound basis because he relied heavily on the work of others and did not even draft a report, much less the Declaration.

5. He does not have the requisite training or experience to provide evidence on tax matters. Mr. Gray graduated from George Washington University in 1965 with a degree in engineering science, with a major in physics. He did additional engineering studies at Tufts University. He has no specialized training in tax or accountancy. He is not a certified public accountant, does not hold himself out as a qualified accountant and does not provide accounting services to any parties. Exhibit "A," Gray Deposition, Transcript, pages 136-138.

6. He did not do the work allegedly underlying his opinion. As his Declaration makes clear, Mr. Gray relied on the work of Verdolino & Lowey, P.C. ("Verdolino"). Gray Declaration ¶¶s 6, 13 and 16.

---

[1] 19 Bender's Federal Practice Forms *supra* note 4.
[2] *Id.*

5

7.     Mr. Gray is not in possession of all of the records that Verdolino reviewed on the tax issues nor did he review all of the records that Verdolino reviewed. Exhibit "A" page 141 and 142.

8.     Mr. Gray testified that Verdolino "undertook the work in terms of assembling information." Indeed, it appears that Mr. Gray's involvement was limited to reviewing "lots and lots of emails, looked at lots of attachments, and ultimately reviewed the final analysis and came to the ultimate conclusions we came to." That "final analysis" was prepared by Verdolino. Mr. Gray acknowledged that Verdolino did the majority of the work on the project in reviewing and analyzing the records and presenting findings. Exhibit "A" pages 143 - 144.

9.     Verdolino did not present a report to Mr. Gray. Instead, it was "trustee's counsel [that] drafted the declaration." Mr. Gray and Verdolino reviewed it and then it was finalized. Exhibit "A" page 145.

10.    Mr. Gray was not retained to provided expert tax analysis to the Trustee. Exhibit "A" page 151.

11.    Indeed, Mr. Gray did not reconcile the tax payments made by the Debtor against the tax liabilities. Exhibit "A" page 152. He relied upon the work done by Verdolino. Exhibit "A" pages 154-155.

12.    It is also important to observe that none of the records attached to the Gray Declaration are admissible as they are rank hearsay and no attempt has even been made to qualify them as admissible evidence under Fed. R. Evid. 803(6).[3] For example, numerous records from the IRS have been attached to the Declaration, yet they are not supported with a Declaration from

---

[3] Pursuant to Fed R. Evid. 1101, the rules apply in this Court.

6

IRS that would qualify them as admissible business records under the exception to the hearsay rule. For example see Gray Declaration Exhibits 20 and 21.

13. As a result, Mr. Gray is not competent to provide evidence on the Debtor's tax obligations and his declaration should be given no weight.

    b. **IRS Has Submitted Nothing to Rebut the Presumption that its Lien Release Created that the 2015 Tax Liabilities were Satisfied**

14. The Certificate of Release of Federal Tax Lien filed by the IRS in this case stated that the Debtor had "satisfied the taxes listed below" [the 12/31/2015 tax liabilities]. Gray Declaration Exhibit 18 at Bates No. 00000174.

15. It is therefore IRS' burden to support its claim and to show why the certificate was incorrect.

16. For unknown reasons, IRS did not submit a declaration in support once the Application was filed.

17. It is clear, however, from the deposition testimony of Anne Sylvia, the IRS bankruptcy specialist who signed both the original and amended claims, that she would not have had a competent foundation to support the claim in any event.

18. Importantly, she testified that she did not do audits or assessments and that it is not her job to determine whether taxes are owed or not owed. Sylvia Deposition, Exhibit "B" page 135.

19. Ms. Sylvia testified that she did not input information into the IRDS[4] system, has no responsibility for maintaining that system and that all she really did, in this case, is access information on the system. Exhibit "B" pages 186-188.

---

[4] The Integrated Data Retrieval System ("IRDS") "is a system which enables [IRS] employees … to have instantaneous visual access to certain taxpayer accounts." https://www.irs.gov/pub/irs-pia/2022-section14-integrate-data-retrieval-system-idrs.pdf

20. She also testified that she reviewed the IRDS system to determine taxes owed and the IRDS system, apparently, only "goes back four years for electronic payments, so [she] did not have access to any information on" a $110,000 payment that is at issue in this case. Exhibit "B" page 147-150 and Gray Declaration at ¶26.

21. Ms. Sylvia admitted that it was the Trustee that authorized IRS to file its amended claim because "it was late in the case." Exhibit "B" at pages 150-152 and Exhibit "C" at Bates No. 000321. She also forthrightly acknowledged that had the Trustee's office not contacted her, IRS would probably not have filed an amended claim. Exhibit "B" page 153. As such, the IRS' Certificate of Release of Federal Tax Lien should have been determinative of the 2015 tax liabilities but for the Trustee's intervention.

### c. Discovery is Not Complete

22. The Trustee produced substantial pages of records after Mr. Gray's deposition. Exhibit "D." While those records appear to be mostly payroll service records, it is not known if Mr. Gray or Verdolino reviewed them.[5]

23. More concerning is that IRS produced substantial additional pages of records late in the evening on June 27th when preparation of this response was well underway and many days after Ms. Sylvia had been deposed. Exhibit "E. Those records concern tax year 2015 which is at issue in this matter.

24. In light of these post-deposition productions, the objecting creditors should be given a limited period of to determine if additional deposition testimony is necessary.

---

[5] The undersigned and the Trustee's counsel did discuss how to deal with this late production perhaps by a stipulation but those discussions did not progress beyond an exchange of thoughts on the issue.

**d.     Equity Demands that the Amended Claim, to the Extent it Asserts 2015 Liabilities, Should be Disallowed**

25.     The Second Circuit has held that a bankruptcy court should determine whether to accept an amended claim after the expiration of the claims filing deadline with the following two-step inquiry:

> First, they examine "'whether there was [a] timely assertion of a similar claim or demand evidencing an intention to hold the estate liable.'" [In re Integrated Res., Inc., 157 B.R. 66, 70 (S.D.N.Y. 1993)] (quoting In re Black & Geddes, Inc., 58 B.R. 547, 553 [S.D.N.Y. 1993]). An amendment will meet this threshold if it "1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim." *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990) (citing In re G.L. Miller & Co., 45 F.2d 115, 116 [2d Cir. 1930]). Second, if an amendment does, in fact, "relate back" to the timely filed claim, courts will "examine each fact within the case and determine whether it would be equitable to allow the amendment." *In re Integrated Res., Inc.*, 157 B.R. 66 at 70. Multiple factors play a role in this analysis, including whether the debtor, or other creditors, would be unduly prejudiced by the amendment, or whether, instead, other creditors would "receive a windfall" from the disallowance of the amendment, and whether the late claimant acted in good faith and the delay was justified. *See id.*; *see also In re McLean Indus., Inc.*, 121 B.R. at 708. Of these, however, "the critical consideration is whether the opposing party will be unduly prejudiced by the amendment." *In re Integrated Res., Inc.*, 157 B.R. 66 at 70.

*Midland Cogeneration Venture v. Enron Corp. (In Re Enron Corp.)*, 419 F.3d 115. 133 (2d Cir. 2005).

26.     For several reasons, it would not be equitable to allow the amended claim to the extent of the 2015 alleged tax liabilities.

27.     Mr. Kossoff rebutted the presumption of validity of the original IRS claim to the extent of 2015 liabilities as detailed at ¶12 of the Application by citing to the IRS Certificate of Release of Federal Tax Lien.

28.     With the Trustee having then put the IRS amended claim into controversy before the Court, it was the incumbent upon the IRS to prove up liabilities for 2015 and this, as set forth

9

above, has not been done with any competent, admissible, evidence put forth by either the IRS or the Trustee. IRS has not supported its claim with an affidavit of declaration under penalties of perjury. Apparently, IRS did not audit the debtor. Instead, the impetus for IRS doing any review of the liabilities, however superficial IRS' review was, came from the Trustee. That review involved discussions between Ms. Sylvia, who did not audit the Debtor or even do tax assessments, and the Trustee's attorneys.

29. The impacted creditors, those being sued by the Trustee for fraudulent conveyances going back, in this case, to 2013, will be severely prejudiced by allowance of the claim because of IRS' status as a predicate creditor.

30. It is clear that but for the Trustee's initiative, IRS probably would not have filed an amended claim thereby making its Certificate of Release of Tax Lien determinative on any 2015 liability.

31. Finally, the claims bar date in the case was April 11, 2022. IRS did not file its amended claim until February 5, 2024; approximately 22 months after the bar date. Claims Register at Dkt. No. 21-10699.

32. In light of these factors and the complete lack of competent admissible evidence supporting any liability for 2015, the amended claim should be disallowed to that extent.

**WHEREFORE**, it is respectfully requested that the Court deny the Trustee's application to the extent of disallowing the IRS claim for 2015 liabilities and grant such other and further relief as may be just, necessary and proper.

Dated: July 2, 2024
       Albany, New York       **LEMERY GREISLER LLC**

      By:    /s/Paul A. Levine
           Paul A. Levine, Esq.
           677 Broadway - 8th Floor
           Albany, New York 12207
           Telephone: (518) 433-8800
           plevine@lemerygreisler.com

           *Attorneys for Defendant Bloomingdales, Inc.*