TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Neil Berger
Minta J. Nester

*Attorneys for the Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
                                              :
In re:                                        :    Chapter 7
                                              :
KOSSOFF PLLC,                                 :    Case No. 21-10699 (DSJ)
                                              :
                     Debtor.                  :
------------------------------------------------------------ X
                                              :
ALBERT TOGUT, Not Individually but Solely     :
in His Capacity as Chapter 7 Trustee of the   :
Estate of Kossoff PLLC,                       :
                                              :    Adv. Pro. No. 25-_____ (DSJ)
                     Plaintiff,               :
                                              :
            v.                                :
                                              :
NOAH KOSSOFF,                                 :
                                              :
                     Defendant.               :
------------------------------------------------------------ X
```

## COMPLAINT[1]

Albert Togut, not individually but solely in his capacity as Chapter 7

Trustee (the "Plaintiff" or the "Trustee") of the estate of Kossoff PLLC (the "Debtor") in

the above-captioned Chapter 7 bankruptcy case (the "Chapter 7 Case") and as Plaintiff

in this adversary proceeding (the "Adversary Proceeding"), by and through his

attorneys, Togut, Segal & Segal LLP, hereby makes this complaint (the "Complaint")

---

[1]   The time within which this Complaint may be timely filed was extended by an agreement between
      the above-captioned parties and an order of the Court. *See* Docket No. 831.

against Joshua Kossoff ("Joshua"), and in support thereof respectfully alleges upon information and belief based upon reasonable diligence that:

## SUMMARY OF THE ACTION[2]

Prior to being disbarred and sent to prison on May 6, 2022 for stealing millions of dollars from the Debtor and dozens of its clients, Mitchell H. Kossoff ("Kossoff") was a prominent real-estate attorney in New York City and served as the sole managing member of the Debtor. However, the records in the Chapter 7 Case and the state court criminal case against Kossoff demonstrate that for years, Kossoff improperly used funds in the Debtor's bank accounts to enrich his family members, including his son Noah.

In total, Kossoff caused the Debtor to make transfers from its operating accounts to Noah totaling $82,703.28. The Debtor never had any contractual or legal obligation to make these transfers, and it didn't receive fair consideration in exchange for them.

The Avoidable Transfers made to and for the benefit of Noah neither conferred a benefit to the Debtor nor advanced any legitimate business purpose of the Debtor. The funds used to make these fraudulent conveyances belonged to the Debtor and should have been available to the Debtor's creditors, rather than to Kossoff's son.

For the benefit of the Debtor's estate, the Trustee commences this Adversary Proceeding to avoid and recover the Debtor's transfers made to, and for the benefit of, Noah as fraudulent conveyances or, in the alternative, as preferential transfers; and (b) to disallow any claims filed by Noah in the Debtor's above-captioned Chapter 7 Case.

---

[2] Capitalized terms used but not defined in this Preliminary Statement shall have the meaning ascribed to such terms where elsewhere defined herein.

## THE PARTIES AND RELEVANT NON-PARTIES

**I.      The Parties**

1.      Plaintiff is the Chapter 7 Trustee of the Debtor.

2.      Noah is Mitchell Kossoff's son, and he is an individual residing in the state of New York.

3.      Noah is an "insider" of the Debtor pursuant to Bankruptcy Code section 101(31)(B)(vi).

**II.     Relevant Non-Parties**

4.      The Debtor is a New York professional limited-liability company that, prior to April 13, 2021 (the "<u>Petition Date</u>"), operated as a law firm located at 217 Broadway, Suite 401, New York, New York 10007.

5.      The Debtor's Articles of Organization were filed with the New York Secretary of State on December 6, 2013.

6.      From its inception until the Petition Date, the Debtor served clients in New York City's real-estate industry.

7.      Prior to the Petition Date, Kossoff was an attorney licensed to practice in the State of New York, and he specialized his law practice in structuring and negotiating real-estate transactions.

8.      Kossoff has been disbarred and he is now incarcerated, serving a jail term of 4.5 years to 13.5 years, based on his own admission that he stole more than $14 million from the Debtor, its clients and others.

9.      Over the course of his career, Kossoff was a member of several law firms bearing his name, including:  (1) Kossoff, Alper & Unger;  (2) Kossoff & Unger; and (3) the Debtor.

10.     Kossoff, Alper & Unger and Kossoff & Unger ceased to operate as law firms prior to the Debtor's formation and organization in December 2013.

11.     Kossoff is the Debtor's sole member and an "insider" of the Debtor as that term is defined in section 101(31)(B) of the Bankruptcy Code.

## JURISDICTION AND VENUE

12.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the United States District Court for the Southern District of New York's *Amended Standing Order of Reference, M-431* dated January 31, 2012, which refers such proceedings to this Court.

13.     This Adversary Proceeding is commenced pursuant to sections 105(a), 323, 502(d), 544, 547, 548, 550, and 551 of the Bankruptcy Code;  Rules 3007, 6009 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); sections 273, 274, 275, 276, 276-a, 278, and 279 of the New York Debtor & Creditor Law as applicable to transactions occurring before April 4, 2020 ("NYDCL");  sections 273, 274, and 276 of the New York Debtor & Creditor Law as applicable to transactions occurring on or after April 4, 2020 ("NYUVTA");  and sections 3304 and 3306 of title 28 chapter 176 of the United States Code (the "FDCPA").

14.     This Adversary Proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), (H), and (O), and this Court has jurisdiction to hear and to determine this proceeding and to enter a final order and judgment therein.  In the event that this Court or any other court finds any part of this Adversary Proceeding to be "non-core," this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. § 1334 because the relief sought herein relates to the Chapter 7 Case and will have a material impact on the administration of the Debtor's estate.

15.     Plaintiff consents to the entry of final orders and judgments by this Court in this Adversary Proceeding pursuant to Bankruptcy Rule 7008.  Plaintiff also consents to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders on judgments consistent with Article III of the United States Constitution.

16.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409 because this Adversary Proceeding arises in and is related to the Chapter 7 Case pending in this Court.

## FACTUAL ALLEGATIONS

I.     **Kossoff's Transfer of Debtor Funds to Noah Kossoff**

17.     In his LinkedIn profile, Noah represents that:  he was enrolled in undergraduate studies at the Wheaton College from 2012-2016;  and has been continuously employed by various employers other than the Debtor since 2015.

18.     Between December 19, 2014 and February 9, 2021, Kossoff caused the Debtor to make transfers to Noah from the Debtor's bank accounts for Noah's benefit, including a $50,000 transfer directly from the Debtor's IOLA Account (defined herein) shortly prior to the commencement of the Chapter 7 Case.

19.     The Debtor had no obligation to make these transfers.

20.     Between December 19, 2014 and February 9, 2021, Kossoff caused the Debtor to make direct transfers to Noah from the Debtor's bank accounts totaling $72,703.28.  A schedule listing the direct transfers to Noah is attached hereto as **Exhibit 1** and incorporated by reference as if set forth herein.

21.     Kossoff permitted Noah to debit these direct transfers from the Debtor's bank accounts.

22.     The direct transfers involved various dates and funds with no discernable pattern. For instance, on September 18, 2020, Kossoff caused the Debtor to transfer $50,000 to Noah from the Debtor's IOLA Account. *See* Ex. 1. The next transfer did not occur until February 9, 2021 at which time Noah received $14,025 from the Debtor's operating account. *See* Ex. 1.

23.     Between August 29, 2018 and September 25, 2018, Kossoff caused the Debtor to make indirect transfers to Noah totaling $10,000, whereby Kossoff (a) first transferred funds from the Debtor's bank accounts to his personal bank account ending in 3892 (the "Personal Account") and (b) then Noah debited those funds from Kossoff's Personal Account within a few days. A schedule listing the indirect transfers to Noah is attached hereto as **Exhibit 2** and is incorporated by reference as if set forth herein.

24.     In total, the Debtor transferred to Noah $82,703.28 from the Debtor's accounts (the "Avoidable Transfers"), consisting of direct transfers totaling $72,703.28 and indirect transfers totaling $10,000, the entirety of which was for the benefit of Noah. *See* Exs. 1-2.

## II.     The Debtor's IOLA Accounts

25.     Like other law firms in the State of New York, the Debtor was obligated to maintain, and at all relevant times did maintain, in separate bank accounts: (1) funds that had been paid by the Debtor's clients as retainers for legal services to be rendered by the Debtor; and (2) funds that the Debtor otherwise held in trust for its clients.

26.     Under New York law, law firms are required to segregate such escrow accounts from the firm's own accounts, and lawyers are strictly prohibited from using such escrowed funds unless and until the funds have been earned and deposited

into the firm's/lawyer's own accounts. Any interest or dividends that accrue on funds held in the segregated escrow accounts are the property of the client.

27. The Debtor maintained what are known as Interest on Lawyer Accounts (the "IOLA Accounts") to purportedly safeguard such client funds.

28. Under New York law, when a lawyer or a law firm receives funds from a client in a fiduciary capacity and the lawyer determines that the funds are unlikely to generate sufficient interest income to justify the expense of administering a separate segregated account for the client's benefit, the lawyer must deposit such funds into his IOLA account. Any interest or dividends that accrue on funds held in IOLA accounts are themselves segregated and periodically provided to the New York Interest on Lawyer Account Fund (the "IOLA Fund"), a New York government entity that distributes funds for the provision of basic legal services to the State's poor.

29. At all relevant times, Kossoff improperly used the Debtor's IOLA accounts as if they were common depositories of not only client funds, but also his personal funds and loan proceeds, among other types of funds.

30. Kossoff regularly deposited non-client funds into the Debtor's IOLA accounts. Kossoff also regularly transferred funds from the Debtor's IOLA accounts to and for the benefit of parties other than the Debtor's clients, including himself and his family members.

31. For example, between February 2017 and the Petition Date, Kossoff deposited at least $51,000 from his personal checking accounts into the Debtor's IOLA accounts, and he caused the Debtor to transfer at least $136,000 from the Debtor's IOLA accounts into his personal checking accounts. A schedule of these deposits and transfers is annexed hereto as **Exhibit 3** and is incorporated by reference as set forth herein.

32.     In addition, the Debtor paid $205,000 to Phyllis Kossoff, Kossoff's mother, from the Debtor's IOLA accounts on account of Kossoff's personal obligations to her during the period of March 2014 through May 2018.  *See* Exhibit 3.

33.     Kossoff also used client funds held in the Debtor's IOLA Accounts to cover overdrafts in the Debtor's operating account and to prop up his non-Debtor insolvent businesses, among other things.  Kossoff then caused the Debtor to transfer money back into the IOLA Accounts from numerous other accounts he controlled to help conceal his scheme.

34.     For example, in October of 2018, Kossoff caused an overdraft in the Debtor's operating account to be covered, in part, by a $75,000 transfer from the Debtor's IOLA Accounts.  And in January of 2021, Kossoff caused the Debtor to cover another overdraft in the Debtor's operating account with transfers totaling $145,000 from the Debtor's IOLA Accounts.

35.     Conversely, Kossoff also transferred funds from the other accounts he controlled into the Debtor's IOLA Accounts to prevent overdrafts in those accounts. He then caused the Debtor to transfer what had become commingled funds back out of the Debtor's IOLA Accounts to his other accounts.  For example, in May of 2020, Kossoff transferred funds from the Debtor's operating account and other accounts he controlled to cover a $284,900 transfer to one of the Debtor's clients from the Debtor's IOLA Accounts.  And in September of 2020, Kossoff caused the Debtor to make transfers totaling $300,000 from the Debtor's operating account to the Debtor's IOLA Accounts to cover a check drawn against those same accounts for that same amount. The Debtor's improper transfers to and from the Debtor's IOLA Accounts occurred hundreds of times over many years.

36.      In his May 2022 Plea Agreement (the "Plea Agreement") with the
Manhattan District Attorney, Kossoff admitted that:

a.   From at least December 2017 to April 2021, I was an
attorney licensed to practice in New York and the sole
member of Kossoff PLLC, a law firm located in
Manhattan.  Part of my law firm's business was to
collect and hold funds in trust for my clients and other
individuals involved in matters relating to my clients.
I did not have permissions or authority to disburse the
funds without authorization from the relevant parties
to do so.

b.   . . . I admit that, from on or about December 21, 2017 to
on or about April 9, 2021, in the County of New York, I
engaged in a systematic ongoing course of conduct
with the intent to defraud more than one person and
to obtain property from more than one person by false
or fraudulent pretenses, representations, or promises.
In doing so, I obtained more than $1,000 from such
person.  In particular, I defrauded multiple clients, by
falsely representing that certain funds would be held
in escrow and, notwithstanding those representations,
intentionally causing unauthorized and impermissible
disbursement of those funds.

A copy of the Plea Agreement is annexed hereto as **Exhibit 4**.

37.      The Appendix to the Plea Agreement lists 35 persons and entities
from whom Kossoff stole totaling approximately $14.5 million, including amounts
stolen from the Debtor's IOLA accounts.

38.      However, the Trustee's investigation to date, including his review
of claims filed in the Chapter 7 Case and in other litigations against Kossoff and the
Debtor, has revealed that Kossoff stole approximately $18.5 million from the Debtor's
clients.

39.      Starting in December 2013 and continuing until January 2021,
Kossoff caused the Debtor to make numerous, improper payments to Defendant from
the Debtor's bank accounts, including its IOLA accounts, for Kossoff's own benefit.

40.     As a result of the commingling of funds in the Debtor's IOLA accounts, transfers from the IOLA accounts constitute transfers of funds in which the Debtor had an interest.

**III.     The Debtor Received No Value**

41.     Noah was never a client of the Debtor and he never delivered funds to the Debtor.

42.     The Debtor received no value or benefit in exchange for the Avoidable Transfers.  The Debtor was not an obligor to Noah regarding the Avoidable Transfers.

43.     There was no business purpose for the Avoidable Transfers.

44.     Instead, Noah received all of the value of the Avoidable Transfers that were made to or for his benefit.  More specifically, he received the Debtor's funds without providing fair consideration, which was at the expense of the Debtor and its creditors.

**IV.     The Debtor Was Insolvent, Had an Unreasonably Small Capital Base, and Incurred, and Intended to Incur, Debts Beyond the Debtor's Ability to Repay Them During the Relevant Time Period**

45.     The Debtor's books and records demonstrate that the Debtor was insolvent no later than December 31, 2013 and remained insolvent at all relevant times thereafter until the Petition Date, by any measurement of insolvency.

46.     The following balance-sheet analysis of the Debtor's assets and liabilities based upon the Debtor's records demonstrates the Debtor's insolvency:

| DATE | ASSETS | LIABILITIES | NET ASSETS |
|------|--------|-------------|------------|
| 12/31/2013 | $572,508 | $2,840,663 | ($2,268,155) |
| 06/30/2014 | $233,469 | $2,844,222 | ($2,610,752) |

| DATE | ASSETS | LIABILITIES | NET ASSETS |
|---|---|---|---|
| 12/31/2014 | $843,893 | $2,804,103 | ($1,960,210) |
| 01/26/2015 | $585,160 | $3,220,650 | ($2,635,490) |
| 06/30/2015 | $1,367,474 | $5,432,675 | ($4,065,201) |
| 12/31/2015 | $770,028 | $7,386,390 | ($6,616,362) |
| 06/21/2016 | $1,009,438 | $7,850,757 | ($6,841,319) |
| 06/30/2016 | $757,104 | $8,829,352 | ($8,072,248) |
| 12/31/2016 | $1,310,242 | $11,800,038 | ($10,489,796) |
| 06/30/2017 | $1,377,668 | $12,327,635 | ($10,949,967) |
| 12/31/2017 | $1,202,186 | $14,392,997 | ($13,190,811) |
| 06/30/2018 | $1,392,697 | $15,859,134 | ($14,466,437) |
| 12/31/2018 | $1,688,485 | $19,211,671 | ($17,523,187) |
| 06/30/2019 | $1,834,435 | $20,545,379 | ($18,710,944) |
| 12/31/2019 | $1,207,978 | $25,479,490 | ($24,271,512) |
| 06/30/2020 | $1,375,584 | $27,387,619 | ($26,012,034) |
| 12/31/2020 | $1,116,077 | $29,600,162 | ($28,484,085) |
| 03/31/2021 | $936,069 | $29,959,993 | ($29,023,924) |

47.    Additional facts support the conclusion that the Debtor was insolvent, insufficiently capitalized, and/or unable to pay its debts as they became due during the periods relevant to this Complaint.  For example:

    a.  The Debtor conducted its business with insufficient capital no later than December 31, 2013, and remained insufficiently capitalized at all relevant times thereafter, until the Petition Date;

    b.  The Debtor incurred, was intending to incur, and/or believed that it would incur debts beyond its ability to

      pay such debts as they matured beginning on or after December 31, 2013, and continuing until the Petition Date;

c.   The Debtor experienced regular overdrafts and negative bank account balances at Valley National Bank and J.P. Morgan Chase Bank, N.A. during the relevant period;

d.   The Debtor failed to pay various creditors on a timely basis and could not timely meet its obligations as they became due during the relevant period;

e.   Beginning during 2016 and continuing until April 2021, the Debtor borrowed and became obligated to repay at least $9.6 million in numerous high-interest-rate cash-advance transactions that purportedly pledged the Debtor's future accounts receivable as collateral for same-day cash;

f.   On February 10, 2022, the Internal Revenue Service (the "IRS") filed proof of claim number 37 in the Chapter 7 Case (the "IRS POC"). The IRS POC lists obligations owed by the Debtor for unpaid employee-withholding taxes in the amount of $335,411.08 due for periods beginning in 2015;

g.   In his plea agreement with the Manhattan District Attorney, Kossoff admitted that since at least December 2017, he stole more than $14 million from multiple persons and clients of the Debtor, including from the Debtor's IOLA accounts;  and

h.   Proofs of Claim filed in the Chapter 7 Case total not less than $20 million.

**V.    The Debtor is Forced into Bankruptcy**

     48.    On the Petition Date, creditors of the Debtor commenced the Chapter 7 Case by filing an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against the Debtor in this Court.

     49.    On May 11, 2021, this Court entered an order for relief under Chapter 7 of the Bankruptcy Code [Docket No. 14].

50.      On May 12, 2021, the Trustee was appointed as the Chapter 7 Interim Trustee of the Debtor [Docket No. 15];  he accepted his appointment, duly qualified, and following the section 341 meeting of creditors, he is currently acting as the trustee of the Debtor's estate.

## VI.      The IRS Holds a Prepetition Claim Against the Debtor

51.      On December 15, 2021, the Debtor filed schedules of assets and liabilities and a statement of financial affairs [Docket No. 310], and on April 5, 2022, the Debtor filed amendments thereto (cumulatively, the "Schedules") [Docket No. 359].

52.      As of the Petition Date, the Debtor owed unpaid prepetition tax obligations to the IRS for the tax year ending December 31, 2015, which is subject to the IRS proof of claim (Claim 37-1) filed on February 10, 2022, as amended by the amended claim (Claim 37-2) filed on February 5, 2024 (altogether, the "IRS Claim").

53.      The IRS's right to assess the IRS Claim on account of 2015 tax liabilities arose no later than January 1, 2016.

54.      The Debtor received notice of the tax assessment underlying the IRS Claim no later than March 28, 2016.

55.      The IRS amended proof of claim (37-2) lists the obligation owed by the Debtor as unpaid taxes in the amount of $395,206.44 under the Federal Insurance Contributions Act.

56.      The IRS Claim, as set forth in the amended proof of claim (37-2), is an allowable claim under section 502 of the Bankruptcy Code.

57.      The IRS Claim is a debt owed to the United States of America.

58.      The IRS is a predicate "creditor" within the meaning of section 544(b) of the Bankruptcy Code.

59.     On February 14, 2025, the Court ruled that "the IRS has a valid claim for the 2015 tax year" and the IRS's claim for tax liabilities enabled the agency to serve as a "creditor holding an unsecured claim that is allowable under section 502 as required by 11 U.S.C. § 544(b)(1)" [Docket No. 840].

**VII.    Kossoff Admits Scheme to Defraud and Is Sentenced to Prison**

60.     On December 13, 2021, in open court in New York, Kossoff pleaded guilty to, among other things, orchestrating a scheme to defraud the Debtor's clients.

61.     Kossoff admitted that he stole at least $14.5 million from dozens of clients and others, including millions of dollars that had been deposited into the Debtor's bank IOLA and operating accounts.

62.     On May 6, 2022, New York State Supreme Court Judge Laurie Peterson sentenced Kossoff to serve not less than 4.5 years but not more than 13.5 years in prison as punishment for his crimes.

<u>**COUNT I**</u>

**AVOIDANCE AND RECOVERY OF CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544 and 550;
<u>NYDCL §§ 273-75 and 278-79;  and FDCPA §§ 3304 and 3306</u>**

63.     Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

64.     Between December 19, 2014 and January 20, 2015, during the ten (10) years preceding the Petition Date, the Debtor made transfers to, and for the benefit of, Noah (the "<u>Group-One Transfers</u>"), as identified by the dates and amounts set forth in the schedule that is annexed hereto as **Exhibit 5** and which is incorporated by reference as if fully set forth herein.

65.     The Debtor did not receive fair consideration or reasonably equivalent value in exchange for the Group-One Transfers because the Debtor did not

receive any benefit from them.

66.     Instead, the Group-One Transfers benefitted Noah, who was the initial, immediate, and/or mediate transferee and/or beneficiary of the Group-One Transfers.

67.     The Debtor was insolvent when each of the Group-One Transfers was made, or was rendered or became insolvent as a result of the Group-One Transfers.

68.     The Debtor made the Group-One Transfers when the Debtor was engaged, and/or was about to engage, in business or transactions for which its remaining property after making the Group-One Transfers was an unreasonably small amount of capital.

69.     The Debtor remained inadequately capitalized as a result of the Group-One Transfers thereafter until the Petition Date.

70.     The Debtor made the Group-One Transfers when the Debtor intended to incur, believed that it would incur, and/or reasonably should have believed that it would incur debts beyond its ability to pay them as they matured and/or became due.

71.     The Debtor remained unable to pay its debts as they matured and/or became due as a result of the Group-One Transfers thereafter until the Petition Date.

72.     In addition to being fraudulent for these reasons, each of the Group-One Transfers made to and for the benefit of Noah was fraudulent insofar as these transfers transferred the Debtor's assets to and for the benefit of Noah, who was an "insider" of the Debtor at the time of each of the Group-One Transfers, to the detriment of the Debtor's present and/or future creditors.

73.     Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy

Code and (a) sections 273, 274, 275, 278, and/or 279 of the NYDCL and/or (b) sections
3304(a)(1), 3304(b)(1)(B)(i), 3304(b)(1)(B)(ii), and 3306 of the FDCPA, Plaintiff is entitled
to a judgment against Noah: (i) avoiding the Group-One Transfers; (ii) recovering each
Group-One Transfer and/or its value from Noah; (iii) disallowing any claims filed by
Noah until such time as each Group-One Transfer and/or its value is repaid to the
Plaintiff; (iv) awarding attorneys' fees and costs from Noah; and (v) awarding any
other relief that the Court deems just and proper.

### COUNT II

**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO
11 U.S.C. §§ 544 and 550; NYDCL §§ 276, 276-a, and 278-79; and
FDCPA §§ 3304(b)(1)(A) and 3306**

74.     Plaintiff repeats, reiterates, and realleges each of the foregoing
allegations of this Complaint as if fully set forth herein.

75.     Under oath and in open court at the hearing at which the New York
court accepted his Plea Agreement, Kossoff admitted to "engag[ing] in a systematic
ongoing course of conduct with the intent to defraud . . . multiple clients of [his] law
firm"—present and/or future creditors of the Debtor—"[f]rom at least December 2017
to April 2021."

76.     The Debtor made the Group-One Transfers with actual intent to
hinder, delay, or defraud one or more present and/or future creditors of the Debtor.

77.     The Group-One Transfers did not, and were not intended to,
benefit the Debtor.

78.     The Group-One Transfers were intended to, and did, benefit Noah,
who was the initial, immediate, and/or mediate transferee and/or beneficiary of the
Group-One Transfers.

79.     In addition to being fraudulent for these reasons, each of the

Group-One Transfers made to and for the benefit of Noah was made with actual intent to hinder, delay, or defraud present and/or future creditors of the Debtor insofar as each of these transfers transferred the Debtor's assets to and for the benefit of Noah, who was an "insider" of the Debtor at the time of each of the Group-One Transfers, to the detriment of the Debtor's present and/or future creditors.

80.     Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy Code and (a) sections 276, 276-a, 278, and/or 279 of the NYDCL and/or (b) sections 3304(b)(1)(A) and 3306 of the FDCPA, Plaintiff is entitled to a judgment against Noah: (i) avoiding the Group-One Transfers; (ii) recovering the Group-One Transfers and/or its value from Noah to whom or for whose benefit each Group-One Transfer was made; (iii) disallowing any claim filed by Noah until such time as each Group-One Transfer and/or its value is repaid to the Plaintiff; (iv) awarding attorneys' fees and costs from Noah; and (v) awarding any other relief that the Court deems just and proper.

## COUNT III

**AVOIDANCE AND RECOVERY OF CONSTRUCTIVELY FRAUDULENT
TRANSFERS PURSUANT TO 11 U.S.C. §§ 544 and 550;
NYDCL §§ 273-75 and 278-79; and FDCPA §§ 3304 and 3306**

81.     Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

82.     Between February 10, 2016 and September 25, 2018, during the six (6) years preceding the Petition Date, the Debtor made transfers to, or for the benefit of, Noah (the "Group-Two Transfers"), as identified by the dates and in the amounts set forth in the schedule which is annexed hereto as **Exhibit 6** and which is incorporated by reference as if fully set forth herein.

83.     The Debtor did not receive reasonably equivalent value in exchange for the Group-Two Transfers because the Debtor did not receive any benefit

from them.

84.     Instead, the Group-Two Transfers were intended to, and did, benefit Noah, who was the initial, immediate, and/or mediate transferee and/or beneficiary of the Group-Two Transfers.

85.     The Debtor was insolvent when each of the Group-Two Transfers was made or was rendered or became insolvent as a result of the Group-Two Transfers.

86.     The Debtor made the Group-Two Transfers when the Debtor was engaged, and/or was about to engage, in business or transactions for which its remaining property after making the Group-Two Transfers was an unreasonably small amount of capital.

87.     The Debtor remained inadequately capitalized as a result of the Group-Two Transfers thereafter until the Petition Date.

88.     The Debtor made the Group-Two Transfers when the Debtor intended to incur, believed that it would incur, and/or reasonably should have believed that it would incur debts beyond its ability to pay them as they matured and/or became due.

89.     The Debtor remained unable to pay its debts as they matured and/or became due as a result of the Group-Two Transfers thereafter until the Petition Date.

90.     In addition to being fraudulent for these reasons, each of the Group-Two Transfers made to and for the benefit of Noah was fraudulent insofar as these transfers transferred the Debtor's assets to and for the benefit of Noah, who was an "insider" of the Debtor at the time of each of the Group-Two Transfers, to the detriment of the Debtor's present and/or future creditors.

91.     Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy

18

Code and (a) sections 273, 274, 275, 278, and/or 279 of the NYDCL and/or (b) sections 3304(a)(1), 3304(b)(1)(B)(i), 3304(b)(1)(B)(ii), and 3306 of the FDCPA, Plaintiff is entitled to a judgment against Noah:  (i) avoiding the Group-Two Transfers;  (ii) recovering each Group-Two Transfer and/or its value from Noah to whom each Group-Two Transfer was made;  (iii) disallowing any claim filed by Noah until such time as each Group-Two Transfer and/or its value is repaid to the Plaintiff;  (iv) awarding attorneys' fees and costs from Noah;  and (v) awarding any other relief that the Court deems just and proper.

## COUNT IV

### AVOIDANCE AND RECOVERY OF
### FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 11 U.S.C. §§ 544 and 550; NYDCL §§ 276, 276-a, and 278-79;  and FDCPA §§ 3304(b)(1)(A) and 3306

92.    Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

93.    Under oath and in open court at the hearing at which the New York court accepted his Plea Agreement, Kossoff admitted to "engag[ing] in a systematic ongoing course of conduct with the intent to defraud . . . multiple clients of [his] law firm"—present and/or future creditors of the Debtor—"[f]rom at least December 2017 to April 2021."

94.    The Debtor made the Group-Two Transfers with actual intent to hinder, delay, or defraud one or more present and/or future creditors of the Debtor.

95.    The Group-Two Transfers did not, and were not intended to, benefit the Debtor.

96.    The Group-Two Transfers were intended to, and did, benefit Noah, who was the initial, immediate, and/or mediate transferee and/or beneficiary of the Group-Two Transfers.

97.    Each of the Group-Two Transfers made to Noah was made with actual intent to hinder, delay, or defraud present and/or future creditors of the Debtor insofar as each of these transfers transferred the Debtor's assets to and for the benefit of Noah, who was an "insider" of the Debtor at the time of each of the Group-Two Transfers, to the detriment of the Debtor's present and/or future creditors.

98.    Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy Code and (a) sections 276, 276-a, 278, and/or 279 of the NYDCL and/or (b) sections 3304(b)(1)(A) and 3306 of the FDCPA, Plaintiff is entitled to a judgment against Noah: (i) avoiding the Group-Two Transfers;  (ii) recovering each Group-Two Transfer and/or its value from Noah;  (iii) disallowing any claim filed by Noah until such time as each Group-Two Transfer and/or its value is repaid to the Plaintiff;  (iv) awarding attorneys' fees and costs from Noah;  and (v) awarding any other relief that the Court deems just and proper.

## COUNT V

**AVOIDANCE AND RECOVERY OF CONSTRUCTIVELY FRAUDULENT
TRANSFERS PURSUANT TO 11 U.S.C. §§ 544 and 550;
NYUVTA §§ 273(a)(2), 274, and 276;  and FDCPA §§ 3304 and 3306**

99.    Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully se t forth herein.

100.    Between September 18, 2020 and February 9, 2021, the Debtor made transfers to and for the benefit of Noah (the "Group-Three Transfers"), as identified by the dates and in the amounts set forth in the schedule which is annexed hereto as **Exhibit 7** and which is incorporated by reference as if fully set forth herein.

101.    The Debtor did not receive reasonably equivalent value in exchange for the Group-Three Transfers because the Debtor did not receive any benefit

from them.

102.    Instead, the Group-Three Transfers were intended to, and did, benefit Noah, who was the initial, immediate, and/or mediate transferee and/or beneficiary of the Group-Three Transfers.

103.    The Debtor was insolvent when each of the Group-Three Transfers was made or was rendered or became insolvent as a result of the Group-Three Transfers.

104.    The Debtor made the Group-Three Transfers when the Debtor was engaged, and/or was about to engage, in business or transactions for which its remaining property after making the Group-Three Transfers was an unreasonably small amount of capital.

105.    The Debtor remained inadequately capitalized as a result of the Group-Three Transfers thereafter until the Petition Date.

106.    The Debtor made the Group-Three Transfers when the Debtor intended to incur, believed that it would incur, and/or reasonably should have believed that it would incur debts beyond its ability to pay them as they matured and/or became due.

107.    The Debtor remained unable to pay its debts as they matured and/or became due as a result of the Group-Three Transfers thereafter until the Petition Date.

108.    In addition to being fraudulent for these reasons, each of the Group-Three Transfers transferred the Debtor's assets to and for the benefit of Noah, who was an "insider" of the Debtor at the time of each of the Group-Three Transfers, to the detriment of the Debtor's present and/or future creditors.

109.    Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy

Code and (a) sections 273(a)(2)(i), 273(a)(2)(ii), 274(a), 274(b), and 276 of the NYUVTA

and/or (b) sections 3304(a)(1), 3304(b)(1)(B)(i), 3304(b)(1)(B)(ii), and 3306 of the FDCPA,

Plaintiff is entitled to a judgment against Noah:  (i) avoiding the Group-Three Transfers;

(ii) recovering each Group-Three Transfer and/or its value from Noah on whose behalf

each Group-Three Transfer was made;  (iii) disallowing any claim filed by until such

time as each Group-Three Transfer and/or its value is repaid to the Plaintiff;

(iv) awarding attorneys' fees and costs from Noah;  and (v) awarding any other relief

that the Court deems just and proper.

### COUNT VI

**AVOIDANCE AND RECOVERY OF CONSTRUCTIVELY FRAUDULENT
TRANSFERS PURSUANT TO 11 U.S.C. §§ 544 and 550;
NYUVTA §§ 273(a)(1) and 276;  and FDCPA §§ 3304(b)(1)(A) and 3306**

110.    Plaintiff repeats, reiterates, and realleges each of the foregoing

allegations of this Complaint as if fully set forth herein.

111.    Under oath and in open court at the hearing at which the New York

court accepted his Plea Agreement, Kossoff admitted to "engag[ing] in a systematic

ongoing course of conduct with the intent to defraud . . . multiple clients of [his] law

firm"—present and/or future creditors of the Debtor—"[f]rom at least December 2017

to April 2021."  See Ex. 3.

112.    The Debtor made the Group-Three Transfers with actual intent to

hinder, delay, or defraud one or more present and/or future creditors of the Debtor.

113.    The Group-Three Transfers did not, and were not intended to,

benefit the Debtor.

114.    The Group-Three Transfers were intended to, and did, benefit

Noah who was the initial, immediate, and/or mediate transferee and/or beneficiary of

the Group-Three Transfers.

115.     Each of the Group-Three Transfers was made with actual intent to hinder, delay, or defraud present and/or future creditors of the Debtor insofar as each of these transfers transferred the Debtor's assets for the benefit of Noah, who was an "insider" of the Debtor at the time of each of the Group-Three Transfers, to the detriment of the Debtor's present and/or future creditors.

116.     Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy Code and (a) sections 273(a)(1) and 276 of the NYUVTA and/or (b) sections 3304(b)(1)(A) and 3306 of the FDCPA, Plaintiff is entitled to a judgment against Noah: (i) avoiding the Group-Three Transfers; (ii) recovering each Group-Three Transfer and/or its value from the Noah on whose behalf each Group-Three Transfer was made; (iii) disallowing any claim filed by Noah until such time as each Group-Three Transfer and/or its value is repaid to the Plaintiff; (iv) awarding attorneys' fees and costs from Noah; and (v) awarding any other relief that the Court deems just and proper.

## COUNT VII

### AVOIDANCE AND RECOVERY OF CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 548(a)(1)(B) and 550; and FDCPA §§ 3304(b)(1)(A) and 3306

117.     Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

118.     Between September 18, 2020 and February 9, 2021, within two (2) years prior to the Petition Date, the Debtor made transfers to, and for the benefit of, Noah (the "Two-Year Transfers"), as identified by the dates and amounts set forth in **Exhibit 7**, which is incorporated by reference as if fully set forth herein.

119.     The Debtor did not receive fair consideration or reasonably equivalent value in exchange for the Two-Year Transfers because the Debtor did not

receive any benefit from them.

120.    Instead, the Two-Year Transfers benefitted Noah, who was the initial, immediate, and/or mediate transferee and/or beneficiary of the Two-Year Transfers.

121.    The Debtor did not receive reasonably equivalent value in exchange for the Two-Year Transfers because the Debtor did not receive any benefit from them.

122.    The Debtor was insolvent when each of the Two-Year Transfers were made or was rendered or became insolvent as a result of the Two-Year Transfers.

123.    The Debtor made the Two-Year Transfers when the Debtor was engaged, and/or was about to engage, in business or transactions for which its remaining property after making the Two-Year Transfers was an unreasonably small amount of capital.

124.    The Debtor remained inadequately capitalized as a result of the Two-Year Transfers until the Petition Date.

125.    The Debtor made the Two-Year Transfers when the Debtor intended to incur, or believed that it would incur, debts beyond its ability to pay them as they matured and/or became due.

126.    The Debtor remained unable to pay its debts as they matured and/or became due as a result of the Two-Year Transfers until the Petition Date.

127.    In addition to being fraudulent for the reasons above, each of the Two-Year Transfers transferred the Debtor's assets to Noah, who was an "insider" of the Debtor at the time of each of the Two-Year Transfers, to the detriment of the Debtor's present and/or future creditors.

128.    Pursuant to sections 502(d), 548(a)(1)(B), 550(a), and 551 of the

Bankruptcy Code, Plaintiff is entitled to a judgment against Noah: (i) avoiding the Two-Year Transfers; (ii) recovering each Two-Year Transfer and/or its value from Noah on whose behalf each Two-Year Transfer was made; (iii) disallowing any claim filed by Noah until such time as each Two-Year Transfer and/or its value is repaid to the Plaintiff; (iv) awarding attorneys' fees and costs from Noah; and (v) awarding any other relief that the Court deems just and proper.

## COUNT VIII

### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 548(a)(1)(A) AND 550

129.    Plaintiff repeats and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

130.    Under oath and in open court at the hearing at which the New York court accepted his Plea Agreement, Kossoff admitted to "engag[ing] in a systematic ongoing course of conduct with the intent to defraud . . . multiple clients of [his] law firm"—present and/or future creditors of the Debtor—"[f]rom at least December 2017 to April 2021." See Ex. 3.

131.    The Debtor made the Two-Year Transfers with actual intent to hinder, delay, or defraud one or more entities to which the Debtor was or became indebted.

132.    The Two-Year Transfers did not, and were not intended to, benefit the Debtor.

133.    Instead, the Two-Year Transfers were intended to, and did, benefit Noah, who was the initial, immediate, and/or mediate transferee and/or beneficiary of the Two-Year Transfers..

134.    In addition to being fraudulent for these reasons, each of the Two-

Year Transfers made to and for the benefit of Noah was made with actual intent to hinder, delay, or defraud present and/or future creditors of the Debtor insofar as each of these transfers transferred the Debtor's assets to and for the benefit of Noah, who was an "insider" of the Debtor at the times of each of the Two-Year Transfers, to the detriment of the Debtor's present and/or future creditors.

135.    Pursuant to sections 502(d), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, Plaintiff is entitled to a judgment against Noah:  (i) avoiding the Two-Year Transfers;  (ii) recovering each Two-Year Transfer and/or its value from Noah on whose behalf each Two-Year Transfer was made;  (iii) disallowing any claim filed by Noah until such time as each Two-Year Transfer and/or its value is repaid to the Plaintiff;  (iv) awarding attorneys' fees and costs from Noah;  and (v) awarding any other relief that the Court deems just and proper.

## COUNT IX

### AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547(b) and 550

136.    Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

137.    Within ninety (90) days prior to the Petition Date, the Debtor made certain transfers to and for the benefit of Noah (the "Preferential Transfers").

138.    The Preferential Transfers, which total no less than $14,025, are identified by the dates and amounts set forth in **Exhibit 8**, which is incorporated by reference as if fully set forth herein.

139.    Noah was the initial, immediate, and/or mediate transferee of the Preferential Transfers.

140.    Subject to proof, Plaintiff pleads, in the alternative, that to the

extent that Noah demonstrates that any of the Preferential Transfers were made to Noah for or on account of an antecedent debt owed by the Debtor before each of the Preferential Transfers was made:  (a) the Debtor was insolvent at the time each of the Preferential Transfers was made;  and (b) the Preferential Transfers enabled Noah to receive more than he would have received if the case were under Chapter 7 of the Bankruptcy Code, the Preferential Transfers had not been made, and the antecedent debt were paid to the extent provided under the Bankruptcy Code.

141.    Plaintiff is entitled to the presumption of the Debtor's insolvency pursuant to section 547(f) of the Bankruptcy Code.

142.    Pursuant to sections 547(b) and 550 of the Bankruptcy Code, Plaintiff is entitled to a judgment against Noah:  (i) avoiding the Preferential Transfers; (ii) recovering each Preferential Transfer and/or its value from Noah;  (iii) disallowing any claim filed by Noah until such time as each Preferential Transfer and/or its value is repaid to the Plaintiff;  (iv) awarding attorneys' fees and costs from Noah;  and (v) awarding any other relief that the Court deems just and proper.

## COUNT X

## UNJUST ENRICHMENT

143.    Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

144.    The Debtor made the Avoidable Transfers to and for the benefit of Noah, which conferred benefits upon him in the amount of the value of the Avoidable Transfers.

145.    Noah knowingly and voluntarily accepted and retained the benefits conferred upon him by the Debtor while knowing that he did not provide fair consideration or reasonably equivalent value to the Debtor in exchange for the

Avoidable Transfers.

146.    Any measure of diligence by Noah would have disclosed that the Debtor did not receive any benefit in exchange for the Avoidable Transfers.

147.    Noah has been unjustly enriched at the expense of the Debtor's estate and its creditors.

148.    It would be inequitable and unjust for Noah to retain the benefits conferred upon them in these circumstances.

149.    Accordingly, Plaintiff is entitled to a judgment allowing the Plaintiff to recover, for the benefit of the Debtor's estate, an amount to be determined at trial that reflects the value of Noah's unjust enrichment resulting from the Avoidable Transfers, including the value of any other benefits fraudulently conferred upon Noah by the Debtor that Plaintiff may uncover during discovery.

## RESERVATION OF RIGHTS

150.    The Trustee does not waive and instead specifically reserves all of his rights, claims, and defenses as they pertain to the Debtor and any claims or liens that Noah may assert against the Debtor's estate.  The Trustee expressly reserves the right to amend and supplement this Complaint or to commence a new action against Noah with other claims as his investigation continues.

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment against Noah:

a)    avoiding all Avoidable Transfers pursuant to sections 544, 547, and 548 of the Bankruptcy Code;  NYDCL sections 273 *et seq.*;  NYUVTA sections 273 *et seq.*;  and sections 3304 and 3306 of the FDCPA;

b)    pursuant to section 550(a) of the Bankruptcy Code, directing Noah to pay to Plaintiff an amount to be determined at trial that is not less than the full value of

the Avoidable Transfers that each Defendant received, plus interest and costs;

c) preserving all avoided transfers and liens for the benefit of the Debtor's estate pursuant to section 551 of the Bankruptcy Code;

d) disallowing any of Noah' claims pursuant to section 502(d) of the Bankruptcy Code;

e) requiring Noah to return the unjust benefits conferred upon them by the Debtor in an amount to be determined at trial that is not less than the full value of the Avoidable Transfers, plus interest and costs;

f) awarding post-judgment interest at the maximum legal rate running from the date of the Judgment until the date the Judgment is paid in full, plus costs;

g) requiring Noah to pay forthwith the amount of the Judgment;  and

h) granting Plaintiff such other and further relief as the Court deems just and proper.

Dated:    New York, New York
March 31, 2025

ALBERT TOGUT, not individually but solely in his capacity as Chapter 7 Trustee, By his Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:


*/s/ Neil Berger*
ALBERT TOGUT
NEIL BERGER
MINTA J. NESTER
One Penn Plaza, suite 3335
New York, New York 10119
(212) 594-5000

**EXHIBIT 1**

### DIRECT TRANSFERS TO NOAH KOSSOFF

| Payee | Account Type I = IOLA O = Operating | Check Date | Payment Clear Date | Check No. | Amount |
|---|---|---|---|---|---|
| | | | | | |
| Noah Kossoff | O | 12/19/14 | 12/19/14 | 16976 | $ 276.00 |
| Noah Kossoff | O | 12/24/14 | 12/30/14 | 17010 | $ 135.00 |
| Noah Kossoff | O | 12/31/14 | 12/31/14 | 17053 | $ 489.00 |
| Noah Kossoff | O | 1/9/15 | 1/12/15 | 2050 | $ 547.80 |
| Noah Kossoff | O | 1/16/15 | 1/20/15 | 20034 | $ 744.00 |
| Noah Kossoff | O | 2/10/16 | 2/10/16 | 24561 | $ 2,000.00 |
| Noah Kossoff | O | 3/28/16 | 3/28/16 | WIRE | $ 1,000.00 |
| Noah Kossoff | O | 5/9/16 | 5/9/16 | 25778 | $ 400.00 |
| Noah Kossoff | O | 6/3/16 | 6/3/16 | 26148 | $ 705.00 |
| Noah Kossoff | O | 6/13/16 | 6/14/16 | 26280 | $ 381.48 |
| Noah Kossoff | O | 5/9/17 | 5/10/17 | 30450 | $ 2,000.00 |
| Noah Kossoff | I | 9/18/20 | 9/18/20 | WIRE | $ 50,000.00 |
| Noah Kossoff | O | 2/9/21 | 2/9/21 | WIRE | $14,025.00 |
| | | | | | |
| | | | | **Total** | **$72,703.28** |

**EXHIBIT 2**

## INDIRECT TRANSFERS TO NOAH KOSSOFF

| Payee | Account No. | Check Date | Payment Clear Date | Transfer Amount | Indirect Payment Amount |
|---|---|---|---|---|---|
| Kossoff, PLLC - JPM Chase Checking Account ending 9936 | 3892 | 8/29/18 | 8/29/18 | $105,000.00 | $  - |
| Noah Kossoff | 3892 | 8/29/18 | 8/29/18 | $  - | $5,000.00 |
| | | | | **$105,000.00** | **$5,000.00** |
| | | | | | |
| Kossoff, PLLC - JPM Chase Checking Account ending 0751 | 3892 | 9/25/18 | 9/25/18 | $5,000.00 | $  - |
| Noah Kossoff | 3892 | 9/25/18 | 9/25/18 | $  - | $5,000.00 |
| | | | | **$5,000.00** | **$5,000.00** |
| | | | | | |
| | | | Total | **$110,000.00** | **$10,000.00** |

**EXHIBIT 3**

**DEPOSITS INTO AND TRANSFERS OUT OF DEBTOR'S IOLA ACCOUNTS**

| Transaction Date | Payee/Payor | Transaction Type | Amount |
|---|---|---|---|
| **Transfers into IOLA from M. Kossoff** | | | |
| | | | |
| 2/14/17 | Mitchell H Kossoff Pamela A Kossoff | Transfer | $25,000.00 |
| 2/25/17 | Mitchell H Kossoff Pamela A Kossoff | Transfer | $21,000.00 |
| 1/7/21 | Mitchell Hal Kossoff | Transfer | $5,000.00 |
| | **Total Transfers from M. Kossoff:** | | **$51,000.00** |
| **Transfers from IOLA** | | | |
| 3/19/14 | Phyllis Kossoff | Check | $25,000.00 |
| 12/21/16 | Phyllis Kossoff | Check | $40,000.00 |
| 1/4/17 | Phyllis Kossoff | Check | $40,000.00 |
| 2/15/17 | Mitchell H Kossoff Pamela A Kossoff | Transfer | $25,000.00 |
| 3/10/17 | Mitchell H Kossoff Pamela A Kossoff | Transfer | $21,000.00 |
| 2/9/18 | Mitchell Hal Kossoff | Transfer | $65,000.00 |
| 5/5/18 | Phyllis Kossoff | Check | $100,000.00 |
| 3/3/21 | Mitchell Hal Kossoff | Transfer | $25,000.00 |
| | **Total Transfers from IOLA:** | | **$341,000.00** |

**EXHIBIT 4**

**PLEA AGREEMENT**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART N

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against-<br><br>MITCHELL KOSSOFF,<br><br>Defendant. | PLEA AGREEMENT<br><br>Docket No. CR-028944-21NY<br><br>SCI No. |

1.    This is the plea agreement (the "Agreement") between the Office of the District Attorney of the County of New York (the "District Attorney") and Mitchell Kossoff (the "Defendant").  This Agreement constitutes the entire agreement between the Defendant and the District Attorney.  There are no promises, agreements, or conditions, express or implied, other than those set forth in this document.  No modification, deletion, or addition to this Agreement will be valid or binding on either party unless put into writing, signed by both parties, and approved by the Court.

2.    At the time of the Defendant's plea, this Agreement shall be made a part of the record and the parties will request the Court's approval thereof.  This Agreement will become effective only upon the Court's approval.

3.    This Agreement covers the criminal conduct to which the Defendant is pleading guilty under this Agreement.  No other criminal conduct is covered by the terms of this Agreement.  This Agreement is limited to the District Attorney and cannot and does not bind other government agencies.

4.    Pursuant to this Agreement, the Defendant shall waive prosecution by indictment and plead guilty under a Superior Court Information to one count of Scheme to Defraud in the First Degree (Penal Law § 190.65[1][b]), one count of Grand Larceny in the First Degree (Penal Law § 155.42), one count of Grand Larceny in the Second Degree (Penal Law § 155.40[1]), and one count of Grand Larceny in the Third Degree (Penal Law § 155.35[1]).  The Defendant acknowledges that the maximum sentences that can be imposed for convictions of such offenses are as follows: an indeterminate prison term of 8 1/3 to 25 years for Grand Larceny in the First Degree (a Class B felony); an indeterminate prison term of 5 to 15 years for Grand Larceny in the Second Degree (a Class C felony); an indeterminate prison term of 2 1/3 to 7 years for Grand Larceny in the Third Degree (a Class D felony); and an indeterminate prison term of 1 1/3 to 4 years for Scheme to Defraud in the First Degree (a Class E felony).

5.    The Defendant acknowledges that by entering this plea of guilty, he will forfeit certain constitutional rights, including the right to a trial by jury, the right to confront his

accusers, and the privilege against self-incrimination. The Defendant specifically will waive, and hereby waives, all defenses and any claims or protections with relation to his plea arising out of any federal or state rights concerning double jeopardy, statute of limitations, speedy trial, speedy sentence, delayed prosecution, geographical jurisdiction, or venue.

6.    The Defendant shall execute a Waiver of Right to Appeal at the time of his plea. The Defendant shall acknowledge, and hereby acknowledges, that he would ordinarily retain his right to appeal even after pleading guilty, but that in this case, he is knowingly and voluntarily waiving that right in exchange for the favorable plea and sentence that he is receiving. The Defendant shall also acknowledge, and hereby acknowledges, that the appellate rights he is waiving are separate and apart from those rights that he shall automatically forfeit by his guilty plea.

7.    Upon the Defendant's plea of guilty, he will admit under oath before the Court to the following:

    a. From at least December 2017 to April 2021, I was an attorney licensed to practice in New York and the sole member of Kossoff PLLC, a law firm located in Manhattan. Part of my law firm's business was to collect and hold funds in trust for my clients and other individuals involved in matters relating to my clients. I did not have permission or authority to disburse the funds without authorization from the relevant parties to do so.

    b. As charged in Count One of the Superior Court Information, I admit that, from on or about December 21, 2017 to on or about April 9, 2021, in the County of New York, I engaged in a systematic ongoing course of conduct with the intent to defraud more than one person and to obtain property from more than one person by false or fraudulent pretenses, representations, or promises. In doing so, I obtained more than $1,000 from such persons.    In particular, I defrauded multiple clients of my law firm, and other persons involved in matters relating to my clients, by falsely representing that certain funds would be held in escrow and, notwithstanding those representations, intentionally causing unauthorized and impermissible disbursements of those funds.

    c. As part of that scheme, and as charged in Counts Two through Four of the Superior Court Information, I admit to committing the following specific thefts, in the County of New York, from clients of my firm and other persons involved in matters relating to my clients:

        i. From on or about December 21, 2017 through on or about March 16, 2021, I stole more than $50,000 from Anolag LLC and Jacpot 2 LLC.

2

ii.  From on or about July 9, 2019 through on or about March 16, 2021, I stole more than $1,000,000 from 118 Duane LLC.

iii.  From on or about April 1, 2021 through on or about April 9, 2021, I stole more than $3,000 from Irwin Ostrega.

d.  I admit that the individuals and entities listed in the appendix attached to my written plea agreement are some of the victims of the crimes to which I am pleading guilty today.  I also admit that, by committing those crimes, I caused those victims to incur the losses listed in the appendix and that I owe those amounts to those victims.

8.      The Defendant acknowledges that the individuals and entities listed in the appendix attached to this Agreement (the "Appendix") are victims of the crimes to which the Defendant is pleading guilty.  The Defendant also acknowledges that the monetary amounts listed in the Appendix reflect losses that he caused and owes to the respective victims as a result of his crimes.  The District Attorney and the Defendant agree that, at the time of the Defendant's sentencing, and as part of the Defendant's sentence, the Court shall issue judgment orders against the Defendant in favor of those victims listed in the Appendix.  The Defendant acknowledges the bases for those judgment orders and agrees to waive, and hereby waives, any restitution/reparation hearing pursuant to Penal Law § 60.27(2) and Criminal Procedure Law § 400.30 in connection with his guilty pleas under this Agreement.

9.      The Defendant represents that he has full and sole title to a condominium with an address of Twinlights Terrace, Unit I-9, Highlands, New Jersey, 07732 (Block: 11.08; Lot: 9) (the "Condominium"), with a last known tax assessment value of approximately $311,400 for the year 2021, according to the public records of the Monmouth County Clerk's Office.  Prior to the Defendant's sentencing, and as a condition of the promised sentences set forth in paragraph 10 below, the Defendant shall transfer title to the Condominium to Albert Togut (not individually but solely in his capacity as Chapter 7 Interim Trustee for Kossoff PLLC) and provide proof of such transfer to the District Attorney.  If the transfer has not occurred prior to the Defendant's sentencing, the Defendant must show good cause why the transfer was not performed.  The Defendant agrees that it shall be within the District Attorney's sole discretion to determine whether the transfer occurred or whether the Defendant has demonstrated good cause why it did not.

10.     The District Attorney and the Defendant agree that if the Defendant satisfies all of the conditions sets forth in this Agreement, as determined solely by the District Attorney, the District Attorney shall recommend and the Court shall impose the following indeterminate prison terms for the crimes to which the Defendant is pleading guilty, with all of the sentences to be run concurrently: 4.5 to 13.5 years for the count of Grand Larceny in the First Degree; 4.5 to 13.5 years for the count of Grand Larceny in the Second Degree; 2 1/3 to 7 years for the count of Grand Larceny in the Third Degree; and 1 1/3 to 4 years for the count of Scheme to Defraud in the First Degree.

3

11.    The District Attorney and the Defendant further agree that, between the date of the Defendant's guilty plea and the date of his sentencing, the Defendant shall return to court on all scheduled court dates, report to the New York City Department of Probation as ordered by the Court, and refrain from any behavior that would cause him to be re-arrested on criminal charges.  If the Defendant fails to satisfy any of those conditions or the conditions set forth in paragraph 9 above, as determined solely by the District Attorney, the District Attorney can recommend, and the Court can impose, any sentences authorized by law for the offenses to which the Defendant is pleading guilty under this Agreement.

12.    The Defendant enters into this Agreement, including all waivers contained herein, knowingly, intelligently, and voluntarily and after discussion and consultation with his attorney, Walter Mack.  The Defendant has had a full opportunity to discuss this Agreement with his attorney, and any questions he may have had have been answered to his satisfaction.

Dated: New York, New York

_____

_____          _____
Mitchell Kossoff                                   Doar Rieck Kaley & Mack
Defendant                                          Attorney for Defendant

_____          _____
Ryan Gee                                           Catherine McCaw
Assistant District Attorney                        Assistant District Attorney

Approved: _____
            Justice of the Supreme Court

4

## APPENDIX TO PLEA AGREEMENT
## PEOPLE V. MITCHELL KOSSOFF (DOCKET NO. CR-028944-21NY)

| VICTIM | AMOUNT OWED |
|---|---|
| Gran Sabana Corporation | $4,478,784.24 |
| 118 Duane LLC | $2,425,000.00 |
| SSM Realty Group II LLC | $1,300,000.00 |
| Darlene Hart and Lorraine Kinyk | $1,250,000.00 |
| Decker Associates LLC | $800,000.00 |
| 537 Realty Associates LLC | $590,000.00 |
| Prince Street Holdings LLC | $525,000.00 |
| Sasson Real Estate Group | $342,500.00 |
| Ilomai Kurrik and Arthur Nigel Jones | $305,064.16 |
| Heiner Freidrich | $291,000.00 |
| Louis Girodano and Jeanmarie Giordano | $250,000.00 |
| Jonathan Ostrow | $250,000.00 |
| Anolag LLC and Jacpot 2 LLC | $220,051.88 |
| 47 Mercer Street I LLC, 47 Mercer Street II LLC, 47 Mercer Street III LLC, and 47 Mercer Street IV LLC | $199,600.38 |
| Irwin Ostrega | $159,584.93 |
| Chad Eggers | $158,000.00 |
| Centennial Properties NY Inc. | $150,000.00 |
| Lawrence A. Alexander Irrevocable Trust | $117,000.00 |
| Robert Altemus | $89,900.00 |
| Darren Katz and Peter Myers | $77,000.00 |
| 5557 LLC | $75,000.00 |
| 51 West 11 Realty LLC and Beth Mollins | $65,000.00 |
| Georgica Capital Partners LLC | $61,250.00 |
| CF E 88 LLC and SM E 88 LLC | $60,000.00 |
| Thomas Sneva | $57,300.00 |
| 6 West 75th Street LLC and 112-113 West 75th Street LLC | $55,187.73 |
| Robert Rugani | $49,900.00 |
| Delis Realty Corporation | $45,000.00 |
| 112-113 West 75th Street LLC | $40,000.00 |
| Estate of Jasper Edward Peyton, Jr. | $34,000.00 |
| Jason Breitstone | $30,625.00 |
| David Shorenstein | $30,625.00 |
| Jason Rosenblum | $17,410.13 |
| 6 West 75th Street LLC | $10,000.00 |
| David Svenson | $7,589.87 |

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

**THE PEOPLE OF THE STATE OF NEW YORK**

-against-

**MITCHELL KOSSOFF,**

                                                                **Defendant.**

---

**PLEA AGREEMENT**

**DOCKET NO.**

**SCI NO.**

---

**Cyrus R. Vance, Jr.**
**District Attorney**
**New York County**
**One Hogan Place**
**New York, New York 10013**
**(212) 335-9000**

**Ryan Gee**
**Assistant District Attorney**
**Of Counsel**

**EXHIBIT 5**

## <u>GROUP-ONE TRANSFERS</u>

| Payee | Account Type I=IOLA O=Operating | Check Date | Payment Clear Date | Check No. | Amount |
|---|---|---|---|---|---|
| Noah Kossoff | O | 12/19/14 | 12/19/14 | 16976 | $276.00 |
| Noah Kossoff | O | 12/24/14 | 12/30/14 | 17010 | $135.00 |
| Noah Kossoff | O | 12/31/14 | 12/31/14 | 17053 | $489.00 |
| Noah Kossoff | O | 1/9/15 | 1/12/15 | 2050 | $547.80 |
| Noah Kossoff | O | 1/16/15 | 1/20/15 | 20034 | $744.00 |
| | | | | | |
| | | | | **Total** | **$2,191.80** |

**EXHIBIT 6**

## GROUP-TWO TRANSFERS

| Payee | Account Type I = IOLA O = Operating | Check Date | Payment Clear Date | Check No. | Amount |
|---|---|---|---|---|---|
| Noah Kossoff | O | 2/10/16 | 2/10/16 | 24561 | $2,000.00 |
| Noah Kossoff | O | 3/28/16 | 3/28/16 | WIRE | $1,000.00 |
| Noah Kossoff | O | 5/9/16 | 5/9/16 | 25778 | $400.00 |
| Noah Kossoff | O | 6/3/16 | 6/3/16 | 26148 | $705.00 |
| Noah Kossoff | O | 6/13/16 | 6/14/16 | 26280 | $381.48 |
| Noah Kossoff | O | 5/9/17 | 5/10/17 | 30450 | $2,000.00 |
| | | | | | |
| | | | | Total | $6,486.48 |

| Payee | Account No. | Check Date | Payment Clear Date | Transfer Amount | Indirect Payment Amount |
|---|---|---|---|---|---|
| Kossoff, PLLC - JPM Chase IOLA Account ending 9936 | 3892 | 8/29/18 | 8/29/18 | $ 105,000.00 | $ - |
| Noah Kossoff | 3892 | 8/29/18 | 8/29/18 | $ - | $5,000.00 |
| | | | | $100,000.00 | $5,000.00 |
| | | | | | |
| Kossoff, PLLC - JPM Chase Checking Account ending 0751 | 3892 | 9/25/18 | 9/25/18 | $5,000.00 | $ - |
| Alec Kossoff | 3892 | 9/25/18 | 9/25/18 | $ - | $5,000.00 |
| | | | | $5,000.00 | $5,000.00 |
| | | | | | |
| | | | Total | $110,000.00 | $10,000.00 |

**EXHIBIT 7**

### GROUP-THREE/TWO-YEAR TRANSFERS

| Payee | Account Type<br>I = IOLA<br>O = Operating | Check Date | Payment Clear Date | Check No. | Amount |
|---|---|---|---|---|---|
| Noah Kossoff | I | 9/18/20 | 9/18/20 | WIRE | $50,000.00 |
| Noah Kossoff | O | 2/9/21 | 2/9/21 | WIRE | $14,025.00 |
|  |  |  |  |  |  |
|  |  |  |  | **Total** | **$64,025.00** |

**EXHIBIT 8**

## PREFERENTIAL TRANSFERS

| Payee | Account Type I = IOLA O = Operating | Check Date | Payment Clear Date | Check No. | Amount |
|-------|-------------------------------------|------------|--------------------|-----------|--------|
| Noah Kossoff | O | 2/9/21 | 2/9/21 | WIRE | $14,025.00 |
| | | | | | |
| | | | | **Total** | **$14,025.00** |